1
Joseph Miner
PO Box 11650
2
Costa Mesa, CA 92627
Telephone: (949) 903-5051;  Fax:  (949) 646-2794
3
Email Address:  josephminer@gmail.com

4
        self-represented (pro se)

5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| JOSEPH MINER, an individual, | Civil Action No. 8:24-cv-02793-MCS (E) |
| Plaintiff, | Related: 8:22-cv-01043-CAS-MAA (stayed) |
| vs. | **FIRST AMENDED COMPLAINT** |
| CITY OF DESERT HOT SPRINGS, CALIFORNIA, a municipal corporation; | VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. Section § 1983 |
| TUAN ANH VU, an individual, in his investigative and administrative capacity; | CONSTITUTIONAL AMENDMENTS |
| | EX PARTE YOUNG |
| PRESIDING JUDGE RIVERSIDE COUNTY SUPERIOR COURT, Judith Clark in her official, executive, and administrative capacity; | STATE CLAIMS |
| | DECLARATORY RELIEF |
| CHIEF EXECUTIVE OFFICER RIVERSIDE COUNTY SUPERIOR COURT, Jason Galkin, in his official, executive, and administrative capacity; | INJUNCTIVE RELIEF |
| | DEMAND FOR JURY TRIAL |
| DOE DEFENDANTS 1-20, | Declaration of Joseph Miner with exhibits |
| Defendants. | |

23

24            **COMPLAINT**

25        COMES NOW, PLAINTIFF JOSEPH MINER, pro se. Plaintiff complains of the above-

named Defendants as follows:

26
**State Trial Court Issues**

27        1.    Paramount in this Bangladeshi hailstorm from hell, within the cluster of issues

28
that have injured Plaintiff since he was targeted by the City, Plaintiff Miner alleges, and the facts

1   in Plaintiff's possession will show, that a judicial impostor, <u>an individual</u>, <u>not a judge</u>, with no

2   permission, no stipulation, no judicial training, no judicial experience or history, and most

3   importantly; **no jurisdiction** -- ruled over the parties and made judicial decisions as if he was a

4   duly appointed superior court judge. Miner offers facts, new facts, and law to support his claims.

5         2.      The Superior Court Appellate Division, following all trial court litigation,

6   confirmed and ruled the subordinate judicial officer ("SJO") <u>was not acting as a temporary judge</u>

7   <u>or a superior court judge</u>. By law, the SJO lacked jurisdiction and judicial power. The acts by this

8   individual violated the law and Miner's constitutional rights. *(Mercado v. the Superior Court of*

9   *Orange County, Cal: Court of Appeal, 4th Appellate Dist., 3rd Div. 2024). Coram non judice.*

10        3.      Obstinately, and clearly against Plaintiff Miner's will, consent, and legal efforts,

11  the SJO remained on the bench, sans jurisdiction, then heard and decided every hotly contested

12  issue, and ruled on multiple critical and major issues of law including: (1) Miner's demurrer, (2)

13  motions, (3) evidentiary issues, (4) witness issues, (5) discovery issues, (6) protective order, (7)

14  statement of non-stipulation, (8) motion to non-stipulate, (9) two well-reasoned well-documented

15  disqualifications, (10) judicial orders. The SJO deprived Miner of witnesses and discovery.

16  Miner does not invite this Court to "review and reject" these issues -- they are offered as facts.

17        4.      Additionally, the SJO orally altered the case facts, and argued for the City (as if he

18  was still a county prosecutor). The SJO ignored Miner's constitutional and affirmative defenses.

19  The un-stipulated SJO then issued legal decrees, and judgment, altering Plaintiff's life, rights,

20  liberty, private interests, and property -- affecting and injuring Miner personally, for eternity.

21  Miner attended every hearing and was a party litigant. A court reporter produced transcripts.

22        5.      Long established law states: *"Jurisdiction is the power to <u>hear and determine</u> the*

23  *subject matter in controversy between parties to a suit; to adjudicate or exercise any judicial*

24  *power over them." (Rhode Island v. Massachusetts, 37 U.S. (12 Pet.) 657, 714 (1838). P. 718).*

25  Miner asserts the SJO did not have the power to <u>*hear and determine*</u> any substantive legal issue,

26  make rulings, orders, decrees, or judgment -- the court was not of competent jurisdiction.

27  *(Lightfoot v. Cendant Mortg. Corp., 580 US 82 - Supreme Court 2017 P. 555-556)*. These acts

28  deprived Plaintiff miner of rights secured by the US Constitution.

6.     The law is also clear regarding orders lacking jurisdiction: *"Every order thereafter made in that court [is] coram non judice," meaning "not before a judge." (Steamship Co. v. Tugman, 106 US 118 - Supreme Court 1882); (Roman Catholic Archdiocese v. Feliciano, 140 S. Ct. 696 - Supreme Court 2020);  Black's Law Dictionary 426 (11th ed. 2019).*

7.     The *Kern Court* stated: ***"being without jurisdiction, its subsequent proceedings and judgment were not, as some of the State courts have ruled, simply erroneous, but <u>absolutely void.</u>" (Kern v. Huidekoper, 103 US 485 - Supreme Court 1881).* A void judgment is a legal nullity, void abinito. *(United Student Aid Funds, Inc. v. Espinosa, 559 US 260 - Supreme Court 2010 P. 1377)* The commissioner's acts clearly violated constitutional law. Falsely acting as a judge, under the identified facts and consequences, violates public policy.

8.     Section 1983 provides a tort remedy against "[e]very person who, under color of [state law] subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

9.     The crux of this complaint and the root issue is statutory clarity. It targets clarification of text and law, and Riverside Superior Court's policy of assigning subordinate judicial officers to falsely act as duly appointed judges without mandated statutory, constitutional or legal authority. All levels of judicial officers wear black robes. Their powers are unexplained; indistinguishable to the gallery awaiting adjudication. Critical SJO jurisdiction goes un-checked.

10.     Preliminarily Miner was first <u>deprived of due process</u>, and denied a administrative hearing by the City. After an in person attempt to correct this issue with the hearing officer (hearing officer or "HO" as context requires) Miner's only remedy was a state court statutory trial de novo. Miner was then forced into state court to exhaust state court remedies.

11.     The policy, rule, custom, or practice -- of not giving Notice as to what specific authority the robed individual acts under; commissioner, or a commissioner acting as a temporary judge, violates and has violated due process, equal protection, the California Constitution, United States Constitution and civil rights of all party litigants including Miner. Acting as a subordinate commissioner, <u>as verified by the Appellate Division in its Opinion</u>, has now confirmed without doubt - there was no stipulation by parties. **No judicial power to act or perform as a judge.**

FAC PG 4

12.     This practice has violated and will likely violate Miner's state and federal civil rights and state and federal constitutional rights in the future. Miner seeks prospective declaratory and injunctive relief against the Court defendants, not damages or retrospective relief.

13.     Additional causes of action include the City Defendants' violation of due process, abuse of process, and malicious prosecution against Miner. The City defendants were a direct and or proximate cause of Miner's injury and knew or should have known it's acts and accusations were not within the law. That a subordinate judicial officer does not possess the powers of a judge, lacked authority to act as a judge, and furthermore lacked authority to issue a <u>permanent injunction against Miner</u>, which is specifically prohibited by law, in limited civil jurisdiction. *(Ytuarte v. Superior Court, 129 Cal.App.4th 266, 28 Cal. Rptr. 3d 474 (Cal. Ct. App. 2005))*

14.     Because of un-foreseeable acts by the un-stipulated commissioner in state court during litigation, and then an unexpected surprise confirmation at the Appellate Division level, <u>that the individual acted not as a judge but as a subordinate judicial officer</u>, the constitutional and legal issues to be further litigated, were crystalized post judgment. Decades of law is settled. An un-stipulated commissioner ("SJO") lacks jurisdiction to act as a judge. The SJO performed acts that required judicial power, and therefore violated the law and Miner's constitutional rights.

## <u>JURISDICTION AND VENUE</u>

15.     Plaintiff brings this civil-rights lawsuit pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, for violations of rights, privileges, or immunities secured by the U.S. Constitution.

16.     This Court has jurisdiction under 28 U.S.C. § 1331 (federal-question jurisdiction) and 28 U.S.C. § 1343 (civil-rights jurisdiction). To the extent that there are issues of State law and State constitutional law, this Court has supplemental jurisdiction under 28 U.S.C. § 1367.

17.     Venue is proper in the Central District of California under 28 U.S.C. § 1391.

18.     Miner contends this action, under this set of facts, regarding the issues alleged and raised, logically must precede and complete before the continuation of Miner's previously filed and stayed federal action in the Central District of California case # 8:22-cv-01043-CAS-MAA against City defendants and others filed and stayed prior to state court judgment and orders.

# **PARTIES**

19.     Plaintiff JOSEPH MINER (hereinafter Plaintiff, or Miner) is an individual and is a citizen and resident of Orange County, and Riverside County, California.

20.     At all times material herein Plaintiff Joseph Miner has been the sole owner of a rectangular 5+/- acre ranch with a designated main physical address of 66381 Dillon Road, Desert Hot Springs, California (Ranch). Plaintiff has been a resident of Desert Hot Springs postal code since 1994. Plaintiff has effectively been a resident of the City of Desert Hot Springs since about 2010 when his Dillon Road ranch property was moved out of jurisdiction of the County of Riverside, and forcibly annexed into jurisdiction of the City.

21.     At all times herein alleged, Plaintiff Joseph Miner was an inhabitant of the United States of America and within its jurisdiction and a citizen of the United States. Plaintiff Miner pays a variety of taxes to the City of Desert Hot Springs including sales and property tax.

22.     Defendant PRESIDING JUDGE RIVERSIDE COUNTY SUPERIOR COURT ("PJRC") is Judith Clark, according to its Web site (accessed December 22, 2024), the Riverside County judicial arm of the California judiciary.

23.     Defendant CHIEF EXECUTIVE OFFICER RIVERSIDE COUNTY SUPERIOR COURT ("RCEO") is Jason Galkin, according to its Web site (accessed December 22, 2024), the Riverside County judicial arm of the California judiciary. Superior court defendant officials are sued in their administrative, executive, and official capacities.

24.     At all times material herein Defendant TUAN ANH VU (Vu or VU) is named as an individual who has acted under color of state law, and at all times relevant to this action, was a contract employee for the City of Desert Hot Springs. Defendant Vu works at the City offices.

25.     Plaintiff contends Defendant Vu is involved, and some way, in some form, acts as a legal researcher, legal document author, advisor, consultant, and also as a supervisor or manager in an administrative capacity, and either controls, establishes custom, makes policy, or has a say in every code action, administrative citation, and court action: administrative, civil or criminal. It is believed Defendant VU as a manager or supervisor, decision and policy maker, reports to the City manager. Vu may also report to City Council. Plaintiff alleges defendant Vu

FAC PG 6

1    has full knowledge the defendants City and Vu acted wilfully, aggressively, with evil intent, in

2    many cases *ultra vires,* failed to follow the law, acted beyond the law, acted in conflict with

3    clearly established law. Defendant Vu is sued in his investigative and administrative capacity.

4        26.    Defendant CITY OF DESERT HOT SPRINGS (City or DHS) at all times relevant

5    to this complaint is/was a charter city, and municipal corporation, employing the individual

6    Defendants, officers, and employees, who were acting within the scope of their employment,

7    under the color of law, within Riverside County, California and operating under the laws of the

8    State of California. The City us sued under *Monell*, causing a constitutional tort.

9        27.    City Defendants are believed to use the following address at Desert Hot Springs

10   City Hall, 11999 Palm Drive, Desert Hot Springs, California. City Defendants are officials,

11   employees, and members of the City of Desert Hot Springs. Miner has properly filed tort claims

12   against the City. The City and its agent failed to respond to the instant tort claims filing regarding

13   this action. Miner was admonished in writing by the City's defense attorneys for requesting a tort

14   claim response from the City and its agent.

15       28.    Every City Defendant who is a natural person is sued in both his / her individual /

16   personal capacity, as well as in his / her official capacity if he or she had any policymaking

17   duties, decisions, functions, or responsibilities with respect to the matters alleged herein. Plaintiff

18   alleges a "meeting of the minds" that ties all defendants to the allegations. Separately alleging a

19   count for conspiracy would be redundant.

20       29.    Defendant Does 1-20 are the unknown agents of Defendants who participated in

21   the allegations. The true names and capacities, whether individual, corporate, associate or

22   otherwise, herein named as DOES 1 through 20, and persons heretofore unknown involved in the

23   actions taken against Plaintiff are unknown to him at this time.

24       30.    Plaintiff is informed and believes and based thereon alleges that each of the DOE

25   Defendants are responsible in some manner for the wrongful conduct and occurrences herein

26   referred to, and that Plaintiff's injuries and damages as herein alleged were proximately caused

27   by those Defendants. Once their identities have been determined through discovery, the

28   Complaint will be amended to name them. DOE Defendants are sued under their fictitious name.

# HISTORICAL FACTUAL CONTEXT

31.     Setting forth the relevant history for context are reasons and examples of why this law must be clarified. On April 28, 2021 Joseph Miner's fenced and gated 5 acre ranch, home and buildings, located in the City of Desert Hot Springs were trespassed, entered and searched by code enforcement officers who failed to obtain a search warrant. The ranch had been partially rented. The time period was during COVID. Code enforcement left the ranch gates and all doors wide open to intruders. Miner was not present. The tenants permanently vacated the ranch.

32.     About sixty days later, out of nowhere, a code officer appeared at the front gate. The officer contacted property owner Joseph Miner (Miner) by phone and then requested a re-inspection. The City had never produced warrants to Miner to enter or inspect the property for its first inspection. The officer again had no warrant - Miner declined. This angered the code officer.

33.     The code officer's stated purpose during the contact was a re-inspection. After Miner's decline the officer, in a photograph Miner took, was clearly angry. Undaunted, the officer used a telescopic camera and peered through holes in Miner's fence, while traipsing on Miner's private land, and issued a citation for the north land parcel (APN 657-220-005).

34.     Code officer Messer used information collected by his team, in the warrantless search and seizure, targeting all four land parcels Miner owned. The revenge case mentioned marijuana. The officer issued confusing punitive financial citations to punish Miner and targeted every parcel Miner owned. Evidence seems to indicate the code officer was up to something other than the fanciful violations he ultimately issued. Photos show how this City "really" works.

35.     The code officer's acts against Miner were punishment, not health or safety. Photo evidence below shows trash the city code officers left on some lot after a typical city abatement 'cleanup.' Officer Messer permitted 200 junk cars, 800 tire (auto parts / dripping oil) on a ranch ½ the size of Miner's land across the street as well a 2.5 acre land parcel full of junk (next page).





City abatement failed cleanup          First Street in Desert Hot Springs          About December 16, 2024



Miner was violated for 1 single spare tire on his 200,000 sf ranch. Across street (photo) 200 junk cars. 800 tires.

36.     Miner believed the citation issues were frivolous penal acts of retribution, yet they involved multiple constitutional issues - search and seizure, free speech, property and liberty interests. Miner was cited for absurd issues - (1) spare tire, (1) small nursery tray, a few wood fence slats lying in front of a fence repair, cut and uncut firewood 110' from the home, all on a (200,000 sf) 'ranch' property 40 times the (5,000 sf) size of a typical residential city lot. (ex 10)

37.     The City maintains a culture, custom, practice, and or policy, because of the City Council's ultra aggressive no-tolerance stance, to "target" and "punish" land owners who's land is involved in untaxed marijuana. Defendants use tactics, practices and policy that violate legal rights and constitutional rights. Rather than train its employees to refrain from punitive and harassing acts against citizens, the City's "team" aggressively attacks citizen "defendants."

38.     These vile practices in the city are so persistent and widespread as to practically have the force of law. The citations and relentless harassing acts caused Plaintiff anxiety, distress emotional, financial and psychological injury. The acts exhibit evil motive, oppressive conduct, reckless and deliberate indifference. With City's warrantless raid on Miner's ranch the penal acts and oppression began. It then continued with an attempted re-inspection, then flyspeck citations.

39.     Miner has been treated unfairly and unequally under the law, a violation of equal protection. He was forced to pay the fine in advance. He filed a brief to defend himself in an administrative hearing. Then Miner was improperly noticed regarding the hearing date. The HO ruled against Miner. Miner requested a trial de novo in superior court. Miner expected to defend himself using statutory procedures in a superior court limited civil action.

40.     Miner, a 70 year old senior citizen, who holds two professional licenses, is generally not involved in lawsuits except for business related litigation: unlawful detainers, complaints for theft of rent, or infrequent small claims actions for money, or property damages.

41.    Miner files lawsuits for business purposes only. Plaintiff Miner has never, in his lifetime, filed a frivolous or harassing legal document or lawsuit. For Miner, the law, and listening to federal and supreme court oral arguments, is a hobby. He has logged 1000s of hours of listening to the podcast hearings of federal circuit and supreme court oral arguments.

**Superior Court - Trial De Novo**

42.    Miner did not file a new "action" -- he was the defendant. Per statute, Miner "<u>requested</u>" a trial de novo. Judge made law has clarified the procedure is not an "appeal." The Superior court has no power to "review" an administrative decision. Superior court becomes a court of original general jurisdiction to "*hear and determine*" the transferred matter.

43.    Established law is clear the procedure is a new trial. *(Post v. Palo/Haklar & Associates, 4 P. 3d 928 - Cal: Supreme Court 2000; Murphy v. Kenneth Cole Productions, Inc., 155 P. 3d 284 - Cal: Supreme Court 2007) P. 897-898; People v. Kennedy, 168 Cal. App. 4th 1233 - Cal: Court of Appeal, 4th Appellate Dist., 2nd Div. 2008.*

44.    In the Riverside County limited civil action (CVPS2106001) Miner was listed as Defendant and Appellant (ex 11). In a preliminary hearing the court clerk in open court stated Miner had a choice of a <u>commissioner or a judge</u>. Miner orally <u>requested a judge</u> in open court. When Miner requested a superior court judge, the temporary judge immediately recused himself.

45.    The first hearings used temporary judicial officials. It eventually became clear a judge was never assigned. A court commissioner, Hon. Arthur Hester, was assigned to the trial de novo. The superior court, the clerk, and the commissioner all failed to explain, Notice, advise, or expressly request parties stipulate to the commissioner - to act as a temporary judge.

46.    Miner, who has been through civil court trials expected to defend himself. He quickly became concerned about the trial court's (commissioner's) seemingly lack of knowledge, and unconventional court procedures that did not follow the rules of the court, and rules of limited civil procedure, case law, or statute for a limited civil case. By his acts the commissioner seemed to think the statutory limited civil trial – was a small claims case and a single hearing.

47.    It became clear to Miner, the City was taking advantage of the newly minted

1   SJO's lack of knowledge as to administrative citations,[1] land use, and public nuisance law.

2       48.    As an example Miner filed a demurrer. The City argued to the SJO that there was

3   no demurrer to a citation. The court agreed, yet parties have been demurring to citations,

4   including traffic citations, and civil actions since the 1700s. The contested demurrer was one of

5   the first issues the court commissioner had no jurisdiction, and no judicial power to rule on.

6       49.    Further confusing to party litigants, it appears a SJO commissioner is statutorily

7   permitted to 'conduct' a hearing. Nowhere in the law or statute does it state "determinations" are

8   made. Long established case law is clear a court commissioner does not have the judicial power

9   to rule on any issue of law without party litigant stipulation. *(McCartney v. Superior Court, 223*

10  *Cal. App. 3d 1334 - Cal: Court of Appeal, 2nd Appellate Dist., 3rd Div. 1990 P. 1338 #1)*

11      50.    At least 11 cases appear when searching google scholar, or fastcase, for search

12  phrase 53069.4 demurrer. In *(Wang v. City of Sacramento Police Dept., 68 Cal. App. 5th 372 -*

13  *Cal: Court of Appeal, 3rd Appellate Dist. 2021)* it was the City who demurred. At every defense

14  Miner experienced the same response from the SJO - overruled. It was a legal twilight zone. It

15  made no sense to Miner. A scant 'notice and citation' effectively becomes the City's complaint in

16  the de novo trial, which becomes a limited civil action -- exacerbating a defendant's legal issues.

17      51.    Miner researched the law. There was no clear discussion of an SJO's limits or

18  duties, except in statutes CCP. §259, GC. §72190 and case law. There had been no Notice or

19  discussion with parties about stipulation to the commissioner. <u>The SJO never once requested a</u>

20  <u>stipulation</u>. Idyllically, the SJO never repeatedly requested <u>stipulations</u> as the long tenured

21  commissioner had in *Horton (In re Horton, 813 P. 2d 1335 - Cal: Supreme Court 1991) where*

22  *<u>Commissioner Cowell habitually solicited stipulations</u>... that he <u>reminded</u> petitioner's counsel to*

23  *<u>get a stipulation</u>.* Miner never submitted to the jurisdiction of the commissioner to act as a judge.

24      52.    When the commissioner began to act, not as a commissioner, but as a temporary

25  judge – Miner, per the law, (1) filed a notice of non stipulation. The notice was ignored by the

26  SJO. (2) Miner also filed a motion to vacate any unintended stipulation. This was overruled by

27  

28      [1] Miner advised the subordinate judicial officer Miner was not given a fair hearing at city
level, and that cases are generally sent back to the city for completion. The SJO ignored Miner.

1   the SJO <u>with no supervising judge present</u> at the motion hearing with a simple statement by

2   commissioner  "its not done that way." No judge was present at the motion hearing, just the SJO.

3   Miner was shocked. A SJO court commissioner with no stipulation acted as a judge with no

4   oversight. *(People v. Tijerina, 459 P. 2d 680 - Cal: Supreme Court 1969. P. 44)*

5       53.    Per law, with obvious repetitive non-stipulations, Miner did all that he could do to

6   secure a judge. <u>Non stipulating clearly became futile</u>. Miner was not shy telling the commissioner

7   he was not stipulating to the commissioner's acts. The reporter's record is clear. There is video.

8       54.    In Miner's perspective it was clear the commissioner was not following long held

9   interpretation of the law. Miner then attempted to remove the commissioner. The commissioner

10  filed a declaration stating he was **'assigned the case for all purposes'** and refused to recuse

11  himself. Again, the SJO, who was not a judge, decided Miner's motion to disqualify him, and his

12  own future. No judge oversaw any act, decision, or ruling the non-stipulated SJO made.

13          Rule "2.831(f). A motion to withdraw a stipulation for the appointment of a
14      temporary judge* must be supported by a declaration of facts establishing good
        cause for permitting the party to withdraw the stipulation, and <u>must be heard by</u>
15      <u>the presiding judge or a judge designated by the presiding judge.</u> *ROC 244(f)

16      55.    The commissioner never made clear that it was his opinion (if in fact it was his

    opinion), he was <u>statutorily enabled to act as a judge</u>. The law however, government code
17
    §72190, does not remotely compare to §53069.4(b)(3) and Miner was in limited civil jurisdiction
18
    pursuant to limited civil procedure, not a small claims money dispute or a penal traffic infraction.
19
        56.    The statute §53069.4 states clearly the proceeding is a limited civil action. Case
20
    law affirms "appeals de novo" are constitutionally required to be "trials de novo." The code of
21
    civil procedure §85-100 is clear on procedure such as discovery, witnesses, depositions - yet
22
    Riverside Superior court attempts to schedule a trial <u>30 days from filing</u> and systematically
23
    eliminates defensive statutory entitlements - such as discovery. Other courts have ruled just the
24
    opposite. (ex 12) The law and the procedures are not equal and are unclear for the accused.
25
        57.    At trial the city took first chair. Miner filed a demurrer to the citation, motions,
26
    and requested witnesses. The commissioner rejected every defense. <u>The court stated Miner could</u>
27
    <u>not demurrer to a citation</u>. [?] The court knowingly eliminated all Miner's witnesses. The court
28
    gutted Miner's defense and stated so in open court. All court rulings were adverse to Miner.

58.    The trial de novo case involved defenses including constitutional issues such as
warrant-less search and seizure, free speech, liberty interests, trespass, land use and zoning issues
including municipal land annexation, grandfathered land use rights, tax law, ex post facto law. It
did not involve issues as identified in CG. §72190 where a commissioner (small claims) may
have statutory power of a judge, nor did his judicial power come from any section of CCP. §259.[2]

59.    Miner, to preserve the record, hired a court reporter, and just like any competent
defense, filed the motions to preserve all issues for the record and appeal. It was a fact the
motions were not read by the commissioner because he was not aware of the motions until the
hearing when Miner mentioned they were on calendar. The commissioner opened the motions on
his computer right in front of Miner and the City. He did not know the motions existed before
ruling on each them with seconds of minimal oral input by Miner. There was no meaningful legal
analysis, or legal research as to the depth or legal quality of each motion. The trial proceeded.

60.    Because of the court's failure to follow the law and procedure, Miner, to preserve
the record, was forced to file all his motions at once, the day of trial, as motions in limine. Then
for other reasons the trial never began that day. The motions were on file for months.

61.    The newly minted small claims commissioner, a veteran county criminal felony
prosecutor, seemed to treat the case as small claims action eliminating all limited civil procedure.

62.    Miner was trapped as hostage in a courtroom where statutory procedure, law and
case law, were no longer the rules of the court. The court ignored Miner's legal rights.

63.    Separately, Miner's attorney sued the City and City officials in a federal court
action (8:22-cv-01043-CAS-MAA). Miner filed an *England Reservation* and requested *comity* in
the trial de novo. The subordinate judicial commissioner refused comity with the federal court. It
became clear it was futile for defendant Miner to object, non-stipulate, file motions, or attempt to
make any defensive act at all. The SJO systematically denied Miner's right to a fair trial.

64.    Miner was never permitted to actively litigate the fact the commissioner lacked

---

[2]  Miner queried the new 'judge,' in open court, in the motion hearing to vacate the void
judgment as to the source of the commissioner's jurisdiction. The judge had no answer. The
Appellate Division danced around the legal issue in its arbitrary Opinion never analyzing the text
or history of the statute. The Opinion was unsatisfactory; legally, constitutionally unsupportable.

1   judicial power. The commissioner refused to hear it, in his mind he was 'assigned' the case.

2   Miner timely appealed. The appellate division ignored it, <u>then failed to meaningfully analyze the</u>

3   <u>text of the statute</u>, history or the law, case law and the defensive documents Miner had filed.

4       65.    AOB exhibit. (ex 15 ). The Appellate Division on page 11 of its Opinion stated

5   **"As Commissioner Hester did not perform his duties in the underlying action as a**

6   **temporary judge <u>but as a subordinate judicial officer</u>."** (ex 14) This confirmation and

7   Opinion <u>was new information to Miner</u> that confirmed what was a vortex of jurisdictional

8   mystery during the entire case. The Opinion <u>established and raised new facts to litigate</u> in the

9   instant matter. The Opinion ignores 95% of the issues Miner raised on appeal. The Appellate

10  Division, through motivated reasoning, ignored glaring material, legal and constitutional issues

11  raised on appeal. The Appellate Division failed to analyze the plain text of the law de novo.

12      66.    This holding by the Appellate Division conflicted with the trial court's own ruling

13  on Miner's motion to non-stipulate. The SJO stated Miner's motion to vacate stipulation was

14  "untimely." This ruling led Miner to falsely question his own acts and created confusion.

15      67.    The court's (SJO's) ruling should have made clear the commissioner was acting

16  as a subordinate judicial officer and that [he believed] he was assigned the case and he was

17  statutorily enacted to perform all judicial duties as if he was a superior court judge. **But that**

18  **never happened.** Miner then could have actively litigated these issues in a meaningful way at the

19  trial court level. Following the Appellate Division Opinion Miner contends all trial court rulings,

20  orders, decisions and judgment are void. *(See Jenkins v. Duffy Crane & Hauling, Inc., 13-CV-*

21  *00327-CMA-KLM, Doc #37 Order 12/20/13)* However the judgment of dismissal by the SJO is

22  not at issue in this litigation. *(See Andrade v. City of Hammond, 9 F.4th 947, 948 (7th Cir. 2021).*

23  **Vexatious Litigant Legal Issues**

24      68.    The City attorney was made aware, and received a copy, of the federal case filed

25  <u>against him personally</u> <u>months earlier</u>. Just two days after the federal case was actually served on

26  the City attorney, at the very last minute of the trial de novo, the City, not the court, dumped a

27  vexatious litigant motion on the City's own citee, its own defendant - defendant Miner.

28      69.    This was a sucker punch. A blockbuster surprise with no safe harbor warning. No

Notice or even a peep from the SJO about frivolous filings, or a threat of sanctions. The plaintiff City, with no standing to file, used a procedure not found in the vexatious litigant statute §391.1(a), filed a vexatious litigant motion <u>against its own defendant</u>. Magically, on it's pleading caption, the City converted Defendant / Appellant Miner, and magically changed him to Plaintiff.

70.    Miner advised his federal attorney Joseph Rosenblit of the issues. Defendant Miner and his attorney, <u>as a team</u>, opposed the vexatious litigant motion. <u>Again no mention of or request for a stipulation. No mention by the court, the clerk, or the commissioner</u>. (ex 13). The motion was filed against Miner for the motions and witnesses he had requested or filed, as the defending party, in the <u>single citation civil action</u> for his own defense.

71.    During the hearing, the commissioner reversed Miner's role, and re-labeled Miner the plaintiff because Miner had "requested" a trial de novo. Miner was gobsmacked. Miner orally argued he had always been the defendant and had defended himself the entire trial. Only a defendant can bring the motion. A California Court of Appeal case the text stated the following:

> *"Kenton is correct that section **391.1 only allows for a defendant to move the court for an order requiring the plaintiff to furnish security**. Hilja does not dispute this point, nor do we." (Keading v. Keading, Cal: Court of Appeal, 1st Appellate Dist., 3rd Div. 2021 [Pursuasive/Unpublished])*

72.    Miner and his *special appearance pro bono* attorney (his federal attorney appeared by telephone) both argued Miner simply filed common motions any attorney would file, and the vexatious litigant filing by Tuan Anh Vu was vindictive and retribution for the federal action against the City and Vu. (This was contract attorney fee 'waste' under CCP. 526a)

73.    Miner had no express attorney representation - it was a joint effort. The hybrid defense was put on as a team. Miner knew and argued the case history. Miner knew it would be futile to again non-stipulate orally. All hearings had been unfair. Miner decided not to infuriate the SJO as he was the <u>un-stipulated decider</u> at the vexatious litigant hearing. *Coram non Judice.*

74.    Almost verbatim the commissioner parroted the City's words. Again, the commissioner argued in open court in favor of the City "Miner was the Plaintiff" stating the City attorney could not have put together the vexatious litigant motion in just a few days - yet the City Defendants <u>had the federal complaint for months to craft the motion</u>. They dropped it at the end

of trial. The clerk input false boilerplate <u>non existent stipulations</u> into all court minutes. (ex 13)

75.    <u>The court ordered defendant Miner to pay a security fee to continue to defend</u> <u>himself</u>. Miner refused to pay a court imposed fee to defend himself against the citation. Miner had already paid one fee in advance just to file an administrative appeal, and never received the administrative hearing. This was Déjà vu, paying in advance to defend yourself. Miner never heard of such a thing. The SJO dismissed the trial de novo case without prejudice. The court cannot deny a ***defendant's*** Constitutional statutory and legal right to defend themselves imposing a payment in advance. *(See Griffin v. Illinois, 351 US 12 - Supreme Court 1956, P. 17-18).*[3]

> ***"There can be no equal justice where the kind of trial a man gets depends***
> ***on the amount of money he has." (Griffin v. Illinois)***

**Judgment of Dismissal**

76.    There was no final judgment on the merits. Miner does not request a change in judgment (dismissal without prejudice). Miner requests a clarification of these constitutional issues and laws for all citizen defendants that it affects throughout the State of California. These constitutional abuses will continue indefinitely if not clarified and decided in a competent court.

> "The only adjudication by a judgment of dismissal `without prejudice' is that <u>nothing is adjudged</u> and that the parties are free to litigate the issue as though the action had not been commenced. [Citation.]" *(Fleishbein v. Western Auto Supply Agency (1937) 19 Cal.App.2d 424, 427)*

77.    The case was dismissed without prejudice. The Appellate Division did not address the judgment of dismissal in its Opinion nor did the City oppose the dismissal. This left Miner with an administrative hearing that was unfairly denied, and a trial de novo dismissed in a judgment of dismissal without prejudice. Not one citation issue has been fairly adjudicated.

78.    These un-constitutional assignments as well as other conflicts such as discovery, civil procedure, and notice pleadings are occurring not just in Riverside County Superior Court, but throughout the State. The law must be clarified for all, not avoided, or kicked down the road.

---

[3] While the case was dismissed without prejudice, the judgment and all acts by the SJO may be (should be) void abinitio for lack of subject matter jurisdiction and or coram non judice. *(See Burnham v. Superior Court, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 [II A P. 609] (1990)).*

**FACTS**

79.    At all relevant times Miner, was a senior citizen. Among other businesses, Miner was/is a California real estate broker and appraiser. Miner states he has had nothing to do with marijuana, hemp, or cannabis and has had no involvement in the marijuana industry.

80.    On April 28th, 2021 the City invaded Miner's fenced and gated, 5 acre, 4 parcel 7 building  ranch, posted "no trespassing" – without a warrant. This was a violation of Miner's Fourth Amendment rights under the US constitution. This issue has never been adjudicated.

81.    In their coordinated efforts to enforce the City Council's ultra aggressive and bold "no tolerance" [4] stance regarding taxed cannabis and marijuana against Miner, the City and it's employees, wilfully violated the Constitution and the law. Their acts were routine City policy.

82.    These wilful oppressive evil acts were also in violation of law in sections of Gov. Code §53069.4 (2)(E)(ii)(iii). Miner had a signed lease and had in his possession an agreement prohibiting unlicensed marijuana growth on this ranch as required by law.

**The Alleged Citation Offenses**

83.    When Miner refused entry to his ranch pursuant to a code officer's re-inspection request, the City commenced proceedings, it re-opened and instituted administrative case 21-566 against Miner. The attack was brought in the form of allegations and citations.

84.    Miner defended against the citation, and was forced to request a trial de novo when he was denied a hearing by the City. The city citation (summons) becomes the City's accusatory pleading (complaint) in a superior court trial de novo.

85.    When Miner "requested" a trial de novo he was labeled Defendant and Appellant by the trial court. Upon "request" for a superior court trial de novo, the case is transferred by the City to the court, and converted to an 'action' by statute. It is a do-over, not "new action" per se.

86.    The City maintained it's litigation in its action against Miner in the trial court. The City took first chair and prosecuted Miner using the citation complaint as its charging document. Miner defended against the alleged vague, inaccurate, scant offenses contained in the citation.

---

[4] https://www.colehuber.com/attorneys/jennifer-mizrahi/ (1/24/2025)

87.     It did not take long -- after Miner had declined entry to his ranch, before the angry code officer charged Miner with multiple violations of "public nuisances." Public nuisances are a misdemeanor under state law Civil Code §3480.

88.     The officer mysteriously bypassed and shortcut the City nuisance abatement ordinance -- then midstream issued Miner repetitive duplicate 'fine' citations totaling $4,000. The officer violated City law and procedures associated with issuing the citations.

89.     The city has usurped state public nuisance law and its "city" application of "public nuisance" is in great tension with the 1,000 year historical definition of "public nuisance per se."

90.     Historically, a *public nuisance* is a grand public offense that affects mankind. By law, it mandated abatement (entire purpose behind the name). *(See A Practical Treatise on the Law of Nuisances - H. G. Wood)*. Began in 12th century England. In English courts since 1535.

91.     The City has "umbrella enacted" almost every flyspeck city ordinance, almost every minor issue possible, and blanket labeled them as a "public nuisance." [Why? Money.]

92.     No California or federal law states that a city council can make a law that 'a violation of anything' is a "public nuisance." The City has poisoned the definition of *public nuisance*. The City's definition seems to mean: "a violation of anything we choose."

93.     The code officer's so-called offenses were mythical violations. No rational neighbor would bring a private nuisance lawsuit against Miner for the issues the officer charged.

94.     The City's clever crafting of the law, then forum steering, eliminated Miner's rights to a jury trial, a public defender, and a maximum $1,000 fine. (in total Miner was charged $4,000). The code officer failed to give Miner proper legal Notice.

95.     The officer failed to conform to all statutory mandates pursuant to Government Code §53069.4. The officer then issued a threadbare citation, using vague, confusing, inaccurate ordinance language, that lacked the violation exact location, facts, and elements.

96.     These forum steering adjudication issues are generally an analogue to the recent supreme court holding in *SEC v. Jarkesy, 144 S. Ct. 2117 - Supreme Court 2024 and Loper Bright Enterprises v. Raimondo, 144 S. Ct. 2244 - Supreme Court 2024.* The City has taken it's administrative adjudication "privileges" much too far, beyond the scope of the intent of the law.

97.     If an issue could not, or would not, stand the scrutiny of being adjudicated as a private nuisance, then it certainly would not be capable of being a public nuisance. *(People ex rel. Gallo v. Acuna (1997) 14 Cal.4th 1090, 1105, 60 Cal.Rptr.2d 277, 929 P. 1105)*

98.     Had Miner been sued by a neighbor for <u>identical "nuisance" issues under a private nuisance theory</u> Miner could have requested a jury trial, demanded documents and discovery, called witnesses and every procedural statutory element he was denied by the trial court SJO.

99.     Instead of abating - the City code officer charged Miner with a public nuisance, the officer then skipped to a different ordinance, and he issued a fine. This converted an equitable issue (abatement) into a (common law) suit for debt. Therefore a jury trial should be available.

100.    Miner's case was no longer equitable in nature as this City fails to abate purported "nuisances" using administrative citations and simply demands money. It is effectively a RICO style fine extortion. The City prosecuted Miner for money - the City never an induced abatement.

101.    Government Code sections 25132 and 36900 makes the violation of a city or county ordinance either a misdemeanor or an infraction. The offenses are the city ordinance violations listed on the face of administrative citation - not the citation itself. Listed on the administrative citation may be misdemeanors, infractions, or civil penalties or a combination - yet they are not identified for the administrative citation recipient.

102.    Creating more confusion, city ordinances, although the law clearly states otherwise, are not a misdemeanor by default, but only when the violation is declared to be a **misdemeanor or infraction by express ordinance language**. *(Airlines for America v. City and County of SF, 598 F. Supp. 3d 748 - Dist. Court, ND California 2022. P. 756-758)* Sections 25132(a) and 36900(a) are implicated only when a local ordinance expressly calls for criminal enforcement. A citation recipient receives no Notice of these serious legal issues.

103.    The City's code DHSMC § 4.28.010 states  "Any violation of the municipal code by a member of the public which is designated as an **infraction violation** under the applicable municipal code provision shall be **deemed an infraction** violation for purposes of this chapter."

104.    The DHSMC § 4.28.010 code is vague and ambiguous as to what exactly is meant by the word "infraction." DHS offers no definition of what the legal term "infraction" means

under its code and how it relates to to Government Code §53069.4. Not assigning a explicit definition to the word infraction in the city code leaves the word to be mis-interpreted by defendants, the city, hearing officers, the court, and attorneys differently.

105. Different cities throughout the state use different interpretations of the legal word "infraction" as it relates to Government Code §53069.4 (ex 19)

106. Government Code §53069.4(a)(1) states "**Where the violation would <u>otherwise</u> be an infraction**, the administrative fine or penalty shall not exceed the maximum fine or penalty amounts for infractions set forth in Section 25132 and subdivision (b) of Section 36900."

107. State law makes clear public nuisances are misdemeanors. DHS municipal code §4.16.110 Q1 declares a violator will be prosecuted for an infraction, but then a code officer issues fines and performs no abatement this is in tension with the law of "public nuisance."

108. Desert Hot Springs all encompassing Chapter §4.16 "public nuisance" law is vague, ambiguous, unclear, overbroad and against public policy -- it is difficult for people to understand what it prohibits or what the punishment is. It is applied unequally throughout the City at the whimsical discretion of untrained code officers.

109. Miner was cited for 1 spare tire in citation violation. The land owner across the street maintains a 200 car junkyard and an unlawful tow company and a laundry list of illegal activity visible from the street. He has a collection of wrecked, non registered, non running cars (dripping oil) with perhaps 800-1,000 tires. This is an undisputable example of the inequality of the law and supports the theory Miner was targeted after the marijuana search. This is just one example of the poisoned and defective unconstitutional process of enforcement used in the City.

**Administrative Hearing**

110. Miner, as the property owner, was <u>forced to pay the full administrative fine in advance</u> just to schedule a hearing to even dispute the allegations and defend himself. This affects his private interests. California has a zero bail policy for misdemeanors and felonies.

111. The City, without legal authority, scheduled (forced) a zoom hearing. Miner refused a zoom hearing where no evidence could be presented and examined live. The City, defendant Vu, abruptly changed the hearing date without proper legal notice.

112.    Defendant Vu gave Miner the wrong hearing information by instant email, not postal mail or personal service, as the law requires.

113.    Miner was at the coast 100+ miles away from Desert Hot Springs. Miner requested proper legal process service. In writing Miner advised the City and hearing officer he would not attend. Miner learned the hearing officer had never ruled against the City.

114.    When the hearing officer asked about Miner's presence at the hearing, the City and Vu were wilfully and maliciously silent to the truth and "played dumb" as if they were uninformed. (transcript) Miner's written request stamped "received" is part of the City's own case file.

115.    Miner learned of the City defendants' failure to inform the hearing officer of the issues and that they had maliciously urged the hearing officer to proceed with the hearing without Miner's attendance. This deprived Miner of due process. (transcript) The law also states *"The opportunity to be heard must be afforded `at a meaningful time and in a meaningful manner.'" (Today's Fresh Start, 57 Cal.4th at p. 212.)*

116.    The City had unlawfully delayed and also failed to produce any CPRA documents or requested discovery <u>before</u> the hearing (preventing Miner from obtaining exculpatory evidence). The City failed to produce witnesses Miner requested. Miner contends these acts, in total, were premeditated, wilful, City policy and by design.

117.    In Miner's absence, with an advance letter delivered to defendants DHS, and Vu, and the HO (through www.dataticket.com, the HO's employer), the HO ruled against Miner.

118.    Shortly thereafter, at Miner was able to explain the facts to the hearing officer (Elio Palacios) with a witness present. Miner attempted to have the HO vacate his ruling. The officer stated he would never had proceeded with the hearing had he known Miner had advised the City he was not legally Noticed, yet he refused to vacate the ruling. (See decl Gregg Roberts, ex 16). Ultimately, Miner was completely denied an administrative hearing he had paid in advance to schedule. Miner was forced to "request" a trial de novo to defend himself, his private interests, and his full and complete use of his real property.

119.    Witnesses and evidence lodged at the administrative hearing transfer to the court

for the de novo trial, therefore the hearing is in integral part of the judicial process supplying witnesses, testimony, a transcript, and evidence proffered during the proceeding.

120.    The facts will ultimately show that the City defendants intentionally deprived Miner of the administrative hearing. Miner contends the City defendants' acts were wilful, malicious and with evil intent to deprive him of this constitutional rights.

**Trial De Novo - Trial Court**

121.    Miner "requested" a trial de novo (new trial) in superior court pursuant to Gov. Code §53069.4. The legal process is conveniently labeled an 'appeal' but 'constitutionally' a new and complete trial is mandated. *(Collier & Wallis, Ltd., v. Astor, 9 Cal. 2d 202 - Cal: Supreme Court 1937; citing Chinn v. Superior Court, 156 Cal. 478 [105 P. 580];)*

122.    Miner knew, the superior court is a court of record. He was aware he had to make a record using common and standard pleadings because of the trial court's bizarre lack of a discovery, absent trial calendar, and non-existent statutory limited civil court procedure. It was a court without procedure and without rules. Miner stoically filed documents, when and how he could, to preserve his record and rights despite the trial court's unexplained abnormal behavior. He hired, and paid out of pocket, for an expensive court reporter to preserve the record of every material hearing.

123.    Skipping far ahead in the events that have occurred, at the actual trial de novo in superior court, with Miner in the shoes of a defendant – the City took first chair and put on its case against their cited defendant - Joseph Miner.

124.    In the final five minutes of trial, the City took an un-tested, un-codified, previously un-decided, un-heard of legal maneuver, found no-where in case law or statutory law, to eliminate Miner's legal procedural defenses and chill his free speech and process due.

125.    Magically, using a few computer keystrokes, the City converted its own defendant (Miner), who the City had attempted to prosecute during the trial and magically re-labeled him the 'Plaintiff' on the face of its motion.

126.    Miner was the defendant and putting on what was a statutorily authorized limited civil defense; requesting discovery, witnesses, and filing motions in an attempt to make a record.

The City then accused him, <u>without legal or statutory standing</u> [5] and filed a accusatory vexatious litigant motion, against its own defendant, of being a vexatious litigant – <u>literally for defending himself.</u>

127.    All Miner's acts were pursuant to statute in a limited civil trial pursuant to California's code of civil procedure §85-100 that governs limited civil cases in superior court.

128.    Miner contends the City's "*hail mary*" act was a *Coup de grâce* - the death blow administered by the City, was in a court of *coram non judice* administered by a non-stipulated SJO. Miner's repetitive non-stipulations and recusals were futile. Further attempts at non-stipulation would have also been futile. The law does not require futile acts.

129.    Miner contends this is an unintended, unlawful, and unconstitutional use of the vexatious litigant law. The vexatious litigant law was never meant to prevent or subdue defendants, <u>in the first instance, from defending themselves in trial</u>, mandating security, chilling their defense, chilling their right to free speech, subverting equal protection, and then demanding the plaintiff's own defendant <u>AGAIN</u> pay a second monetary fee to defend themselves in superior court or any court[!?]. Vexatious litigant <u>injunction</u> "is an extreme remedy, and should be used only in exigent circumstances." *(De Long v. Hennessey, 912 F. 2d 1144 - Court of Appeals, 9th Circuit 1990 citing Pavilonis v. King, 626 F.2d 1075, 1079 (1st Cir.))*

130.    Miner has found no constitutional case, or any case, that supports or agrees with this rationale with plaintiffs declaring their own defendant vexatious, mandating defendants to pay fines or security fees in advance permitting them to defend themselves in superior court or any court. <u>The founders pondered no law to mandate a defendant to pay security to defend oneself in a court of law</u> and why this court must clarify the law. *(John v. Superior Court  ¶175)* After the courts dismissal without prejudice, nothing had been adjudged, pursuant to law.

**The Subordinate Judicial Officer**

131.    During the limited civil case Miner filed motions, requested witnesses and documents he was entitled to, in his defense. To be clear, Miner has never sued the City in a state

---

[5] Because the City was prosecuting Miner, first chair, in a trial de novo as the Plaintiff. Only a defendant can file the motion to declare a 'plaintiff' vexatious. CCP. §391.1. (a).

action and his attorney represents him in the sister federal action.[6] The SJO, with no constitutional or statutory authority or judicial powers, ruled on every contested issue. Then using its *coram non judice* rulings found <u>defendant Miner</u>, <u>with no vexatious history at all</u>, who had "requested" the trial de novo, to be a vexatious litigant, for filing motions (that the overwhelmed SJO clearly never read).

132.    The SJO conveniently re-labeled Miner the "Plaintiff." Miner contends on its face, the legal argument that a <u>defendant</u> who is statutorily 'requests,' by motion or filing - a trial de novo, now becomes the plaintiff and is maintaining litigation -- is wrong. It would lead to absurd results and unintended consequences throughout the entire judicial system.

133.    The City and SJO severely injured Miner and the ability to freely litigate in his defense of the City's prosecution in the instant trial. Miner was technically, slapped in the face, and beaten into submission -- chilling his speech, his ability and efforts to defend himself.  The SJO intimidated Miner, as if he was an annoyance, throughout the entire trial and court process.

134.    Miner alleges the City and Vu misled and maliciously coached the newbie SJO with bad law proximately causing Miner's damages. Defendant Vu then verbally stroked and poked the SJO's soft spots promoting anger against Miner (misconduct) (transcript). With a wink and a nod, the green SJO, made eye contact with his trusted City attorney, and no matter how absurd the legal argument, echoed the City's written words and oral argument, then ruled for the City. These acts lead to a permanent scar on Miner's life and damages that continue today.

135.    For no other reason then attempting to defend himself, and with no warning whatsoever, defendant Miner was **declared a California vexatious litigant for life**. A Vexatious litigant badge places an instant 'litigation stigma' on all pro-per litigants as if they are 'crazy' or 'misfits' filing childish meritless documents and aimless lawsuits - effectively 'banished' from 'legitimate' civil litigation through ultra-restrictive rules, time wasting filings, approvals, and

---

[6] The SJO clearly appeared new to the system (lost/confused). Miner, as a witness, watched as the City attorney (effectively the municipal agency "brother" of a 'former' county attorney) coached him. It seemed to Miner the SJO simply took the City attorney's word for everything argued i.e. if the City attorney says Miner is a vexatious litigant - Miner is a vexatious litigant. There were no warnings of safe harbor or contempt. Miner was sandbagged, homeboyed.

1    internet defamation. The Appellate Division failed to "scrutinize" a single document Miner filed.

2    136.    At the final trial court hearing, Miner refused to pay an un-affordable security

3    demand as the defendant, to continue to defend himself. The SJO issued a judgment of <u>dismissal</u>

4    <u>without prejudice</u>. Miner had hired a court reporter for every material hearing. All hearings in the

5    instant court room are video taped by the court itself.

6    **Use of Subordinate Judicial Officers**

7    137.    The Superior Court causes alleged herein, in parallel, stem from the cloaked use

8    of subordinate judicial officers who fail to identify themselves or their role, or perhaps are

9    unclear, of their exact judicial powers in a courtroom mixed with small claims and limited civil

10   cases. All who dawn a black robe do not possess judicial powers, virtual or temporary judicial

11   powers, nor are they trained and experienced as superior court judges in law or procedure.

12   138.    Miner contends he was entitled to an experienced judge - who substantively knew

13   the law; not a two month newly-hatched subordinate judicial officer who, from post trial

14   documented evidence provided by the court, was new to the entire process, had zero training in

15   administrative matters, limited civil matters, or vexatious litigant law. No judicial training.

16   139.    Miner was entitled to a judge who could not be led by the nose by an

17   unscrupulous City representative -- <u>not seeking 'justice</u>' (as mandated by the role of the litigator

18   for the government) but aiming to 'win' using every possible vile legal tactic, no matter how

19   unconstitutional, unethical, or dishonorable.

20   140.    From the administrative hearing through judicial process the quality of

21   adjudication poor, the process was unfair. Clarification of the law is a necessity for all and will

22   eliminate these judicial shortcomings for all administrative citation superior court defendants

23   who are statutorily entitled to a limited civil trial and re-do in front of a judge.

24   **Qualification and Authority of Subordinate Judicial Officers**

25   141.    Basically there are <u>three levels</u> of commissioners' judicial powers. This is not

26   clear to the anxious gallery of party litigants awaiting trial in these courtrooms. An obvious, or

27   properly advertised Notice, addressing and clarifying these issues for parties, or any explanation

28   at all is not offered by this court.

FAC PG 25

142.    A court commissioner is a subordinate judicial officer, not a judge. Both sit on the same bench and wear a black robe.[7]  Unfamiliar litigants would not know the difference. At this judicial level an entry level pro se litigant should be able to trust the system and that the court administration is acting within the law and protecting both sides equally. Miner reached out to the Judicial Council for court procedures relating to GC. §53069.4, nothing available. (ex 21)

143.    A judge pro tem is a temporary judge. Whether labeled a judge pro tem or temporary judge -  it's the same creature. To permit either to act as a judge, stipulation and agreement must occur by the parties litigant. *(Luckey v. Superior Court, 228 Cal.App.4th 81, 174 Cal. Rptr. 3d 906 (Cal. Ct. App. 2014) Dis. #3(a) Constitution).*

144.    An attorney, or a "court staff" commissioner, an attorney hired by the court to perform subordinate judicial duties authorized by statute and the California constitution, may both act as temporary judges pursuant to the stipulation of the parties litigant.

145.    Historically, by law neither a presiding judge, nor the chief executive / administrative officer of the court may assign a non judge (*subordinate judicial officer*) to autocratically and insistently act as a "judge" in a limited civil court without clear Notice and request for stipulation (and agreement) from the parties litigant.

146.    Subordinate judicial duties (officers) do not include hearing, considering and deciding dispositive contested motions or demurrers, and an array of other legal issues in a limited civil case without consent and stipulation of the parties litigant to act as a temporary judge. This is a jurisdictional issue. Every upper level administrative court employee who assigns cases or sets court policy should know a court cannot assign an individual, who has no judge authority, to act or rule as a judge.[8]

---

[7] Many courts, such as Orange County Superior Court, require written stipulation (Notice), signed and dated by the parties litigant, for a commissioner to act as a temporary judge.

[8] See *(Hafer v. Melo, 502 U.S. 21, 30 (1991)* "state officials sued for injunctive relief in their official capacities are "persons" subject to liability under § 1983." Also (clarifying that the Eleventh Amendment does not bar suits against state officials sued in their individual capacities, nor does it bar suits for prospective injunctive relief against state officials sued in their official capacities). *(Also see Cornel v. Hawaii, 37 F. 4th 527 - Court of Appeals, 9th Circuit 2022)*

FAC PG 26

147.    Specifically, court commissioners (un-stipulated) by law have clear statutory authority to hear and decide <u>small claims cases</u> and <u>criminal penal infractions</u>, such as speeding citations (Gov. Code, § 72190) *(Settlemire v. Superior Court (2003) 105 Cal.App.4th 666, 669 [129 Cal.Rptr.2d 560].)* Small claims and traffic infractions are very limited categories of law.

148.    A court commissioner's judicial powers are designated through section §259 of the code of civil procedure and the California constitution. Lastly, there are subordinate judicial officers with permitted subordinate judicial duties including <u>taking of facts during a hearing and reporting them to a duly appointed superior court judge for disposition</u>.

149.    Just one of the established laws regarding SJOs states: "A subordinate judicial officer performs subordinate judicial duties which <u>do not include deciding questions of law</u>. *(Kim v. Superior Court, 64 Cal.App.4th 256, 75 Cal. Rptr. 2d 468 (Cal. Ct. App. 1998)*.

150.    A very long historical trove of case law makes clear a court commissioner's jurisdiction is cabined and restricted. There are nine separate levels and categories of *subordinate judicial officers* within the Superior court of California. Ignoring the plain meaning and plain text of the statute would open up Gov. Code 53069.4 (b)(3) to be interpreted in a way that any one of <u>nine categories</u> of subordinate judicial officer could literally act with all power of a superior court judge in a limited civil action. Miner contends, that could not be what the legislature intended.

151.    Nowhere in the California constitution or California law does it state that a subordinate judicial officer is granted the judicial power to "*hear and determine*" the <u>infinite array</u> of intricate and complex questions of law associated with apparently unlimited monetary amounts imposed today in administrative penalties. Each of California's 540 local agencies enacts separate sets of confounding agency-specific law and now issue administrative citations with trials de novo to be heard in superior court.

152.    The complexity of the citations true issues and the fines can be endless. In Miner's case land annexations and other issues also came into play. The codes and infinite ordinances of 540 local agencies throughout the state of California are mind-boggling law. They are intensive complex matters, not simple money issues such as most small claims matters.

153.    As a short example Desert Hot Springs, California (just one of the 540 local

agencies) code enforcement section lists the following potential ordinance violations: Concurrent
enforcement authority with Police Department, Animal regulations, No smoking regulations,
California Building Code violations, Uniform Code for the Abatement of Dangerous Buildings
violations, Uniform Housing Code, California Fire Code violations, California Plumbing Code
violations, California Mechanical Code violations, California Electrical Code violations, Existing
Building Code, California Referenced Standards Code, International Property Maintenance Code.
California Residential Code, California Energy Code, California Historical Building Code,
California Green Building Standards Code, Zoning regulations, California Red Light Abatement
State Housing Law.

154.    Had the legislature wanted to empower subordinate judicial officers (nine
categories), with all the powers of a duly appointed superior court judge, to "*hear and decide*" all
matters of any ordinance a city may enact, with any amount of fine, as if they were a duly
appointed "judge" the statute 53069.4(b)(3) would have been crystal clear and precise. "[A]n
intention to legislate by implication is not to be presumed." *(People v. Welch (1971) 20 Cal.
App.3d 997, 1002 [98 Cal. Rptr. 113]; Thomsen v. City of Escondido, 49 Cal. App. 4th 884, 887
(1996)* The *omitted case canon* is a rule of statutory construction that states that nothing should
be added to a statute that is not explicitly stated or implied in the text.

155.    Miner submits, timely argues subordinate judicial duty does not include judicial
power - effectively unlimited powers of a duly appointed California judge. Miner asserts the
statute GC. 53069.4, and or its application, as applied here, by Riverside County Superior Court
is unconstitutional. *(Reed v. Goertz, 598 US 230 - Supreme Court 2023, P. 960-961).* It simply
needs clarification and is not to be interpreted for words that do not appear in the statute.

156.    Miner was not able to litigate these issues, in trial court, in a fair and meaningful
way. The issues of subordinate judicial duty were not actively litigated or permitted to be
litigated by the SJO. Issues Miner raised were not substantively addressed – there were ignored,
sidelined, or effectively laughed off by the SJO including Miner's lack of an administrative
hearing, and unlawful search and seizure at Miner's ranch without a signed warrant.

157.    Code of civil procedure §85-100 governs limited civil cases. Statute §85(c) #14

1   specifically identifies Government code de novo hearings (trials de novo) as a limited civil

2   action. Within the limited civil code it spells out the statutory accouterments of economic

3   litigation including discovery, motions and all procedures.

4       158.   Statutorily absent from power, case law is clear that un-stipulated subordinate

5   judicial officers, lack judicial authority to adjudicate any issue that is above subordinate judicial

6   duty including: ruling on the demurrer, the motions, witnesses, protective orders, rulings on the

7   law, and finally - passing judgment and determining the limited civil case in total.

8       159.   Miner contends Government code section §53069.4 does not confer judicial

9   power to act as a temporary judge or "hear and determine" a limited civil case without the

10  stipulation by parties litigant.

11      160.   Miner alleges the Riverside County branch of the California Superior Court

12  maintains a policy to assign subordinate judicial officers, who hold no constitutional judicial

13  power, to hear and determine, limited civil cases, without stipulation, and without subject matter

14  jurisdiction, in violation of the California constitution and civil rights under the US constitution.

15  *Coram non judice* "before a person not a judge" violates common law and the Due Process

16  Clause of the Fourteenth Amendment. *(See Burnham v. Superior Court, 495 U.S. 604, 110 S.Ct.*

17  *2105, 109 L.Ed.2d 631 [II A P. 609] (1990)).* (ex 3)

18      161.   A court commissioner is a subordinate judicial officer. Their power is limited by

19  the California constitution and section §259 of Civ. Code of Procedure including case law listed

20  in Miner's exhibits:  *Rooney, Horton, Edgar, Foosadas, Tijerina, Settlemire, Aetna, Galis et al.*

21      162.   Under the California Constitution, court commissioners may perform "subordinate

22  judicial duties" including the trying of cases, subject to the stipulation of the parties. *(Cal. Const.,*

23  *art. VI, §§ 21, 22; In re Horton (1991)*. On many levels the trial court, under direction of a

24  subordinate judicial officer, lacked subject matter jurisdiction - it had no power to grant the relief

25  it granted. *(Becker v. S. Construction Co., 27 Cal.3d 489, 165 Cal. Rptr. 825, 612 P.2d 915 P.*

26  *493 (Cal. 1980)* Code of Civil Procedure §259 defines the specific powers of a subordinate

27  judicial officer commissioner in plain text. Ambush, by a silent court that provides no clear and

28  meaningful notice, is not a an express or tantamount stipulation.

"Code of Civil Procedure section 259, subdivision (7), which implements California Constitution article VI, section 22. Article VI, section 22 of the California Constitution states: **"The Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties."**

Pursuant to this section, <u>the legislature has enacted Code of Civil Procedure section 259</u>, subdivision (7) which **grants commissioners the power to "[h]ear, report on, and determine all <u>uncontested actions and proceedings</u>** other than actions for divorce, maintenance, or annulment of marriage." *(Reisman v. Shahverdian, 153 Cal. App. 3d 1074, 201 Cal. Rptr. 194 (Ct. App.*

163.   Miner's motion for non-stipulation to the commissioner, the demurrer, all motions in limine were <u>highly contested</u>, and by law an un-stipulated commissioner has no judicial power to *hear and determine* or rule on these issues.

164.   The California Supreme Court has been clear: "Neither the rule nor the statute purports to authorize a court commissioner to act as a temporary judge if he is not "otherwise qualified so to act, **and in the absence of a stipulation of the parties, he is not so qualified**." *(People v. Tijerina, 459 P. 2d 680 - Cal: Supreme Court 1969).* It becomes clear that assigning un-stipulated subordinate judicial officers to adjudicate the vast areas and now limitless fines of administrative citations, sans an express request for stipulation by parties litigant, would make no sense. *(See People v. Berch (2018) 29 Cal.App.5th 966, 969).* It is assumed the legislature was aware of this law when it enacted the statute; "*hear and determine*" was omitted from the law.

"(b) **Take proof and make and report findings thereon as to any matter of fact upon which information is required by the court.** Any party to any contested proceeding may except to the report and the subsequent order of the court made thereon within five days after written notice of the court's action.. ."

165.   The code of civil procedure section 259 (b) also states a commissioner may take proof and make and report findings. *(International Jet Ski Boating Assn. v. Superior Court (1991) 232 Cal.App.3d 112, 116)* This seems to be more in line with the plain text of GC. 53069.4 (b)(3) if it was in fact a review, and not a trial de novo with new evidence. However section 259(b) clearly infers a superior court judge would consider and may approve a subordinate judicial officer's findings in contested matters. A superior court judge was never involved in Miner's instant state trial case - at any time.

166.   The trial court subordinate judicial commissioner made no findings in the trial de

1  novo regarding Miner's de novo trial of the citation. There was no judgment on the merits as to

2  the issues in Riverside County court case CVPS2106001. As stated, the case was dismissed

3  without prejudice, which was favorable to Miner because he can now complete case

4  8:22-cv-01043-CAS-MAA . *(Jamgotchian v. Ferraro, 93 F.4th 1150, 1160 (9th Cir. 2024))*

5       167.    While Miner contends the Appellate Division mis-stated and mis-characterized

6  Miner's appellate brief, the record, and the law - Miner does not contest the judgment nor does

7  he contest the Appellate Court's Opinion. The Appellate Division's Opinion omitted any

8  reference to the commissioner's dismissal of the action without prejudice.

9       168.    Under California law, subordinate judicial officers, and court commissioners lack

10  jurisdiction to *"hear and determine"* *(Operative phrase used by Talbot v. The Commanders, 1*

11  *US 95 - Supreme Court 1784)* a case of this nature without the stipulation and consent of all

12  parties to act as a temporary judge as codified in code of civil procedure section §259.

13       169.    On information and belief - courts, many with financial issues, are taking

14  advantage of the lack of textual clarity of the code and the sad fact that these cases never or rarely

15  end up in the Court of Appeal for review . Just 44 cases in google scholar since 1995 using

16  search phrase "53069.4" (1 per year and just 1 that mentions a court commissioner). With 12

17  more in federal jurisdiction (0 that mention a court commissioner).

18       170.    Assigning these cases to small claims commissioners and subordinate judicial

19  officers in limited civil jurisdiction in place of mandated superior court judges who must decide

20  complex issues of law, including dispositive demurrers, and complex motions or issues of law,

21  which are all permitted in limited civil jurisdiction, is a violation of the California Constitution.

22       171.    This is further addressed in many well settled Court of Appeal cases such as the

23  following state cases: *(1) Rooney v. Vermont Investment Corp., 515 P.2d 297, 10 Cal. 3d 351,*

24  *110 Cal. Rptr. 353 (1973); (2) People v. Berch, 29 Cal. App. 5th 966, 241 Cal. Rptr. 3d 51 (Ct.*

25  *App. 2018); (3) In re Frye, 150 Cal. App. 3d 407, 197 Cal. Rptr. 755 (Ct. App. 1983); (4)*

26  *Michaels v. Turk, 239 Cal. App. 4th 1411, 191 Cal. Rptr. 3d 669 (Ct. App. 2015); (5) People v.*

27  *Tijerina, 459 P.2d 680, 1 Cal. 3d 41, 81 Cal. Rptr. 264 (1969)* and many additional published

28  and certified California Court of Appeal decisions.

172.    To date California courts have failed to clarify these issues. It seems to be the

policy of the Riverside County Superior Court and its own Appellate Division is to permit

subordinate judicial officers to *hear and decide* de novo limited civil cases in violation of the

plain text of the constitution, statutory law, and established case law. Miner requests this court

make clear that to "hear and determine" a limited civil case by a subordinate judicial officer or

court commissioner requires Notice and stipulation of parties litigant.

**Jurisdiction of a Subordinate Judicial Officer**

173.    The issue of subject matter jurisdiction did not come into focus until after the

Appellate Division of Riverside County Superior Court, in its un-published, un-certified, un-

transferred Opinion - post trial - stated the commissioner was working in the capacity of a

subordinate judicial officer, and not as a temporary judge.

174.    Following Miner's timely appeal, the Appellate Division stated the commissioner

was acting, during the case, as a subordinate judicial officer. It's Order was without any

meaningful legal analysis of the plain text of the statute, or legal support how a SJO magically

transformed into a duly appointed superior court judge who would have judicial power to

determine all legal issues case law clearly states an SJO has no authority to decide. There had

been no clarity during the case itself as to the exact judicial capacity of the subordinate judicial

officer. The court would not engage in Miner's attempts to clarify authority or jurisdiction.

175.    More tension arises in other Opinions by this same Appellate Division. In other

GC. 53069.4 Opinions issued, the appellate panel has referred to the appellant as "defendant,"

while without statute or case law to support the arbitrary label, it stated Miner was a plaintiff[?] -

under the exact same statutory filing. This legal issue also mandates clarification - was Miner the

defendant or the plaintiff when he requested a trial de novo? In Miner's case this label has had

severe legal implications for all persons in 22 de novo categories listed under CCP. 85(c). This

issue - who is the defendant or who is the plaintiff - should be clarified by this court. The 22

separate categories of de novo requesters in CCP §85(c) should know in advance they are

plaintiffs - not defendants before they request de novo hearings or trials.

176.    When the Appellate Division ruled the SJO was acting not as a judge, but in a

1  subordinate judicial capacity, the SJO's lack of subject matter jurisdiction became clear. Miner

2  then filed a Motion to vacate the void judgment (ex 4). A newly assigned trial court judge, who

3  stated he was looking for a way to help Miner, denied Miner's motion stating he had no power to

4  over-rule the Appellate Division's Opinion, which Miner contended was arbitrary and capricious

5  and wholly unsupported in any legal analysis at all.

6      177.    The ruling on the motion to vacate the void judgment was appealable. Again,

7  Miner filed a timely notice of appeal to the Appellate Division. This time, even though Miner

8  was entitled by law, the chief judge of the Appellate Division would not permit Miner to file an

9  appeal in the same case.

10     178.    Miner was arbitrarily BLOCKED FROM FILING and litigating the new post trial

11  and post appeal issues of subject matter jurisdiction and judicial authority. The same court that

12  questionably upheld Miner was the "plaintiff," dubiously BLOCKED and prevented Miner from

13  arguing and clarifying the lack of subject matter jurisdiction and judicial power of the

14  subordinate judicial officer in a limited civil action. (ex 5) *(Fuller v. Nelson, (9th Cir. 2005)*

15     179.    Miner was DENIED AN APPEAL regarding critical court jurisdiction, and

16  BLOCKED with a simple one word denial to file the appeal to clarify the all issues of subject

17  matter jurisdiction applicable to the same legal action. Miner believed this to be a violation of the

18  Supreme Court holding in *John v. Superior Court, 369 P. 3d 238 - Cal: Supreme Court 2016*.

19     180.    Blocking Miner's appeal for no clear reason violated Miner's constitutional right

20  to a meaningful appeal. The act appeared to be the result of motivated reasoning; the outcome

21  was not the law, but what they desired.

22     181.    It seemed the Appellate Division did not want to cast shade on the new court

23  commissioner. Miner was dispensable, the new commissioner was not or so it seemed. Occam's

24  razor. On information and belief, the text of the statute §53069.4 does not give judicial power in

25  limited civil case to all subordinate judicial officers -- so it must be a different reason.

26     182.    The Appellate Division are comprised of superior court judges under the same

27  judicial umbrella. They have a dog in the fight. Miner's request to appeal, to litigate and

28  challenge the jurisdiction of an SJO who acted without mandated party litigant stipulation was

1   blocked cold by the Appellate Division with a one word order - denied. Conveniently this

2   stopped Miner in his tracks to attempt to find justice.

3       183.    Miner believed the court, short of judges, was seemingly content using SJOs even

4   when unconstitutional and therefore did not wish to clarify this law. Miner's appellate case

5   would have brought legal scrutiny to all limited civil cases who were victims of unlawful judicial

6   acts of *coram non judice*. A small group of Riverside County court judges control this process.

7       184.    Miner attempted every local judicial avenue to correct these issues including the

8   attempted appeal of the motion to vacate void judgment for lack of subject matter jurisdiction.

9       185.    Miner found his case, which began with a simple city citation, had manifested into

10  a Kafkaesque issue that now severely affects his life and business real estate management. This

11  history advises the court of what Miner has endured because of the policies, practices, and mis-

12  interpretation of the law by the administrative / executive branch of the superior court.

13      186.    The SJO acting as a subordinate only became clear when the Appellate Division

14  ruled that was the robe Hon. Arthur Hester was wearing at during the hearings and trial; thus

15  *coram non judice*.

16      187.    The trial court's multiple rulings and orders, without jurisdiction as a judge, and

17  without knowledge and training, poisoned the case from beginning to end causing a cascading

18  *void ab initio* effect on every court order, every ruling and judgment. This violated Miner's right

19  to a fair trial, and his constitutional rights.

20      188.    This was a kangaroo court: (1) labeling defendant Miner the plaintiff because he

21  "requested" a statutory trial de novo, (2) ruling on contested motion and demurrer in trial court

22  the SJO had no authority to make, (3) and using the *coram non judice* rulings as evidence to

23  declare Miner a vexatious litigant, (4) then the final *coram non judice* Order for, Miner, the

24  Defendant to post security to defend himself in a limited civil court trial.

25      189.    Multiple acts lacking jurisdiction effectively opened the door, permitted, and

26  contributed to the abuse of process and malicious prosecution by the City.

27  **The Text of GC. §53069.4 Requires Clarification**

28      190.    Government code §53069.4 requires clarification. The California Legislature

created a true monster for its citizens and the courts. (ex 1) Since 1935 a court commissioner

requires a stipulation. The legislature was aware of this, and if not the code would have been

authored more specifically give an SJO full power. A statute does not convey judicial power,

until it does. *(Estate of Kent, 6 Cal. 2d 154 - Cal: Supreme Court 1936)*

191.    It would be counter intuitive to and irrational to argue the legislature bypassed

volumes of historical case law regarding SJOs, including commissioners, and give them cart

blanche to act as a superior court judges.

192.    To believe or ague that an un-stipulated newly minted court commissioner, a

subordinate judicial officer, would have the exact powers of a superior court judge to hear,

determine, and rule on - "*any violation of any ordinance enacted*" everything from land use,

development zoning, civil rights, constitutional issues, legal treatise, contested demurrers,

contested motions, and the fines as seen in attached exhibits (ex 2) all because a citation

recipient, a defendant, requests a new trial per GC. §53069.4, makes no judicial sense.

> "The conduct of the appeal under this section is a <u>subordinate judicial duty</u> that
> *may be performed* by traffic trial commissioners and other <u>subordinate judicial
> officials</u> at the direction of the presiding judge of the court."

> Miner contends this phrase "<u>the conduct of the appeal</u>" means something like...

> "conduct of the appeal" refers to the process or steps taken to carry out an
> appeal, including filing necessary documents, <u>presenting documents to the
> relevant authority for decision,</u> and following established procedures."

> In case law *Usher v. The County of Monterey (1998) 65 Cal.App.4th 210
> [Usher] and Langan v. City of El Monte (2000) 79 Cal.App.4th 608, [Langan]*
> It appears clear that "conduct of the hearing" is a separate task from evidentary
> issues and determining issues of law by a Judge.

> In historical AB408 precursor and cousin of senate bill 814 the conduct of the
> hearing and conduct of the appeal were textually the same thing.

193.    The plain text of the statute GC. 53069.4 (a)(1) "*may by ordinance make <u>any
violation</u> of <u>any ordinance enacted by the local agency</u> subject to an administrative fine or
penalty. <u>As applied - is in significant tension with</u> (b)(3) "The <u>conduct of the appeal</u> under this
section is a <u>subordinate judicial duty</u> that may be performed by traffic trial commissioners <u>and
other subordinate judicial officials</u> at the direction of the presiding judge of the court.* These two
statutory excepts make clear a judge would be required to "*hear and determine*" the matter.*

194.    Section GC. §53069.4, in its plain text, does not assign judicial power, to act as a superior court judge to "*hear and determine*" limited civil trials to California's <u>nine categories of subordinate judicial officers</u>. Basic linguistics and statutory interpretation analysis of the plain text of statute does not confer the judicial power to the nine categories of subordinate judicial officers. See Code of Civil Procedure §1858 as to construction of statutes.

195.    The California Legislature is <u>clear and precise</u> when it intends, in text, to confer the specific powers of a judge – as in this unrelated example code §872.120. *"In the conduct of the action, the court may <u>hear and determine</u> all motions, reports, and accounts and may make any decrees and orders necessary or incidental to carrying out the purposes of this title and to effectuating its decrees and orders."*

196.    Conversely, in a stark comparison, in government code §53069.4 (b)(3) the plain text of the statute states: *"The <u>conduct of the appeal</u> under this section is a subordinate judicial duty that may be performed by traffic trial commissioners and other subordinate judicial officials at the direction of the presiding judge of the court."*

197.    Miner contends the Legislature clearly did not intend or authorize the same powers for a SJO in §53069.4 as it did for a judge in §872.120. The authority powers are not statutorily or textually comparable. Arguing otherwise would not be logical or rational.

**Administrative Citations**

198.    Administrative citation fines within the state have grossly escalated since the introduction of administrative citations in 1995. Citation usage within the 540 local agencies has phenomenally expanded beyond the original $25 "garbage can" law the City of San Jose sponsored. (ex 7) Breathtaking one line notices of fines exceeding $500,000 are issued. (ex 8)

199.    These citations are generally <u>thread-bare notice-style pleadings</u> labeled administrative citations in a fact pleading state. This is to the City's advantage but most would facially fail even iqbal twombly standards of pleading. The failure of a code officer to plead all the facts <u>prevents compliance</u> and enhances fines collected for a City. (ex 2) The City of Desert Hot Springs uses "boilerplate" violation citations. No specific facts that apply to the alleged offender's real property. This permits the code officer to 'change his mind' as to the facts at trial.

200.    The citations fail to notice and advise you of minimal facts – what you did, where you did it, when you did it, how to locate it and if a true violation - how to cure it. The barren citations, as Miner received lacked the information needed to properly defend himself. This lack of written detail permits the facts of the citation is based on to changed at will. (ex 9) *((Semole v. Sansoucie (1972) 28 Cal. App.3d 714, 722 [104 Cal. Rptr. 897]; Dahlquist v. State of California, 243 Cal. App. 2d 208 - Cal: Court of Appeal 1966)*

201.    In a trial de novo this becomes a separate due process issue because the administrative citation documents (barren notice-style pleading) becomes the City's (agency's) 'complaint' in a fact pleading state. See Gov. Code §53069.4 (b)(1). This was the focus of Miner's demurrer - overruled by the SJO effectively stating "you cannot demurrer to a citation."

202.    Local agencies seem to be content citizens have been stripped of constitutional protections; the procedures are clearly in the local agency's favor. The Supreme Court now disfavors these exact issues. *(Loper Bright Enterprises v. Raimondo 144 S. Ct. 2244, 603 US, 219 L. Ed. 2d 832 - Supreme Court, 2024; SEC v. Jarkesy 144 S. Ct. 2117, 603 U, 219 L. Ed. 2d 650 - Supreme Court, 2024).*

203.    As a consequence of the notice of violations, citations and and penalties, Plaintiff alleges they have suffered emotional and psychological distress as well as significant financial uncertainty and uncertainly to the use of Plaintiffs real property. The City violated the law.

**Preclusion / Abstention Issues**

204.    Miner, in this complaint, does not contest "the bona fides" of the state court judgment. The doctrines of *res judicata, collateral estopple* are inapplicable to the facts, law, issues and claims presented herein. No rulings or "clarity" as to the SJO's jurisdiction were made in state court. A judgment of dismissal without prejudice is not a "final" judgment. The *Rooker-Feldman* doctrine does not come into play in such circumstances.

205.    <u>Federal law is clear that a state may not grant preclusive effect in its own courts to a constitutionally infirm judgment</u>. *(Kremer v. Chem. Constr. Corp., 456 U.S. 461, 482, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982))*

206.    No state proceedings currently exist. <u>Miner filed a federal action long before a state court judgment</u>, and requested comity (denied by the SJO). Miner's injuries (in this action) began with the denial of administrative hearing and continued in trial court when the SJO began to act with the powers of a judge - <u>long before any state court judgment or orders</u>. Miner submits there are no preclusive issues here as none of Miner's instant claims have been fully litigated.

207.    Additionally, Miner alleges while under *Feldman* "a state-court decision is not review-able by lower federal courts, but <u>a statute or rule governing the decision may be challenged in a federal action</u>." Miner requests this court clarify the interpretation of the superior court's rules and "assignments" of subordinate judicial officers, who lack constitutional and juridical power, to "*hear and decide*" limited civil trials. And clarify the plain text and law of two misinterpreted statutes as applied to the facts set forth in this case: (1) Government code §53069.4(b)(3), and (2) Code of Civil Procedure §391.1(a). *(See Cogan v. Trabucco, 114 F. 4th 1054 - Court of Appeals, 9th Circuit 2024, P. 1064)*

208.    Miner also challenges the constitutional issues alleged herein as to both the administrative and court proceedings. The *Behr* court stated: "Instead, they are asking us to consider <u>whether their constitutional rights were violated during the proceedings</u>. . . <u>That claim falls outside Rooker-Feldman's boundaries</u>." *(Behr v. Campbell, 8 F. 4th 1206 - Court of Appeals, 11th Circuit 2021)*

209.    Lastly, Miner is complaining of injuries caused before the state court judgment, not by the state court judgment, nor does he seek relief from the state court judgment. *(Noel v. Hall, 341 F. 3d 1148 - 9th Circuit 2003)*. Miner requests clarification of the law so it does not happen in the future.

**Court Assignment of an Un-stipulated Commissioner**

210.    On information and belief the Palm Springs division of the Riverside County Superior Court seems to administer a "fast and loose" system of adjudication. Miner alleges the court administration side-steps the law and California Constitution, injuring the rights of citizens under the U.S. Constitution. Parties are unwittingly injured by court policy. Not knowing the SJO <u>had no jurisdiction to render judgment</u> opens pandora boxs of constitutional judicial issues.

FAC PG 38

211.    Miner has observed that a court commissioner is assigned to court room PS4.
Small claims, and limited civil actions are heard in the same courtroom before a commissioner,
unless an attorney is present acting as a temporary judge.

212.    Limited civil actions include unlawful detainers, administrative citation trials de
novo, and other civil matters. Not one time in 20 years of attendance, in this court, has Miner
been requested to sign a written stipulation form to permit a court commissioner to act as a
temporary judge, or has Miner seen other parties advised in writing. The court, the
administration, the clerk, the commissioner all fail to materially give clear and meaningful
NOTICE to parties litigant regarding stipulation, and the limitations of a court commissioner.

213.    Miner's issues were even more muddy as to the constitutional and legal
limitations of a subordinate judicial officer performing "subordinate judicial duties." And, what
exactly are the subordinate judicial duties permitted by law in the adjudication of a limited civil
trial de novo, in the limited civil division of Superior Court of California.

214.    Per law Miner was, in open court, orally given the choice of a commissioner or a
judge. Miner had clearly stated in open court that he wanted a judge. These critical issues did not
become clear to Plaintiff Miner until the instant case began with Commissioner Hester.

215.    Research shows that most counties mandate parties litigant sign a written
stipulation to permit adjudication by a temporary judge whether a commissioner or an attorney
acting as a temporary judge. https://www.lacourt.org/forms/pdf/ADPT027.pdf

216.    Setting aside other issues, this complaint focuses specifically on adjudication of
limited civil administrative citation trials de novo. Local rule 1060 states "All Commissioners are
appointed as Temporary Judges." However, the law states a stipulation to act as a temporary
judge is mandate by parties litigant. Stipulation first requires meaningful Notice.

217.    The Superior Court's policy of assigning un-stipulated commissioners to act as
judges, and the Appellate Division's Opinion can not be the law. Miner alleges a commissioner
lacks jurisdiction and lacks judicial power to "hear and determine" the issues. Therefore it is
coram non judice. Subordinate judicial duties are not judicial duties.

218.    The Appellate Division Opinion seems to imply that un-stipulated commissioner

1    Hester merely performed subordinate judicial duties when he fully adjudicated Miner defense

2    trial de novo including:  (1) Miner's demurrer, (2) contested motions, (3) evidentiary issues, (4)

3    witness issues, (5) discovery issues, (6) protective order, (7) statement of non-stipulation, (8)

4    motion to non-stipulate, (9) two well-reasoned well-documented disqualifications, (10) judicial

5    orders. Therefore the law needs clarification and every court so far has turned a blind eye to

6    interpreting the text of the law. Miner's injuries began when the SJO assignment began.

7    219.    The court also seemed to think ROC 2.831(f) does not apply to attorney

8    commissioners acting as temporary judges. The rule number was changed in about the year 2000.

9    Old ROC 244(f) appears to be the earlier version of rule 2.831(f) and case law appears to support

10    the rule applies to commissioners. *(Real v. City of Riverside, 115 Cal. Rptr. 2d 705 - Cal: Court*

11    *of Appeal, 4th Appellate Dist., 2nd Div. 2002)* See 'commissioner' page 709.

12    **Conclusion**

13    220.    Miner's administrative injuries began with the citation then at the administrative

14    hearing level when Miner was denied a hearing. This began long before the hearing officer's

15    ruling. The City Defendants including Vu directly and proximately caused the issue when they

16    failed to give proper training, direction to officers. Then failed to give proper Notice, scheduled

17    the hearing anyway, then wilfully misled the hearing officer and held the hearing without Miner.

18    221.    Miner's trial court injuries began in the trial court when the non-judge, without

19    Notice, discussion or request for stipulation, began performing judicial acts without judicial

20    authority; acts not permitted constitutionally or by statutory law without party stipulation.

21    222.    These judicial acts and injuries began long before the final judgment, orders or

22    decrees. The process and procedures of the court are confusing, violate due process and the

23    Constitution. The injuries were not crystalized until the Appellate Division's remittitur in

24    December 2023 and lastly when the Appellate Division denied Miner the right to appeal his

25    motion to vacate the void judgment February 29, 2024 (ex 5). Miner could not file this litigation

26    until state court litigation ended.

27    223.    For all parties who defend against abusive city citations under Gov. Code

28    §53069.4 and for the 21 additional separate categories of "defendants" who request de novo trials

1   under Code of Civil Procedure §85(c) Plaintiff brings this case for prospective relief against the

2   Court defendants so the rule of law, and state and federal Constitutions are upheld in the future.

3       224.    Miner will prove the City defendants violated Miner's constitutional rights. He

4   also will prove that the law at issue does not permit a subordinate judicial officer, without

5   stipulation of the parties litigant, to act as a temporary judge. To adjudicate limited civil trials the

6   SJO must act as a temporary judge. That there was no intent to in the drafting of §53069.4 to

7   confer judicial power to subordinate judicial officers pursuant to the plain text of the statute.

8       225.    Certain elements of the statute 53069.4 are in conflict with many of the 58 judicial

9   jurisdictions who each seem to interpret the law differently. Administrative Citation litigants in

10  the State of California deserve clarification of this law. Superior courts and its Appellate

11  Divisions have refused to decide and clarify in unity affecting due process, and equal protection

12  under the law. An example is that one court prosecutes the case with no discovery and no new

13  evidence, others do just the opposite. Some courts use subordinate officers, most use judges. The

14  final issue is that an SJO is not a judge. Assigning a subordinate judicial officer to act as a judge,

15  without stipulation, is a violation of the state and federal Constitutions. (ex 6)

16      226.    Miner's related federal complaint, in the hands of Miner's attorney, and currently

17  stayed, complains of a variety of issues against the City. The gravamen of this complaint, and

18  what Miner respectfully requests the Court decide at the inception of this matter before trial, are

19  the constitutional issues and the clarification of law including jurisdiction and judicial powers

20  and authority of an un-stipulated subordinate judicial officer in a GC. §53069.4 trial de novo.

21      227.    Miner contends the common, entry level, court commissioner being assigned to a

22  case where he never requested parties to stipulate, then acted without stipulation and jurisdiction

23  to act as a judge was a clear violation of clearly established law, the California Constitution, and

24  the Due Process and Equal Protection clause of the Fourteenth Amendment of the United States

25  Constitution. *(See Burnham v. Superior Court of Cal., Marin County, 495 U.S. 604, 110 S. Ct.*

26  *2105, P. 609 (1990); Rockett as next Friend of Kr V. Eighmy, 71 F. 4th 665 - Court of Appeals,*

27  *8th Circuit, P. 669, 2023; Michaels v. Turk, 239 Cal. App. 4th 1411 - Cal: Court of Appeal, 4th*

28  *Appellate Dist., 2nd Div. 2015).*

*"In any event, our judicial system does not exist simply to resolve cases quickly, nor to prevent litigation from ever taking place. It is a serious matter whether a decision is correct in law and results from a fair process for all sides. Affording preclusive effect to a trial court determination that evades appellate review might speed up the resolution of controversies, but it would do so at the expense of fairness, accuracy, and the integrity of the judicial system.*
**We decline to endorse that tradeoff."**
***(Samara v. Matar, 419 P. 3d 924 - Cal: Supreme Court 2018)***

## COUNT 1
## DENIAL OF PROCEDURAL DUE PROCESS
### 42 U.S.C. Section 1983 -  Fourteenth Amendment
### (Against VU, DHS, (City Defendants) DOES 1-20)

228.    Plaintiff hereby realleges and incorporates all previous paragraphs as though fully restated herein.

229.    Plaintiff is informed and believes, and based upon such information and belief allege, that in doing all of the things herein mentioned, defendants, and each of them, acted under color of the, statutes, regulations, customs and usages of the City of Desert Hot Springs, California for purposes of "state action" under 42 U.S.C. Section 1983.

230.    Plaintiffs bring this count against the City based on its policy and practices that, taken together, deprive land owners facing administrative citations of a meaningful opportunity to be heard.

231.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall make or enforce any law which shall … deprive any person of life, liberty, or property, without due process of law."

232.    The Due Process Clause guarantees a fair legal process in adjudicative and quasi-adjudicative proceedings, including code-enforcement actions.

233.    Among other things, the Due Process Clause requires that the government provide the accused with notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

234.    Additionally, the Due Process Clause prohibits the government from imposing penalties -- including fines and fees -- or adjudicating guilt or innocence before providing appropriate notice and a meaningful opportunity to be heard.

235.    The City, acting under color of law, deprived Plaintiff of the due process of law in violation of the Fourteenth Amendment to the United States Constitution.

236.    The City has a duty under the Fourteenth Amendment to provide Plaintiff with notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

237.    Plaintiff brings this count against the City Defendants based on its code enforcement policies, administrative citation policies, and the City's zero tolerance untaxed marijuana policy and practice, which led over-zealous untrained city employees and contractors, to violate the law and Miner's constitutional and civil rights.

238.    Plaintiff Miner contends the City's acts, as a whole, and by design, were a series of wilful and deliberate coordinated acts and attacks in retaliation against Miner for issues caused by Miner's tenants.

239    Intertwined constitutional violations have included Plaintiff's due process rights which include issues and elements regarding the notice and citation, and the administrative hearing. The City's wilful acts and procedure have injured Miner.

**Administrative Citation**

240.    A code officer opened code case 21-566. Officer Tiyler Messer late changed the case number to 21-985. On August 18, 2021 officer Messer issued administrative citation #27948D listing five allegations or which four were designated as "public nuisances"

241.    The citation was issued against land parcel APN 657-220-005 aka 66381 Dillon Road, Desert Hot Springs, CA 92240 (Ranch). Miner's ranch land area is comprised of 4 separate parcels of land containing about 5 acres or in excess of 200,000 sf. The perimeter is fenced and gated. Miner's 6' fenced ranch land area is larger than the entire 4+ acre square block site for the U.S. district courthouse at 1st St. and Hill St., Los Angeles, CA.

242.    The City deprived the Plaintiff of due process as related to the administrative citation. The following policies regarding administrative citations issued to recipients, individually and in conjunction, deny them adequate notice and a fair or meaningful opportunity to be heard:

    A.    The citation lacked insufficient and inadequate notice of the allegations;
    B.    The citation contained boiler plate allegations not specific to Miner's property;

C. The citation lacked insufficient facts to determine the alleged violations;
D. The citation lacked insufficient facts to defend against the violations;
E. The citation lacked insufficient facts to correct the violations;
F. The citation failed to provide any locational information as to the violations;
G. The citation mis-stated the law;
H. The code officer mis-applied the law;
I. The code officer refused to clarify or correct the citation;
J. The citation was sent to the wrong address depriving Miner of notice;
k. The Citation fails to meet the fact pleading standards required to be pled and alleged in a California, when used as a "complaint" in a limited civil action.

243. The City's procedurally deficient system creates an unreasonable risk of erroneous allegations, citations, and deprivation of property.

244. Plaintiff Miner possess fundamental property interests protected by the Fourteenth Amendment to the United States Constitution in their homes, accessory structures, possessions, earnings, income, and capital.

245. Due to the procedural defects in the City's administrative citation processes, it is substantially likely that the City's program is baselessly depriving citizens of property interests.

246. The City has interfered with property interests by, among other things, (a) issuing violations without adequate investigation; (b) mis-applying city ordinance law; (c) mis-stating city ordinance law; (d) refusing to dismiss violations in the face of evidence that the violation is unfounded and lacks credibility; (e) refusing to schedule a timely hearing at which an accused can meaningfully contest the allegations; (f) refusing to clarify allegation; (g) refusing to schedule a hearing without payment in advance; (h) failed to give state mandated time to cure before issuing a citation.

247. The City's administrative citation "business" is designed and intended to put money in City's bank account, not abate and eliminate "pubic nuisances" for public safety. Most penal citations the City issues do not qualify as "nuisances" at all.

248. The City's policies and practices are arbitrary and shocking to the conscience and so offensive as to not comport with traditional ideas of fair play and decency.

249. The City has no legitimate governmental interest in depriving Plaintiff of his right to due process.

250. As a direct and proximate result of the City's policy and practice, Plaintiffs has suffered irreparable injuries to his constitutional rights.

251.    Plaintiff seeks an award of damages to compensate him for his losses and injuries and the infringements of his rights.

**Administrative Hearing**

252.    Plaintiff hereby realleges and incorporates all previous paragraphs as though fully restated herein and specific to this count 220-241.

253.    On October 14, 2021 the City held a administrative hearing, regarding City of Desert Hot Springs administrative citation #27948D, originally code case 21-566 (changed to case number 21-985). Knowing in advance Miner was not properly noticed, City Defendants wilfully failed to advise the city arranged hearing officer, Elio Palacios, that Miner would not attend. This lead to a default decision by the hearing officer without Plaintiff's ability to be heard. The due process injury occurred before the hearing officer's decision. Declaration of Gregg Roberts (ex 16). The citation #27948D (ex 17) was used as the City's charging document.

254.    The City deprived the Plaintiff of due process as related to the administrative hearing. The following policies regarding administrative hearings to adjudicate administrative citations issued to recipients, individually and in conjunction, deny them adequate notice and a fair or meaningful opportunity to be heard:

A.    The City unlawfully scheduled a (zoom) hearing that prevented Miner from presenting evidence, scheduling witnesses, and verifying city witnesses were not being coached (a zoom style video hearing appeared nowhere in city law);

B.    The hearing officer was effectively chosen and paid for by the City. Evidence confirms HO Palacios had ruled 20 straight times in favor of the city *(Haas v. County of San Bernardino, 45 P. 3d 280 - Cal: Supreme Court 2002)*;

C.    The hearing officer has a pecuniary incentive to favor the City;

D.    The City failed to serve Plaintiff proper legal notice of the hearing;

E.    The City failed to serve Plaintiff proper legal notice of the new hearing;

F.    The citation used lacked insufficient facts to defend against the violations;

G.    The citation used lacked insufficient facts to correct the violations;

H.    The citation failed to provide any locational information as to the violations;

I.    The citation used mis-stated the law;

J.    The code officer mis-applied the law on the citation;

K.    The code officer refused to clarify or correct the citation;

L.    The Citation fails to meet the fact pleading standards required to be pled and alleged in a California, when used as a "complaint" in a limited civil action;

M.    The City failed to produce CPRA exculpatory evidence before the hearing;

N.    The City was aware it had failed to properly issue a legal notice as to the date and time of the re-scheduled hearing;

O.    The City was aware Plaintiff had, in writing, requested a new hearing date;

P.    The City and hearing officer fail to provide adequate information to contact the hearing officer (the City has a direct line or email to contact the officer);

Q.    The City failed to advise the hearing officer of Miner's written correspondence

requesting a new hearing date;

R.    The City urged the hearing officer to proceed with the hearing in Miner's absence
knowing it failed to advise the hearing officer of Miner's intent;

S.    The City, though it's deliberate actions and non-actions denied Miner of an
administrative hearing he had paid the City in advance to attend.

255.    The Due Process Clause of the Fourteenth Amendment to the United States
Constitution provides that "[n]o state shall make or enforce any law which shall … deprive any
person of life, liberty, or property, without due process of law."

256.    The City deprived Plaintiff of due process by denying them adequate notice and a
fair or meaningful opportunity to be heard.

257.    It did so by engaging in affirmative acts and a pattern of conduct designed to
violate and thwart Miner's due process rights and thereby deny Miner the ability to defend
against the administrative citation issued by the City, present documents, cross examine
witnesses, and present new evidence. These practices and customs significantly deprive citee
recipients, defendants such as Miner, of their rights to due process of law, both procedurally and
substantively.

258.    All acts and/or omissions perpetrated by each defendant were engaged
in fraudulently, coercively, maliciously, callously, oppressively, wantonly, recklessly, with
deliberate indifference to the rights allegedly violated, despicably, and with evil motive and/or
intent, in disregard of the rights of Plaintiff.

259.    Through Defendants' willful malicious and wanton efforts Miner has suffered.
The actions and efforts of City Defendant(s) have resulted in damages to Plaintiff, including, but
not limited to, failure to provide adequate notice, failure to provide an administrative hearing,
loss of funds paid in advance to secure the hearing, lost use of money and real property, lost
rental income, lost business time, un-necessary costs, un-necessary attorney fees, anxiety, lost
sleep, intentional infliction of emotional distress, and other wrongs inflicted by the Defendants
acting in concert under color of state law.

260.    The City has no legitimate governmental interest in depriving Plaintiff of their
right to due process, free speech, equal protection or any constitutional guarantee.

261.    As a direct and proximate result of the City Defendant's acts, policy and practice,

1   Plaintiff has suffered irreparable injuries to their constitutional rights.

2       262.    Plaintiff seeks an award of damages to compensate him for his losses and injuries

3   and the infringements of his rights.

**COUNT 2**
**DENIAL OF PROCEDURAL DUE PROCESS**
**42 U.S.C. Section 1983 - Fourteenth Amendment / Common law**
**(Against PJRC, RCEO, (Court Defendants) DOES 1-20)**
**DECLARATORY AND INJUNCTIVE RELIEF ONLY**

7       263.    Plaintiff hereby realleges and incorporates all previous paragraphs as though fully

8   restated herein.

9       264.    This count is brought pursuant to 28 U.S.C. §2201.

10      265.    Plaintiff seeks prospective, declaratory and injunctive relief as to this count.

11      266.    Under the theory of lack of jurisdiction and common law *Coram non judice*

12  "before a person not a judge" Miner contends the Court violated common law and the Due

13  Process and Equal Protection clauses of the Fourteenth Amendment by assigning a subordinate

14  judicial officer, who lacked subject matter jurisdiction, to act as a judge with judicial power, thus

15  mis-interpreting or mis-applying the law causing Plaintiff Miner injury. *(See Rankin v. Howard,*

16  *633 F. 2d 844 - Court of Appeals, 9th Circuit 1980) (Ruisi v. Thieriot, 53 Cal. App. 4th 1197 -*

17  *Cal: Court of Appeal, 1st Appellate Dist., 1st Div. 1997;( Virginia v. Rives, 100 US 313 -*

18  *Supreme Court 1880).*

19      267.    The Due Process Clause of the Fourteenth Amendment to the United States

20  Constitution provides that "[n]o state shall make or enforce any law which shall … deprive any

21  person of life, liberty, or property, without due process of law." The issues alleged are of

22  constitutional dimension that violates the integrity of the judicial system.

23      268.    The Due Process Clause guarantees a <u>fair legal process</u> in adjudicative and quasi-

24  adjudicative proceedings, including code-enforcement actions and court trials. *(Taylor Inv., Ltd.*

25  *v. Upper Darby Tp., 983 F. 2d 1285 - Court of Appeals, 3rd Circuit 1993)*. Under certain

26  conditions court officials may be sued, but not for damages. *(Forrester v.White, 484 US 219 -*

27  *Supreme Court 1988; Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.714 (1908)*

28      269.    Miner's Due Process rights were violated because a subordinate judicial officer,

who wholly lacked any experience or appointment as a judge, was assigned, not to perform subordinate judicial duties "chamber duties" to conduct the proceedings, but to 'hear and determine' all legal issues in defendant Miner's limited civil trial, a general reference, without judicial power, and with no consent of the parties litigant. This was a clear violation of statute, the California Constitution, and the Due Process and Equal Protection clause of the Fourteenth Amendment of the United States Constitution. *(See Burnham v. Superior Court)*

> **"(1c) Particularly, the court has no power to make an unconsented-to general reference, which conclusively decides all or part of a matter, because not only is such a general reference not authorized except by explicit agreement of the parties (§ 638, supra), but also, the California Constitution prevents delegation of judicial power except for the performance of "subordinate judicial duties."** (Cal. Const., art. VI, § 22; see *In re Perrone C. (1979) 26 Cal.3d 49 [160 Cal. Rptr. 704, 603 P.2d 1300]; In re Edgar M. 436*436 (1975) 14 Cal.3d 727 [122 Cal. Rptr. 574, 537 P.2d 406].)*
>
> **Deciding a major legal issue in a case, which probably will determine liability, is not a subordinate judicial duty.** (4) The Supreme Court said in In re Edgar M. a referee can make a binding determination only in a consensual general reference. *(In re Edgar M., supra, at p. 734; see §§ 638, 644; Estate of Hart (1938) 11 Cal.2d 89, 91 [77 P.2d 1082].)*
>
> The statutes carefully preserve the distinction of special and general reference to comply with the constitutional mandate; a general reference has binding effect, **but must be consensual**, whereas **a special reference may be ordered without consent but is merely advisory**, not binding on the superior court. *(See §§ 644, 645; Estate of Bassi (1965) 234 Cal. App.2d 529, 536-537 [44 Cal. Rptr. 541]; 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, §§ 50, 51.) (Aetna Life Ins. Co. v. Superior Court, 182 Cal. App. 3d 431 - Cal: Court of Appeal, 4th Appellate )*

270.    As applied the (b)(3) section of the GC. 53069.4 statute in Miner's case, and in any future adjudication for any litigant, assigning an SJO to act as a judge, with full judicial powers, without clear and proper notice and express stipulation by the parties litigant to act as a temporary judge, is constitutionally invalid.

271.    Because the Riverside County courts choose to avoid these critical constitutional Due Process issues, Plaintiff seeks clarification and a statutory legal analysis of a commissioners jurisdiction to act as a judge (ex 18: RT: p. 4-5) of this law (GC. 53069.4) administrative citation recipients in the State who choose to defend themselves in Superior Court.

272.    Plaintiff asks this Court for a declaratory judgment determining that the process

1   under which County of Riverside Superior Court assigns a subordinate judicial officer to

2   adjudicate limited civil trials, without notice or stipulation, violated Plaintiff's due process rights.

3   Miner contends the commissioner lacked legal authority and subject matter jurisdiction for any

4   issue other than to conduct the proceeding.

5       273.   Miner requests clarification of applicable law, declaratory relief and injunctive

6   relief against Court defendants enjoining Court defendants from assigning judicial roles, which

7   required the powers of a superior court judge to subordinate judicial officers.

8                                   **COUNT 3**
                          **DENIAL OF EQUAL PROTECTION**
9           **42 U.S.C. Section 1983 -  Fourteenth Amendment / Common law**
                **(Against PJRC, RCEO, (Court Defendants) DOES 1-20)**
10                   **DECLARATORY AND INJUNCTIVE RELIEF ONLY**

11      274.   Plaintiff hereby realleges and incorporates all previous paragraphs as though fully

12   restated herein.

13      275.   This count is brought pursuant to 28 U.S.C. §2201.

14      276.   Plaintiff seeks prospective, declaratory and injunctive relief as to this count.

15      277.   Under the theory of lack of jurisdiction and common law *Coram non judice*

16   "before a person not a judge" Miner contends the Court violated common law and the Due

17   Process and Equal Protection clauses of the Fourteenth Amendment by assigning a subordinate

18   judicial officer, who lacked subject matter jurisdiction, to act as a judge with judicial power, thus

19   mis-interpreting or mis-applying the law causing Plaintiff Miner injury.

20      278.   The Due Process Clause of the Fourteenth Amendment to the United States

21   Constitution provides that "[n]o state shall make or enforce any law which shall … deprive any

22   person of life, liberty, or property, without due process of law." The issues alleged are of

23   constitutional dimension that violates the integrity of the judicial system.

24      279.   The Due Process Clause guarantees a fair legal process in adjudicative and quasi-

25   adjudicative proceedings, including code-enforcement actions and court trials. *(Taylor Inv., Ltd.*

26   *v. Upper Darby Tp., 983 F. 2d 1285 - Court of Appeals, 3rd Circuit 1993)*. Under certain

27   conditions court officials may be sued, but not for damages. *(Forrester v.White, 484 US 219 -*

28   *Supreme Court 1988; Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.714 (1908)*

280.     Miner's Due Process rights were violated because a subordinate judicial officer, who wholly lacked any experience or appointment as a judge, was assigned, not to perform subordinate judicial duties "chamber duties" to conduct the proceedings, but to 'hear and determine' all legal issues in defendant Miner's limited civil trial, a general reference, without judicial power, and with no consent of the parties litigant. This was a clear violation of statute, the California Constitution, and the Due Process and Equal Protection clause of the Fourteenth Amendment of the United States Constitution. *(See Burnham v. Superior Court)*   270.

281.     As applied the (b)(3) section of the GC. 53069.4 statute in Miner's case, and in any future adjudication for any litigant, assigning an SJO to act as a judge, with full judicial powers, without clear and proper notice and express stipulation by the parties litigant to act as a temporary judge, is constitutionally invalid.

282.     Because the Riverside County courts choose to avoid these critical constitutional Due Process issues, Plaintiff seeks clarification and a statutory legal analysis of a commissioners jurisdiction to act as a judge (ex 18: RT: p. 4-5) of this law (GC. 53069.4) administrative citation recipients in the State who choose to defend themselves in Superior Court.

283.     Plaintiff asks this Court for a declaratory judgment determining that the process under which County of Riverside Superior Court assigns a subordinate judicial officer to adjudicate limited civil trials, without notice or stipulation, violated Plaintiff's due process rights. Miner contends the commissioner lacked legal authority and subject matter jurisdiction for any issue other than to conduct the proceeding.

284.     Interpretations of the Civil Rights Acts by this Court acknowledge Congress' intent to reach unconstitutional actions by all state actors, including judges. The Court reasoned that the Fourteenth Amendment prohibits a State from denying any person within its jurisdiction the equal protection of the laws. *(Pulliam v. Allen, 466 US 522 - Supreme Court 1984. P. 541)*

285.     Miner requests clarification of applicable law, declaratory relief and injunctive relief against Court defendants enjoining Court defendants from assigning judicial roles, which required the powers of a superior court judge to subordinate judicial officers.

------------------------------

286.    As applied the (b)(3) section of the GC. 53069.4 statute in Miner's case, and in any future adjudication for any litigant, assigning an SJO to act as a judge, with full judicial powers, without clear and proper notice and express stipulation by the parties litigant to act as a temporary judge, is constitutionally invalid.

287.    Miner alleges the Court defendants misinterpret the law "assigning" a subordinate judicial officer to "hear and determine" the issues as described herein, when judicial powers by a superior court judge were mandated to preserve Miner's rights.

288.    The Court Defendants, acting under color of law, deprived Miner of the equal protections of law in violation of the Fourteenth Amendment to the United States Constitution.

289.    The Court has no legitimate governmental interest in depriving the named Plaintiff of their right to equal protection. Throughout the state limited civil trial de novos are adjudicated by duly appointed superior court judges, or judicial officers who have been knowing stipulated by parties litigant as the law mandates. Stipulation by silence or by ambush is not the law.

290.    As a direct and proximate result of the Court Defendant's acts, policy and practice, Plaintiff Miner has suffered irreparable injuries to their constitutional rights and will likely be injured in the future if the practice and policy remains.

291.    Miner requests clarification of applicable law, declaratory relief and injunctive relief against Court defendants enjoining Court defendants from assigning judicial roles, which required the powers of a superior court judge, to subordinate judicial officers.

**COUNT 4**
**MALICIOUS ABUSE OF PROCESS**
**Federal, State, and Common Law Claims**
**Federal Claim under 42 U.S.C. Section 1983**
**(Against VU, DHS, (City Defendants) DOES 1-20)**

292.    Plaintiff hereby realleges and incorporates all previous paragraphs as though fully restated.

293.    Plaintiff is informed and believes, and based upon such information and belief allege, that in doing all of the things herein mentioned, defendants, and each of them, acted under color of the, statutes, regulations, customs and usages of the City of Desert Hot Springs,

California for purposes of "state action" under 42 U.S.C. Section 1983. Defendants acted under color of state law when they exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."

294. Plaintiff is informed and believes, and based upon such information and belief allege, that in doing all of the things herein mentioned, defendants, and each of them, violated California state and common law relating to the abuse of process. *(Bidna v. Rosen, 19 Cal. App. 4th 27 - Cal: Court of Appeal, 4th Appellate Dist., 3rd Div. 1993)* The City used all the tools the law affords in unintended, malicious and harmful ways against Miner.

**Abuse of Administrative Citations**

295. Plaintiff alleges City defendants, abuse the legal use and application of administrative citations for an ulterior and improper purpose, including to punish citizens in their implementation of the City Council's zero-tolerance stance on non-compliant cannabis activity.

296. By law, an administrative citation becomes a limited civil action upon the defendant's request for a trial de novo.

297. The City's boiler plate threadbare citation becomes the city's civil complaint. The complaint was insufficient to state a claim in California, a fact pleading state. The allegations are vague, ambiguous, lack description fail to list issues, fail to advise specific locations, fail to cite the true and correct law and fail to state a claim. *(Semole v. Sansoucie, 28 Cal. App. 3d 714 - Cal: Court of Appeal, 2nd Appellate Dist., 2nd Div. 1972)* The citations, lacking specific details, locations, violations with specificity, permit the code officer to manipulate the issues in court.

298. The over zealous culture violates citizens constitutional rights in their quest to please their superiors. When Miner refused entry to his ranch the officer got out his code book and began writing - issuing the most absurd, outrageous, fanciful citations, that were, as a jury will find, violations of nothing. These issues remain un-litigated as the case was dismissed without prejudice. Additionally, the officer clearly mentioned marijuana in his report, when in fact there was no marijuana on several of Miner's land parcels. Miner alleges the City defendants violated at least Miner's 1st, 4th, 5th, and 14th amendment rights under the constitution.

299. The City uses and has used citations as a misuse of process, for purposes other

than the legislature intended and what the ordinance was designed to accomplish.

300.    As an example Miner was cited for a <u>single spare tire</u> for his work truck, against the wall on the home, on his 200,000 sf ranch. He was cited for fence slats, lying on the ground to repair his fence, with the code officer labeling them "construction materials." Miner was cited for a single 18" x 24" plastic nursery tray on a 200,000 sf property. The abuse of the system as applied Miner is a jury question.

**Abuse of the Vexatious Litigant Procedure**

301.    The City abuse of process vexations litigant motion rested on (1) contested motions the SJO had no authority to rule on or adjudicate; not a single issue, (2) a subordinate judicial officer that had no jurisdiction or judicial powers, (3) a city that lacked standing to bring the motion as the plaintiff in the matter prosecuting Miner, and ultimately on a case that was dismissed without a single legal valid ruling or order within the entire process.

302.    The City had no valid legal reason to bring the motion. It was clearly the plaintiff and put on its case prosecuting Miner. Miner had never sued the city or harassed the City in any way since his entry to the area in 1994.

303.    That City Defendants used a improper procedure against Plaintiff Miner in the prior court action to chill Miner's free speech as a defendant, and chill his ability to defend himself through the use of the false and inapplicable vexatious litigant motion filed against a defendant. Miner has stated a substantiated and legally sufficient claim. *(Briggs v. Eden Council for Hope & Opportunity, 969 P. 2d 564 - Cal: Supreme Court 1999)*

304.    Plaintiff claims that City Defendants (who were formally plaintiffs and lacked standing to bring their motion) wrongfully and unlawfully accused Miner of being a vexatious litigant in his defense against the City knowing Miner was (1) the defendant, (2) the city was Plaintiff in the prior action, (3) that the City as Plaintiff, per law, had no legal standing to bring a vexatious litigant claim against its own defendant, (4) that the claim against Miner was/is effectively a <u>life sentence</u> and a black mark against his credibility (broadcast on the Internet) affecting his ability to protect his business and financial livelihood using the court system to protect his interests in a swift and unrestrained manner, and (5) that the attack on Miner was in

retribution against Miner for filing a federal lawsuit against Defendant Tuan Anh Vu.

305.    That City Defendants intentionally used this inapplicable legal procedure to chill Miner's free speech in the courtroom as to his defense, and chill his ability to further litigate against the City.

306.    City Defendant's callous disregard of Miner's legal and constitutional rights, under the color of law, were attacked fraudulently, coercively, maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights allegedly violated, despicably, and with evil motive and/or intent, in disregard of the rights of Plaintiff Miner.

307.    That Plaintiff Miner was harmed; the harm continues, and

308.    That the City Defendant's conduct was a substantial factor in causing Plaintiff Joseph Miner's harm/injury.

**COUNT 5**
**MALICIOUS PROSECUTION**
**Federal, State, and Common Law Claims**
**Federal Claim under 42 U.S.C. Section 1983**
**(Against VU, DHS, (City Defendants) DOES 1-20)**

309.    Plaintiff hereby realleges and incorporates all previous paragraphs as though fully restated.

310.    Plaintiff is informed and believes, and based upon such information and belief allege, that in doing all of the things herein mentioned, defendants, and each of them, acted under color of the, statutes, regulations, customs and usages of the City of Desert Hot Springs, California for purposes of "state action" under 42 U.S.C. Section 1983. Defendants acted under color of state law when they exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."

311.    Plaintiff is informed and believes, and based upon such information and belief allege, that in doing all of the things herein mentioned, defendants, and each of them, violated California state and common law relating to malicious prosecution. *(Bidna v. Rosen, 19 Cal. App. 4th 27 - Cal: Court of Appeal, 4th Appellate Dist., 3rd Div. 1993)*

312.    The unintended consequence of the City's malicious acts were that the City's civil case against Miner was dismissed without prejudice permitting Miner to bring this action.

*(Fuentes v. Berry, 38 Cal. App. 4th 1800 - Cal: Court of Appeal, 1st Appellate Dist., 4th Div. 1995; Jamgotchian v. Ferraro, 93 F.4th 1150, 1160 (9th Cir. 2024)))*

**Abuse of Administrative Citations**

313.    Plaintiff alleges City defendants, abuse the legal use and application of administrative citations for an ulterior and improper purpose, including to <u>punish citizens</u> in their implementation of the City Council's zero-tolerance stance on non-compliant cannabis activity.

314.    By law, an administrative citation becomes a limited civil <u>action</u> upon the defendant's request for a trial de novo.

315.    The City's boiler plate threadbare citation becomes the city's civil complaint. The complaint was insufficient to state a claim in California, a fact pleading state. The allegations are vague, ambiguous, lack description fail to list issues, fail to advise specific locations, fail to cite the true and correct law and fail to state a claim. *(Semole v. Sansoucie, 28 Cal. App. 3d 714 - Cal: Court of Appeal, 2nd Appellate Dist., 2nd Div. 1972)* The citations, lacking specific details, locations, violations with specificity, permit the code officer to manipulate the issues in court.

316.    The over zealous culture violates citizens constitutional rights in their quest to please their superiors. When Miner refused entry to his ranch the officer got out his code book and began writing - issuing the most absurd, outrageous, fanciful citations, that were, as a jury will find, violations of nothing. These issues remain un-litigated as the case was dismissed without prejudice. Additionally, the officer clearly mentioned marijuana in his report, when in fact there was no marijuana on several of Miner's land parcels. Miner alleges the City defendants violated at least Miner's 1st, 4th, 5th, and 14th amendment rights under the constitution.

317.    The City uses and has used citations as a misuse of process, for purposes other than the legislature intended and what the ordinance was designed to accomplish.

318.    As an example Miner was cited for a <u>single spare tire</u> for his work truck, against the wall on the home, on his 200,000 sf ranch. He was cited for ten or so fence slats, lying on the ground to repair his fence, with the code officer labeling them "construction materials." Miner was cited for a single 18" x 24" plastic nursery tray on a 200,000 sf property. The abuse of the system as applied Miner is a jury question.

319.    City Defendant's callous disregard of Miner's legal and constitutional rights, under the color of law, were attacked fraudulently, coercively, maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights allegedly violated, despicably, and with evil motive and/or intent, in disregard of the rights of Plaintiff Miner.

320.    The City's trial de novo against Miner ended in a judgment of dismissal, as if the case never occurred. Miner had weighed this out, and believed this was a favorable result permitting Miner to place the issues in front of a competent court.

321.    That Plaintiff Miner was harmed; the harm continues, and

322.    That the City Defendant's conduct was a substantial factor in causing Plaintiff Joseph Miner's harm/injury.

**COUNT SIX - CLARIFICATION OF THE LAW**
**IN THE FORM OF DECLARATORY RELIEF**
**Federal Claim under 28 U.S.C. Section §2201**
**(Against All Defendants, DOES 1-20)**

323.    Plaintiff hereby realleges and incorporates all previous paragraphs as though fully restated herein.

324.    Most civil cases boil down to the aggressor and the defender, the sword and the shield. Miner has defended himself since he was called by the code officer for a re-inspection.

325.    In civil case **CVPS2106001**, a trial de novo in limited civil division of the Superior Court Miner was defending his ranch against the City, the aggressor. The law and the process were unclear. The law and process are adjudicated differently in different superior court jurisdictions. Because these cases rarely make to Court of Appeal, and citizens are generally self-resented the law is unequal throughout the state.

326.    The California courts have refused to clarify the law. Thus, the meaning and enforcement of the Statute continues to be entirely at the discretion of 58 Superior Court jurisdictions throughout the State. Each jurisdiction interprets this law differently. For the most part these issues are limited civil cases that rarely are permitted transfer to the Court of Appeal leaving 1,000,000 citees in the State of California each being subjected to different vastly interpretation of the law.

327.    This request for declaratory relief applies to every California defendant who

1  requests a Trial de novo under GC. 53069.4 and CCP 85(c). The Plaintiff asks this Court for a

2  declaratory judgment clarifying the law. CCP 85(c) covers twenty-two trial de novo categories.

3  **Miner identifies three specific statutory textual issues:**

4  **Issue #1**

5  [1] *§53069.4 (b)(1) "A copy of the notice of appeal shall be served in person or by*

6  *first-class mail upon the local agency by the contestant."*

7  328.    When a party is cited by a local agency, the party defends themselves. Once past

8  the administrative hearing, a Trial De Novo is permitted by law. Whether the party is the

9  "defendant" or "plaintiff" in the new trial may lead to **significant and costly legal consequences**

10  such as who goes first at trial, when discovery may be propounded by law, whether a case

11  questionnaire may be requested, who may legally dismiss the citation, and whether a party may

12  file certain motions or pleadings as "defendant" or "plaintiff."  Vague legal requirements, by law,

13  as to who is the 'defendant' and who is the 'plaintiff' in Superior Court a Trial de Novo leads to

14  Due Process and Equal Protection violations and violates a citizen's federal and state

15  constitutional rights. This issue must be clarified for 1,000,000 California citation recipients per

16  year and for the 22 sub-categories within Code of Civil Procedure §85(c). This creates

17  uncertainty, tension and confusion when applied to other state statutes such as CCP. §391.1(a).

18  **Issue #2**

19  [2] *§53069.4 (b)(1) ". . .  "A proceeding under this subdivision is a limited civil case."*

20  329.    Legislature did not label the superior court procedure a small claims case. A

21  limited civil case is controlled by CCP. §85-100. CCP. §90-100 controls discovery and all other

22  procedural issues. CCP. 85(c) reclassifies an administrative citation, as well as 22 additional

23  listed re-classifiable offenses into a 'civil appeal de novo' - case law states this is a new trial.

24  Some courts appear to abide by all elements of CCP. §85-100, but some do not and adjudicate

25  the case as a small claims action with no discovery, no subpoenas, and a single hearing - similar

26  to §116.110-§116.950. Plaintiff contends - not strictly following the civil code of procedure, as a

27  limited civil case under CCP. §85-100, violates a citizen's federal constitutional rights including

28  Due Process and Equal Protection.

**Issue #3**

[3] *§53069.4 (b)(3) "The conduct of the appeal under this section is a subordinate judicial duty that may be performed by traffic trial commissioners and other subordinate judicial officials at the direction of the presiding judge of the court.*

330.    What does this text mean? *(Pulsifer v. United States, Supreme Court 2024)* The inconsistent interpretation and application of the law from one judicial officer to another and one court to another throughout the State fails to afford California citizens adequate notice of the conduct that will subject them to fines (some life changing), suspensions of driver licenses, liens on, and use limitations, on real property, a public record of a conviction or judgment, collections actions, and possibly a vexatious litigant decree or contempt of court. It therefore violates Due Process, as guaranteed by the Fifth Amendment and incorporated by the Fourteenth Amendment.

331.    Both the inconsistent application of the GC. §53069.4 statute, and the failure to give the public advance notice of what the statute means, violates due process.

332.    As a proximate result of the foregoing acts of City defendants, and each of them, plaintiff has suffered extreme hardship and damages, which damages include, but is not limited to, economic damages, according to proof at trial, but no less than $2,000,000.00, and to appropriate declaratory and injunctive relief against all the defendants, and to their reasonable attorneys fees under 42 U.S.C.'section 1988.

**PRAYER FOR RELIEF**

Wherefore Miner requests relief as follows, and according to proof, against each Defendant Plaintiff respectfully requests that this Court:

**COURT DEFENDANTS - Counts 2, 3, 6**

333.    Declare that a subordinate judicial officer shall not perform judicial acts as a temporary judge in superior court unless the parties litigant are meaningly noticed in writing by the court and collectively sign, and stipulate in writing the SJO may act as a temporary judge;

334.    Declare that when a request is made to file a trial de novo, pursuant to GC. 53069.4, the case becomes a civil action. Superior court hears the matter, not as an appellate court, but as a court of original jurisdiction;

335.    Declare the word label 'appeal' as used in the statute §53069.4, is a misnomer and confusing to litigants. Superior courts lack appellate jurisdiction. *(Collier & Wallis, Ltd., v. Astor, 9 Cal. 2d 202 - Cal: Supreme Court 1937)*. Established law mandates a trial de novo;

336.    Declare that when a trial de novo is requested by in superior court by a citee of a California local agency, the citee is the Defendant in superior court, and the local agency is the Plaintiff;

337.    Declare that as a matter of law the trial de novo in superior court, if it meets the specific conditions of limited civil jurisdiction, is entitled to all statutory entitlements pursuant to the Civil Code of Procedure §85-100 as a matter of law;

338.    Declare the superior court would prospectively violate a party's constitutional rights by 'assigning' a subordinate judicial officer to act as a superior court judge without constitutional or statutory jurisdiction;

339.    Declare judicial acts performed subordinate judicial officer in superior court lacking constitutional or statutory jurisdiction would prospectively be void abinito and coram non judice;

340.    Enjoin Court defendants from placing a subordinate officer in a position of a superior court judge unless a written stipulation is agreed and signed by party litigants;

**CITY DEFENDANTS - Counts 1, 4, 5, 6**

341.    Declaratory judgment as to claims asserted within;

342.    General and compensatory damages in an amount according to proof;

343.    Special damages in an amount according to proof;

344.    Exemplary and punitive damages against each Defendant in an amount according to proof;

345.    Costs and attorneys' fees, under 42 U.S.C. § 1988, California Code of Civil Procedure § 1021.5, and any other applicable provision of law;

**ALL DEFENDANTS**

346.    Declaratory and Injunctive relief where warranted and is proper and just;

347.    For such other and further relief as the Court deems equitable and just.

**JURY DEMAND**

348.    Plaintiff Miner demands trial by jury of all issues that can be so tried.

Respectfully submitted this 28th day of January 2025.

_____

JOSEPH MINER, Pro Se

# DECLARATION OF JOSEPH MINER

I, Joseph Miner declare:

1.      I state the following facts and history of my own personal knowledge and if called, I can and would testify competently thereto.

2.      Except where stated in this declaration upon information and belief, the facts set forth in this declaration are known to me personally, and, if called and sworn as a witness in a court of law, I could and would competently testify to such facts. As for those facts stated upon information and belief, I believe in good faith that they are true.

3.      My name is Joseph Miner. I am over the age of eighteen (18).

4.      I personally authored the attached first amended federal complaint. I amended the complaint to correct names of defendants and clarify the facts and law alleged in the original complaint. The original complaint had not been served on any party.

5.      All facts, history described by me, and law provided by me, are true and correct to the best of my knowledge. The goal was a thorough complaint with material exhibits attached.

6.      I have included introductory evidence and case law because I do not wish to waste the court's time and resources to move case forward. The trial court record exceeds 5,000 pages.

7.      A memorandum opinion release by the 9th circuit in a case by Institute for Justice relating to many similar issues I allege in my complaint has just been released. Case: 23-15847, 12/30/2024, ID: 12917982, Dkt Entry: 51-1. I have attached it as exhibit #20 as persuasive support for my allegations. Effectively many of the same issues mine are on a smaller scale.

8.      I have included the following exhibits attached to my complaint. All exhibits are true and correct copies of original documents which support my contentions and allegations contained within the foregoing federal complaint. Some documents are annotated.

9.      I sincerely apologize to this court in advance for the verbose, sometimes redundant, overly factual, complaint. A threadbare complaint would not properly tell the story and support the need for clarification of the law.

10.     I have tried everything in my power to correct and clarify these issues without filing a new complaint. Pro se's are given little leniency. I would prefer an attorney.

**EXHIBITS**

1.   A copy of the relevant year law at issue: Government Code 53069.4;

2.   A sampling of various citations issued under the law;

3.   Job offer for commissioner in Riverside County (requires stipulation);

4.   Miner's motion to vacate void judgement (subject matter jurisdiction);

5.   Judge Firetag denial of Miner's ability to appeal subject matter jurisdiction (same case);

6.   Discovery ruling by seasoned trial judge. More examples below;

7.   Joan Gallo, sponsor of §53069.4 spelling out the intent of $25 Administrative Citations;

8.   Recently issued $500,000 Administrative Citation (notice pleading);

9.   Recently issued $350,000 Administrative Citation (notice pleading);

10. Miner Administrative Citation (notice pleading). Officer added $4,000 in citations total;

11. Miner listed as Defendant and Appellant on Riverside County court website;

12. Discrepancies in discovery rulings and requests throughout the court system;

13. Forty year attorney Joseph Rosenblit declaration about vexatious litigant hearing;

14. Miner's appeal of many issues including dismissal and vexatious litigant Order;

15. Appellate Division's Order;

16. Declaration of witness Gregg Roberts;

17. First citation issued to Joseph Miner code case 21-566;

18. Court transcript asking for clarification of the jurisdiction to render judgment of the SJO;

19. City of Cathedral City supplemental brief on use of administrative citations;

20. Recent memorandum opinion by the 9th Circuit addressing similar City issues;

21. Requests made to judicial council regarding trial court adjudication procedure.


I declare, under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct, and that this declaration is executed this 28th day of January 2025, in the County of Orange, State of California.

_____

Joseph Miner, plaintiff pro se