FAC PG 62

Exhibit 1




**California**
LEGISLATIVE INFORMATION

| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |

**Code:** Select Code ▾   **Section:** 1 or 2 or 1001   Search   ⓘ

Up^    << Previous    Next >>    cross-reference chaptered bills    PDF | Add To My Favorites    🖨

Search Phrase:                          Highlight

**GOVERNMENT CODE - GOV**
 **TITLE 5. LOCAL AGENCIES [50001 - 57607]** *( Title 5 added by Stats. 1949, Ch. 81. )*
  **DIVISION 2. CITIES, COUNTIES, AND OTHER AGENCIES [53000 - 55821]** *( Division 2 added by Stats. 1949, Ch. 81. )*
   **PART 1. POWERS AND DUTIES COMMON TO CITIES, COUNTIES, AND OTHER AGENCIES [53000 - 54999.7]** *( Part 1 added by Stats. 1949, Ch. 81. )*

    **CHAPTER 1. General [53000 - 53170]** *( Chapter 1 added by Stats. 1949, Ch. 81. )*

    **ARTICLE 4. Miscellaneous [53060 - 53087.8]** *( Article 4 added by Stats. 1951, Ch. 522. )*

**53069.4.**  (a) (1) The legislative body of a local agency, as the term "local agency" is defined in Section 54951, may by ordinance make any violation of any ordinance enacted by the local agency subject to an administrative fine or penalty. The local agency shall set forth by ordinance the administrative procedures that shall govern the imposition, enforcement, collection, and administrative review by the local agency of those administrative fines or penalties. Where the violation would otherwise be an infraction, the administrative fine or penalty shall not exceed the maximum fine or penalty amounts for infractions set forth in Section 25132 and subdivision (b) of Section 36900.

(2)  (A) The administrative procedures set forth by ordinance adopted by the local agency pursuant to this subdivision shall provide for a reasonable period of time, as specified in the ordinance, for a person responsible for a continuing violation to correct or otherwise remedy the violation prior to the imposition of administrative fines or penalties, when the violation pertains to building, plumbing, electrical, or other similar structural or zoning issues, that do not create an immediate danger to health or safety.

(B) Notwithstanding subparagraph (A), the ordinance adopted by the local agency pursuant to this subdivision may provide for the immediate imposition of administrative fines or penalties for the violation of building, plumbing, electrical, or other similar structural, health and safety, or zoning requirements if the violation exists as a result of, or to facilitate, the illegal cultivation of cannabis. This subparagraph shall not be construed to apply to cannabis cultivation that is lawfully undertaken pursuant to Section 11362.1 of the Health and Safety Code.

(C) If a local agency adopts an ordinance that provides for the immediate imposition of administrative fines or penalties as allowed in subparagraph (B), that ordinance shall provide for a reasonable period of time for the correction or remedy of the violation prior to the imposition of administrative fines or penalties as required in subparagraph (A) if all of the following are true:

(i) A tenant is in possession of the property that is the subject of the administrative action.

(ii) The rental property owner or agent can provide evidence that the rental or lease agreement prohibits the cultivation of cannabis.

(iii) The rental property owner or agent did not know the tenant was illegally cultivating cannabis and no complaint, property inspection, or other information caused the rental property owner or agent to have actual notice of the illegal cannabis cultivation.

(b) (1) Notwithstanding Section 1094.5 or 1094.6 of the Code of Civil Procedure, within 20 days after service of the final administrative order or decision of the local agency is made pursuant to an ordinance enacted in accordance with this section regarding the imposition, enforcement, or collection of the administrative fines or penalties, a person contesting that final administrative order or decision may seek review by filing an appeal to be heard by the superior court, where the same shall be heard de novo, except that the contents of the local agency's file in the case shall be received in evidence. A proceeding under this subdivision is a limited civil case. A copy of the document or instrument of the local agency providing notice of the violation and imposition of the administrative

Law section

fine or penalty shall be admitted into evidence as prima facie evidence of the facts stated therein. A copy of the notice of appeal shall be served in person or by first-class mail upon the local agency by the contestant.

(2) The fee for filing the notice of appeal shall be as specified in Section 70615. The court shall request that the local agency's file on the case be forwarded to the court, to be received within 15 days of the request. The court shall retain the fee specified in Section 70615 regardless of the outcome of the appeal. If the court finds in favor of the contestant, the amount of the fee shall be reimbursed to the contestant by the local agency. Any deposit of the fine or penalty shall be refunded by the local agency in accordance with the judgment of the court.

(3) The conduct of the appeal under this section is a subordinate judicial duty that may be performed by traffic trial commissioners and other subordinate judicial officials at the direction of the presiding judge of the court.

(c) If no notice of appeal of the local agency's final administrative order or decision is filed within the period set forth in this section, the order or decision shall be deemed confirmed.

(d) If the fine or penalty has not been deposited and the decision of the court is against the contestant, the local agency may proceed to collect the penalty pursuant to the procedures set forth in its ordinance.

*(Amended by Stats. 2018, Ch. 316, Sec. 1. (AB 2164) Effective January 1, 2019.)*

FAC PG 65

Exhibit  2

**Office of Development & Code Services**
Steven L. Hartwig, Deputy County Executive



**Divisions**
Administrative Services
Building Permits & Inspection
Code Enforcement
Construction Management & Inspection
County Engineering

## ADMINISTRATIVE PENALTY – CANNABIS CULTIVATION

PENT2022-00002

| | | | | |
|---|---|---|---|---|
| | | | | Admin Penalty No.: 3354X22-2C |

| Date: 6/9/22 | Time: 10:50am | Case No.: CODX2022-03354 | | Parcel No.: 220-0462-019-0000 |
|---|---|---|---|---|

Address of Violation: 4879 Willowbrook Dr   City: Sacramento   State: CA   Zip Code: 95842

Name: Joshua Thiss   Driver's License: C7098267   Date of Birth: 11/16/1970   Sex: M

Address: 4879 Willowbrook Dr   City: Sacramento   State: CA   Zip Code: 95842

| Code Section | Description of Violation | Corrective Action Required |
|---|---|---|
| SCC 16.18.401(BB) | ☒ Prohibited Cultivation of Cannabis | |
| SCC 16.18.401 (BB) CA H&S 17920.3(d) | ☐ Unpermitted/unsafe electrical wiring | If box is checked; Electrical wiring must be permitted and electrical wiring must be in good/safe condition |
| SCC 16.18.401 (BB) CA H&S 17920.3(d) | ☒ Unpermitted electrical sub panels (# 3 ) | If box is checked; Remove additional sub panels or obtain building permits |
| SCC 16.18.401 (BB) CA H&S 17920.3(f) | ☒ Unpermitted/unsafe mechanical equipment | If box is checked; Mechanical equipment must be permitted and in good/safe condition |
| | | |
| | | |
| | | |

SCC = Sacramento County Code; CA H&S = California Health & Safety Code;

Pursuant to Sacramento County Code 6.88.060, you are hereby ordered to pay the County of Sacramento Code Enforcement Division an administrative penalty in the amount of;

(Number of plants _178_ + Number of housing violations _5_ ) X $1,000 = $ _183,000_

**This administrative penalty will be imposed immediately unless you qualify for a delay under SCC 6.88.060(B)(3).**

**An Additional sheet detailing other violations in CA H&S Code 17920.3 not listed on this form may be attached.**

You have the right to an administrative review of this penalty notice. Your request for an administrative review must be received by _6/30/22_ to be valid.    Include a $700 appeal deposit with your hearing request.  Make checks payable to: The County of Sacramento.  If you are successful in your hearing, your deposit will be refunded.  If you are unsuccessful, additional charges may be billed.    Appeal forms may be obtained at https://code-enforcement.saccounty.net/Pages/Forms.aspx or by calling the Code Enforcement Division at (916) 874 – 6444.  Your request must be mailed or faxed to Sacramento County Code Enforcement, 9700 Goethe Rd Ste. A, Sacramento, CA 95827 or FAX (916) 874 – 8409.  You must also attach a copy of this Administrative Penalty. Both the appeal form and hearing deposit must be received by the appeal deadline to be valid. If you have any questions about the review process, please contact the Code Enforcement Division.

Pursuant to Govt. Code 25845(c) and SCC 16.18.210, the County will seek to recover the attorney fees and costs from you, if applicable.  Each person or entity cited may be held joint and severally liable for the penalty amount. This administrative penalty is separate and in addition to any other code enforcement charges that may be applicable to this case.

Payment of this penalty shall be sent to County of Sacramento, Department of Revenue and Recovery, PO 1086, Sacramento, CA 95812, checks payable to Sacramento County.  Be sure to denote your case number on your payment to assure proper credit.

Received by (Responsible Party):

Signature of Officer:

Officer (Printed): ~ w. Light

☐ Refused to Sign
Badge Number: 14

Phone Number: (916) 874-2661

FAC PG 67

# CITY OF DESERT HOT SPRINGS

CODE COMPLIANCE DEPARTMENT

11199 Palm Dr. • Desert Hot Springs • CA • 92240
(760) 329-6411 • www.cityofdhs.org

## ADMINISTRATIVE CITATION # 29005D

**Date Issued: July 27, 2023**
**APN: 666280001**
**Case Number: CODE-23-594**
**Subject Property: 64615 DILLON RD DESERT HOT SPRINGS, CA 92240**

| | |
|---|---|
| Parcel Owner: | JEFFREY D. BROOKER |
| Mailing Address: | P O BOX 580795 |
| | NORTH PALM SPRINGS , CA 92258 |

**Code Compliance Officer:  Tiyler Messer          Email: tmesser@cityofdhs.org**

An inspection of your property has revealed the following violation(s) of the Desert Hot Springs Municipal Code section (§):

| Violation Code/Description | Corrective Action | Fines |
|---|---|---|
| 4.16.010.A.1.a - Public Nuisance- Abandoned equipment, machinery, or house items | Remove all storage containers, semi-truck trailers, household items, construction equipment, construction material, abandoned equipment, and other miscellaneous construction material from the exterior of the property and do not store outside. | $200 |
| 4.16.010.A.2-Public Nuisance- Landscaping | the property is void of acceptable ground coverage material. Acceptable landscaping shall include any groundcover, decorative rock, decomposed granite, lawn and/or other material as determined to be acceptable or required by the City's Community Development Director or his or her designee. Install acceptable ground coverage material in all unpaved areas of the property. | $200 |
| 4.16.010.A.6-Public Nuisance-Vehicle Parking | Remove all vehicles that are parked on a surface that is not paved. | $200 |
| 4.16.010.A.12-Public Nuisance- Abandoned/ Vacated Buildings. | Obtain abuilding permit and repair the abandoned building on the property so it meets all state, local, and federal building, planning, and zoning codes. Or obtain a demolition permit and demolish the abandoned building on this property. | $ |
| 4.16.010.A.17-Public Nuisance- Illegal, Nonconforming Building or Structure | ***BUILDING PLANS HAVE BEEN SUBMITTED FOR PERMIT*** Obtain abuilding permit and repair the abandoned building on the property so it meets all state, local, and federal building, planning, and zoning codes. Or obtain a demolition permit and demolish the abandoned building on this property. Obtain a building permit and finish construction of the block wall surrounding the property. **COMPLIED** | $200 |
| 4.16.010.A.18-Public Nuisance-Maintenance, Repair, Restoration or Dismantling Vehicle or Large Machinery or Equipment | Obtain a building permit for the temporary power pole on the property, or remove the temporary power pole at the property. Remove all dismantled vehicles on the property. Maintenance, repair, restoration or dismantling of any vehicle, large machinery, or large equipment is not permissible with the use of this property. | $200 |
| 4.16.010.A.19.a-Public Nuisance- Deteriorated Walls/Fences/ Stucco | Obtain a building permit and repair the dilapidated building, or obtain a demolition permit and demolish the dilapidated building. ***BUILDING PLANS HAVE BEEN SUBMITTED FOR PERMIT*** | $ |
| 4.16.010.A.19.b-Public Nuisance- Visual Blight- Cracked/Broken Windows/Roofs | Obtain a building permit and repair the dilapidated building, or obtain a demolition permit and demolish the dilapidated building. ***BUILDING PLANS HAVE BEEN SUBMITTED FOR PERMIT*** | $ |
| 4.16.010.A.19.d-Public Nuisance- Visual Blight/ Equipment/ Machinery | Remove all abandon, damaged, and broken equipment from the property. | $200 |
| 4.16.010.A.25-Public Nuisance- Land Use Entitlements | Remove everything from this property and do not conduct business until all required licenses and permits have been obtained. | $200 |
| 111.1 Unsafe structures. | Obtain a building permit and repair the dilapidated building, or obtain a demolition permit and demolish the dilapidated building. ***BUILDING PLANS HAVE BEEN SUBMITTED FOR PERMIT*** | $ |
| 111.1.5.7 Dangerous structure or premises. | Obtain a building permit and repair the dilapidated building, or obtain a demolition permit and demolish the dilapidated building. ***BUILDING | $ |

FAC PG 67

FAC PG 68

PLANS HAVE BEEN SUBMITTED FOR PERMIT***

| | | |
|---|---|---|
| 5.04.040.A-General Business License- License Required | Obtain a Business License with the City of Desert Hot Springs. Immediately cease all business being operated from this property until all permits and licenses have been obtained. | $200 |
| 17.136.020.C - Temporary Use Permits | Obtain a Development Permit and a Temporary Use Permit for the storage containers, construction trailer, and semi-truck trailers being stored on this property. Or remove the storage containers, construction trailer, and semi-truck trailers being stored on this property. | $200 |

**Total Fines**
**$1,800.00**

**REINSPECTION DATE:   August 10, 2023**

In order to avoid potential Citations, fines, and other administrative costs as referenced in Municipal Code 4.24.470 "Special Assessment", the corrective actions listed above must be completed by the compliance date above.

 If this box is checked the violations listed above are correctable, when the violations have been cured the fines may be waived.

Signature: _____

**Code Compliance Officer:  Tiyler Messer**

FAC PG 69



# CITY OF DESERT HOT SPRINGS

CODE COMPLIANCE DEPARTMENT

11199 Palm Dr. • Desert Hot Springs • CA • 92240
(760) 329-6411• www.cityofdhs.org

## ADMINISTRATIVE CITATION # 28980D

**Date Issued: July 20, 2023**
**APN: 639202041**
**Case Number: CODE-22-1497**
**Subject Property: 66396 6TH ST DESERT HOT SPRINGS, CA 92240**

| | |
|---|---|
| Parcel Owner: | RIEM KHAIR |
| Mailing Address: | PO BOX 141 |
| | LAKE FOREST , CA 92609-0141 |

**Code Compliance Officer:  Linda Human          Email:  lhuman@dhspd.com**

An inspection of your property has revealed the following violation(s) of the Desert Hot Springs Municipal Code section (§):

| Violation Code/Description | Corrective Action | Fines |
|---|---|---|
| 8.40.030.A -Inspection, registration and fees. Registration required ( Abandoned Vacant Building) | Register the property within ten days of the property becoming vacant. Registration is online at:<br><br>www.cityofdhs.org | $500 |
| 8.40.030.E -Abandoned Property-Registration | Select Permits and then scroll to Code Compliance. Select Code Compliance and register under the title Vacant Building Registration. Obtain a local property management company for the property and provide their informant on the Vacant/Abandoned registration to the City. Maintain any changes of a property management company to the City. | $500 |
| 8.40.040.A -Maintenance requirements | The "Property" shall comply with all the requirements and maintenance of chapter 8.40 | $0 |
| 8.40.040.B.1-Abandoned Property Minimum Standards | Take steps to maintain the property to provide the property's aesthetic, so there is no evidence of vacancy. | $500 |
| 8.40.040.B.2 -Abandoned Property Minimum Standards(vegetation) | Maintain the property free of all weeds,  dead plant matter, junk, and debris. Remove weekly any illegal dumping and discarded items on the property. The property is to be maintained clean and neat. | $500 |
| 8.40.040.B.4 -Abandoned Property Minimum Standards | Discard/remove, and properly dispose of any trash and items in public view. | $500 |
| 8.40.040.B.5 -Abandoned Property Minimum Standards | maintain the property free of any graffiti/tagging on the exterior of all structures on the property. The paint shall match all exterior colors. ---RESOLVED--- | $0 |
| 8.40.040.B.6 -Abandoned Property Minimum Standards | Maintain all landscaping in public view clean and healthy. | $500 |
| 8.40.040.B.8 - Abandoned Property Minimum Standards | Boarding is for temporary means only, remove boards and repair/replace a broken window(s)/door(s). Maintain the property secured at all times.<br><br>Summit Plans for rehab or demo for the property within 30 days. | $500 |
| 8.40.050 Security requirements. -Abandoned Property | Maintain the property secured at all times. | $500 |
| 8.40.060.A- Abandoned Property-Signage | Provide an 18"x24" sign for the vacant property as outlined in this code. Ensure all required information is on the signage per Desert Hot Springs Code section 8.40.606.A. | $500 |
| 8.40.065.B.1 -Boarding | All boarding requirements shall be exterior-grade plywood no less than 3/4" in thickness and paint to match the property's color. | $0 |
| 8.40.065.B.2 -Boarding | All boarding requirements shall be exterior-grade plywood no less than 3/4" in thickness and paint to match the property's color. | $0 |

FAC PG 70

| | | |
|---|---|---|
| 8.40.065.B.3 -Boarding | Boarding is for temporary means only, remove boards and replace all broken window(s)/doors. Maintain the property secured at all times. Summit Plans for rehab or demo for the property within 30 days. | $500 |
| IPMC 108.1.3 Structure Unfit for Human Occupancy. | The property owner must remove all person(s) and secure the property. The property owner shall submit plans to Desert Hot Springs Planning and Building Departments to demo or rehab the property by obtaining all permits and requirements from the City of Desert Hot Springs. No work is to be conducted without building permits. No person(s) to occupy/live at the location until permits are final, and under the Health & Safety code, the property is habitable. | $500 |

Total Fines
$5500

**REINSPECTION DATE:** **August 22, 2023**

In order to avoid potential Citations, fines, and other administrative costs as referenced in Municipal Code 4.24.470 "Special Assessment", the corrective actions listed above must be completed by the compliance date above.

 If this box is checked the violations listed above are correctable, when the violations have been cured the fines may be waived.

Signature: _____

Code Compliance Officer:  Linda Human



## CITY OF DESERT HOT SPRINGS

CODE COMPLIANCE DEPARTMENT

11199 Palm Dr. • Desert Hot Springs • CA • 92240
(760) 329-6411• www.cityofdhs.org

## ADMINISTRATIVE CITATION # 28998D

Date Issued: July 26, 2023
APN: 641121010
Case Number: CODE-23-1089
Subject Property: 66907 PIERSON BLVD DESERT HOT SPRINGS, CA 92240

Parcel Owner:    DIANA J. POND
Mailing Address:    66907 PIERSON BLVD
DESERT HOT SPRINGS , CA 92240

Code Compliance Officer:  Tiyler Messer        Email: tmesser@cityofdhs.org

An inspection of your property has revealed the following violation(s) of the Desert Hot Springs Municipal Code section (§):

| Violation Code/Description | Corrective Action | Fines |
|---|---|---|
| 4.16.010.A.1.a - Public Nuisance- Abandoned equipment, machinery, or house items | Remove all household items, furniture, mattresses, appliances, construction material, and all other miscellaneous household items being stored on the exterior of the property and do not store outside. | $100 |
| 4.16.010.A.2-Public Nuisance- Landscaping | Cut away and remove all overgrown and/or dead areas of vegetation. The front of the property does not have sufficient acceptable ground coverage material. Acceptable landscaping shall include any groundcover, decorative rock, decomposed granite, lawn and/or other material as determined to be acceptable or required by the City's Community Development Director or his or her designee. Install acceptable ground coverage to fully cover all unpaved areas of the property. | $100 |
| 4.16.010.A.3-Public Nuisance-Weeds | Cut away and remove all weed growth on the property. | $100 |
| 4.16.010.A.5-Public Nuisance- Fire Hazard | Remove and properly dispose of all dry or dead plant matter, combustible refuse and waste or any other matter which by reason of its size, manner of growth and location, constitutes a fire hazard. | $100 |
| 4.16.010.A.10-Public Nuisance-Termites, Insects, Vermin or Rodents | Remove and properly dispose of all junk, trash, discarded items, furniture, household items, and all other items that could result in creating a habitat for termites, insects, vermin or rodents that presents a threat to the health and safety of the public and/or a threat to property. | $100 |
| 4.16.010.A.13-Public Nuisance-Offensive Odors | Remove all animal feces on the property and any other matter that is causing an odor to be emitted from the property. | $100 |
| 4.16.010.A.19.a-Public Nuisance- Deteriorated Walls/Fences/ Stucco | Repair or replace the dilapidated garage door so it is in good working order and does not contain dings, dents or chipped paint. Repair or replace all portions of dilapidated facia board and paint all facia board to match. Paint all facia board so there is not any peeling, flaking, or chipped areas of paint. | $100 |
| 4.16.010.A.19.e-Public Nuisance- Visual Blight-Junk/refuse/garbage visible | Remove and properly dispose of all junk, trash, discarded items, and debris from the exterior of the property. | $100 |
| 17920.3.j-Housing, Fire, Health, Safety Hazard Waste Accumilation | Remove all household furniture, mattresses, other household items, junk, trash, discarded items, appliances, and other miscellaneous items being stored on the exterior of the property. | $100 |
| 4.16.010.A.23-Public Nuisance- Safety Hazard | Remove, repair, or replace the dilapidated patio cover at the rear of the property. | $100 |
| 17920.3.a1- Health & Saf. Code §17920.0. Substandard Buildings Housing, Sanitation- Lack of, or improper water closet, lavatory, or bathtub or shower in a dwelling unit. | Repair or replace damage to water closet, lavatory, or bathtub or shower in the dwelling unit so there is running hot and cold water in all bathrooms. | $100 |
| 4.16.010.A.17-Public Nuisance- Illegal, Nonconforming Building or Structure | Obtain a building permit for the newly installed water heater. | $100 |
| 17920.3.a.12 - Health & Saf. Code §17920.0. Infestation of insects, vermin, or rodents | Have a license and reputable pest control company remove and/or exterminate all insects, vermin, or rodents on the interior of the property. Provide a detailed report from the pest control company that shows the inspectors findings and plans to rectify. | $100 |
| 17920.3.a,5 - Health & Saf. Code §17920.0. Substandard Buildings Housing, Sanitation- Lack of hot and cold running water to plumbing fixtures in a dwelling unit. | Repair or replace damage to water closet plumbing, lavatory, or bathtub or shower in the dwelling unit so there is running hot and cold water in all bathrooms. | $100 |
| 17920.3.e - Health & Saf. Code §17920.0. Housing- All plumbing | Repair or replace all plumbing pipes so there is no leaking and connect the house to the local water utility service. | $100 |

**Total Fines**
**$1,500.00**

FAC PG 72

In order to avoid potential Citations, fines, and other administrative costs as referenced in Municipal Code 4.24.470 "Special Assessment", the corrective actions listed above must be completed by the compliance date above.

 If this box is checked the violations listed above are correctable, when the violations have been cured the fines may be waived.

Signature:

Code Compliance Officer:  Tiyler Messer



# CITY OF DESERT HOT SPRINGS

CODE COMPLIANCE DEPARTMENT    11199 Palm Dr. • Desert Hot Springs • CA • 92240
(760) 329-6411• www.cityofdhs.org

## ADMINISTRATIVE CITATION # 28930D

Date Issued: July 5, 2023
APN: 638171011
Case Number: CODE-23-550
Subject Property: 9331 VISTA DEL VALLE DESERT HOT SPRINGS, CA 92240

Parcel Owner:       SEAN GREGORY TORRES

Mailing Address:    9331 VISTA DEL VALLE
                    DESERT HOT SPRINGS , CA 92240

Code Compliance Officer:  Linda Human        Email: lhuman@dhspd.com

An inspection of your property has revealed the following violation(s) of the Desert Hot Springs Municipal Code section (§):

| Violation Code/Description | Corrective Action | Fines |
|---|---|---|
| 4.16.010.A.2-Public Nuisance- Landscaping | Provide landscaping ground cover and maintain such landscaping in front and side yards that are in public view. The landscape requirements for all single-family residences call for a minimum of two 15-gallon droughts tolerant -shade trees and two 5-gallon drought-tolerant shrubs in addition to having all unpaved and unbuilt areas fully covered with landscape ground covers such as decorative rock, decomposed granite, or similar material. Install all landscapes to meet the above requirements. Note: There is no parking on the rock ground cover(side yard no parking); all parking is in the driveway. If you want more parking, contact the City Planning Department for the requirements. | $500 |
| 4.16.010.A.19.b-Public Nuisance- Visual Blight- Cracked/Broken Windows/Roofs | Repair the front broken window. | $500 |
| 4.16.010.A.19.e-Public Nuisance- Visual Blight- Junk/refuse/garbage visible | Remove and properly dispose of the accumulated junk, household items and discarded items from the front, side and rear yards of the property. | $500 |
| | Total Fines | $1500 |

**REINSPECTION DATE:  July 20, 2023**

In order to avoid potential Citations, fines, and other administrative costs as referenced in Municipal Code 4.24.470 "Special Assessment", the corrective actions listed above must be completed by the compliance date above.

If this box is checked the violations listed above are correctable, when the violations have been cured the fines may be waived.

Signature:

Code Compliance Officer:  Linda Human

FAC PG 74

Exhibit  3

12/22/24, 8:22 AM
FAC PG 75
Case 8:24-cv-02793-MCS-E   Document 6-1   Filed 01/29/25   Page 14 of 261   Page ID #:336
Superior Court of California, County of Riverside Class Specification Bulletin



### Superior Court of California, County of Riverside
# Court Commissioner

| | | | |
|---|---|---|---|
| **CLASS CODE** | CTCOMMB | **SALARY** | $207,348.96 Annually |
| **ESTABLISHED DATE** | May 11, 2011 | **REVISION DATE** | August 26, 2019 |

---

#### Definition and Class Characteristics

This at-will position under the authority of the Judges of the Court, and at the direction of the Presiding Judge, Court Commissioners perform various judicial functions as prescribed by law or conferred by the court.

The power and authority of Court Commissioners is specified in Article VI, Section 22, of the California Constitution, Code of Civil Procedure Section 259 and Government Code Section 71622. Court Commissioners have the same jurisdiction and exercise the same powers and duties as the judges of the courts with respect to infractions and small claims actions, and in other matters pursuant to stipulation of the parties. Court Commissioners perform judicial and quasi-judicial functions to assist the court in performing its constitutional and statutory duties for the administration of justice, with primary responsibility for presiding over a daily court calendar as assigned, including acting as a temporary judge in appropriate cases, and performing other related duties as assigned.

#### Essential Duties

Duties may include, but are not limited to, the following:

Acts as Temporary Judge pursuant to stipulation of counsel or parties; conducts a daily court calendar; presides over hearings and trials; makes rulings, findings, judgments and orders.

Arraigns defendants; hears reviews and rules on or determines a variety of petitions, motions and other actions; takes evidence from witnesses; makes or recommends appropriate court orders; accepts pleas and imposes sentences; sets cases for hearings and trials; and conducts court and jury trials.

Performs the functions of a referee of the Juvenile Court as prescribed by Welfare and Institutions Code Section 147.

Conducts judicial hearings in family support cases involving Title IV of the Social Security Act, and cases filed by the District Attorney to establish paternity and other child support-related matters; may act as a judge pro-tem in such matters, or as a commissioner making findings and recommendations subject to review by a judge of the court.

Performs one or more of the functions of a probate commissioner, including review of pleadings and accountings in probate, guardianship, conservatorship and related matters; approves creditors' claims, ex parte requests and other probate actions; and presides over probate proceedings as assigned.

Presides over proceedings involving such matters as criminal and traffic arraignments, hearings and trials of infractions, misdemeanors and felonies, including day and evening court sessions as assigned.

Presides over proceedings in civil and small claims actions.

Reviews court files, documents and related materials to assess cases prior to and following hearings; prepares court documents, records, reports correspondence and other written materials pertaining to case findings.

Performs other related duties as assigned by the Presiding Judge.

**Minimum Qualifications**

License or Certifications:

Must be an active member in good standing of the California Bar for a period of at least ten (10) years prior to appointment, unless inactive membership due to previously holding the position of judge, referee or commissioner. Applicants with less than ten (10) years membership in the California Bar may request an exemption pursuant to Section 10.701(b) of the California Rules of Court. Persons seeking appointment, as a Court Commissioner must demonstrate relevant legal experience as deemed sufficient by the Judges of the Court.

Special Requirement: The employee must have the ability to transport himself/herself between or among different work locations when needed to carry out job-related essential functions. If traveling in own vehicle or court vehicle you must possess a valid California driver's license.

**Other Information**

Physical Characteristics: Strength, dexterity, coordination and vision to use a keyboard and video display terminal on a daily basis. Hearing to communicate with the public and court staff. Dexterity and coordination to handle files and single pieces of paper; occasional lifting of objects weighing up to 25 lbs. such as files, stacks of papers, reference and other materials. Moving from place to place within an office; some reaching for items above and below desk level.

Working Environment: Work is performed in the courtroom and related court facilities and includes but is not limited to contact with judges, staff attorneys, and the public.

Clarifying Statement: This job description will be reviewed periodically and responsibilities change with business necessity. Principal and marginal job functions are subject to modification. This job description is not intended and should not be construed as an exhaustive list of all responsibilities, skills, or working conditions associated with this job.

Unit: Judicial
FLSA Status: Exempt
Reports to: Supervising Judge
Amount of Travel Required: less than 15%
Positions Supervised: None

FAC PG 76

FAC PG 77

Exhibit __4__

FAC PG 78

1  JOSEPH MINER (pro per)
   PO Box 11650
2  Costa Mesa, CA 92627
   (949) 903-5051 (cell)
3  josephminer@gmail.com

4

5                  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

6                        **RIVERSIDE COUNTY - PALM SPRINGS**

7
   CITY OF DESERT HOT SPRINGS,          Case No.: **CVPS2106001**
8  a municipal entity,
                                        Related Cases No: **CVPS2106016**
9                Plaintiff and Respondent,
                                        **NOTICE OF MOTION AND MOTION TO**
10                                      **VACATE VOID ORDER AND JUDGMENT;**
                 vs.                    **DECLARATIONS OF JOSEPH MINER,**
11                                      **JOSEPH ROSENBLIT ESQ. IN SUPPORT**
   JOSEPH MINER,
12 an individual,                       **LIMITED CIVIL JURISDICTION**

13               Defendant and Appellant.   Filed:     Reserved
                                        Judge:     TBD
14                                      Hearing:   1/26/24
                                        Res:       348817813014
15

16

17 TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

18         PLEASE TAKE NOTICE that on 1/26/24 at 8:30 a.m., or soon thereafter as

19 the matter may be heard, in Department PS4 or a referred courtroom, of the above-entitled Court,

20 located at 3255 E.  Tahquitz Canyon Way Palm Springs, California 92262, Defendant and

21 Appellant JOSEPH MINER ("Defendant" or "Miner") will, and hereby does, move for an order

22 to vacate the void Order and Judgment based on law and fact subordinate judicial officer Arthur

23 Hester lacked fundamental jurisdiction, as a commissioner: (1) to adjudicate any issue that was

24 not a subordinate judicial duty, (2) to adjudicate the separate "special proceeding" ~ the

25 vexatious litigant motion, (3) to make the vexatious litigant decree, (4) to adjudge and sign the

26 pre-filing Order as a judge when he was not, (5) to mandate Defendant post security to defend

27 himself, (6) to impose a permanent injunction against Defendant in limited civil jurisdiction, (7)

28 to issue a judgment of dismissal based on errors of the court.

FAC PG 79

1    This Motion is being made pursuant to Code of Civil Procedure sections 473(d) AND

2    common law on the ground that the proper procedure of a direct attack on the void order and

3    judgment by motion under section 473, subdivision (d) which states: "The court may, ... on

4    motion of either party after notice to the other party, set aside any void judgment or order."

5    This motion is based on the notice of motion, the memorandum of points and authorities,

6    Declaration of Joseph Miner, exhibits and proposed order concurrently filed  herewith, all

7    pleadings, papers and case law on file with the court herein, and such further material as may be

8    submitted  prior to or at the hearing on this motion.

9    PLEASE TAKE FURTHER NOTICE that pursuant to Riverside Superior Court, local

10    court rules, the Court will make a tentative ruling on the merits of this matter by 3:00 p.m. on the

11    court day prior to the hearing. Tentative rulings will be available on the Internet or by calling

12    1-760-904-5722.

13    To view go to: http://www.riverside.courts.ca.gov and click on the tentative ruling link.

14    The tentative ruling shall become the ruling of the Court unless, by 4:30 p.m. on the court day

15    before the scheduled hearing, a party gives notice of intent to appear to all parties and the court.

16    The notice of intent to appear must be given either in person or by telephone. Where notice of

17    intent to appear has been properly given, or upon direction of the Court, oral argument will be

18    permitted.

19    This is a motion by Joseph Miner ("Defendant" or "Miner") to vacate the void order[s]

20    and related void judgment by the court following a vexatious litigant proceeding held September

21    22, 2022 in front of Hon. Arthur Hester, a commissioner, a subordinate judicial officer.

22

23    /s/ Joseph Miner (pro per) 1/4/2024

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**II.    RELEVANT FACTS AND PROCEDURAL HISTORY** . . . . . . . . . . . . . . . . . . . . . 9

    A.  Defendant's Ranch . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B.  Defendant Miner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    C.  Ranch Rental. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    D.  Code Enforcement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    E.  Fine and Administrative Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    F.  Transition from Administrative to Civil . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    G.  Commissioner verses Judge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    H.  Jurisdiction Altering Non-Stipulations and Court Minutes . . . . . . . . . . . . . . . . 11

    I.   Stipulation is Mandate To Act As a Judge . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    J.   General hearing proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    K.  Relevant Proceedings And Events Before And After Judgment. . . . . . . . . . . . . . 13

**III.    LEGAL ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    A.  Waiver Requires Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    B.  The Procedure is a Subordinate Judicial Duty . . . . . . . . . . . . . . . . . . . . . . . . 15

    C.  Commissioners Possess No Judicial Power . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    D.  Defendant Refused to Stipulate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
       1.  Commissioners Require Stipulation To Act As Judge . . . . . . . . . . . . . . . . . . . 16
       2.  Law Does Not Authorize a Commissioner to Decide All Legal Issues . . . . . . . . . 16
       3.  Miner Was Entitled To A Judge Pursuant To The Court's Rules. . . . . . . . . . . . . 16

    E.  Notice was Required By The Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
       1.  Horton Is Distinguishable ~ No Comparison . . . . . . . . . . . . . . . . . . . . . . . . 17

    F.  Subject Matter Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    G.  Fundamental Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    H.  Vexatious Litigant Declaration and Orders Are Permanent Injunctions. . . . . . . . . 17

    I.   Permanent Injunctions May Not Issue By Law In Limited Jurisdiction . . . . . . . . . 17

    J.   Improper Citations Do Not Confer Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . 18

1

<u>**TABLE OF CONTENTS - CONTINUED**</u>

2

K.  Due Process Requires Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

3

L.  Waiver and Forfeiture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

4

M. No local rule to stipulate. No plaque. No Notice. No due process . . . . . . . . . . . . . . . . . 18

5

N.  The Law Does Not Require Futile Acts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

6

O.  Manifestly Unjust Decisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

7

P.  Relevant Cases - Foosadas and Horton. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

8

Q.  The Court Granted Relief It Had No Authority to Grant . . . . . . . . . . . . . . . . . . . . . . . 21

9

R.  The Right To A Judge Is a Constitutional Dimension . . . . . . . . . . . . . . . . . . . . . . . . . 22

10

IV. SUMMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

11

V.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

12

DECLARATION OF JOSEPH MINER

13

EXHIBITS

14

DECLARATION OF JOSEPH ROSENBLIT

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>**TABLE OF AUTHORITIES**</u>

2

**STATE**

3

Abelleira v. District Court of Appeal, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

4

17 Cal. 2d 280, 109 P.2d 942, 109 Cal. Rptr. 942 (1941).

5

Aetna Life Ins. Co. v. Superior Court, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 18, 23, 29

6

182 Cal. App. 3d 431, 227 Cal. Rptr. 460 (Ct. App. 1986).

7

Becker v. SPV Construction Co., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

612 P.2d 915, 27 Cal. 3d 489, 165 Cal. Rptr. 825 (1980)

8

Bernie v. Stevens,  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

9

A123102 (Cal. Ct. App. Mar. 13, 2009)

10

Bradley v. Kent, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

11

22 Cal. 170 (Cal. 1863)

12

Conservatorship of O'Connor (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

48 Cal.App.4th 1076, 1087, 56 Cal.Rptr.2d 386.)

13

Cowan v. Superior Court,  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

14

14 Cal. 4th 367, 58 Cal. Rptr. 2d 458, 926 P.2d 438 (1996).)

15

Davidson v. Superior Court,  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

16

82 Cal. Rptr. 2d 739, 70 Cal. App. 4th 514, 70 Cal. 4th 514 (Ct. App. 1999).

17

Dedication & Everlasting Love to Animals, Inc. v. City of El Monte, . . . . . . . . . . . . . . . . . 18, 26

18

85 Cal. App. 5th 113, 301 Cal. Rptr. 3d 141 (Ct. App. 2022).

19

Estate of Buckley,  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

132 Cal.App.3d 434, 183 Cal. Rptr. 281 (Cal. Ct. App. 1982)

20

Foosadas v. Superior Court, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

21

30 Cal. Rptr. 3d 358, 130 Cal. App. 4th 649 (Ct. App. 2005).

22

Grannis v. Superior Court, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

23

146 Cal. 245, 79 P. 891 (Cal. 1905)

24

Hamblin v. Superior Court, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

25

195 Cal. 364, 233 P. 337 (Cal. 1925)

26

Harutyunyan v. Superior Court, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

169 Cal. App. 4th 454 (Ct. App. 2008).

27

Hunter v. Superior Court, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

28

36 Cal.App.2d 100, 97 P.2d 492 (Cal. Ct. App. 1939)

In re Buckley, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
10 Cal.3d 237, 110 Cal. Rptr. 121, 514 P.2d 1201 (Cal. 1973)

In re Edgar M., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 23, 29
537 P.2d 406, 14 Cal. 3d 727, 122 Cal. Rptr. 574 (1975)

In re Eduardo G., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
108 Cal.App.3d 745, 166 Cal. Rptr. 873 (Cal. Ct. App. 1980) .p 753

In re Estate of Shaw, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
B188153 (Cal. Ct. App. Dec. 3, 2007).

In re Frye, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22
150 Cal.App.3d 407, 197 Cal. Rptr. 755 (Cal. Ct. App. 1983)

In re Horton, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
813 P.2d 1335, 54 Cal. 3d 82, 284 Cal. Rptr. 305 (1991)

In re Jasmine G., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
26 Cal. Rptr. 3d 394, 127 Cal. App. 4th 1109 (Ct. App. 2005)

In re Mark L., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
34 Cal.3d 171, 193 Cal. Rptr. 165, 666 P.2d 22 (Cal. 1983)

In re Marriage of Galis, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15, 19, 23, 29
149 Cal.App.3d 147, 196 Cal. Rptr. 659 (Cal. Ct. App. 1983)

In re Marriage of Olson, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
14 Cal.App.4th 1, 9, 17 Cal. Rptr.2d 480 (1993)

In re Steven A., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17, 22
15 Cal.App.4th 754, 19 Cal. Rptr. 2d 576 (Cal. Ct. App. 1993)

Jovine v. FHP, Inc., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
64 Cal.App.4th 1506, 76 Cal. Rptr. 2d 322 (Cal. Ct. App. 1998)

Kabran v. Sharp Mem'l Hosp., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
2 Cal.5th 330, 212 Cal. Rptr. 3d 361, 386 P.3d 1159 (Cal. 2017)

Kim v. Superior Court, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
64 Cal.App.4th 256, 75 Cal. Rptr. 2d 468 (Cal. Ct. App. 1998)

Luckett v. Panos, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 29
161 Cal.App.4th 77, 73 Cal. Rptr. 3d 745 (Cal. Ct. App. 2008)

Michaels v. Turk, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
239 Cal.App.4th 1411, 191 Cal. Rptr. 3d 669 (Cal. Ct. App. 2015)

1

2

Nierenberg v. Superior Court, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 23
59 Cal.App.3d 611, 130 Cal. Rptr. 847 (Cal. Ct. App. 1976)

3

4

Olivera v. Grace, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
19 Cal.2d 570, 122 P.2d 564 (Cal. 1942)

5

People v. Saunders, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
5 Cal.4th 580, 20 Cal. Rptr. 2d 638, 853 P.2d 1093 (Cal. 1993)

6

7

People v. Tijerina, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15, 22, 23, 29
1 Cal.3d 41, 81 Cal. Rptr. 264, 459 P.2d 680 (Cal. 1969)

8

9

Pittman v. Beck Park Apartments Ltd., (ancillary issue) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 23
20 Cal.App.5th 1009, 230 Cal. Rptr. 3d 113 (Cal. Ct. App. 2018)

10

Poulson v. Bank of America, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
No. E056220 (Cal. Ct. App. Apr. 23, 2014).)

11

12

Reisman v. Shahverdian, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 23
153 Cal.App.3d 1074, 201 Cal. Rptr. 194 (Cal. Ct. App. 1984)

13

14

Rescue Army v. Municipal Court, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
28 Cal. 2d 460, 171 P.2d 8 (1946).

15

16

Rochin v. Pat Johnson Manufacturing, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17
67 Cal.App.4th 1228, 1239, 79 Cal.Rptr.2d 719 (1998)

17

18

Ruisi v. Thieriot, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
53 Cal.App.4th at p. 1209, 62 Cal.Rptr.2d 766.)

19

Settlemire v. Superior Court, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
129 Cal. Rptr. 2d 560, 105 Cal. App. 4th 666 (Ct. App. 2003).)

20

21

Smith v. Dorn, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
96 Cal. 73, 30 P. 1024 (Cal. 1892)

22

23

Taliaferro v. Hoogs, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
236 Cal. App. 2d 521, 46 Cal. Rptr. 147 (Ct. App. 1965).

24

Ytuarte v. Superior Court, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 23
28 Cal. Rptr. 3d 474, 129 Cal. App. 4th 266 (Ct. App. 2005).

25

**FEDERAL**

26

Arizona v. Fulminante, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302) (1991)

27

28

Brewer v. Williams, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
430 U.S. 387, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977)

Johnson v. Zerbst, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938)

Louisville Nashville R.R. v. Mottley, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
211 U.S. 149, 29 S. Ct. 42 (1908)

Mullane v. Central Hanover Bank & Trust Co. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865.)  (1950)

United States v. Cotton, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
535 U.S. 625, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002).

United States v. Olano, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
507 U.S. 725, 733 (123 L.Ed.2d 508, 519, 113 S.Ct. 1770)] (1993)

**CALIFORNIA CONSTITUTION**
Article VI, Section §21, 22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20, 23, 26

**STATUTES**
Code of Civil Procedure § 85-100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
Code of Civil Procedure § 92(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
Code of Civil Procedure § 92(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
Code of Civil Procedure § 259 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
Code of Civil Procedure § 391-391.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 30
Code of Civil Procedure § 473 (d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9
---
Government Code § 53069.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**RULES OF COURT**
2.816 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
8.1115 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

FAC PG 86

1
2

## MEMORANDUM OF POINTS AND AUTHORITIES
## I. INTRODUCTION

3       This matter is brought pursuant to CCP. §473 D and any applicable law to challenge the

4   void order and void judgment described herein. The subordinate judicial officer lacked

5   jurisdiction and authority to declare Defendant / Appellant a vexatious litigant, order security

6   against defendant, and issue a Judgment of dismissal based on Defendant's refusal to post

    security; an Order the commissioner has no authority to grant in limited civil, a jurisdiction that

7   does not permit this relief. A legal nullity. *(Olivera v. Grace Cal: Supreme Court, 1942)*

8       For the first time in this 60 year law CCP. §391 et sec., a civil trial Defendant was

9   declared a vexatious litigant, and mandated to post security to defend himself, by a subordinate

    judicial officer, in limited civil jurisdiction, in a de novo trial / appeal of an administrative

10  citation. The only time a "defendant" has been declared vexatious for "defending" a citation.

11      The **Court of Appeal** (4th Dist. Div 2) has captioned the case pursuant to its own analysis

    and procedure. It clarified that Joseph Miner is the Defendant and Appellant. (ex 3)

12      Defendant Appellant directly challenges the order, security and judgment based on the

13  court's and commissioner's lack of fundamental, and subject matter jurisdiction and judicial

    authority to decide the issues and grant relief he was not entitled to grant. The judgment is void.

14  ## II. RELEVANT FACTS AND PROCEDURAL HISTORY

15  **HISTORICAL CASE FACTS**

16      Because this motion will not be heard by the trial commissioner, additional history will be

    offered. This overview is scant. The commissioner ignored Defendant's multiple legal defenses.

17  **A. Defendant's Ranch**

18       In 2003 Joseph Miner purchased a fenced and walled 5 acre, four parcel ranch, on the

19  fringe of open desert. The ranch was situated between Palm Springs to the south, and Desert Hot

    Springs to the north in Riverside county jurisdiction. In 2010 the City of Desert Hot Springs

20  annexed 4,000 acres of desert. The ranch was annexed into the jurisdiction of the City.

21      The ranch is on the edge of the city. The adjacent neighbors are a pet cemetery, mini-

22  storage, auto wrecking yard, and a decrepit trailer park. City approved marijuana grow facilities

    are a mile to the west of the ranch where they grow 2,000,000 sf of marijuana. Although legal in

23  California, Defendant Miner has no connection to the marijuana industry.

24  **B. Defendant Miner**

25      Defendant Miner is a 68 year old senior, a 30-plus year California Real Estate broker,

26  owner of All Cities Realty, and a certified general real estate appraiser. His home base in Orange

    County California. He is significantly and professionally familiar with the instant issues such as

27  codes and zoning.

28      Prior to the instant case Miner has never had an issue with the City. No citizen

FAC PG 87

complaints, no code complaints, no litigation. Miner has owned the ranch location for 20 years.

**C. Ranch Rental**

As Miner has done since the purchase of the ranch and guest house twenty years ago, he has occasionally rented parts of the property. In late 2019 at the beginning of COVID Miner rented part of the property to men who stated they planned to open a nursery. COVID became intense, Miner did not travel often. Travel restrictions were in place.

**D. Code Enforcement**

Apparently, during COVID, the men grew some marijuana in a greenhouse. The County Sheriffs department stopped the operation. The Sheriff is a separate agency from the City.

After a mysterious notification, by someone unknown, sent to code enforcement – in a separate and distinct act, City code enforcement decided to travel to, enter and search the ranch, on 4/28/21, without warrant. Four land parcels and six buildings were searched. Two code cases were secretly opened. Miner was not notified by the City.

Miner visited the area. He discovered the ranch wide open on 5/1/21 (as the city left it). He took control of the property. He called a crew to perform property maintenance and began to investigate. He found out about the Sheriff operation from a neighbor.

About forty days later, out of the blue, a code officer telephoned Miner, wanting to "re-inspect" the ranch. Miner was confused. The officer "pre-texted" he just wanted to take some photographs inside the gate. He would not produce the warrant. Eventually Miner declined.

The very next day the code officer began sending Miner a flurry of documents stating there were code issues with the ranch. His documents were rooted in the warrantless unlawful search. Miner believed he was being harassed by an angry code officer who was refused entry.

Because of Miner's professional background, and since it is a 5 acre ranch in the desert, not a home in a subdivision, and it was conforming to surrounding neighborhood properties, Miner did not agree with the officer's allegations. The citation was scant, in violation of the city's code, and was confusing. The simple issues did not rise to "public nuisances" per law.

**E. Fine and Administrative Hearing**

Miner paid the fine in advance. He requested an administrative hearing. While waiting the appeal the officer repetitively cited Miner for the exact same issues expanding fines to $4,000.

Miner filed a thorough brief with the City. The City failed to notify Miner of the hearing date per the law. The hearing was held without Miner present in violation of due process. The hearing officer opined on the facts, he ignored the law offered in Defendant's brief. Miner's only recourse was to again follow the law and reclassify pursuant to GC. §53069.4(b)(1).

**F. Transition from Administrative to Civil**

Miner educated himself in the law. He discovered the case specifically becomes a "limited civil case" He believed he could obtain discovery, interrogatories, admissions, witnesses

1  and a deposition for his defense pursuant to CCP. §85-100. As the proceeding progressed Miner

2  educated himself more and more about all issues relevant to the citation and procedures.

3      On 12/6/21 Miner filed a simple caption to reclassify the case to limited civil jurisdiction.

   On 12/7/21 Miner received a case assignment from the court stating that Hon. Arthur Hester was

4  assigned to the case. The document did not indicate what role Hon. Arthur Hester was in. (ex 4)

5  The first hearing was scheduled for 1/6/22.

6      1/6/22. Miner appeared in court. Michael Knighten was the judicial officer, not Arthur

   Hester. After a short colloquy Miner was in shock as it appeared Michael Knighten, judge pro

7  tem wanted to put on a trial that day. Miner was able to have the case continued. (ex 5)

8      1/18/22. Miner filed a ex parte motion requesting more time. This time Hon. Arthur

9  Hester commissioner was presiding. Miner was given a two week continuance - which shocked

   Miner. It became clear Hon. Arthur Hester was a court commissioner; not a judge. (ex 6)

10     Miner continued his education. He discovered the "administrative citation" de novo

11 procedure is a "subordinate judicial duty." A commissioner is by default a subordinate judicial

12 officer. The commissioner, *as a subordinate judicial officer*, could legally preside over a

   "properly created and issued" administrative citation "appeal" de novo without stipulation. This

13 seems to create a *legal paradox* when statutory limitations on a commissioner are considered as

14 will be discussed below. Every adjudicator to date continues to ignore this legal paradox.

15     Miner learned that a subordinate judicial officer could preside over minor "subordinate

16 judicial duty" issues and relate his findings or made recommendations to a judge for approval.

   Case law makes clear commissioners' judicial limitations. (See Decl. Miner)

17 **G. Commissioner verses Judge**

18     Never, not one time, in any way, did the court notice the parties that the Commissioner

19 would act as a temporary judge or judge pro tem. The level of the hearing called for a subordinate

   judicial officer. Arthur Hester was a commissioner (subordinate judicial officer).

20     A court commissioner, acting as a subordinate judicial officer, is effectively a finder of

21 fact. It seems they are to confirm a hearing officer's fact findings; not make conclusions of law or

22 decide serious legal issues. This is where the proceeding began to fall off of the rails.

23 **H. Jurisdiction Altering Non-Stipulations and Court Minutes**

24     After two short continuances, at the third appearance on 2/4/22, Miner decided to choose

   a superior court judge pursuant to the court's offer through the clerk. (See Decl Miner . ¶-¶)

25     Miner attended the hearing. Again, Hon. Arthur Hester was not present. James Hodgkins,

26 judge pro tem was the judicial officer. The court clerk stated in open court to all parties "you

   have a ***choice of a commissioner or a judge*** to hear your case."

27     Miner knew the issues were complex. He stated to the clerk he wanted a judge. He was

28 instructed to request a judge when his case was called. Miner accepted the court's offer of

adjudication by a judge.

The case was called. Miner stated from the counsel table he wanted his case heard by a judge. An immediate colloquy began between Mr. Vu, Mr. Hodgkins and Mr. Miner.

Mr. Hodgkins stated he would recuse himself. Miner's request was tantamount to a rejection and continuing refusal to stipulate to a subordinate judicial officer, commissioner, temporary judge - at the same time agreeing to and confirming adjudication before a judge. The hearing ended. Miner expected notice of a judge being assigned. (See Decl. Miner).

Miner orally, expressly and precisely, chose a judge. There were then lulls between hearings. No rule or law states Miner must non-stipulate more than once, but he did. *(In re Marriage of Galis, p. 150; In re Marriage of Olson, p. 8; Settlemire v. Superior Court, p. 563)*

• Miner requested a judge orally in open court 2/4/22. ROC 2.816(b)(3). (ex 7)

• Miner non stipulated in NOTICE OF NON STIPULATION filing 6/7/22. (ex 8)

• Miner non stipulated by filing a non-stipulation motion 6/8/22. (ex 9)

• Miner non stipulated orally in the am hearing to the commissioner. 6/23/22

• Miner non stipulated on record to commissioner and it was acknowledged on the record three times (RT (1) Ex 24A:14-17, (2) B:3-6, (3) 247:3-7) (ex 24)

Defendant had non-stipulated to the commissioner so many times he finally gave up. The law does not require futile acts. The commissioner was aware of the non-stips. (See Decl. Miner)

There is no NOTICE, no text, no statement, no discussion, or colloquy in this entire record that Miner stipulated to the commissioner to be anything more than a subordinate.

Miner expressly orally non-stipulated, then filed documents IN ADVANCE stating he was non stipulating to the commissioner to act as a judge or temporary. The commissioner proceeded. *(Harutyunyan v. Superior Court, (2008).*

Miner was never noticed by the court it intended to act more than a commissioner, which is a subordinate judicial officer, not a temporary judge. There was NO NOTICE, no due process, and no authority agreement to act as a "temporary judge." (See Decl. Miner)

**I. Stipulation is Mandate To Act As a Judge**

Stipulation is mandate for a subordinate judicial officer to act as a judge. The stipulation is not merely a regulation of procedure, but is what allows the temporary judge authority over the parties. **Without it, the court has no jurisdiction in the fundamental sense.** *(People v. Tijerina (1969); In re Steven A. (1993))*

**J. General hearing proceedings**

In Miner's opinion and observation the commissioner was treating this "de novo" trial, where discovery is permitted, as a small claims matter, not a limited civil case pursuant to CCP. §85-100. There was no case management. No trial setting conference. No discovery. It was not being adjudicated as a limited civil case. Defendant became very concerned. (See Decl. Miner)

Miner is generally familiar with litigation. He is familiar with waiver and forfeiture. To protect himself he subpoenaed witnesses, he crafted motions, and a demurrer. The commissioner violated rules of the court, failed to clarify case management, and was attempting to stifle Miner case at every juncture. He gutted Miner's case. He did not seem to grasp the case was "de novo."

When the hearing came the commissioner overruled every document Miner filed. Most without even a read (RT: ex 10). This is verifiable by his own statement s in the reporter's transcript and Defendant's personal observations in court. (See Decl. Miner) It was confusing the commissioner was not involving a judge. It was also confusing the case was not being transferred to a judge. (See Decl. Miner)

The commissioner appeared frustrated, perhaps angry. At a calculated moment the City filed a vexatious litigant motion, converted itself to Defendant, and Miner to Plaintiff.

Miner spoke to his attorney who, pro bono, agreed to "assist" and argue for Miner in a hybrid defense. Miner also argued for himself. The multiple non-stipulations and §170 filings of no confidence were clear. The commissioner ruled that a Defendant, defending himself, was a vexatious litigant and dismissed the case when Miner refused to pay security for his own defense.

The Order was appealed. Non stipulations by Miner were addressed in the AOB and ARB. The Appellant Department simply ignored the non stipulations and legal issues in much of the brief.

The Appellate Department grossly mis-stated and mis-characterized the appeal. Miner requested transfer to the Court of Appeal, this was denied because of special rules. The Court of Appeal clarified the case caption indicating Miner was the Defendant and Appellant, not the Plaintiff as the commissioner had ruled. (ex 3)

ONLY a defendant can make a motion to declare a Plaintiff a vexatious litigant. This fact makes the City's motion and the commissioner's Order and dismissal moot. But here we are.

**K. Relevant Proceedings And Events Before And After Judgment**

| Date | Event | Exhibit |
|------|-------|---------|
| 12/07/21 | Case assignment | #4 |
| 01/06/22 | First hearing (Knighten) | #5 |
| 02/04/22 | Third hearing (Hodgkins) Miner requests judge | #7 |
| 09/22/22 | Pre-filing Order (Commissioner Signed as Judge) | #2 |
| 11/09/23 | Order on appeal / Opinion | #14 |
| 11/27/23 | Miner files petition for rehearing | #15 |
| 12/11/23 | Petition to to Court of Appeal | #16 |
| 12/19/23 | Denial to Transfer. Court of Appeal re-captions case | #3 |
| 12/29/23 | Remittur (Appellate Division) | NA |

### III. LEGAL ARGUMENT

"Lack of jurisdiction in its most fundamental or strict sense
means an entire absence of power to hear or determine the case,
an absence of authority over the subject matter or the parties."
~ Supreme Court of California. In Bank.

When subordinate jurisdiction ends, judicial jurisdiction begins. Adjudication of a "de novo" administrative citation appeal proceeding is, by statute, GC. §53069.4 (b)(3), a "subordinate judicial duty." Therefore, A = B; the citation itself, its allegations, the underlying issues, and all relevant proceedings or special proceedings must also be cabined within "subordinate judicial duty" or the issues cannot be legally adjudicated by a commissioner.

A void judgment is subject to attack at any time. This court retains jurisdiction to entertain a motion to vacate void judgment *(Rochin v. Pat Johnson Mfg. Co., (1998) #III.).*

Here, there were two separate proceedings, the commissioner acted without jurisdiction in both. It is the ancillary *(Pittman v. Beck Park Apartments Ltd.)* separate special vexatious litigant proceeding *(Taliaferro v. Hoogs [8])* that is the subject of this specific motion.

It has not been controverted that Defendant requested a judge 2/4/22, non-stipulating, and on 6/7/22 he noticed the court again, and stated he would not stipulate to "any further proceedings" before the commissioner.

"PLEASE TAKE NOTICE that Defendant JOSEPH MINER pursuant to local rules, rule of court, and case law does not stipulate to further proceedings to be heard by a Commissioner. Defendant files this notice of non-stipulation for all further proceedings in cases CVPS2106001 and CVPS2106016. These cases are not to be heard by a Subordinate Judicial Officer, Commissioner, or Temporary Judge." (ex 6)

Additionally, Miner non stipulated on the record 6/23/22. The trial court noted the non-stipulation. No additional non-stipulation was required. (ex 24A/B ). Lastly, the Court included in its "vexatious findings" that Miner had non-stipulated. (ex 24C )

The separate vexatious litigant special proceeding did not occur until 9/22/22. However, if in fact the commissioner attempted to act as a temporary judge he was mandated to obtain a new stipulation. The commissioner did not have the authority to act. The order then made is null and void. *(Nierenberg v. Superior Court; Reisman v. Shahverdian).* There is no evidence of notice or stipulation, and no evidence of a second or further notice or stipulation. Jurisdiction cannot be conferred by acts or omissions of the parties. "When a court lacks fundamental jurisdiction, its ruling is void." *(Kabran v. Sharp Memorial Hospital (2017) p. 339).*

A subordinate judicial officer does not automatically become a superior court judge "as

FAC PG 92

1   needed" ~ the transformation requires NOTICE and STIPULATION. Stipulation cannot be

2   waived unless there is NOTICE. Here, no notice was given, occurred, inferred, or discussed.

3       This is a well documented proceeding including a complete reporter's transcript. Relevant

    history is included. This case began with, and continued with, complete confusion which has led

4   to this motion to vacate the Order and Judgment pursuant to lack of fundamental jurisdiction.

5       There has been significant confusion during this process and proceeding beginning with

6   the citation, continuing through the entire limited civil jurisdiction court proceeding.

7       Statute GC. §53069.4(b)(1) establishes the "de novo" hearing is a "limited civil case" and

    (b)(3) as "subordinate judicial duty." Pursuant to CCP. §85-100 and case law parties are entitled

8   to demurrers, motions, case questionnaires, interrogatories, document requests, request for

9   admissions and a deposition. Defendant's confusion began when the case was set for trial 30 days

    after filing ~ then three different judicial officers were on bench for the first three hearings.

10      This case then began with Defendant non-stipulating to the commissioner. Then at least

11  five express continuing non-stipulations occurred. The commissioner continued ~ swatting

12  Defendant down at every turn. If *notice and stipulation* was not a requirement we would not need

    judges. Commissioners could perform as a superior court judge, never requesting stipulation ~

13  simply ambushing Defendants.

14      Here the commissioner lacked legal fundamental jurisdiction over the vexatious litigant

15  proceeding ~ he had no authority to act as a judge. He then granted legal relief he could not grant.

16      The adjudication of the vexatious litigant proceeding, the sole question before this court,

    is one of jurisdiction of the trial court to render the order and judgment under review.

17  *(Nierenberg v. Superior Court; citing In re Buckley)*

18  **A. Waiver Requires Notice**

19      "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or

20  privilege."  Palm Springs Superior Court gave no notice the commissioner may or would act as a

    judge. Nor did the commissioner give notice he would act as a judge. Nor did he request

21  stipulation to act as a judge at any hearing or any proceeding. (See Decl. Miner)

22  **B. The Procedure is a Subordinate Judicial Duty**

23      Pursuant to the plain language of Government Code section 53069.4(b)(3) the procedure

    is a subordinate judicial duty. The commissioner was assigned and entitled to act as a

24  subordinate. He was "assigned" as a subordinate judicial officer per the plain text of the statute

25  53069.4(b)(3). There is no evidence in the 5,500 page record to the contrary.

26  **C. Commissioners Possess No Judicial Power**

27      A court commissioner is a subordinate judicial officer. Their power is limited by the

    California constitution and section 259 of Civ. Code of Procedure. *(Rooney, Horton, Edgar,*

28  *Foosadas, Tijerina, Settlemire, Aetna, Galis et al.)* Under the California Constitution, court

commissioners may perform "subordinate judicial duties" including the trying of cases, <u>subject to</u> <u>the stipulation of the parties</u>. *(Cal. Const., art. VI, §§ 21, 22; In re Horton (1991).* On many levels; the court had no power to grant the relief. *(Becker v. SPV Construction Co., (1980).)*

**D. Defendant Refused to Stipulate**

Given the "choice" of a commissioner or a judge by the court's own clerk, Miner chose a judge 2/4/21. This was a rejection of a commissioner. Multiple adverse no-confidence filings were made. No non-stipulation was "untimely" as the first was made 2/4/21. Miner requested a judge. This request for a judge bounced everyone else. The court cannot fill a defendant's mouth with its own words. (See Decl. of Miner)

**1. Commissioners Require Stipulation To Act As Judge**

"In Riverside County, all commissioners are appointed as temporary judges. (Super. Ct. Riverside County, Local Rules, rule 1060.) **However, the appointment to act as temporary judge is not sufficient to preside over a matter, <u>a commissioner must also</u> <u>obtain a stipulation from the parties to preside over a specific proceeding</u>.** *(See Poulson v. Bank of America, No. E056220 (2014).) (ROC Rule 8.1115. (b)(1)*

**2. Law Does Not Authorize a Commissioner to Decide All Legal Issues**

"Unless both parties consent, the court may not, under the guise of a reference, cause the lion's share of a case to be heard by a referee. (6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 61, pp. 460-461.) **Neither section 259 nor section 639 authorizes a commissioner to preside over a case in its entirety and decide all legal and factual issues.** *(Ruisi v. Thieriot; Settlemire v. Superior Court)."*

**3. Miner Was Entitled To A Judge Pursuant To The Court's Rules**

"Laumboy is correct that she was entitled to notice—either by "[a] conspicuous sign posted inside or just outside the courtroom, accompanied by oral notification or notification by videotape or audiotape by a court officer on the day of the hearing" or by a written notice provided to her (Cal. Rules of Court, rule 2.816(c))—that the case was going to be heard by a judge pro tem, and that **she had the right, absent a stipulation, to have the case heard by a sitting judge\*** rather than a judge pro tem." *(Roldan v. Laumboy, No. B286155 (Cal. Ct. App. June 26, 2019)). (ROC Rule 8.1115. (b)(1)*

\* (No party has stated Miner did not request a judge. See Decl. Miner)

**E. Notice was Required By The Court**

Notice is an integral part of due process. By law the commissioner was entitled to sit on

FAC PG 94

the bench as a subordinate. He was not permitted to switch robes [to a judge] without notice, acknowledgment and stipulation. <u>The Horton court gave multiple notices</u> / solicited stipulations.

### 1. Horton Is Distinguishable ~ No Comparison

"Respondent also submits the declaration of **Commissioner Cowell that he habitually solicited stipulations to his presiding,** that he reminded petitioner's counsel to get a stipulation, that both defense counsel had appeared before him on many occasions and knew that he was a commissioner and that neither had ever declined to stipulate to his presiding in the past. He had no reason to doubt that counsel would obtain and file the necessary stipulation." *(In re Horton,(1991).)*

## F. Subject Matter Jurisdiction

Subject matter jurisdiction, as distinct from jurisdiction of the parties, cannot be conferred by consent, waiver, or estoppel. *(See Estate of Buckley (1982)* The principle of `subject matter jurisdiction' relates to the inherent authority of the court involved to deal with the case or matter before it." *(Conservatorship of O'Connor (1996)* Thus, in the absence of subject matter jurisdiction, a trial court has no power "to hear or determine [the] case." *(Abelleira v. District Court of Appeal (1941)* And any judgment or order rendered by a court lacking subject matter jurisdiction is "void on its face...." *(Rochin v. Pat Johnson Manufacturing (1998)*

## G. Fundamental Jurisdiction

Courts generally refer to jurisdiction over the parties and subject matter in any action as "fundamental jurisdiction," and where this is lacking there is an entire absence of power to hear or determine the case. The vexatious litigant motion is a special proceeding. It was not a subordinate judicial duty by statute, constitution or CCP §259. A commissioner would need to notice the parties. Express stipulation would need to be granted. <u>Even then the Order could not be issued in limited civil jurisdiction</u>. *Void Orders (4)(Davidson v. Superior Court, (1999).*)

## H. Vexatious Litigant Declaration and Orders Are Permanent Injunctions

A vexatious litigant decree is a permanent injunction. It never goes away without removal. *(Luckett v. Panos, (Ct. App. 2008)).* A permanent injunction cannot be granted by a subordinate commissioner who Defendant never stipulated to. *(Settlemire v. Superior Court) (Bernie v. Stevens (2009).* Exceeded his subordinate authority. *(In re Eduardo G, p.753)*

## I. Permanent Injunctions May Not Issue By Law In Limited Jurisdiction

It is well established that the court has jurisdiction to determine its own jurisdiction. *(Rescue Army v. Municipal Court of City of L.A. (1946)*

It is also well settled that the jurisdiction of a court depends alone on the amount in controversy. *(Bradley v. Kent (1863) 22 17 Cal. 169, 170.)* Accordingly, in a limited matter the

court has no authority to award a judgment exceeding $25,000.00 <u>nor can a permanent injunction be granted in limited civil jurisdiction</u>. *(Dedication & Everlasting Love to Animals, Inc. v. City of El Monte, (2022). (Ytuarte v. Superior Court, (2005).*

**J. Improper Citations Do Not Confer Jurisdiction**

Improperly authored citations, and improper motions to enact special proceedings that cannot be adjudicated in limited civil, do not "expand" jurisdiction and cannot convey or assign fundamental jurisdiction required of a judge ~ to a subordinate judicial officer i.e. commissioner. Due process. *(Jovine v. FHP, Inc., (1998).)* Injunction. *(Settlemire v. Superior Court, (2003).* Aetna Life Ins. Co. v. Superior Court (1986).

Since Defendant began to argue these jurisdictional issues (1) the trial court has altered its case assignment NOTICE to include information and a <u>new rules</u> about non-stipulation to a commissioner (2) this, tacitly admitting the trial court failed to issue NOTICE regarding stipulation, is pursuant to notice and due process, (3) the NOTICE (sign) also has changed on the front door of the courtroom PS4. (See Decl. Miner) "A waiver is ordinarily an <u>intentional relinquishment</u> or abandonment <u>of a known right</u> or privilege." *(Johnson v. Zerbst (1938); Brewer v. Williams (1977).*

Defendant submits the phrase "all parties stipulate to commissioner" is fundamentally different than "all parties stipulate to commissioner who will act as a temporary judge." The notice the court gave was "all parties stipulate to commissioner" which is inadequate because Defendant's case calls for a commissioner (acting as <u>subordinate</u> officer) by statute.

**K. Due Process Requires Notice**

Taking away a persons right to the court system is a very serious issue. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *(Mullane v. Central Hanover Bank & Trust Co. (1950)*

**L. Waiver and Forfeiture**

Before directly confronting the question, we must carefully consider what we mean by the word "waiver." Over the years, cases have used the word loosely to describe two related, but distinct, concepts: (1) losing a right by failing to assert it, more precisely called forfeiture; and (2) intentionally relinquishing a known right. "[T]he terms `waiver' and `forfeiture' have long been used interchangeably. (3) The United States Supreme Court recently observed, however: `Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the "intentional relinquishment or abandonment of a known right." [Citations.]' *(United States v. Olano (1993); (People v. Saunders (1993) (Cowan v. Superior Court (1996)*

**M. No local rule to stipulate. No plaque. No Notice. No due process**

No local rule existed regarding stipulation. No local rule regarding administrative

citations. As the City states in its own brief, a commissioner was sufficient, no judge was
required. Forcing stipulation on a party who wants to be tried by a judge is against public policy.

**LOCAL RULE 1060 states nothing about stipulation**

**LOCAL RULE 5145 A. 1. Applies to domestic violence restraining orders**

No case law or local rule exists leading to a stipulation. Every document the court has
filed states parties stipulate to a commissioner. No words state as a temporary judge and a
temporary judge was not required for the proceeding per statute.

In ***In re Marriage of Galis (1983) 149 Cal.App.3d 147 [196 Cal.Rptr. 659] (Galis)*** and
***In re Frye (1983) 150 Cal.App.3d 407 [197 Cal.Rptr. 755] (Frye)***, both decided in the same
year, the Court of Appeal voided a commissioner's judgment in a contested marital dissolution
proceeding and a commissioner's order of contempt for failure to make child support payments,
respectively. ***(Galis, at pp. 150, 155; Frye, at p. 409.)*** In so ruling, the court in Galis explained
that while it was mindful that commissioners are an "important tool in the economical and
expeditious administration of justice" and are so widely used that stipulation is usually a "mere
formality," it would nevertheless be unlawful to "force an unwilling litigant to try his or her case
before someone other than a judge." **(Galis, at p. 154.)** *(Michaels v. Turk (2015).) (Settlemire v.
Superior Court (2003)*

**N. The Law Does Not Require Futile Acts**

The hotly contested vexatious litigant motion was made against Miner, in the last 5
minutes of trial, within the four corners of a single defense, of a single city citation, in limited
civil jurisdiction, and was heard by a commissioner who Miner had non stipulated to five
separate times. Even if Miner had known the commissioner would acts as a judge, which he did
not. The law does not require the doing of a futile act. *(Smith v. Dorn, 96 Cal. 73 [30 P. 1024];*

**O. Manifestly Unjust Decisions**

"Since at least 1930, the `modern view' has been that the doctrine of the law of the case
should not be adhered to when its application results in a manifestly unjust decision." *(Davidson
v. Superior Court, (1999)*

**P. Relevant Cases - Foosadas and Horton**

Here, the clerk's oral information gave no notice. The documents sent by the court gave
no such notice. There was no notice. Nevertheless, in response to the court clerks memorized
statement that Miner had a choice, Miner requested a superior court judge at the 2/4/22 hearing.
In this case there was no similar sign[1] (notice). *(Foosadas v. Superior Court, (2005).*

---

[1] It is my understanding that the sign on the door of the courtroom has changed because a letter was sent to the
presiding judge. Additionally the court has now changed it case assignment notice which gives notice of
nonstipulaiton. Coincidental? Defendant Miner had no notice of these important judicial and due process issues.

This was the trigger that prompted James Hodgkins to recuse himself. (See Decl. Miner) Foosadas further states:

". . . **The Legislature has specified the powers of a commissioner and the circumstances in which a commissioner may act as a temporary judge, but none permit a commissioner to act as a temporary judge without the stipulation of the parties**."

"The State Constitution also provides for the appointment of a temporary judge. "On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause." (Cal. Const., art. VI, § 21.)"

"The real party concedes defendant has not participated in a hearing before Commissioner Kronlund acting as a temporary judge. Since neither party to a proceeding involving a subordinate judicial duty need stipulate that a commissioner may preside over it, no stipulation can be implied from the party's participation in it... *In re Mark L. (1983)"*

It is uncontroverted, and is indisputable, in the case at bar, there was <u>never a notice the commissioner would act as a judge</u>. The issue here is that the commissioner had every right to be at the hearing as a subordinate judicial officer per statute. It was not until he began acting as a judge that Miner was again forced to file additional documents.

There are clear difference between Horton this case. There were many NOTICES and colloquies between counsel and the court regarding stipulation to a temporary judge. Consuming the *Horton* case <u>line by line</u> ~ there is nothing really similar with *Horton* and this case before the court. *(In re Horton, (1991)).*

"The issue in this case is whether a court commissioner may conduct a trial in a capital case when no oral or written stipulation of the parties authorized him to sit as a temporary judge, but when defense counsel proceeded to trial without objection, knowing that the judge was a court commissioner."

*"**It is uncontroverted that Commissioner Cowell's standard practice was to inquire of all counsel whether a stipulation had been filed appointing him as a temporary judge,...**"*

1    "The clerk's and reporter's transcripts prepared in the course of petitioner's trial establish
2    these further facts. At the first hearing in the capital trial before Commissioner Cowell, on
3    April 6, 1984, petitioner was not present. *The clerk of the court reminded the court that a
     stipulation to the commissioner serving as a temporary judge was needed from petitioner.*
4
5    Reading the case comprehensively. The *Horton court* offered many notices. Stating what
6    should be obvious is that there were many procedures and motions before the *Horton trial*. The
     fact pattern here is quite different and distinguishable. Here, the clerk never stated a stipulation
7    needed to be signed. There has been no mention by the court of "stipulating."
8    Defendant Miner began his non stipulation and request for a judge on 2/4/22. The
9    commissioner was "entitled" to adjudicate the "citation" pursuant to 53069.4. It was not clear the
     commissioner would exceed his judicial boundaries until 5/12/22. This is where the
10   commissioner's acts become foggy. Again, Miner filed a written notice of non stipulation 6/7/22,
11   and then a separate motion for non stipulation on 6/23/22. All requests for a judge and non
12   stipulations to: a subordinate judicial officer, a commissioner, or a temporary judge were timely
     and months before trial or the separate proceeding 9/22/22 that required, by law, <u>a separate act of</u>
13   <u>notice and express stipulation</u> before the vexatious litigant hearing. This was a structural error.
14   See *(In re Jasmine G. (2005)* regarding notice and stipulation *"Under such*
15   *circumstances, SSA can hardly be heard to assert there was a knowing waiver of the notice*
16   *issue."*
17   "Trial errors—those which occur during presentation of the case to the trier of fact—may
18   be evaluated to see if the error was harmless beyond a reasonable doubt. . . . Structural
19   defects are those "affecting the framework within which the trial proceeds, rather than
     simply an error in the trial process itself. `... may be regarded as fundamentally fair.'
20   [Citation.]" (Id. at p. 310, 111 S.Ct. 1246.)
21
22   Failure to comply with the statute in this case resulted in a mistake of constitutional
     dimension. *(Arizona v. Fulminante (1991))*
23   **Q. The Court Granted Relief It Had No Authority to Grant**
24       The granting of relief, which a court under no circumstances has any authority to grant,
25   has been considered an aspect of fundamental jurisdiction for the purposes of declaring a
     judgment or order void. *(Grannis v. Superior Court (1905); Hunter v. Superior Court, (1939)).*
26   //
27   //
28   //

**R. The Right To A Judge Is a Constitutional Dimension**

The person by whom the judicial function is exercised, the judge, is of course an essential component of the exercise of judicial power. *(Hamblin v. Superior Court (1925).* The right to have a judge preside is a right of constitutional dimension.

## IV. SUMMATION

Defendant Miner, as a pro se, cannot articulate this issue better than the Court of Appeal. While not citing this case below per se, because it is unpublished, Miner pirates the text of the Court of Appeal and cites the published cases itself cites. (*Estate of Shaw*, No. B188153 (Cal. Ct. App. Dec. 3, 2007)) California Court of Appeals, Second District, Eighth Division. The proceeding has many similarities to the instant case. The Haupman text is as follows:

**"The Commissioner's Order and Judgment Is Void"**

"In the absence of an express or implied stipulation to a commissioner, the order or judgment issued by that commissioner is void. *(In re Horton (1991) 54 Cal.3d 82. 90: Kim v. Superior Court (1988) 64 Cal.App.4th 256. 260.)* "The jurisdiction of a court commissioner, or any other temporary judge to try a cause derives from the parties' stipulation." (Ibid.) A party may impliedly stipulate to a commissioner where the parties' conduct is tantamount to a stipulation such as **where a party proceeds through an entire trial with a commissioner with knowledge that the person conducting the trial is a commissioner and the commissioner is treated as competent to rule on matters which rest solely in the discretion of a judge**.[2] (Id. at p. 98.) **"First, appellant refused to stipulate to Commissioner Haupman at the April hearing and that refusal meant that Commissioner Haupman did not have authority to decide any issue in the case.** Although the file apparently was missing, as appellant argued, **it was not her responsibility to reiterate her previously made refusal to stipulate to Commissioner Haupman**...."

"**as discussed above, our high court has made clear that conduct by a commissioner absent stipulation is void.** The power of a commissioner to act as a temporary judge requires a stipulation. *(In re Frye (1983) 150 Cal.App.3d 407, 410.)* The stipulation is not merely a regulation of procedure, but is what allows the temporary judge authority over the parties. **Without it, the court has no jurisdiction in the fundamental sense.** *(Cf. People v. Tijerina (1969); In re Steven A. (1993)"*

---

[2] Defendant Miner not only non-stipulated five separate times, long before trial or the vexatious litigant motion. Miner filed two statements of disqualification stating he believed the commissioner showed an appearance of bias. These were constitutionally permitted and not an endorsement of the commissioner being "competent to rule on matters" at all.

**V. CONCLUSION**

This declaration and injunction at issue involved ONE single administrative citation defense involving a Defendant ~ defending himself, making a record, after a subordinate judicial officer would not permit discovery, witnesses or statutory procedure of CCP. §85-100.

No law, or established case supports a commissioner, a subordinate judicial officer, may grant this relief to the Plaintiff City against Defendant in limited civil jurisdiction.[3]

Voluminous law supports that he cannot. *Cal. Const., art. VI, § 21,* 22, CCP §259. *(Settlemire, Rooney, Horton, Edgar, Foosadas, Tijerina,, Aetna, Galis, Pittman; Nierenberg; Reisman et al.)* The court must check it's jurisdiction.  *(Louisville Nashville R.R. v. Mottley).*

Just as a party cannot file an unlawful detainer in small claims because the court has no jurisdiction (unlawful detainer proceedings. See CCP §116.220), a party cannot obtain a vexatious litigant order (declaratory or injunctive relief)[4] from a subordinate judicial officer, in limited civil jurisdiction, in the form of a permanent injunction against a Defendant or party.

The commissioner could not establish fundamental jurisdiction. The non-stipulations stated and filed by Defendant were a continuing refusal for all future hearings and proceedings far in advance of the ancillary (separate) special proceeding.

No intent to act as a judge was noticed by the court. No stipulation was requested or discussed by the court, or granted by parties litigant. A commissioner does a wear the magic robe of a judge without consent. The subordinate judicial officer granted relief he had no authority to grant. *United States v. Cotton p. 630* ~ Jurisdiction is NEVER waived or forfeited.

Even if Miner was the plaintiff (he was not), and even if the commissioner had fundamental jurisdiction over the parties and the subject matter in the vexatious litigant special proceeding (which he didn't), <u>a permanent injunction order cannot be issued in limited civil jurisdiction</u> (which it can't).

The commissioner lacked fundamental and subject matter jurisdiction to adjudicate the vexatious litigant proceeding. The Court granted relief it had no authority and no jurisdiction to grant under any scenario. Under the facts and law provided herein that the judgment is *void ab inito*. **Defendant respectfully requests this court vacate the void judgment; it is constitutionally invalid.**

/s/ Joseph Miner (pro per) 1/4/2024

---

[3] In short, the Appellate Division concluded that because the action had begun as a " 'limited civil' case," the trial court did not have authority to issue a permanent injunction - the only injunctive relief available in " 'limited civil' cases" was of a temporary nature to preserve property or rights of a party.
Gort v. Kort, G047914 (Cal. App. Apr 25, 2014) (unpublished)
[4] "Moreover, a plaintiff in a limited civil action <u>may not obtain a permanent injunction</u> and has fewer rights for declaratory relief than a litigant in an unlimited case. (See § 86, subds. (a)(7) & (a)(8).)...." Ytuarte v. Superior Court, 28 Cal.Rptr.3d 474, 129 Cal.App.4th 266 (Cal. App. 2005)

## DECLARATION OF JOSEPH MINER

(motion to vacate void judgment)

I, Joseph Miner, state and declare.

1. My name is Joseph Miner. I am the Defendant and Appellant in the above-captioned proceeding (ex 3). I am over the age of eighteen (18). This Declaration is submitted in support of Defendant's Motion to vacate a void judgment.

2. Except where stated, upon information and belief, the facts set forth in this Declaration are known to me personally, and as to those facts, if called and placed under oath as a witness, I could and would competently testify thereto in a court of law. As to those facts stated upon information and belief, in good faith I believe them to be true.

3. I personally write this statement and declaration. I have researched and believe I have complied with rule of court and local rules. I would note that I have found the bench guide on self represented litigants to be instructional regarding many of the instant issues before this court. I read law with clarity. I am topically educated in law and civil procedure.

4. I offer this information as if I was asked the proper questions by my trial counsel while I was on a witness stand. I have not previously testified to most issues articulated below.

5. This declaration is somewhat verbose. This testimony must be part of the record. I write this declaration so that there are no assumptions made by the court.

6. When I walked into PS4 and the judicial officer (Knighten) seemed to anticipate a trial that very day. I had no administrative hearing, no ability to confront my accuser, no discovery, no city witnesses, no documents. The entire procedure, in my view was a kangaroo court worthy of a Franz Kafka story. It only got worse.

7. Do I have an opinion. Yes. It appeared to me, because I was a witness in the courtroom for every proceeding, that Arthur Hester believed he was a judge. He signed the vexatious litigant Order as JUDGE. He is not a Judge of the Superior Court. (ex 2. ex pg 5). To act as a judge, notice was required and the stipulation of parties litigant was mandate.

8. There is not one stipulation to Arthur Hester on the record or any reporters transcript.

9. The clerk's boilerplate minutes in this courtroom are routinely in error. They state "all parties stipulate to commissioner" (ex 11 pg 40) when in fact there had been five non stipulations and Miner non stipulated to the commissioner that same day twice and in the same proceeding. (ex 24A:14-25)

**The Ranch**

10. I have owned my ranch for about 20 years.

11. The ranch land was annexed into the City jurisdiction in 2010.

12. Prior to this citation I had no issues with the City. Ever.

13. There was no litigation, no issues, no code complaints involving this City.

**This Proceeding and Citation Defense**

14. This dispute began 4/28/21.

15. A citation was issued 8/18/21. I disagreed with the citation.

16. I filed documents and paid $500 in advance to defend myself and have the case heard before an administrative hearing officer.

17. I was then denied an administrative hearing in this case. It was held in secret without me.

18. I was never in front of a hearing officer for this case.

19. My only option remaining to defend myself was to reclassify the case to superior court per statute (GC. §53069.4) for a trial de novo or appeal de novo.

20. When I filed to reclassify the administrative case to a civil de novo case 12/6/21 I understood it was a limited civil proceeding pursuant to GC. §53069.4.(b)(1)

21. I was defending against a City issued document titled an "administrative citation."

22. Shortly thereafter (12/7/21) I was mailed notice the case was assigned to Hon. Arthur Hester.

   a. The notice does not state whether Hon. Arthur Hester is an attorney, a traffic referee, a commissioner, a temporary judge, or an appointed judge. Nor does it state you must stipulate or non stipulate to a commissioner acting as a temporary judge. (ex 4)

23. The first hearing was 1/6/22.

   a. The date was just 30 days from filing.

   b. It appeared the case was set for "trial." It seemed that this conflicted with statute and civil procedure.

   c. At the hearing the court clerk stated all parties have the right to have their matter heard before a commissioner or a judge.

   d. Michael Knighten, judge pro tem was on the bench. My turn came. A colloquy ensued. (ex 5)

   e. During the discussion it became clear the judicial officer wanted to complete the case that day, during that hearing. Effectively put on the trial do novo that very day.

   f. I sensed the proceeding was not going to be administrated pursuant to the civil code of procedure with the legal tools of defense and due process ~ deposition, discovery, witnesses.

   g. There was no discussion about stipulating to a commissioner as a temporary judge.

   h. The matter was continued to 1/20/22.

24. I completed significant research finding the following issues that affected this case. I believe the following statements are true facts:

   a. Statute §53069.4 (b)(1) states that the proceeding is a "limited civil case."

   b. The law does not state this proceeding is a single hearing.

   c. The law does not prevent discovery: GC.§53069.4(b)(1).

FAC PG 103

d.  The law permits discovery: CCP. §85-100.

e.  Judges have ruled the law permits discovery: (ex 17, 19)

f.  Case law states administrative appeals in superior court are a "trial de novo."[5]

g.  CCP. §85-100 clarifies the procedure in a limited civil case.

h.  CCP. §92(a) states general demurrers are permitted.

i.  CCP. §92(c) states motions are permitted.

j.  CCP. §94(a-c) states interrogatories, document production, requests for admission, a deposition and a subpoena duces tecum are permitted.

k.  Pursuant to GC. §53069.4 the procedure is labeled a de novo appeal.

l.  It is labeled an appeal for constitutional reasons. It is effectively a new trial, and there is no deference to the hearing officer's findings (*Collier & Wallis, Ltd., v. Astor,*)

m.  The administrative case becomes a limited civil case §53069.4, §85(c) #14.

n.  Adjudication is a subordinate judicial duty (GC. §53069.4)[6].

o.  A commissioner is a subordinate judicial officer (*Cal. Const., art. VI, § 21*, 22, CCP 259)

p.  Discovery is a matter of right in a limited civil case *(Chavez v. City of Los Angeles. Dedication & Everlasting Love to Animals, Inc. v. City of El Monte).*

25. On 1/18/22 I requested an ex parte continuance. Hon. Arthur Hester was presiding.

a.  The continuance was granted. The court indicated this was the last continuance.

b.  Statute §53069.4(b)(3) makes clear the matter may adjudicated by subordinate judicial officers.

c.  The minute order states Hon. Arthur Hester is a commissioner. (ex 4)

d.  The minute order states "All parties stipulate to Commissioner."

e.  A commissioner is a subordinate judicial officer. CCP §259.

f.  The minute order does not state "All parties stipulate to Commissioner to act as a temporary judge. The concepts are fundamentally and vastly different.

g.  No text appears that Arthur Hester is any level higher than a subordinate judicial officer.

h.  The text "temporary judge" does not appear in one single minute order associated with Arthur Hester. Nor does it appear in (ex 4)

i.  There was no discussion about stipulating to the commissioner as a temporary judge.

j.  Granting ex parte continuances is a subordinate judicial duty. CCP §259.

26. At this point I become concerned that the court is not going to permit my statutory limited civil case, including all process, discovery and interrogatories I entitled to as a matter of law.

---

[5] (See Collier & Wallis, Ltd., v. Astor, 9 Cal. 2d 202, 70 P.2d 171 (1937). There is no deference to a hearing officer, "It is in no sense a review of the hearing previously held, but is a complete trial of the controversy, the same as if no previous hearing had ever been held."

[6] It is only a subordinate judicial duty of the citation is properly prepared. Analog. The code officer cannot cite individuals for issues NOT applicable to subordinate judicial duty ~ this would automatically interfere with the adjudication by a subordinate judicial officer per se.

FAC PG 104

27. From my past experiences in court I believed a duly appointed judge would follow the statute and procedure.

28. On 2/4/22 the court clerk pursuant to ROC 2.816 stated to everyone in the courtroom you are entitled to have your case be heard by a commissioner or a judge.

   a. ROC 2.816(b)(3) states "(3) The party has a right to have the matter heard before a judge, commissioner, or referee of the court."

   b. At the hearing I told the clerk I wanted a judge to hear my case. She stated that when my case is called to request a judge.

   c. When my case was called I approached the counsel table. I stated in open court I wanted a judge.

   d. It is my understanding proceedings in PS4 are livestreamed via webex, or zoom, and that there are video and audio recordings achieved of all court sessions. Therefore my express request for a judge is memorized for the court's review.

29. On 2/4/22 James Hodgkins, a commissioner, was acting as a judge pro tem on the bench that day.

   a. When I informed James Hodgkins, who was on the bench, I requested a judge ~ a discussion ensued. Important facts of the discussion are not accurately reflected in the clerks's minutes.

   b. James Hodgkins accepted my request for a judge. He stated that he had a conflict of interest as he had been an attorney for the City of Desert Hot Springs. City attorney Tuan Vu had some interaction with him about Desert hot Springs. There was no discussion of a commissioner or Arthur Hester at all.

   c. I have referenced this colloquy in the body of this motion at pg. 9:2-8.

   d. The court's own video will confirm my choice of a judge and my testimony here.

   e. The hearing and request for a judge covered both cases at issue CVPS2106001 and CVPS2106016.

   f. The court's record and minute order (ex 5, 7) I was advised offered the choice of a commissioner or a judge.

   g. There is nothing in the record that contradict my testimony that I requested a judge.

   h. In almost two years the other party has not contradicted my statement or testimony.

30. My request for a judge was early, timely, in open court, on the record.

31. In my opinion this is where the issues began that have led to this motion.

   a. The court clerk did not accurately reflect what occurred in the minutes.

   b. I have no idea, because there were so many judicial officers, if the clerk properly notified Arthur Hester, that I chose a judge on 2/4/22.

   c. This case is complex. It began with a constitutional search and seizure, due process, land

1     annexation, and a host of failures by the City to follow its own law.

2     d. I immersed myself in this intersection of municipal/administrative/civil law. I found it is

3         obscure. I could not locate an attorney that knew much about it.

    e. A subordinate judicial officer, such as a commissioner, has authority to administer

4         hearings and subordinate judicial tasks.

5     f. Pursuant to GC. §53069.4 a <u>properly issued citation</u> is a "subordinate judicial duty."

6     g. The significant but ancillary issues are not subordinate judicial duty.

    h. This is why I agreed to the court's offer to have the case heard by a judge.

7 32. When Arthur Hester returned to the bench he was entitled to do so as a subordinate duty

8     pursuant to GC. §53069.4 (b)(3) and CCP. 259.

9     a. While it was confusing for him to do so, it was the law as a subordinate. This is how I

        interpreted the law.

10     b. To be clear. There was NEVER a discussion of Arthur Hester acting as a judge.

11     c. There has been NO NOTICE that Arthur Hester wold act as a judge.

12     d. There had been no mention of Arthur Hester making a request for a "stipulation" to act as

        a judge.

13     e. There has been no discussion, and no agreement in any hearing to permit Arthur Hester to

14         act as a judge.

15     f. The entire court record of 329 pages there is no mention of Arthur Hester acting as a

16         judge or temporary judge.

    g. Arthur Hester's plaque on the bench states "commissioner" not judge or temporary judge.

17     h. It is my understanding that it is unlawful to "force an unwilling litigant" to try his or her

18         case before someone other than a judge.

19     i. The words "all parties stipulate to a commissioner" meant nothing to me because a

        commissioner was entitled to hear a properly issued citation.

20     j. No minutes in the entire case <u>make statement about Miner stipulating to the</u>

21         <u>commissioner to act as a temporary judge</u>.

22     k. No statement in the entire reporter's transcript <u>make statement about Miner stipulating to</u>

        <u>the commissioner to act as a temporary judge</u>.

23     l. Defendant's hybrid co-council Joseph Rosenblit did not stipulate to the commissioner to

24         act as a temporary judge. (See Decl. Joseph Rosenblit)

25     m. I never agreed or stipulated to Arthur Hester acting as a temporary judge in the citation

26         proceeding, or the separate vexatious litigant special proceeding.

    n. There is no evidence in the 5,500 page record that confirms otherwise.

27 33. My request for a judge on 2/4/22 was a choice for a judge, and a rejection of a commissioner.

28     Effectively and tantamount to a continuing non-stipulation to ever act as a judge.

34. I did everything in my power to have my case adjudicated by a superior court judge with all the procedure I was entitled to as a limited civil case pursuant to CCP. 85-100.

35. Beginning 3/17/22 I hired a court reporter. The evidence shows no stipulation exists on the record to permit the court commissioner to act as a judge <u>in any hearing</u>. Full stop.

36. On 5/12/22 I determined the commissioner grossly exceed his authority as a subordinate judicial officer.

37. On 6/7/22, I filed an additional document. A notice of written non-stipulation. The notice was in advance of trial, in advance of the vexatious litigant proceeding and states:

> ***"Defendant files this notice of non-stipulation for all further proceedings in cases CVPS2106001 and CVPS2106016. These cases are not to be heard by a Subordinate Judicial Officer, Commissioner, or Temporary Judge***

> ***"No trial, sentencing, or preliminary hearing has occurred. Defendant has appeared before three different subordinate judicial officers. Defendant, to his recollection, has never knowingly or expressly stipulated to the Commissioner. Defendant has not consented or stipulated and will not stipulate or consent for Trial of the instant matter be heard by a Subordinate Judicial Officer, Commissioner, or Temporary Judge."***

38. This NOTICE OF NON STIPULATION was well in advance of any future trial, or the separate vexatious litigant proceeding.

39. Because it was in advance of the trials and in advance of the separate special proceeding. I contend it was legal, proper notice, and timely (in advance).

40. There are many errors in the court minutes. As an example on 6/7/22 I filed a written notice of non stipulation.

41. A good example of this is that On 6/23/22 a motion was heard where I non stipulated. And on 6/23/22 I non-stipulated orally on the record.

42. The clerk continued to place "All parties stipulate to the Commissioner" in the minutes AFTER I expressly non-stipulated on the record.

   a. Based on my personal inspection, the clerk's minutes are minimal boilerplate and not reflective of the true and correct facts.

**The Law**

43. The hearing officer ignored the law. This was confusing.

44. The commissioner then ignored the law. For example he would not address the unlawful warrantless search by the city and cabined the citation to the date of the citation itself when the code cases were opened on 4/28/21.

45. After my research it appears that the hearing officer is a fact finder and had no legal authority

to adjudicate law.

46. When the city violates the law, its own hearing officer has no authority to adjudicate the violations.

47. It appears a subordinate judicial officer (commissioner) is also fact finder and has no authority to render conclusions of law unless acting as a judge. *(Rooney, Horton, Edgar, Foosadas, Tijerina, Settlemire, Aetna, Galis et al.)*

48. Lastly, it appears the appellate department, in review of administrative citation cases, simply looks at the facts, and also skips the conclusions of law ruling on "substantial evidence" ~ skipping over the legal arguments.

49. In this case, according to my attorney, there are many violations of law ~ by the City.

**Vexatious Litigant Issues**

50. My research supports the following:

51. Only a Defendant can bring a "first instance" vexatious litigant motion.

52. A pre-filing order is a permanent injunction (luckette

53. A subordinate judicial officer lacks authority and jurisdiction to issue an injunction

54. A permanent injunction cannot be issued in limited civil jurisdiction

**Conformation Miner is Defendant**

55. I have defended myself from the day I was issued the citation.

56. I believe the court of appeal has now clarified this issue even though they have denied transfer of the appellate case in the appellate division.

57. **The Court of Appeal re-captioned the two appellate division cases on its own volition to the following: City of Desert Hot Springs, plaintiff and respondent vs Joseph Miner, defendant and appellant** (ex 3). This dispels the Appellate Division's reasoning.

58. Only the defendant can bring the vexatious litigant motion to declare a litigious plaintiff vexatious. Joseph Miner is and was the Defendant. It seems the commissioner was in error.

59. It also seems the Court of Appeal's party designation (ex 3) are now in conflict with the Appellate Department's conclusions. CCP. 391.1(a). (ex 14)

60. I was active. I did not sit around and do nothing about these issues. I never acquiesced. Five non stimulations were made. After denial of each it was futile to and angered the court to mention them. I was admonished for non stipulating at the vexatious litigant hearing.

61. The case was complex and became more complex as it progressed. I did everything in my power to place this case under the proper jurisdiction so that these issues would not arise.

62. I have personally spoken with and emailed Monty Agarwal. This is a case, Wang, the Appellate Division used determining I was Plaintiff. Mr. Agarwal knew his client was Defendant. The law was so new that he filed as Plaintiff because it prevented dismissal and it had no bearing on his client. Mr. Agarwal supplied me with several documents that are

FAC PG 108

relevant to this case. (ex 20)

63. Defendant has NEVER stipulated to Arthur Hester acting as a judge. Not in the entire proceeding will this court find a single stipulation on the record.

64. **Exhibit #21 uncontrovertedly supports the Superior Court has changed its NOTICE advising commissioners are acting as temporary judges. Prior to this case the assignment did not give this important NOTICE see ex #4. This document is evidence from this courthouse that supports this entire motion.**

65. Before this citation case I had no previous issues with the City. No lawsuits, no harassment, not even a visit to City hall since my ranch was annexed by the City in 2010.

66. Lastly, I do not believe I was given a proper chance to be heard. No notice, and no chance to be heard. When I attempted to explain why I filed the motions the court cut me off from testimony. The commissioner continually was putting words into my mouth, cutting me off mid sentence, and not permitting me to voice my own testimony.

67. These documents are provided for the court's convenience. Many are duplicative. Each exhibit is numbered and the entire file is numbered by pages to make documents easy to reference

68. I do not believe I had a fair trial. I was denied discovery, witnesses, case management, and all statutory procedure common in these cases as can be verified by decisions of Superior Court Judges. (ex 17, 19, 20)

All exhibits included herein are true and correct and if not file stamped are original copies of the documents filed with the court and held within the record and or clerks appellate transcript.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on January 4, 2024, at Orange County, California.

_____

/s/ Joseph Miner (pro per) 1/4/2024

**Exhibits not included with this filing.**

EXHIBIT LIST

**JUDICIAL NOTICE**

    Defendant Joseph Miner requests this court take judicial notice of all Riverside County Superior Court files in the instant limited civil case CVPS2106001 and limited civil appeal APRI22098.

**EXHIBITS**

| Ex # | Date | Court officer | Issue | Transcript | Minutes |
|---|---|---|---|---|---|
| 1 | 01/20/22 | Hester | Judgment of Dismissal | Reporter | |
| 2 | 01/22/22 | Hester | VL Order | Reporter | |
| 3 | 12/19/23 | Raphael | Party Role. COA | Record | |
| 4 | 12/07/22 | Hester | Assignment | Record | |
| 5 | 01/06/22 | Knighten | Hearing 1 | Video | X |
| 6 | 01/18/22 | Hester | Hearing 2 | Video | X |
| 7 | 02/04/22 | Hodgkins | (hearing 3, non stip) | Video | X |
| 8 | 06/07/22 | Hester | (notice non stip) | Filing | |
| 9 | 06/08/22 | Hester | (motion non stip) | Filing | |
| 10 | 6/23/22 | Hester | (non stip hearing) | Reporter | X |
| 11 | 6/23/22 | Hester | (forced stipulation) | Reporter | X |
| 12 | 5/18/23 | | AOB | Record | |
| 13 | 7/20/23 | | ARB | Record | |
| 14 | 11/09/23 | Jackson | Opinion | Record | |
| 15 | 11/27/23 | | Petition for Rehearing | Record | |
| 16 | 12/11/23 | | Petition for Transfer | Record | 212 |
| 17 | 08/29/19 | Blizzard | (discovery) | | |
| 18 | 08/30/21 | Renner | Wang Decision | | |
| 19 | 04/12/22 | Cadei | Wang discovery | | |
| 20 | 03/25/22 | Agarwal | Agarwal Dec. | | |
| 21 | 09/06/23 | Hodgkins (NEW) | Notice - Assignment | | |
| 22 | 09/22/22 | Hester | (no stipulation) 321 | Reporter | Transcript |
| 23 | 10/20/22 | Hester | (no stipulation) | Reporter | Transcript |
| 24 | Misc | | Court statements | Reporter | Transcript |
| 25 | 01/03/24 | Rosenblit | Declaration of Attorney | | |

FILE: M87HM48WH1P88005873OL

FAC PG 110

Exhibit  5

FAC PG 111

**VL-115**

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | | FOR COURT USE ONLY |
|---|---|---|---|

NAME:

FIRM NAME:

STREET ADDRESS:

CITY:                                                         STATE:              ZIP CODE:

TELEPHONE NO.:                                        FAX NO.:

E-MAIL ADDRESS:

ATTORNEY FOR (name):

[ ] COURT OF APPEAL,              APPELLATE DISTRICT, DIVISION
[x] SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Riverside
STREET ADDRESS: 4100 Main St.
MAILING ADDRESS:
CITY AND ZIP CODE: Riverside, CA 92501
BRANCH NAME: Hall of Justice

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

FEB 29 2024

T. Chavira

JA1
MAR 01 2024
R

PLAINTIFF/PETITIONER: Joseph Miner
DEFENDANT/RESPONDENT: City of Desert Hot Springs
OTHER:

**ORDER TO FILE**
**NEW LITIGATION BY VEXATIOUS LITIGANT**

Type of case: [x] Limited Civil    [ ] Unlimited Civil    [ ] Small Claims
[ ] Family Law    [ ] Probate    [ ] Other

CASE NUMBER:
CVPS2106001

**ORDER**

Approval to file the attached document is:

a. [ ] Granted

b. [x] Denied

c. [ ] Other:

[ ] Attachment to order.    Number of pages:

Date: 02/29/2024

▶ _____
PRESIDING JUDGE OR JUSTICE
CHAD W. FIRETAG

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
VL-115 [Rev. September 1, 2018]

**ORDER TO FILE**
**NEW LITIGATION BY VEXATIOUS LITIGANT**

Code of Civil Procedure, § 391.7
www.courts.ca.gov

**APP-102**

## Notice of Appeal/Cross-Appeal
### (Limited Civil Case)

| | *Clerk stamps date here when form is filed.* |
|---|---|

## Instructions

- This form is only for appealing in a **limited civil case.** You can get other forms for appealing in unlimited civil cases at any courthouse or county law library or online at *www.courts.ca.gov/forms.*

- Before you fill out this form, read *Information on Appeal Procedures for Limited Civil Cases* (form APP-101-INFO) to know your rights and responsibilities. You can get form APP-101-INFO at any courthouse or county law library or online at *www.courts.ca.gov/forms.*

- You must serve and file this form **no later than 30 days** after the trial court or a party serves a document called a Notice of Entry of the trial court judgment or a file-stamped copy of the judgment or 90 days after entry of judgment, whichever is earlier (see rule 8.823 of the California Rules of Court for very limited exceptions). **If your notice of appeal is late, your appeal will be dismissed.**

- Fill out this form and make a copy of the completed form for your records and for each of the other parties.

- Serve a copy of the completed form on each of the other parties and keep proof of this service. You can get information about how to serve court papers and proof of service from *What Is Proof of Service?* (form APP-109-INFO) and on the California Courts Online Self-Help Center at *www.courts.ca.gov/selfhelp-serving.htm.*

- Take or mail the original completed form and proof of service on the other parties to the clerk's office for the same court that issued the judgment or order you are appealing. It is a good idea to take or mail an extra copy to the clerk and ask the clerk to stamp it to show that the original has been filed.

*You fill in the name and street address of the court that issued the judgment or order you are appealing:*

| **Superior Court of California, County of** |
|---|
| Riverside - Palm Springs Div. |
| 3255 E. Tahquitz Canyon |
| Palm Springs, CA 92262 |

*You fill in the number and name of the trial court case in which you are appealing the judgment or order:*

| **Trial Court Case Number:** |
|---|
| CVPS2106001 |

| **Trial Court Case Name:** |
|---|
| Miner v. City of Desert Hot Springs |

*The clerk will fill in the number below*

| **Appellate Division Case Number:** |
|---|

(1) **Your Information**

a. Name of appellant (the party who is filing this appeal):
Joseph Miner

☐ *Check here if more than one appellant and attach a separate page or pages listing the other appellants and their contact information. At the top of each page, write "APP-102, item 1a."*

b. Appellant's contact information *(skip this if the appellant has a lawyer for this appeal):*

| Street address: 2576 Newport Blvd. #A | Costa Mesa | CA | 92627 |
|---|---|---|---|
| *Street* | *City* | *State* | *Zip* |
| Mailing address *(if different):* PO box 11650 | Costa Mesa | CA | 92627 |
| *Street* | *City* | *State* | *Zip* |

Phone: 949-903-5051          E-mail: josephminer@gmail.com

c. Appellant's lawyer *(skip this if the appellant does not have a lawyer for this appeal):*

| Name: _____ | State Bar number: _____ |
|---|---|

Street address: _____

| *Street* | *City* | *State* | *Zip* |
|---|---|---|---|

Mailing address *(if different):* _____

| *Street* | *City* | *State* | *Zip* |
|---|---|---|---|

Phone: _____    E-mail: _____

Fax: _____

Judicial Council of California, *www.courts.ca.gov*
Revised January 1, 2019, Optional Form
Cal. Rules of Court, rule 8.823

**Notice of Appeal/Cross-Appeal**
**(Limited Civil Case)**

**APP-102,** Page 1 of 3
→

· FAC PG 113

**Trial Court Case Name:** _____

| Trial Court Case Number: |
|---|
| |

**(2)** This is *(check a or b):*

a. ☐ The first appeal in this case.

b. ☐ A cross-appeal (an appeal filed after the first appeal in this case *(complete (1), (2), and (3)).*

    (1) The notice of appeal in the first appeal was filed on *(fill in the date that the other party filed its notice of appeal in this case):* _____

    (2) The trial court clerk served notice of the first appeal on *(fill in the date that the clerk served the notice of the other party's appeal in this case):* _____

    (3) The appellate division case number for the first appeal is *(fill in the appellate division case number of the other party's appeal, if you know it):* APRI2200098 _____

**(3)** **Judgment or Order You Are Appealing**

I am/My client is appealing *(check a or b):*

a. ☒ The final judgment in the trial court case identified in the box on page 1 of this form.
The date the trial court entered this judgment was *(fill in the date):* October 20, 2022 _____

b. ☐ Other:

    (1) ☒ An order made after final judgment in the case.
The date the trial court entered this order was *(fill in the date):* February 9, 2024 _____

    (2) ☐ An order changing or refusing to change the place of trial (venue).
The date the trial court entered this order was *(fill in the date):* _____

    (3) ☐ An order granting a motion to quash service of summons.
The date the trial court entered this order was *(fill in the date):* _____

    (4) ☐ An order granting a motion to stay or dismiss the action on the ground of inconvenient forum.
The date the trial court entered this order was *(fill in the date):* _____

    (5) ☐ An order granting a new trial.
The date the trial court entered this order was *(fill in the date):* _____

    (6) ☐ An order denying a motion for judgment notwithstanding the verdict.
The date the trial court entered this order was *(fill in the date):* _____

    (7) ☒ An order granting or dissolving an injunction or refusing to grant or dissolve an injunction.
The date the trial court entered this order was *(fill in the date):* February 9, 2024 _____

· FAC PG 114

| Trial Court Case Name: Miner v. City of Desert Hot Springs | Trial Court Case Number:<br>CVPS2106001 |
| --- | --- |

**(3)** *(continued)*

(8) ☐  An order appointing a receiver.
The date the trial court entered this order was *(fill in the date):* _____

(9) ☒  Other action *(please describe and indicate the date the trial court took the action you are appealing):*
Appealing from the Order of denial of Motion to vacate the void Order and Judgment dated 2/9/24.
1. Consolidated Appeal. The Appellate Division's Opinion addressed the Order and not the Judgment.
2. The trial court ruling addressed the Judgment and not the Order.
3. Court of Appeal's document offer new evidence Miner is Defendant not the Plaintiff.
4. Denial of motion to vacate void Order / Judgment is an appeal-able Order.
5. Appellate Division has jurisdiction and authority to correct errors.

**④ Record Preparation Election**

*Complete this section only if you are filing the first appeal in this case. If you are filing a cross-appeal, skip this section and go to the signature line.*

*If you are filing the first appeal in this case, you must serve and file a notice in the trial court designating the record on appeal. You may use* Appellant's Notice Designating Record on Appeal (Limited Civil Case) *(form APP-103). Check a or b:*

a. ☐  I will serve and file a notice designating the record on appeal together with this notice of appeal.

b. ☒  I will serve and file a notice designating the record on appeal later. I understand that I must file this notice in the trial court within 10 days of the date I file this notice of appeal, and that if I do not file the notice designating the record on time, the court may dismiss my appeal.

**REMINDER: Except in the very limited circumstances listed in rule 8.823, you must serve and file this form no later than (1) 30 days after the trial court clerk or a party serves either a document called a Notice of Entry of the trial court judgment or a file-stamped copy of the judgment, or (2) within 90 days after entry of judgment, whichever is earlier. If your notice of appeal is late, your appeal will be dismissed.**

Date: February 20, 2024

Joseph Miner
_____
*Type or print your name*

▶ *(signature)*
Signature of appellant/cross-appellant or attorney

Date: _____

_____
*Type or print your name*

▶ _____
Signature of appellant/cross-appellant or attorney

Date: _____

_____
*Type or print your name*

▶ _____
Signature of appellant/cross-appellant or attorney

FAC PG 115

**APP-009E**

| | |
|---|---|
| **PROOF OF ELECTRONIC SERVICE (Court of Appeal)** | |
| **Notice: This form may be used to provide proof that a document has been served in a proceeding in the Court of Appeal. Please read _Information Sheet for Proof of Service (Court of Appeal)_ (form APP-009-INFO) before completing this form.** | |
| Case Name: Miner v. City of Desert Hot Springs | |
| Court of Appeal Case Number: | |
| Superior Court Case Number: CVPS2106001 | |

1. At the time of service I was at least 18 years of age.

2. a. My [ ] residence [×] business   address is _(specify)_:
   2576 Newport Blvd.#A, Costa Mesa, CA 92627

   b. My electronic service address is _(specify)_: emailrels@gmail.com

3. I electronically served the following documents _(exact titles)_:
   Notice of Appeal of Denial of Motion to Vacate Void Order / Void Judgment. Continuing appeal of issues of trial case CVPS2016001.

4. I electronically served the documents listed in 3. as follows:

   a. Name of person served: Tuan Vu
      On behalf of _(name or names of parties represented, if person served is an attorney)_:
      City of Desert Hot Springs

   b. Electronic service address of person served: tuan.vu@streamkim.com

   c. On _(date)_: 2/20/2024

   [×] The documents listed in 3. were served electronically on the persons and in the manner described in an attachment _(write "APP-009E, Item 4" at the top of the page)_.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 2/20/2024

Lily Dunlop
_(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)_

▶ _(SIGNATURE OF PERSON COMPLETING THIS FORM)_

Form Approved for Optional Use
Judicial Council of California
APP-009E [New January 1, 2017]

**PROOF OF ELECTRONIC SERVICE
(Court of Appeal)**

www.courts.ca.gov

FAC PG 115

FAC PG 116

Exhibit  6

CASE TITLE: Wang vs. City of Sacramento Police          CASE NO: **34-2019-00259673-CU-JR-GDS**
Department, a subdivision of the City of Sacramento, a

The Court did not find it necessary to consider the voluminous evidence filed with the Opposition papers. However, the Court takes sua sponte judicial notice of the 2019 ruling of the Honorable Thadd Blizzard in a similar action (Exh. B to the Declaration of Monty Agarwal.)  In taking judicial notice of that ruling, however, the Court takes notice of the document's existence, not the truth of its contents.   (See *Professional Engineers v. Dep't of Transp.* (1997) 15 Cal.4th 543, 590 [judicial notice of findings of fact does not mean that those findings of fact are true]; *Steed v. Department of Consumer Affairs* (2012) 204 Cal.App.4th 112, 120-121.)

**Legal Standards**

A motion for protective order asks the Court to modify, prohibit, or limit discovery procedures to protect a party from an excessive or unnecessary burden, expense, or intrusion. (Code Civ. Proc. § 2025.420.) "The court, for good cause shown, may make any order that justice requires to protect any party or other natural person or organization from unwarranted annoyance, embarrassment, or oppression, or undue burden and expense."  (Code Civ. Proc. § 2030.090(b).)

Relevant in this particular case is Government Code section 53069.4, which as described above, Appellants herein use as their procedural vehicle to contest the underlying administrative decision.  That Section provides, in pertinent part:

Notwithstanding Section 1094.5 or 1094.6 of the Code of Civil Procedure, within 20 days after service of the final administrative order or decision of the local agency is made pursuant to an ordinance enacted in accordance with this section regarding the imposition, enforcement, or collection of the administrative fines or penalties, *a person contesting that final administrative order or decision may seek review by filing an appeal to be heard by the superior court, where the same shall be heard de novo, except that the contents of the local agency's file in the case shall be received in evidence*.

(Gov't Code § 53069.4(b)(1) (emphasis added).)

It further provides:

A copy of the document or instrument of the local agency providing notice of the violation and imposition of the administrative fine or penalty shall be admitted into evidence *as prima facie evidence of the facts stated therein*.

(*Id.* (emphasis added).)

Additionally, that subdivision states: "The conduct of the appeal under this section is a subordinate judicial duty that may be performed by traffic trial commissioners and other subordinate judicial officers at the direction of the presiding judge of the court."  (Gov't Code § 53069.4(b)(3).)

**Discussion**

As a threshold matter, the Court notes that it will not summarize the appellate history of this action and will not address the classification of this matter as limited or unlimited based on the amount in controversy.  The parties are familiar with these.  The Court proceeds directly to the issue presented in the moving papers: whether discovery should be permitted to proceed in this action, which is an "appeal" that will be heard "de novo."

The City argues, "based upon the plain language of the statute, the current case is specified as an appeal to review the administrative decision and, by implication, the record that is the basis for such decision."  (P&As at 4-5.)  The City argues that the statute provides for the "contents of the local

CASE TITLE: Wang vs. City of Sacramento Police     CASE NO: **34-2019-00259673-CU-JR-GDS**
Department, a subdivision of the City of Sacramento, a

agency's file" to be "received in evidence" along with "a copy of the document or instrument of the local agency providing notice of the violation and imposition of the administrative fine or penalty," which "shall be admitted into evidence as prima facie evidence of the facts stated therein." (*Id.*) The City argues that the Statute provides for the "exact evidence and documents to be reviewed de novo" such that no additional evidence beyond these listed items should be permitted, because "[t]he terms of the more specific statute take precedence over those of the more general statute." (*Id.* (citing *People v. Barrett* (2003) 109 Cal.App.4th 437, 450).)

The Court is not persuaded.

First, here the Court is not reconciling the text of a specific statute with a more general statute. Regardless, Section 53069.4(b)(1) nowhere suggests that *only* the document "providing notice of the violation and imposition of the administrative fine or penalty," and the "local agency's file," constitute the *entirety* of materials that can be received into evidence in these particular actions.

For the first time on Reply, the City focuses on the Section's use of this phrase: the appeal "shall be heard de novo, **_except that_** the contents of the local agency's file in the case shall be received in evidence . . . ." (Reply at 2 (quoting Section 53069.4(b)(1) (emphasis in Reply).) The City argues that this "except that" phrasing limits the evidence to be used in the "de novo" appeal, i.e., such that only the local agency's file and the citation document can be admitted into evidence in the appeal. The Court is not persuaded. For instance, Section 53069.4 does not expressly mention transcripts or "the record" from the underlying administrative hearing, and yet those would presumably also be evidence properly considered in an "appeal." The Court is not persuaded that Section 53069.4 includes an exhaustive list of the evidence that may properly be considered in the de novo appeal.

Second, the text of Section 53069.4(b)(1) envisions the introduction of new evidence that might rebut the "**_prima facie_** evidence of the facts stated" in "the document or instrument . . . providing notice of the violation and imposition of the administrative fine or penalty." (emphasis added.) As Appellants argue, the text of Section 53069.4 describes the City's notice of violation and imposition of penalty as merely "prima facie" evidence **_that can potentially be rebutted_** -- i.e., presumably upon introduction of new, competing evidence. If "shall be heard de novo" meant a review of the administrative record only, there would be no need for this presumption, or the allowance that it can be rebutted.

The City does not meaningfully address the term "prima facie" as used in Section 53069.4(b)(1).

The City argues that the case of *Martin v. Riverside Co. Dept. of Code Enforcement* (2008) 166 Cal.App.4th 1406, 1411-12 indicates that review under Section 53069.4 is a "limited de novo appeal." Rather than supporting the City's position here, however, *Martin* actually suggests that a "de novo" appeal under Section 53069.4 can properly include new evidence that had not been admitted at the administrative level. In *Martin*, the superior court judge had "consider[ed] all evidence submitted, even if it had not been presented at the administrative hearing." (*Id.* at 1410 (emphasis added).) The Court of Appeal described the Superior Court's process as "conduct[ing] the hearing both on the writ petition **_and as a de novo appeal_**." (*Id.* (emphasis added).)

This suggests that a "de novo appeal" under Section 53069.4 can properly include evidence that "had not been admitted at the administrative level." At least, the Court of Appeal in *Martin* did not take issue with the trial court for having considered new evidence in the "appeal" in that case.

Further, as Appellants argue (Opp'n at 9-11), when Section 53069.4 was enacted, the Legislature modeled its "de novo appeal" process after a similar one authorized under section 40230 of the Vehicle Code for parking violations. The object of the legislation was to provide a 'faster, easier, fairer approach' for addressing municipal code violations by 'getting the issues out of the courts' while 'saving public and

private funds.' (*County of Humboldt v. Appellate Division of Superior Court* (2020) 46 Cal.App.5th 298, 313.) Here, Appellants argue that the origin is readily seen by a side-by-side comparison in texts:

[A] person contesting ... may seek review by filing an appeal to be heard by the superior court, where the same shall be heard de novo, except that the contents of the local agency's file in the case shall be received in evidence . . .

(Gov't Code § 53069.4.)

[T]he contestant may seek review by filing an appeal to be heard by the superior court where the same shall be heard de novo, except that the contents of the processing agency's file in the case shall be received in evidence ...

(Vehicle Code § 40320(a).)

Appellants argue that because § 53069.4 "borrows the de novo judicial appeal process from its parking citation counterpart," *County of Humboldt*, 46 Cal.App.5th 298, 313, the terms "appeal" and "shall be heard de novo" should be interpreted similarly. (Opp'n at 9; see *Glaviano v. Sacramento City Unified School Dist.* (2018) 22 Cal.App.5th 744, 753 (for "substantially similar language, the usual presumption is that the Legislature intended the same construction, unless a contrary intent clearly appears.") (citations omitted).) Under Vehicle Code § 40230(a), the term "shall be heard de novo" means a trial de novo. In *Lagos v. City of Oakland* (1995) 41 Cal.App.4th Supp. 10, 11-12, the court, discussing Vehicle Code § 40320(a), explained, "this de novo appeal is similar to a small claims appeal." Code of Civil Procedure § 116.770(a), which governs small claims appeals, provides that an "appeal to the superior court shall consist of a new hearing." In *ERA-Trotter Girouard Assoc. v. Superior Court* (1996) 50 Cal.App.4th 1851, 1855, the court explained that a small claims "appeal" "is one in name only." "*A small claims appeal is, in fact, a trial de novo in superior court.*" (*Id.* (emphasis added); see also *Martin v. Riverside County Dept. of Code Enforcement* (2008) 166 Cal.App.4th 1406, 1411 ("Although Government Code section 53069.4 uses the word "appeal" to describe the limited civil proceeding, what seems to be meant is a de novo hearing by a single judge ..."); *People v. Kennedy* (2008) 168 Cal.App.4th 1233, 1240 ("In certain respects, the requirement for a trial de novo under [Vehicle Code] section 40902 is similar to the statutory requirement of a trial de novo applicable in cases arising from decisions by local agencies pursuant to an ordinance. (Gov. Code, § 53069.4, subd. (b)(1).)" (emphasis added).) The Court agrees with Appellants that the analogous nature of the Government Code and the Vehicle Code in this regard supports allowing new evidence on appeal here.

Finally, the Court agrees with Appellants that the plain text of Section 53069.4 does not state that the administrating hearing transcript and record shall be admitted into evidence or that it shall be the sole evidentiary basis for the de novo appeal here. The Section provides for admission into evidence of the "the contents of the local agency's file in the case," which refers to the City's investigation file: if the Legislature meant to say the "administrative hearing record," it would have done so. (Opp'n at 11-12.) Moreover, as Appellants argue, discovery is available because Section 53069.4(b)(1) does not expressly bar discovery. (See e.g., *City of Los Angeles v. Sup. Ct.* (2017) 9 Cal.App.5th 272, 284-86 (court considered if discovery was allowed in an action arising under the California Public Records Act, and held that because "the Legislature has not included any exemption precluding discovery in such proceedings, we conclude that the discovery act applies.").)

The City relies in part on *County of Sonoma v. Gustely* (2019) 36 Cal.App.5th 704, which notes that a reviewing court cannot simply "substitute its discretion" for the administrative agency's. (P&As at 5-6.) However, in that case Gustely was found to have committed various county code violations on his property, and was fined civil penalties totaling $2,880. (*Id.* at 707.) He *did not* seek judicial review of the hearing officer's decision prior to appealing to the Court of Appeal, and the Court of Appeal noted: "He

CASE TITLE: Wang vs. City of Sacramento Police Department, a subdivision of the City of Sacramento, a    CASE NO: **34-2019-00259673-CU-JR-GDS**

had two potential means of doing so: A petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5 or an appeal to the superior court pursuant to Government Code section 53069.4." (*Id.* at 711 (emphasis added).)  The issue of whether new evidence could be admitted in an appeal "de novo" under Section 53069.4 was therefore not presented in that case.

The City also relies on *County of Humboldt* (2020) 46 Cal.App.5th 298, 312-13, and argues that in that case the "court concluded the de novo appeal mirrors mandamus and is meant to review the administrative record." (P&As at 6.)  As Appellants argue, however, the court made no such determination in that case, because that question was not at issue.  The question was whether a party could appeal further ***after*** a trial de novo under Section 53069.4(b)(1). After sorting out confusion about how cases are classified under Section 53069.4(b)(1), the court held that there ***is*** a right to a further appeal. The court reasoned that since "judgment in an administrative mandamus action is generally appealable" it would be "anomalous" not to allow a further appeal of a judgment under Section 53069.4(b)(1). (*Id.* at 312-13.)

Ultimately, the City has not persuaded the Court that a protective order is warranted here, and has not shown that proceedings pursuant to Section 53069.4 cannot properly include any new evidence.  Indeed, Appellants' Opposition papers challenge the nature and extent of the underlying administrative review process, wherein the examiner imposed a significant financial penalty on Appellants after a hearing that was not subject to the rules of evidence and that may have involved consideration of hearsay evidence.  In the interests of due process, the Court at this time declines to issue a protective order preventing any and all discovery, and declines to find that absolutely no new evidence may be presented as part of a full new "de novo" evidentiary hearing pursuant to Section 53069.4.

The Court clarifies that this ruling is limited to the question of whether discovery should be permitted to occur, not whether the judge assigned to preside over the de novo appeal should or should not admit any new evidence.  Questions of admissibility are preserved for the judicial officer handling the de novo appeal. This Court herein holds only that discovery may proceed in this action.

The City's Motion for Protective Order is DENIED.

The minute order is effective immediately.  No formal order pursuant to CRC Rule 3.1312 or further notice is required.

**COURT RULING**

There being no request for oral argument, the Court affirmed the tentative ruling.

FAC PG 121

Exhibit  7

FAC PG 122

**City Attorneys Department Spring Meeting**
**League of California Cities**
**May 1-3, 1996**

# CIVILIZING
# CODE ENFORCEMENT

**JOAN R. GALLO**
**City Attorney**

**RENÉE A. GURZA**
**Deputy City Attorney**

## <u>OUTLINE</u>

FAC PG 122

**I.    INTRODUCTION**

**II.    ADMINISTRATIVE CITATIONS and SB 814**

      **1.    The Administrative Citations Ordinance**

      **2.    SB 814**

      **3.    Administrative Citation Fines**

      **4.    Administrative Issues**

**III.    ADMINISTRATIVE REMEDIES and SB 814**

      **1.    The Administrative Remedies Ordinance**

      **2.    Penalties and Costs**

      **3.    SB 814**

      **4.    Administrative Issues**

**IV.    NUISANCE ABATEMENT ACTIONS**

**V.    CIVIL COMPROMISES**

**VI.    CONCLUSION**

**ATTACHMENT A - ADMINISTRATIVE CITATIONS ORDINANCE**

**ATTACHMENT B - SB 814**

**ATTACHMENT C - ADMINISTRATIVE REMEDIES ORDINANCE**

# CIVILIZING
# CODE ENFORCEMENT

# I
## *INTRODUCTION*

Over the last couple of years, San José has been moving away from the use of criminal prosecution as the preferred approach to code enforcement and nuisance abatement.

The criminal process does not seem to work as an adequate deterrent in many situations.  It is a slow, labor intensive process for both the City Attorney's Office and the Code Enforcement staff.  When, after months of stalling and delay, pretrial compliance is actually achieved, most judges are not sympathetic to our insisting on a trial in order to impose penalties.  Most of the court imposed fines do not go to the city, and there is an increasing pressure to make code enforcement more cost recovery.  Furthermore, with the advent of Three Strikes and its impact on the courts, there is a real question as to whether most municipal code prosecutions should be on the court's overburdened calendar.

Instead, San José took a comprehensive look at the code enforcement process and adopted a number of administrative procedures which have been coupled with more frequent use of the civil courts.

# II
## *ADMINISTRATIVE CITATIONS*
## *and*
## *SB 814*

1.    The Administrative Citations Ordinance

The Administrative Citation is intended to be used for violations of the municipal code that are **transient** and **not continuing** in nature.  Examples of regulations appropriate for this approach are:  early yard waste set out, false burglar alarms, noisy animals, parking automobiles on front lawns, failure of vendors to carry a required permit, and violations of local smoking prohibitions.

The structure of the Administrative Citation process is intended to mirror, as much as possible, the new administrative approach to parking tickets.  An enforcement officer issues an Administrative Citation that lists the code violation and the administrative fine amount and describes how to pay the fine or request a hearing to contest the citation.  The Administrative Citation is contested through an administrative hearing process.  The amount of the fine must be deposited in advance of the administrative hearing, but there is a procedure for a waiver of that deposit, if making the deposit causes a hardship.

The San José Administrative Citations Ordinance is provided in Attachment A.

2.    <u>SB 814</u>

The major impediment to this approach was the fact that the administrative hearing
officer's decision would be subject to review under administrative mandamus (CCP
§1094.5), and we did not want to burden code enforcement staff with having to prepare
detailed reports and appear at administrative hearings in order to create a sufficient
administrative record.

Parking citations constitute *prima facie* evidence of the facts of a violation listed on the
citation and are subject to *de novo* review by the Municipal Court (Cal. Veh. Code
§40230).  We similarly stated in our ordinance that an Administrative Citation
constitutes *prima facie* evidence of the facts contained in the citation.  Therefore, San
José sponsored this legislation in order to provide similar *de novo* review of
Administrative Citations by the Municipal Court.

There are few cases that even indirectly discuss the ability of cities to use
administrative fines and penalties.  As a charter city, we felt comfortable imposing civil
fines pursuant to our police powers.  Under <u>City of Stockton v. Frisbie & Latta</u>, (1928)
93 Cal. App. 277, cities and towns are not limited to the adoption of any particular mode
of enforcing their regulations and civil remedies may be appropriate.  There is also
statutory authority in Government Code §36901 for the legislative body of a city to
impose fines, penalties, and forfeitures, up to $1,000.  While the provision seems to be
somewhat penal in nature, it does not specify such a limitation.  An 1892 case, <u>*Ex Parte*
*M. Green*</u>, 94 Cal. 387, concluded that where the power to impose fines has been
conferred and no mode has been specified for their collection, it is within the power of a
municipal corporation to adopt any reasonable mode for the collection of the fine.

Given the dearth of case law, one of the side benefits of Senate Bill 814 is that it
provides clear statutory authority, in Government Code §53069.4, for an administrative
enforcement approach by cities:

> **The legislative body of a local agency, as the term
> "local agency" is defined in Section 54951, may by
> ordinance make any violation of any ordinance
> enacted by the local agency subject to an
> administrative fine or penalty**.

Of course, few bills emerge through the legislative process as originally proposed.
There are two important elements in this bill which were added along the way:

a.    The California Attorneys for Criminal Justice added the provision that
      administrative fines for infractions cannot be higher than applicable statutory
      maximums.  Since cities determine which municipal code violations are
      infractions, this change should not pose a problem.

b.    The California Apartment Association wanted to ensure that landlords are given

an opportunity to correct certain violations, such as illegal fences, prior to the imposition of fines.  Therefore, a provision was added to the bill requiring that the enabling ordinance include a provision setting forth a "reasonable period of time" to correct continuing violations prior to the imposition of a fine for building, plumbing, electrical code and other structural or zoning violations.

Since, the Administrative Citations approach will work best for violations of the municipal code which are transient and not continuing in nature, rather than set forth a period time to correct these "continuing" types of violations, we explicitly stated in our ordinance that the Administrative Citation ordinance shall **not** apply to "continuing" violations of building, plumbing, electrical codes and other structural or zoning issues.

A copy of SB 814 is provided in Attachment B.  The provisions relevant to Administrative Citations are found in SECTION 2 of the bill.

3.    Administrative Citation Fines

The amount of the fine is set by resolution.  In San José, the standard fine is $25 for a typical municipal code violation.  However, higher fines are established for more serious violations, after consideration of factors such as: what constitutes a reasonable fine amount for the violation, the staff time involved to identify and address the code violation, and what fine amount would act as a reasonable deterrent to the behavior or act at issue.  We also have provided for penalties and interest on late payments of administrative fines.

As an example: while responsible parties are provided with warnings for the first and second false burglar alarms, our administrative fine is $100 for a third false burglar alarm in sixty-days; $250 for the fourth in this period; and $500 for any subsequent false alarms during this same sixty-day period.  Between July 1, 1995 and March 15, 1996, the City of San José issued approximately 1,500 Administrative Citations for false burglar alarms.  Of those, approximately 60, or 4%, were appealed.  Administrative Citation fines (including penalties and interest for late payments of fines) for false burglar alarms during this period totaled $174,000 and approximately $126,200 was received without necessity for a collection action, for a collection rate of approximately 73%.  Unpaid fines presently are being collected by our Finance Department, but eventually may be turned over to a collection agency if the volume becomes too great.

4.    Administrative Issues

This administrative approach allows staff of various departments, in addition to police officers and code enforcement officers, to enforce their own ordinances.  The hearing officer can be in the administrative department that issues the citation or can be centrally designated to handle all challenges.  It may be reasonable to use the existing parking ticket hearing officer.

FAC PG 127

In San José, this ordinance currently is being implemented on a pilot project basis to work out the procedures and to allow training for staff in its use.  It is just beginning to have an effect.  Staff has embraced this approach enthusiastically because it is so streamlined, convenient and "user" friendly.

**III**
***ADMINISTRATIVE REMEDIES***
***and***
***SB 814***

1.     The Administrative Remedies Ordinance

This approach has been used successfully in dealing with continuing and ongoing violations of the zoning code and the building, plumbing, and electrical codes.  It affords Code Enforcement staff with greater control over their cases and an ability to respond to code violations more quickly than is possible through the criminal process.

Under this approach, an enforcement officer issues a Compliance Order to a responsible party that sets forth a description of the municipal code violation(s) identified at the property, a description of what the responsible party is required to do to bring the property into compliance, and the date by which compliance must be achieved.  The Compliance Order also provides notice that administrative penalties of up to $2,500 per day begin to accrue if compliance with the Compliance Order is not achieved by the compliance date listed on the Order and describes the appeals process.

If Code Enforcement staff determines upon reinspection of the property that compliance with the Compliance Order was not achieved by the compliance date, a public hearing is scheduled before an administrative hearing body and notice of the hearing is provided to the responsible party.  Both Code Enforcement staff and the responsible party attend the hearing and present their case, after which the administrative hearing body issues its decision.  In San José, the hearings are conducted by a commission of citizens called the Appeals Hearing Board.  The decision may contain an order to correct any violations determined to exist, together with an order to pay administrative penalties and costs to the city, in amounts determined by the administrative hearing body.

This ordinance has proved very effective in gaining rapid compliance.  A copy of the San Jose Administrative Remedies Ordinance is provided in Attachment C.

2.     Penalties and Costs

Under the Administrative Remedies Ordinance, the administrative hearing body is authorized to impose administrative penalties of up to $2,500 per day for each ongoing code violation, up to a total penalty of $100,000.  General law cities may want to

consider whether, under Government Code §36901, the fine should have a $1,000 per day limitation.  The Ordinance lists factors that the administrative hearing body may consider in establishing the penalty amount, such as: the duration and seriousness of the violation, any good faith efforts of the responsible party to achieve timely compliance, the frequency of violations by the responsible party, the impacts of the violation on the community, and the economic impact of a penalty on the responsible party.

The Ordinance also authorizes the administrative hearing body to order a responsible party to reimburse the city for its administrative costs incurred in pursuing the enforcement action, such as the costs to investigate the matter, perform inspections, and prepare the case for administrative hearing.  The Ordinance allows the city to collect these costs and penalties owed as a personal obligation of the responsible party or by placing a lien on the responsible party's real property when the violation pertains to that real property.

Compliance is overwhelmingly achieved before the compliance date.  Code Enforcement estimates that they actually issue a little over 1,000 Compliance Orders in a calendar quarter.  Only about 7 cases a quarter reach the Appeals Hearing Board because compliance was not achieved by the compliance date.  Additionally, from the time this approach was implemented near the beginning of 1994, Code Enforcement has requested the City Attorney's Office to present their case on only 2 occasions when they knew in advance that the responsible party would be represented at the Board hearing by an attorney.

Since this Ordinance was implemented at the end of 1993, the City has imposed approximately $340,000 in administrative penalties and costs.  To date, the largest administrative penalty paid to the City in any one case is $38,900.  The largest lien which has placed against a single property is $50,800.

3.    SB 814

This Administrative Remedies Ordinance is subject to administrative mandamus (CCP Section 1094.5).  When we enacted this ordinance, we were concerned about the applicable statute of limitations.  CCP §1094.6(e) sets a 90-day statute of limitations for employment actions, as well as decisions revoking or denying an application for a permit, license or other entitlement or decisions denying an application for any retirement benefit or allowance.  Therefore, once we decided to sponsor SB 814 to address our Administrative Citation concern, we also sought to amend this section to include decisions "**imposing a civil or administrative penalty, fine, charge, or cost.**" (See SECTION 1 of the bill in Attachment B.)  Thus, cities now, by resolution or ordinance, can make challenges to the administrative process subject to the 90-day statute of limitations.

4.    Administrative Issues

The major difficulty in implementing this ordinance was training staff to fully complete a Compliance Order and prepare the necessary, detailed report for the administrative hearing body.  Code Enforcement staff prepares a report for the administrative hearing body that summarizes the relevant observations, inspections and other pertinent facts of a case, as well as the administrative costs incurred by the city in pursuing the enforcement action.  The report also contains a staff recommendation of an administrative penalty amount, together with the reasons supporting that amount.

Additionally, this report sets forth a detailed recommendation to the administrative hearing body of the relevant findings and conclusions that flow from the facts presented and a recommended decision based upon those findings and conclusions designed to meet the standards for administrative findings set forth in Topanga Assn. for a Scenic Community v. County of Los Angeles, (1974) 11 Cal.3d 506.

It is important to create a sufficient administrative record under this process because the decision may be challenged by a writ of administrative mandamus.  We try to ensure that the administrative record clearly reflects that the administrative findings and decision are supported by substantial evidence.

A Writ of Mandate has been filed in only two cases so far.  The trial court upheld the decision of the Appeals Hearing Board in both.  One decision was appealed and the decision of the Board was upheld in an unpublished decision.

Once staff has learned how to complete the Compliance Orders and draft their reports to the Appeals Hearing Board, this enforcement technique certainly can be more efficient and requires less attorney involvement than traditional code enforcement.

## IV
## NUISANCE ABATEMENT ACTIONS

Civil suits are an effective alternative: where a business creates a nuisance, but it is not technically violating any municipal code provision, for example, a liquor store that has patrons hanging around outside and disturbing the peace; where the code violations are so extreme that immediate closure of the business is warranted; or where drug dealing or gang activity are involved.  The new element for us is that in recent cases, as part of the community policing effort, active neighborhood support is elicited.  The community support in documenting problems and the willingness to sign declarations has made the motions for preliminary injunction more compelling.

We recently succeeded in closing down a liquor store that was creating a serious neighborhood problem.  In addition to alleging a public nuisance pursuant to California Code of Civil Procedure §731 and the applicable municipal code sections, we alleged a cause of action for unfair competition pursuant to California Business and Professions Code §17200, *et. seq.* (this cause of action is not available to smaller cities).

After closure of the liquor store, the number of alcohol-related violations and narcotics-related violations in the vicinity of the liquor store have decreased dramatically. The total number of liquor-related offenses decreased by 77%. The total number of narcotics-related offenses decreased by 67%. The total number of incidents reported in the vicinity decreased by 54%.

The Police Department credits the closing of this liquor store with far-reaching beneficial effects. Not only has it turned around the immediate problems, but since the case garnered so much publicity, the beat officers find that they get a lot of attention when they suggest to a business or property owner that they might be the next "Charlie's."

V

**CIVIL COMPROMISES**

We continue to use criminal citations in most situations where the Police Department enforces the Code, especially where the Police Department wants to actually remove someone from the scene. We will also continue to use the criminal process for violations involving hazardous materials or sewer disposal regulations. The Municipal Court has been willing to impose jail sentences under these circumstances. However, where jail time is not our goal, we have found that a civil compromise can serve the same function in preventing recurrence as does probation and it is more readily agreed to than a guilty plea.

In a recent case, the civil compromise resulted in civil penalties and restitution to the City for past violations in the total amount of $150,000. Additionally, the civil compromise included an injunction which specifies very stiff civil penalties for any future violations.

This injunction will be overseen by the Superior Court, and requires obedience with all laws and mandates of the San Jose Fire Department during its three (3) year duration. If any violations occur during this time, the duration of the injunction will be extended for a one-year period of time per violation. The injunction required compliance with very specific conditions for the operation of the business, including making their business premises and their hazardous materials monitoring records available for inspection by the Fire Department upon request.

VI

**CONCLUSION**

SB 814 was enacted in order to facilitate use of the Administrative Citations and Administrative Remedies processes. As part of a comprehensive civil approach, we are also utilizing Nuisance Abatement lawsuits and civil compromises of criminal actions.

While we continue to use the traditional summary and proposed nuisance abatement

FAC PG 131

procedures in extreme cases, it is not favored because this type of abatement requires an expenditure of City funds to perform the abatement work. Cities performing abatement work on substandard housing also should be aware that the State Department of Housing and Community Development contends, we believe incorrectly, that the substandard housing abatement process set forth under State Housing Law is the exclusive method that may be used to abate substandard housing conditions. For further discussion of this issue, <u>see</u>, Libow and Phillips, "The Abatement of Substandard Housing Conditions, The State Housing Law and Regulations: A Trap for the Unwary," League of California Cities Annual Conference (October 1994).

Other ordinances that are a part of this administrative approach include:

- <u>Neglected Vacant House Ordinance</u>: This ordinance defines neglected, vacant houses as public nuisances. It sets standards for maintenance of residential buildings remaining vacant for more than 30 days, and includes structural and building standards, fire safety standards, security standards, debris removal and appearance standards. Owners of houses determined to be **neglected** vacant houses must register their residences in a monitoring program; inspect or cause their residences to be inspected once every 2 weeks; and pay the applicable fee for registration in the monitoring program. Appeals regarding placement in the monitoring program or payment of fees are heard by our Appeals Hearing Board.

- <u>Owner Relocation Obligations Ordinance</u>: This ordinance mandates that owners of rental units provide tenants with relocation assistance in the event it becomes necessary for the City to take enforcement action to bring the unit into compliance with housing or fire codes. Emergency, temporary, and long term relocation assistance are all required. Relocation assistance includes alternative safe and legal housing at no additional rental cost to the tenant, transportation costs arising from the displacement, provision of furnishings, and reasonable security for tenants' property remaining in the unit. The ordinance also gives tenants the right to reoccupy the unit when the violations have been corrected, the right to no increases in rent for 12 months after reoccupying the unit, and a private right of action against the owner for any damages.

We also want to call your attention to AB 1837 (Figueroa), which became effective January 1, 1996 and amended Penal Code Section 594.5 to provide that nothing in the Penal Code shall invalidate a city ordinance setting forth "administrative regulations, procedures, or penalties governing the placement of graffiti or other inscribed material on public or private, real or personal property." Thus, under this new law, cities can address graffiti administratively. We currently are assessing the possibility of an ordinance pursuant to this bill.

It is too early to fully assess the success of these administrative approaches, but, at this point, all indications are that it takes less time to achieve compliance and stop the nuisance.

ATTACHMENT A
ADMINISTRATIVE CITATION ORDINANCE

**Chapter 1.15**
**ADMINISTRATIVE CITATIONS**

**1.15.010** <u>**Applicability**</u>

A.    This Chapter provides for administrative citations which are in addition to all other legal remedies, criminal or civil, which may be pursued by the City to address any violation of this Code.

B.    The administrative citations process set forth in this Chapter does not apply to continuing violations of this Code that pertain to building, plumbing, electrical, or other similar structural or zoning issues.

C.    Use of this Chapter shall be at the sole discretion of the City, subject to Section 1.15.010.B.

**1.15.020** <u>**Enforcement Officer -- Defined**</u>

For purposes of this Chapter, "enforcement officer" shall mean any City employee or agent of the City with the authority to enforce any provision of this code.

**1.15.030  Administrative Citation**

A.    Whenever an enforcement officer charged with the enforcement of any provision of this Code determines that a violation of that provision has occurred, the enforcement officer shall have the authority to issue an administrative citation to any person responsible for the violation.

B.    Each administrative citation shall contain the following information:

1.    The date of the violation;

2.    The address or a definite description of the location where the violation occurred;

3.    The section of this Code violated and a description of the violation;

4.    The amount of the fine for the code violation;

5.    A description of the fine payment process, including a description of the time within which and the place to which the fine shall be paid;

6.    An order prohibiting the continuation or repeated occurrence of the code violation described in the administrative citation;

7.    A description of the administrative citation review process, including the time within which the administrative citation may be contested and the place from which a request for hearing form to contest the administrative citation may be obtained; and

8.    The name and signature of the citing enforcement officer.

**1.15.040  Amount of Fines**

A.    The amounts of the fines for code violations imposed pursuant to this Chapter shall be set forth in the schedule of fines established by resolution of the City Council.

B.    The schedule of fines shall specify any increased fines for repeat violations of the same code provision by the same person within thirty-six months from the date of an administrative citation.

C.    The schedule of fines shall specify the amount of any late payment charges imposed for the payment of a fine after its due date.

**1.15.050  Payment of the Fine**

A.    The fine shall be paid to the City within thirty days from the date of the administrative citation.

B.    Any administrative citation fine paid pursuant to subsection A. shall be refunded in accordance with Section 1.15.100 if it is determined, after a hearing, that the person charged in the administrative citation was not responsible for the violation or that there was no violation as charged in the administrative citation.

C.    Payment of a fine under this Chapter shall not excuse or discharge any continuation or repeated occurrence of the code violation that is the subject of the administrative citation.

**1.15.060  Hearing Request**

A.     Any recipient of an administrative citation may contest that there was a violation of the Code or
       that he or she is the responsible party by completing a request for hearing form and returning it to
       the City within thirty days from the date of the administrative citation, together with an advance
       deposit of the fine or notice that a request for an advance deposit hardship waiver has been filed
       pursuant to Section 1.15.070.

B.     A request for hearing form may be obtained from the department specified on the administrative
       citation.

C.     The person requesting the hearing shall be notified of the time and place set for the hearing at
       least ten days prior to the date of the hearing.

D.     If the enforcement officer submits an additional written report concerning the administrative
       citation to the hearing officer for consideration at the hearing, then a copy of this report also shall
       be served on the person requesting the hearing at least five days prior to the date of the hearing.

**1.15.070  Advance Deposit Hardship Waiver**

A.     Any person who intends to request a hearing to contest that there was a violation of the Code or
       that he or she is the responsible party and who is financially unable to make the advance deposit
       of the fine as required in Section 1.15.060.A. may file a request for an advance deposit hardship
       waiver.

B.     The request shall be filed with the Department of Finance on an  advance deposit hardship waiver
       application form, available from the Department of Finance, within ten days of the date of the
       administrative citation.

C.     The requirement of depositing the full amount of the fine as described in Section 1.15.06.A. shall
       be stayed unless or until the Director of Finance makes a determination not to issue the advance
       deposit hardship waiver.

D.     The Director may waive the requirement of an advance deposit set forth in Section 1.15.060.A.
       and issue the advance deposit hardship waiver only if the cited party submits to the Director a
       sworn affidavit, together with any supporting documents or materials, demonstrating to the
       satisfaction of the Director the person's actual financial inability to deposit with the City the full
       amount of the fine in advance of the hearing.

E.     If the Director determines not to issue an advance deposit hardship waiver, the person shall remit
       the deposit to the City within ten days of the date of that decision or thirty days from the date of the
       administrative citation, whichever is later.

F.     The Director shall issue a written determination listing the reasons for his or her determination to
       issue or not issue the advance deposit hardship waiver. The written determination of the Director
       shall be final.

G.     The written determination of the Director shall be served upon the person who applied for the
       advance deposit hardship waiver.

**1.15.080  Hearing Officer**

The City Manager shall designate the hearing officer for the administrative citation hearing.

**1.15.090  Hearing Procedure**

A.     No hearing to contest an administrative citation before a hearing officer shall be held unless the
       fine has been deposited in advance in accordance with Section 1.15.060 or an advance deposit

hardship waiver has been issued in accordance with Section 1.15.070.

B.      A hearing before the hearing officer shall be set for a date that is not less than fifteen days and not more than sixty days from the date that the request for hearing is filed in accordance with the provisions of this Chapter.

C.      At the hearing, the party contesting the administrative citation shall be given the opportunity to testify and to present evidence concerning the administrative citation.

D.      The failure of any recipient of an administrative citation to appear at the administrative citation hearing shall constitute a forfeiture of the fine and a failure to exhaust their administrative remedies.

E.      The administrative citation and any additional report submitted by the enforcement officer shall constitute prima facie evidence of the respective facts contained in those documents.

F.      The hearing officer may continue the hearing and request additional information from the enforcement officer or the recipient of the administrative citation prior to issuing a written decision.


**1.15.100  Hearing Officer's Decision**

A.      After considering all of the testimony and evidence submitted at the hearing, the hearing officer shall issue a written decision to uphold or cancel the administrative citation and shall list in the decision the reasons for that decision. The decision of the hearing officer shall be final.

B.      If the hearing officer determines that the administrative citation should be upheld, then the fine amount on deposit with the City shall be retained by the City.

C.      If the hearing officer determines that the administrative citation should be upheld and the fine has not been deposited pursuant to an advance deposit hardship waiver, the hearing officer shall set forth in the decision a payment schedule for the fine.

D.      If the hearing officer determines that the administrative citation should be canceled and the fine was deposited with the City, then the City shall promptly refund the amount of the deposited fine, together with interest at the average rate earned on the City's portfolio for the period of time that the fine amount was held by the City.

E.      The recipient of the administrative citation shall be served with a copy of the hearing officer's written decision.

F.      The employment, performance evaluation, compensation and benefits of the hearing officer shall not be directly or indirectly conditioned upon the amount of administrative citation fines upheld by the hearing officer.

**1.15.110  Late Payment Charges**

Any person who fails to pay to the City any fine imposed pursuant to the provisions of this Chapter on or before the date that fine is due also shall be liable for the payment of any applicable late payment charges set forth in the schedule of fines.

**1.15.120  Recovery of Administrative Citation Fines and Costs**

The City may collect any past due administrative citation fine or late payment charge by use of all available legal means. The City also may recover its collection costs pursuant to Section 1.17.060.

**1.15.125  Right to Judicial Review**

Any person aggrieved by an administrative decision of a Hearing Officer on an administrative citation may obtain review of the administrative decision by filing a petition for review with the Municipal Court in Santa Clara County in accordance with the timelines and provisions set forth in California Government Code Section 53069.4.

**1.15.130  Notices**

A.    The administrative citation and all notices required to be given by this Chapter shall be served on the responsible party in accordance with the provisions of Section 1.04.140 of this Title.

B.    Failure to receive any notice specified in this Chapter does not affect the validity of proceedings conducted hereunder.

ATTACHMENT B

**SB 814**

Introduced by Senators Alquist and Kopp
Chaptered 10-16-95    95-0898    February 23, 1995

The People of the State of California do enact as follows:

**SECTION 1**.  Section 1094.6 of the Code of Civil Procedure is amended to read:

1094.6. (a) Judicial review of any decision of a local agency, other than school district, as the term local agency is defined in Section 54951 of the Government Code, or of any commission, board, officer or agent thereof, may be had pursuant to Section 1094.5 of this code only if the petition for writ of mandate pursuant to such section is filed within the time limits specified in this section.

(b) Any such petition shall be filed not later than the 90th day following the date on

which the decision becomes final. If there is no provision for reconsideration of the decision, or for a written decision or written findings supporting the decision, in any applicable provision of any statute, charter, or rule, for the purposes of this section, the decision is final on the date it is announced.  If the decision is not announced at the close of the hearing, the date, time, and place of the announcement of the decision shall be announced at the hearing.  If there is a provision for reconsideration, the decision is final for purposes of this section upon the expiration of the period during which such reconsideration can be sought; provided, that if reconsideration is sought pursuant to any such provision the decision is final for the purposes of this section on the date that reconsideration is rejected.  If there is a provision for a written decision or written findings, the decision is final for purposes of this section upon the date it is mailed by first-class mail, postage prepaid, including a copy of the affidavit or certificate of mailing, to the party seeking the writ. Subdivision (a) of Section 1013 does not apply to extend the time, following deposit in the mail of the decision or findings, within which a petition shall be filed.

(c) The complete record of the proceedings shall be prepared by the local agency or its commission, board, officer, or agent which made the decision and shall be delivered to the petitioner within 190 days after he has filed a written request therefor.  The local agency may recover from the petitioner its actual costs for transcribing or otherwise preparing the record.  Such record shall include the transcript of the proceedings, all pleadings, all notices and orders, any proposed decision by a hearing officer, the final decision, all admitted exhibits, all rejected exhibits in the possession of the local agency or its commission, board, officer, or agent, all written evidence, and any other papers in the case.

(d) If the petitioner files a request for the record as specified in subdivision (c) within 10 days after the date the decision becomes final as provided in subdivision (b), the time within which a petition pursuant to Section 1094.5 may be filed shall be extended to not later than the 30th day following the date on which the record is either personally delivered or mailed to the petitioner or his attorney of record, if he has one.

(e) As used in this section, decision means a decision subject to review pursuant to Section 1094.5, suspending, demoting, or dismissing an officer or employee, revoking, denying an application for a permit, license, or other entitlement, **imposing a civil or administrative penalty, fine, charge, or cost,** or denying an application for any retirement benefit or allowance.

(f) In making a final decision as defined in subdivision (e), the local agency shall provide notice to the party that the time within which judicial review must be sought is governed by this section.  As used in this subdivision, "party" means an officer or employee who has been suspended, demoted or dismissed; a person whose permit, license, or other entitlement has been revoked or suspended, or whose application for a permit, license, or other entitlement has been denied; or a person whose application for a retirement benefit or allowance has been denied.

(g) This section shall prevail over any conflicting provision in any otherwise applicable law relating to the subject matter, unless the conflicting provision is a state or federal law which provides a shorter statute of limitations, in which case the shorter statute of limitations shall apply.

**SECTION. 2.**  Section 53069.4 is added to the Government Code, to read:

53069.4. (a) (1) The legislative body of a local agency, as the term "local agency" is defined in Section 54951, may by ordinance make any violation of any ordinance enacted by the local agency subject to an administrative fine or penalty.  The local agency shall set forth by ordinance the administrative procedures that shall govern the imposition, enforcement, collection, and administrative review by the local agency of those administrative fines or penalties. where the violation would otherwise be an infraction, the administrative fine or penalty shall not exceed the maximum fine or penalty amounts for infractions set forth in subdivision (b) of Section 25132 and subdivision (b) of Section 36900.

(2) The administrative procedures set forth by ordinance adopted by the local agency pursuant to paragraph (1), shall provide for a reasonable period of time, as specified in the ordinance, for a person responsible for a continuing violation to correct or otherwise remedy the violation prior to the imposition of administrative fines or penalties, when the violation pertains to building, plumbing, electrical, or other similar structural or zoning issues, that do not create an immediate danger to health or safety.

(b) (1) Notwithstanding the provisions of Section 1094.5 or 1094.6 of the Code of Civil Procedure, within 20 days after service of the final administrative order or decision of the local agency is made pursuant to an ordinance enacted in accordance with this section regarding the imposition, enforcement or collection of the administrative fines or penalties, a person contesting that final administrative order or decision may seek review by filing an appeal to be heard by the Municipal Court, where the same shall be heard de novo, except that the contents of the local agency's file in the case shall be received in evidence.  A copy of the document or instrument of the local agency providing notice of the violation and imposition of the administrative fine or penalty shall be admitted into evidence as prima facie evidence of the facts stated therein.  A copy of the notice of appeal shall be served in person or by first-class mail upon the local agency by the contestant.

(2) The fee for filing the notice of appeal shall be twenty-five dollars ($25).  The court shall request that the local agency's file on the case be forwarded to the court, to be received within 15 days of the request.  The court shall retain the twenty-five dollar ($25) fee regardless of the outcome of the appeal.  If the court finds in favor of the contestant, the amount of the fee shall be reimbursed to the contestant by the local agency.  Any deposit of the fine or penalty shall be refunded by the local agency in accordance with the judgment of the court.

(3) The conduct of the appeal under this section is a subordinate judicial duty that may be performed by traffic trial commissioners and other subordinate judicial officials at the direction of the presiding judge of the court.

(c) If no notice of appeal of the local agency's final administrative order or decision is filed within the period set forth in this section, the order or decision shall be deemed confirmed.

(d) If the fine or penalty has not been deposited and the decision of the court is against the contestant, the local agency may proceed to collect the penalty pursuant to the procedures set forth in its ordinance.


# ATTACHMENT C
# ADMINISTRATIVE REMEDIES ORDINANCE

### Chapter 1.14
### ADMINISTRATIVE REMEDIES

**1.14.010  Applicability**

A.      This Chapter provides for administrative remedies, which are in addition to all other legal remedies, criminal or civil, which may be pursued by the City to address any violation of this Code.

B.      Use of this Chapter shall be at the sole discretion of the City.

**1.14.020  Director -- Defined**

For purposes of this Chapter, "Director'' means the head of any City department which is charged with responsibility for enforcement of any provision of this Code.

**1.14.030  Compliance Order**

A.      Whenever the Director determines that a violation of any provision of this Code within the Director's responsibility is occurring or exists, the Director may issue a written compliance order to any person responsible for the violation.

B.      A compliance order issued pursuant to this Chapter shall contain the following information:

1.      The date and location of the violation;

2.      The section of this Code violated and a description of the violation;

3.      The actions required to correct the violation;

4.      The time period after which administrative penalties will begin to accrue if compliance with the order has not been achieved;

5.      Either a copy of this Chapter or an explanation of the consequences of noncompliance with this Chapter and a description of the hearing procedure and appeal process.

## 1.14.040  Method of Service

A.      All notices required by this Chapter shall be served as provided in Section 1.04.140 of this Title.
B.      Where real property is involved, written notice shall be mailed to the property owner at the address as shown on the last equalized County assessment roll.

C.      Where personal service or service by mail upon the property owner is unsuccessful, a copy of the order shall be conspicuously posted at the property which is the subject of the order.

D.      The failure of any person to receive any notice required under this Chapter shall not affect the validity of any proceedings taken under this Chapter.

## 1.14.050  Hearing

A.      If the Director determines that all violations have been corrected within the time specified in the compliance order, no further action shall be taken.

B.      If full compliance is not achieved within the time specified in the compliance order, the Director shall advise the secretary to the Appeals Board to set a hearing before the Board.

C.      The secretary to the Appeals Hearing Board shall cause a written notice of hearing to be served on the violator and, where real property is involved, a notice of hearing shall be served on the property owner at the address as it appears on the last equalized County assessment roll available on the date the notice is prepared.

## 1.14.060  Notice of Hearing

A.      Every notice of hearing on a compliance order shall contain the date, time and place at which the hearing shall be conducted by the Appeals Hearing Board.

B.      Each hearing shall be set for a date not less than fifteen days nor more than sixty days from the date of the notice of hearing unless the Director determines that the matter is urgent or that good cause exists for an extension of time.

C.      This hearing serves to provide the full opportunity of a person subject to a compliance order to object to the determination that a violation has occurred and/or that the violation has continued to exist. The failure of any person subject to a compliance order, pursuant to this Chapter, to appear at the hearing shall constitute a failure to exhaust administrative remedies.

## 1.14.070  Hearing -- Findings and order.

A.      At the place and time set forth in the notice of hearing, the Appeals Hearing Board shall conduct a hearing on the compliance order issued pursuant to Section 1.14.030.

B.    The Board shall consider any written or oral evidence consistent with its rules and procedures regarding the violation and compliance by the violator or by the real property owner.

C.    Within a reasonable time following the conclusion of the hearing, the Board shall make findings and issue its determination regarding:

1.    The existence of the violation;

2.    The failure of the violator or owner to take required corrective action within the required time period.

D.    The Board shall issue written findings on each violation. The findings shall be supported by evidence received at the hearing.

E.    If the Board finds by a preponderance of the evidence that a violation has occurred and that the violation was not corrected within the time period specified in the compliance order, the Board shall issue an administrative order.

F.    If the Board finds that no violation has occurred or that the violation was corrected within the time period specified in the compliance order, the Board shall issue a finding of those facts.

**1.14.080  Administrative Order**

If the Appeals Hearing Board determines that a violation occurred which was not corrected within the time period specified in the compliance order, the Board shall issue an administrative order described in Section 1.14.070 which imposes any or all of the following:

A.    An order to correct, including a schedule for correction where appropriate;

B.    Administrative penalties as provided in Section 1.14.090;

C.    Administrative costs as provided in Section 1.14.100.

**1.14.090  Administrative penalties**

A.    The Appeals Hearing Board may impose administrative penalties for the violation of any provision of this Code in an amount not to exceed a maximum of Two Thousand Five Hundred Dollars per day for each ongoing violation, except that the total administrative penalty shall not exceed One Hundred Thousand Dollars exclusive of administrative costs, interest and restitution for compliance reinspections, for any related series of violations.

B.    In determining the amount of the administrative penalty, the Board may take any or all of the following factors into consideration:

1.    The duration of the violation;

2.    The frequency, recurrence and number of violations, related or unrelated, by the same violator;

3.    The seriousness of the violation;

4.    The good faith efforts of the violator to come into compliance;

5.    The economic impact of the penalty on the violator;

6.      The impact of the violation on the community;

7.      Such other factors as justice may require.

C.      Administrative penalties imposed by the Board shall accrue from the date specified in the compliance order and shall cease to accrue on the date the violation is corrected as determined by the Director or the Board.

D.      The Board, in its discretion, may suspend the imposition of applicable penalties for any period of time during which:

1.      The violator has filed for necessary permits; and

2.      Such permits are required to achieve compliance; and

3.      Such permit applications are actively pending before the City, State or other appropriate governmental agency.

E.      Administrative penalties assessed by the Board shall be due by the date specified in the administrative order.

F.      Administrative penalties assessed by the Board are a debt owed to the City and, in addition to all other means of enforcement, if the violation is located on real property, may be enforced by means of a lien against the real property on which the violation occurred.

G.      If the violation is not corrected as specified in the Board's order to correct, administrative penalties shall continue to accrue on a daily basis until the violation is corrected, subject to the maximum amount set forth in Section 1.14.090.A. above.

H.      If the violator gives written notice to the Director that the violation has been corrected and if the Director finds that compliance has been achieved, the Director shall deem the date the written notice was postmarked or personally delivered to the Director or the date of the final inspection, whichever first occurred, to be the date the violation was corrected. If no written notice is provided to the Director, the violation will be deemed corrected on the date of the final inspection.

**1.14.100  Administrative Costs**

A.      The Appeals Hearing Board shall assess administrative costs against the violator when it finds that a violation has occurred and that compliance has not been achieved within the time specified in the compliance order.

B.      The administrative costs may include any and all costs incurred by the City in connection with the matter before the Appeals Hearing Board including, but not limited to, costs of investigation, staffing costs incurred in preparation for the hearing and for the hearing itself, and costs for all reinspections necessary to enforce the compliance order.

**1.14.110  Failure To Comply With Administrative Compliance Order**

Failure to pay the assessed administrative penalties and administrative costs specified in the administrative order of the Appeals Hearing Board may be enforced as:

1.      A personal obligation of the violator; and/or

2.      If the violation is in connection with real property, a lien upon the real property. The lien shall remain in effect until all of the administrative penalties, interest and administrative

costs are paid in full.

**1.14.120  Right of Judicial Review**

Any person aggrieved by an administrative order of the Appeals Hearing Board may obtain review of the administrative order in the Superior Court by filing with the court a petition for writ of mandate pursuant to Section 1.16.010 of this Code.

**1.14.130  Recovery of Administrative Civil Penalties**

The City may collect the assessed administrative penalties and administrative costs by use of all available legal means, including recordation of a lien pursuant to Section 1.14.160.

**1.14.140  Report of Compliance after Administrative Order**

If the Director determines that compliance has been achieved after a compliance order has been sustained by the Appeals Hearing Board, the Director shall file a report indicating that compliance has been achieved.

**1.14.150  Compliance Dispute**

A.      If the Director does not file a report pursuant to Section 1.14.140 above, a violator who believes that compliance has been achieved may request a compliance hearing before the Appeals Hearing Board by filing a request for a hearing with the secretary to the Board.

B.      The hearing shall be noticed and conducted in the same manner as a hearing on a compliance order provided in Sections 1.14.060 through 1.14.070 of this Chapter.

C.      The Board shall determine if compliance has been achieved and, if so, when it was achieved.

**1.14.160  Lien Procedure**

A.      Whenever the amount of any administrative penalty and/or administrative cost imposed by the Appeals Hearing Board pursuant to this Chapter in connection with real property has not been satisfied in full within ninety days and/or has not been successfully challenged by a timely writ of mandate, this obligation may constitute a lien against the real property on which the violation occurred.

B.      The lien provided herein shall have no force and effect until recorded with the County Recorder. Once recorded, the administrative order shall have the force and effect and priority of a judgment lien governed by the provisions of Sections 697.340 of the Code of Civil Procedure and may be extended as provided in Sections 683.110 to 683.220, inclusive, of the Code of Civil Procedure.

C.      Interest shall accrue on the principal amount of the judgment remaining unsatisfied pursuant to law.

D.      Prior to recording any such lien, the Director of Finance shall prepare and file with the City Clerk a report stating the amounts due and owing.

E.      The City Clerk shall fix a time, date and place for hearing such report and any protests or objections thereto by City Council.

F.      The Director of Finance shall cause written notice to be served on the property owner not less

than ten days prior to the time set for the hearing. Such notice shall be served as provided in
Section 1.04.140 of this Title.

## 1.14.170  Public Hearing and Protests

A.      Any person whose real property is subject to a lien pursuant to Section 1.14.160 may file a written
protest with the City Clerk and/or may protest orally at the City Council meeting.

B.      Each written protest or objection must contain a description of the property in which the protesting
party is interested and the grounds of such protest or objection.

C.      The City Council, after the hearing, shall adopt a resolution confirming, discharging or modifying
the amount of the lien.

## 1.14.180  Recording of Lien

Thirty days following the adoption of a resolution by the City Council imposing a lien the City Clerk shall file
the same as a judgment lien in the Office of the County Recorder of Santa Clara County, California. The
lien may carry such additional administrative charges as set forth by resolution of the City Council.

## 1.14.190  Satisfaction of Lien

Once payment in full is received by the City for outstanding penalties and costs, the Director of Finance
shall either record a notice of satisfaction or provide the property owner or financial institution with a notice
of satisfaction so they may record this notice with the Office of the County Recorder. Such notice of
satisfaction shall cancel the City's lien.

Exhibit <u>8</u>

FAC PG 146

**Office of Development & Code Services**
Steven L. Hartwig, Deputy County Executive



**Divisions**
Administrative Services
Building Permits & Inspection
Code Enforcement
Construction Management & Inspection
County Engineering

## ADMINISTRATIVE PENALTY – CANNABIS CULTIVATION

PENT2022-00003

| Date: 9/9/22 | Time: 730am | Case No.: COOX2022-05010 | Parcel No.: 115-0254-005-0000 | Admin Penalty No.: 5010X22-2C |
|---|---|---|---|---|

| Address of Violation: 7629 Darla Way | City: Sacramento | State: CA | Zip Code: 95828 |
|---|---|---|---|

| Name: Ken Wong | Driver's License: | Date of Birth: 11/15/66 | Sex: M |
|---|---|---|---|

| Address: 7629 Darla way | City: Sacramento | State: CA | Zip Code: 95828 |
|---|---|---|---|

| Code Section | Description of Violation: | Corrective Action Required: |
|---|---|---|
| SCC 16.18.401(BB) | ☑ Prohibited Cultivation of Cannabis | |
| SCC 16.18.401 (BB) CA H&S 17920.3(d) | ☑ Unpermitted/unsafe electrical wiring | If box is checked; Electrical wiring must be permitted and electrical wiring must be in good/safe condition |
| SCC 16.18.401 (BB) CA H&S 17920.3(d) | ☑ Unpermitted electrical sub panels (# 1 ) | If box is checked; Remove additional sub panels or obtain building permits |
| SCC 16.18.401 (BB) CA H&S 17920.3(f) | ☑ Unpermitted/unsafe mechanical equipment | If box is checked; Mechanical equipment must be permitted and in good/safe condition |
| | | |
| | | |
| | | |

SCC = Sacramento County Code; CA H&S = California Health & Safety Code;

Pursuant to Sacramento County Code 6.88.060, you are hereby ordered to pay the County of Sacramento Code Enforcement Division an administrative penalty in the amount of $;

(Number of plants 497 + Number of housing violations 3 ) X $1,000 = $ 500,000

**This administrative penalty will be imposed immediately unless you qualify for a delay under SCC 6.88.060(B)(3).**

**An Additional sheet detailing other violations in CA H&S Code 17920.3 not listed on this form may be attached.**

You have the right to an administrative review of this penalty notice. Your request for an administrative review must be received by 10/11/22 to be valid. Include a $700 appeal deposit with your hearing request. Make checks payable to: The County of Sacramento. If you are successful in your hearing, your deposit will be refunded. If you are unsuccessful, additional charges may be billed. Appeal forms may be obtained at https://code-enforcement.saccounty.net/Pages/Forms.aspx or by calling the Code Enforcement Division at (916) 874 – 6444. Your request must be mailed or faxed to Sacramento County Code Enforcement, 9700 Goethe Rd Ste. A, Sacramento, CA 95827 or FAX (916) 874 – 8409. You must also attach a copy of this Administrative Penalty. Both the appeal form and hearing deposit must be received by the appeal deadline to be valid. If you have any questions about the review process, please contact the Code Enforcement Division.

Pursuant to Govt. Code 25845(c) and SCC 16.18.210, the County will seek to recover the attorney fees and costs from you, if applicable. Each person or entity cited may be held joint and severally liable for the penalty amount. This administrative penalty is separate and in addition to any other code enforcement charges that may be applicable to this case.

Payment of this penalty shall be sent to County of Sacramento, Department of Revenue and Recovery, PO 1086, Sacramento, CA 95812, checks payable to Sacramento County. Be sure to denote your case number on your payment to assure proper credit.

| Received by (Responsible Party): | | |
|---|---|---|
| Signature of Officer: | ☐ Refused to Sign | |
| | | Badge Number: 14 |
| Officer (Printed): N Wright | | Phone Number: (916) 874-2661 |

9700 Goethe Rd. Ste. A, Sacramento CA 95827 ♦ Phone (916) 874-6444 ♦ Fax (916) 874-8409 ♦ www.saccounty.net
Revised 3-10-20

FAC PG 147

Exhibit  9

City Of California City- FIRE DEPARTMENT

Nº 60052

## NOTICE OF VIOLATION - ADMINISTRATIVE CITATION

| Date of violation: 10/4/22 | Time: 11:00 | Case No. CE22-409 |
|---|---|---|

| Name (First, Middle, Last): ███ | | | | |
|---|---|---|---|---|

| Address: ███ | City: Chino | State: CA | Zip Code: 91710 |
|---|---|---|---|

| Driver's License No: ███ | DOB: ███ | Sex: Male | Hair: Black | Eyes: Brown | Height: ███ | Weight: ███ | Race: Unk |
|---|---|---|---|---|---|---|---|

### VIOLATION(S)

| Location of Violation(s): ███. California City, CA 93505 | Reporting District: CAC |
|---|---|

| Correction Required: | Code and Section: | QTY: | Fine$: | Fine Total $: |
|---|---|---|---|---|
| 1. ☐ | CFC 105.1.1 – Permits Required- Structure | 2 | 1,500.00 | $ 3,000.00 |
| 2. ☐ | CFC 105.1.1 – Permits Required- AC Split Units | 1 | 1,500.00 | $ 1,000.00 |
| 3. ☐ | CFC 105.1.1 – Permits Required- Awning covers | 2 | 1,500.00 | $ 3,000.00 |
| 4. ☐ | CFC 105.1.1 – Permits Required- Water Heater | 1 | 1,500.00 | $ 1,500.00 |
| 5. ☐ | CFC 105.1.1 – Cooking Area Permit Required | 1 | 1,500.00 | $ 1,500.00 |
| 6. ☐ | CFC 105.6.1.17- Fuel Storage Permit Required | 2 | 1,500.00 | $ 3,000.00 |
| 7. ☐ | CFC 110.1.1- No Occupancy Certificate | 1 | 1,500.00 | $ 1,500.00 |
| 8. ☐ | CFC 110.1.1- No Occupancy Certificate for R-3 Conversion | 2 | 1,500.00 | $ 1,500.00 |
| 9. ☐ | CFC 304.1- Waste accumulation prohibited | 3 | $ 1,500.00 | $ 4,500.00 |
| 10. ☐ | CFC 304.2- Storage prohibited | 2 | $ 1,500.00 | $ 3,000.00 |
| 11. ☐ | CFC 308.1.6.2- Portable fueled open-flame devices prohibited | 3 | $ 1,500.00 | $ 4,500.00 |
| 12. ☐ | CFC 312.1- General Vehicle impact protection required-hydrant | 1 | $ 1,500.00 | $ 1,500.00 |
| 13. ☐ | CFC 313.2- Group R occupancies- Storage in sleeping areas | 2 | $ 1,500.00 | $ 3,000.00 |
| 14. ☐ | CFC 315.3.2- Means of egress obstructed | 1 | $ 1,500.00 | $ 1,500.00 |
| 15. ☐ | CFC 404.2.1- Fire evacuation plan not present | 1 | $ 1,500.00 | $ 1,500.00 |
| 16. ☐ | CFC 404.2.2- Fire safety plans not present | 1 | $ 1,500.00 | $ 1,500.00 |
| 17. ☐ | CFC 406.1- General. -Lack of employee fire safety training | 1 | $ 1,500.00 | $ 1,500.00 |
| 18. ☐ | CFC 407.2- Material Safety Data Sheets missing | 1 | $ 1,500.00 | $ 1,500.00 |
| 19. ☐ | CFC 503.4- Obstruction of fire apparatus access roads | 3 | $ 1,500.00 | $ 4,500.00 |
| 20. ☐ | CFC 504.2- Maintenance of exterior doors and openings | 7 | $ 1,500.00 | $ 10,500.00 |
| 21. ☐ | CFC 505.1- Address identification missing | 7 | $ 1,500.00 | $ 10,500.00 |
| 22. ☐ | CFC 505.2- Street or road signs missing- 24 hour contact info | 1 | $ 1,500.00 | $ 1,500.00 |
| 23. ☐ | CFC 507.5.4- Hydrant Obstructed | 1 | $ 1,500.00 | $ 1,500.00 |
| 24. ☐ | CFC 603.4.2.3.4- Indoor storage prohibited | 20 | $ 1,500.00 | $ 30,000.00 |
| 25. ☐ | CFC 506.1.1- Gate Access Lock Unusable | 1 | $ 1,500.00 | $ 1,500.00 |
| 26. ☐ | CFC 605.1- Abatement of electrical hazards | 16 | $ 1,500.00 | $ 24,000.00 |
| 27. ☐ | CFC 605.4- Multiplug adapters misuse | 6 | $ 1,500.00 | $ 9,000.00 |
| 28. ☐ | CFC 605.5- Unapproved conditions | 35 | $ 1,500.00 | $ 52,500.00 |
| 29. ☐ | CFC 605.9.1- Attachment to structures gas utilities | 1 | $ 1,500.00 | $ 1,500.00 |

**CCFD Administrative Citation Page 1 of 2**

FAC PG 149

City Of California City- FIRE DEPARTMENT          Nº 60052 -Page 2 of 2

## NOTICE OF VIOLATION - ADMINISTRATIVE CITATION

| | | | | |
|---|---|---|---|---|
| 30. ☐ | CFC 605.11- Solar photovoltaic power systems- Unpermitted | 1 | $ 1,500.00 | $ 1,500.00 |
| 31. ☐ | CFC 906.2- General requirements Fire ext. missing or maint. | 9 | $ 1,500.00 | $13,500.00 |
| 32. ☐ | CFC 903.3.2- Sprinklers required | 2 | $1500.00 | $ 3,000.00 |
| 33. ☐ | CFC 609.3.3.2- Dangerous grease accumulation | 1 | $ 1,500.00 | $15,000.00 |
| 34. ☐ | CFC 907.2.11.2- Sleeping area missing smoke alarms. | 7 | $ 1,500.00 | $10,500.00 |
| 35. ☐ | CFC 915.3- Lack of CO detection- sleeping areas | 2 | $ 1,500.00 | $ 3,000.00 |
| 36. ☐ | CFC 1003.3- Protruding objects. Emergency Egress | 7 | $ 1,500.00 | $10,500.00 |
| 37. ☐ | CFC 1010.1.9- Door operations- Emergency Egress | 6 | $ 1,500.00 | $ 9,000.00 |
| 38. ☐ | CFC 1013.1- Where required- Emergency Egress Exit Signs | 2 | $ 1,500.00 | $ 3,000.00 |
| 39. ☐ | CFC 1018.1- General- Emergency Egress Isle obstructions. | 11 | $ 1,500.00 | $16,500.00 |
| 40. ☐ | CFC 1024.2- Width- Egress isles | 11 | $ 1,500.00 | $16,500.00 |
| 41. ☐ | CFC 1031.2- Reliability- Exit obstructed. | 5 | $ 1,500.00 | $ 7,500.00 |
| 42. ☐ | CFC 5003.3- Combustible Flammable Fluid Spills | 2 | $ 1,500.00 | $ 3,000.00 |
| 43. ☐ | CFC 2307.6.4- Vehicle impact protection- LPG tank locations | 1 | $ 1,500.00 | $ 1,500.00 |
| 44. ☐ | CFC 3104.3 Label. – Greenhouse membrane | 1 | $ 1,500.00 | $ 1,500.00 |
| 45. ☐ | CFC 3104.12 (b)- Portable fire extinguishers. generators | 3 | $ 1,500.00 | $ 1,500.00 |
| 46. ☐ | CFC 3104.16.2- Location of containers- LPG tanks | 11 | $ 1,500.00 | $16,500.00 |
| 47. ☐ | CFC 3104.17.2- Flammable and combustible liquid storage- Fuel | 8 | $ 1,500.00 | $12,000.00 |
| 48. ☐ | CFC 3104.19- Separation of generators-membrane structures | 3 | $ 1,500.00 | $ 4,500.00 |
| 49. ☐ | CFC 3104.19- Separation of fuel equip-membrane structures | 5 | $ 1,500.00 | $ 7,500.00 |
| 50. ☐ | CFC 3104.21- Combustible waste -membrane structures | 3 | $ 1,500.00 | $ 4,500.00 |
| 51. ☐ | CFC 3309- Emergency Contact information | 1 | $ 1,500.00 | $ 1,500.00 |
| 52. ☐ | CFC 5001.3.3.4- Fuel Containment | 1 | $ 1,500.00 | $ 1,500.00 |
| 53. ☐ | CFC 6103.3- Installation of LPG gas lines | 1 | $1,500.00 | $ 1,500.00 |
| | Total Violations | 230 | | |
| | Total Fine Amount: (Past Due after 21 days) | | | $353,500.00 |

| ☐ Personal Service | ☒ To be Notified By Mail |
|---|---|

I acknowledge receipt of this citation:

Appeal: Failure to contest this citation within twenty-one (21) days of issuance will constitute a forfeiture of all rights of appeal: Appeal instructions are described on the reverse of this notice.

| Issuing Officer (name): | (Badge/Employee No.) |
|---|---|
| J. Kosick | 53-193 |

**CCFD Administrative Citation Page 2 of 2**

FAC PG 150

Exhibit __10__



# CITY OF DESERT HOT SPRINGS

CODE COMPLIANCE DIVISION

65950 Pierson Blvd. • Desert Hot Springs • CA • 92240
(760) 329-6411• www.cityofdhs.org

005REC PG 005

## Administrative Citation #27948D

**Date Issued: August 18, 2021**
**APN:  657-220-005**
**Case Number: CODE-21-985**
**Subject Property: 66781 DILLON RD., DESERT HOT SPRINGS, CA 92240**

**Parcel Owner:   MINER JOSEPH**
**Mailing Address: 2576 NEWPORT BLVD**
**COSTA MESA, CA 92627**

**An inspection of your property has revealed the following violation(s) of the Desert Hot
Springs Municipal Code section (§):**

| Violations: | Description: | Corrective Action: | Fines: |
|---|---|---|---|
| 4.16.010.A.5 | Public Nuisance- Fire Hazard | Remove and properly dispose of all dry or dead plant matter, combustible refuse and waste or any other matter which by reason of its size, manner of growth and location, constitutes a fire hazard | $100.00 |
| 4.16.010.A.19.e | Public Nuisance- Visual Blight- Junk/refuse/garbage visible | Remove and properly dispose of the large accumulation of junk, trash and miscellaneous household items from the premises. | $100.00 |
| 4.16.010.A.1.a | Public Nuisance Abandoned equipment, machinery, or house items | Remove all construction materials, auto parts, equipment and household items from exterior premises and do not store outside. | $100.00 |
| 4.16.010.A.17 | Public Nuisance- Illegal, Nonconforming Building or Structure | Obtain a fencing permit for all wood fencing on the property. Or remove all wood fencing on the property. | $100.00 |
| 5.04.040.A | General Business License – License Required | Obtain a business license for your rental property immediately. Contact Kathlyn Palmer in the Finance Division. (Kpalmer@cityofdhs.org or (760)329-6411 Ext. 241) | $100.00 |

**TOTAL FINES: $500.00**

Tiyler Messer, Code Compliance Officer        tmesser@cityofdhs.org

Exhibit  11

**THE SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF RIVERSIDE**

## CVPS2106001          MINER vs CITY OF DESERT HOT SPRINGS,
Filed Date:    **12/06/2021 Limited Civil Appeal of Administrative Fine or Penalty**          **$225.00**
Case Status: **Closed**                        **Palm Springs - Department PS4**

Print Case Report

## Case Summary

⌄ COMPLAINTS/PETITIONS

| Filings | Represented By | Status | Dispositions |
|---|---|---|---|
| **MINER vs CITY OF DESERT HOT SPRINGS,**<br>Limited Civil Appeal of Administrative Fine or Penalty | | Closed | Other Court Ordered Dismissal |
| **Notice of Appeal of Administrative Fine or Penalty of JOSEPH MINER** | | Filed: 12/06/2021 | Other Court Ordered Dismissal 10/20/2022 |
| Defendant/Appellant: JOSEPH MINER | In Pro Per | Demurred as of 01/03/2022 | Dispo: Dismissal - Other Court Ordered Dismissal on 10/20/2022 |
| Plaintiff/Respondent: CITY OF DESERT HOT SPRINGS, | TUAN-ANH VU JOSEPH C ROSENBLIT | Waiting Service as of 12/06/2021 | |

⌄ HEARINGS

| Date Time | Type | Judicial Officer | Location/Courtroom | Disposition |
|---|---|---|---|---|
| 01/06/2022 08:30 AM | Hearing on Appeal of Administrative Fine or Penalty | Arthur Hester | Department PS4 | Continued - Other pre-disposition hearing |
| 01/14/2022 08:30 AM | Ex Parte Hearing re: To Continue Trial | Arthur Hester | Department PS4 | Taken off calendar |

Exhibit  12

FAC PG 155

**Superior Court of California County of San Luis Obispo**

## NOTICE TO PARTIES CONSIDERING AN APPEAL FROM DECISIONS OF ADMINISTRATIVE CITATIONS

Parties may file an Appeal on the administrative order pursuant to Government Code § 50369.4 by filing a notice of appeal with the clerk of the civil division of the Superior Court along with the required filing fee and a copy of the administrative order. The appealing party shall also serve a copy of the notice of appeal on the agency who issued the decision by delivering the same in person or mailing the same by first class mail, postage pre-paid.

Appeal from a local agency ordinance must be filed within twenty (20) calendar days after service of the administrative order.

Appeal from a Vehicle Code or Public Utilities Code violation must be filed within thirty (30) calendar days after service of the administrative order.

Parties may also file a petition for a writ of mandate pursuant to Code of Civil Procedure, § 1094.5, within ninety (90) calendar days after service of the administrative order.

## NATURE OF AN APPEAL

An appeal is not a re-trial.  New evidence such as testimony and exhibits are not given to the Superior Court.  There are two main grounds of appeal:  (1) the evidence in the administrative hearing  was insufficient to justify the verdict or judgment, and (2) errors of law were committed during or before the hearing which harmed the appealing party.  As to the first ground, insufficiency of the evidence, the Superior Court does not decide where the greater weight of evidence was or who was telling the truth; it only decides if there was any substantial evidence which supports the judgment.  Many times, parties ask the Superior Court to change the judgment because they should have been believed and their opponent disbelieved.  This request seldom, if ever, works as it is beyond the power of the Superior Court to re-try, or re-decide the case by re-weighing the evidence.  As to the second ground, errors of law, the Superior Court will listen and decide whether there has been any irregularity and whether any errors prejudiced or substantially harmed the appealing party.  Most appeals are won or lost on these issues of error of law and procedure.

## APPEAL PROCEDURE

**NOTICE OF APPEAL**:  The most important act in an appeal is the timely filing of the written notice of appeal.  Generally, the notice must be  filed within 20 days of entry of the decision.  The Superior Court will not consider the appeal unless  it grants a motion of the appellant (the party who is appealing) to set aside the untimeliness of the filing of the notice of appeal.  Permission to file late is rarely given.  You must attach a copy of your citation and the decision of the hearing officer.  You must serve the Notice of Appeal on the opposing party prior to the hearing.

**STATEMENT ON APPEAL**: Your written Proposed  Statement on Appeal  must be filed and served on opposing party prior to the . hearing.

**PROOF of SERVICE**:  You must file with the clerk's office a Proof of Service of the Notice of Appeal and Statement on Appeal prior to the hearing.

**TESTIMONY**:   You will have an opportunity to present oral testimony at the hearing.

**HEARING:**  The case will be set for hearing and the clerk will notify you of the date, time, and place.  At the hearing, you should stress the most important parts of your case while realizing that the judge has reviewed the file and read your Statement on Appeal.  After the hearing, the judge's decision will be mailed to you.

**FORMS/FEES**:  Filing fee for the appeal of a parking citation or administrative fine/penalty is $25.00  (2020 fee schedule)
Filing fee for the appeal of a dangerous or vicious dog is $45.00  (2020 fee schedule)

When you have completed the forms make two photocopies. The original will be kept by the court; you will need a copy to be served and a copy for your records.

**HEARING DATE**:  The court will mail you a notice of your hearing date and time.  If you do not want to appear at the hearing in person you may file a document that states, you want to submit your appeal on the paperwork only.

1    JASON M. HEATH, State Bar No. 180501
     County Counsel
2    JOHN B. NGUYEN, State Bar No. 247457
     Assistant County Counsel
3    Office of the Santa Cruz County Counsel
     701 Ocean Street, Room 505
4    Santa Cruz, California 95060
     Telephone: (831) 454-2040
5    Fax: (831) 454-2115

6    Attorneys for Respondent
     Santa Cruz County Cannabis Licensing Unit
7

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
8/15/2022 9:32 AM
Alex Calvo, Clerk
By: Karen Broughton, Deputy

8                 SUPERIOR COURT OF CALIFORNIA

9                      COUNTY OF SANTA CRUZ

10                        LIMITED CIVIL CASE

11

12   AMIT VACHHER-GNANATHURAI,              CASE NO. 21CV03065

13        Appellant,                        **NOTICE OF ENTRY OF ORDER ON
                                            CLARIFYING CONDUCT AND SCOPE
14   vs.                                    OF APPEAL HEARING PURSUANT TO
                                            GOVERNMENT CODE SECTION
15   SANTA CRUZ COUNTY CANNABIS             53069.4(b)(1)**
     LICENSING UNIT,
16

17        Respondent.

18

19   TO AMIT VACHHER-GNANATHURAI AND HIS ATTORNEY OF RECORD:

20        NOTICE IS HEREBY GIVEN that on August 11, 2022, the above-entitled Court entered an

21   ORDER on Clarifying Conduct and Scope of Appeal Hearing pursuant to Government Code section

22   53069.4(b)(1), a true and correct copy of which is attached hereto as Exhibit A.

23   Dated:  August 15, 2022            JASON M. HEATH, COUNTY COUNSEL

24

25                                 By _____
                                      JOHN B. NGUYEN
26                                    Assistant County Counsel
                                      Attorneys for Respondent
27

28

1

## **PROOF OF SERVICE**

2          I, the undersigned, state that I am a citizen of the United States and employed in the County

3   of Santa Cruz, State of California.  I am over the age of 18 years and not a party to the within action.

4   My business address is 701 Ocean Street, Room 505, Santa Cruz, California 95060.  On the date set

5   out below, I served a true copy of the following on the person(s)/entity(ies) listed below:

6      **NOTICE OF ENTRY OF ORDER ON CLARIFYING CONDUCT AND SCOPE OF APPEAL HEARING PURSUANT TO GOVERNMENT CODE SECTION 53069.4(b)(1)**

7
8   ☐ by **service by mail** by placing said copy enclosed in a sealed envelope and depositing the sealed envelope with the United States Postal Service with the postage fully prepaid.

9   ☒ by **service by mail** by placing said copy enclosed in a sealed envelope and placing the envelope
10  for collection and mailing on the date and at the place shown below following our ordinary business practices.  I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and
11  mailing, it is deposited in the ordinary course of business with the United States Postal Service with postage fully prepaid.

12  ☐ by **e-mail -** I caused the document to be sent to the person(s) at the e-mail address(es) listed
13  below, each of whom previously authorized electronic service of documents in this action. I did not receive, within a reasonable time after the transmission, any electronic message or other indication
14  that the transmission was unsuccessful.

15  ☐ by **express or overnight mail** by arranging for pick-up by an employee of an express/overnight
16  mail company on:

17  ☐ by **facsimile service** at the number listed below and have confirmation that it was received by:

18  **David Knutsen**
    **Knutsen Law Offices**
19  **6362 Clark Ave.**
    **Dublin, CA 94568-3036**
20  (*Attorney for Petitioner Amit Vachher-Gnanathurai*)
21

22          I declare under penalty of perjury under the laws of the State of California that the foregoing
23  is true and correct.  Executed on August 15, 2022, at Santa Cruz, California.
24

25
26          *Maria G. Vargas*
    MARIA G. VARGAS
27

28

FAC PG 158

ELECTRONICALLY RECEIVED DS
8/4/2022 10:49 AM

Electronically Filed
Superior Court of California
County of Santa Cruz
August 11, 2022
Alex Calvo, Clerk
By Deputy, Salsedo, Declan

8/11/2022 2:24:51 PM

1  JASON M. HEATH, State Bar No. 180501
   County Counsel
2  JOHN B. NGUYEN, State Bar No. 247457
   Assistant County Counsel
3  Office of the Santa Cruz County Counsel
   701 Ocean Street, Room 505
4  Santa Cruz, California 95060
   Telephone: (831) 454-2040
5  Fax: (831) 454-2115
   Email: john.nguyen@santacruzcounty.us
6

*Exempt from filing fees
pursuant to Govt. Code §6103*

7
8  Attorneys for Respondent
   Santa Cruz County Cannabis Licensing Unit

9            SUPERIOR COURT OF CALIFORNIA

10           COUNTY OF SANTA CRUZ

11

12  | AMIT VACHHER-GNANATHURAI, | CASE NO. 21CV03065 |
    |---|---|
13  | Appellant/Petitioner, | **[PROPOSED] ORDER CLARIFYING CONDUCT AND SCOPE OF APPEAL HEARING PURSUANT TO GOVERNMENT CODE SECTION 53069.4(b)(1)** |
14  | vs. | |
    | SANTA CRUZ COUNTY CANNABIS | |
15  | LICENSING UNIT, | |
16  | | |
    | Respondent. | Date:      July 26, 2022 |
17  | | Time:      8:30 a.m. |
    | | Dept.:     5 |
18  | | |
19  | | Appeal Hearing Date:  March 16, 2023 |
    | | Time:      8:30 a.m. |
20  | | Dept.:     5 |

21       Respondent SANTA CRUZ COUNTY CANNABIS LICENSING UNIT's (hereinafter

22  "COUNTY") Motion Seeking Clarification on Conduct and Scope of De Novo Hearing pursuant to

23  Government Code section 53069.4(b)(1) (hereinafter "Section 53069.4) came before the Court on

24  July 26, 2022 at 8:30 a.m. in Department 5 of the Santa Cruz County Superior Court.  Assistant

25  County Counsel Jordan Sheinbaum appeared on behalf of the COUNTY and Mr. David Knutsen

26  appeared on behalf of Appellant/Petitioner AMIT VACHHER-GNANATHURAI (hereinafter

27  "Appellant").

28

After full consideration of the evidence, pleadings filed in this matter, the arguments of counsel and good cause otherwise appearing:

**IT IS HEREBY ORDERED:**

1. Government Code section 53069.4(b)(1) entitles Appellant to a de novo review and a hearing but does not allow the presentation of new evidence or allow for witness testimony.  The appeal should proceed by way of a de novo hearing by a single judge.

2. Section 53069.4(b)(1) mandates that the COUNTY's local agency file shall be admitted into evidence and that the copy of the COUNTY's administrative citation providing notice of the violation and imposition of the administrative fine or penalty shall be admitted into evidence as prima facie evidence of the facts stated therein.  The Court is to consider and review only the COUNTY's local agency file on a de novo standard of review.

3. Since Section 53069.4(b)(1) appeals are limited to evidence already in the record, the parties are **not** entitled to introduce new evidence or conduct any formal discovery including without limitation interrogatories, depositions, requests for production of documents and/or things, record subpoenas, requests for admissions, and any other formal discovery tools.  In addition, the parties are **not** entitled to issue witness subpoenas to appear at the hearing or present or cross-examine live or remote witness testimony at the hearing.

4. The Court now sets the following briefing schedule as it relates to this appeal de novo:

   a. Appellant shall file and serve his Opening Brief on or before January 20, 2023.

   b. COUNTY shall file and serve its Response Brief on or before February 10, 2023.

   c. Appellant shall file and serve its Reply Brief on or before February 24, 2023.

   d. Opening and Response Briefs shall not exceed 25 pages.  The Reply Brief shall not exceed 15 pages.

5. The September 8, 2022 hearing date is hereby **VACATED**.

6. The de novo appeal hearing is set for Thursday March 16, 2022 at 8:30 a.m. in Department 5.  The parties may agree to waive their right to a de novo appeal hearing

1    and presentation of oral arguments.  If agreed by the parties, the parties will file a

2    stipulation informing the Court that the Court will decide this matter on the briefs filed

3    by the parties.

4

5    Approved as to form:

6    Dated:  August 4, 2022                    JASON M. HEATH, COUNTY COUNSEL

7

8    _____

9    John B. Nguyen
     Assistant County Counsel

10   Attorneys for Respondent

11   Approved as to form:

12   Dated:  July __, 2022

13

14   _____
     David R. Knutsen
     Attorney for Appellant/Petitioner

15

16          **IT IS SO ORDERED.**

17

18   Dated: _8/11/2022 10:16:42 AM_____, 2022

19   _____
     Hon. Timothy Volkmann

20   JUDGE OF THE SUPERIOR COURT

21

22

23

24

25

26

27

28

FAC PG 161

# EXHIBIT 1

FAC PG 162

**TENTATIVE RULINGS FOR March 2, 2023**
**Department S24 - Judge Gilbert G. Ochoa**

This court follows California Rules of Court, rule 3.1308(a) (1) for tentative rulings. (See San Bernardino Superior Court Local Emergency Rule 8.) Tentative rulings for each law & motion will be posted on the internet (https://www.sb-court.org) by 3:00 p.m. on the court day immediately before the hearing.

If you do not have internet access or if you experience difficulty with the posted tentative ruling, you may obtain the tentative ruling by calling the Administrative Assistant. You may appear in person at the hearing but personal appearance is not required and remote appearance by Court Call is preferred during the Pandemic. (See www.sbcourt.org/general-information/remote-access)

**If you wish to submit on the ruling, call the Court and your appearance is not necessary.  If both sides do not appear, the tentative will simply become the ruling.  If any party submits on the tentative, the Court will not alter the tentative and it will become the ruling.  If one party wants to argue, Court will hear argument but will not change the tentative.  If the Court does decide to modify tentative after argument, then a further hearing for oral argument will be reset for both parties to be heard at the same time by the Court.**

**UNLESS OTHERWISE NOTED, THE PREVAILING PARTY IS TO GIVE NOTICE OF THE RULING.**

**CIVSB2213147**

**MODERN VACAY, et al.**

**v.**

**CITY OF BIG BEAR LAKE**

Motion:          **Compel Further re (1) Special Interrogatories and (2) Request for Admissions**

Movant:          Appellants Modern Vacay, Eric Reynolds, and Philip McGill

Respondent:   Respondent City of Big Bear Lake

**Discussion** –

Government Code section 53069.4, subdivision (b)(1), provides a party may 20 days after the service of a final administrative order imposing an administrative fine or penalty contest the order by filing an appeal. The appeal is deemed a limited civil case.  (Gov. Code, §53069.4.)  In limited cases, discovery is permissible but limited on the total number of interrogatories, document demands, and admission requests that can be propounded.  (Code Civ. Proc., §94.)

       As a limited civil case authorizes discovery, and the appeal is treated like a limited civil case, it cannot be said that Appellants are denied the right of limited discovery.

Arguably vague, Interrogatory #21, the essence of the information sought can be ascertained, i.e., how much did the City pay to the citation processing vendor.  (*Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 783 ["Indeed, where the question is somewhat ambiguous, but the nature of the information sought is apparent, the proper solution is to provide an appropriate response."].) Therefore, **the Court compels** a further response to Special Interrogatory #21.  Motion granted.

***Sanctions.*** Under both Motions, Appellants sought sanctions.  Considering, in response to the Compel Motions, Respondent provided not once but twice further responses, it supports Appellants are the prevailing parties who are entitled to sanctions.  However, this Court has a standing DCO on every case.  Failure to follow this lawful Court Order results in contempt sanctions.  In the instant case, a transfer order occurred on Feb. 2.  As a result, the Court will forgo a contempt hearing but will not award sanctions.  Future Discovery motions must comply with the DCO or sanctions/contempt will be levied on the offending party.  The DCO reads as follows:

*Prior to any party filing any discovery motion in this action, the moving party must schedule a telephonic or preferably a video discovery conference (herein after IDC) with all parties and the Court. The purpose of the IDC is to try and resolve the discovery issues without the necessity of a motion and or sanctions.  At the IDC, the issues of the discovery dispute will be discussed as well as possible referral of the case out to Judicial Reference (hereinafter JR), pursuant to CCP 639. Timely objections to JR, including but not limited to, economic hardship, will be heard at this time only. (Be prepared with appropriate financial documentation/declarations at this time of the IDC or request an extension at the time of the IDC).  Referral to JR is relatively rare but nonetheless, is a possibility after this conference depending on circumstances.*

*The time for bringing any discovery motion if necessary, will be tolled by any delay caused by the discovery conference.  **Notice must be given to all parties**.  Propounding and responding parties to the discovery dispute must be at the conference electronically (preferably Zoom) and there is no cost to the parties.  All other parties not involved in the dispute can attend or not attend the conference.  **No***

FAC PG 164

*substantive documents on the discovery issues (propounding and/or responsive documents, briefs, etc.) need to be filed for the conference by either side but you should have them available for reference at the conference electronically.  Failure to obey this Order will result in Sanctions for the offending party pursuant to CCP 177.5.*

**Ruling**

    (1)    Hold as MOOT Appellants Modern Vacay, Reynolds, and McGill's Motion to Compel Further re Special Interrogatories #2, 5, 7-8, 11-13, and 17-20 but ORDER Respondent City (if not done so already) to serve the Verification to the Further Responses to Special Interrogatories served on February 17, 2023, within 10 days of this ruling;

    (2)    Hold as MOOT Appellants Modern Vacay, Reynolds, and McGill's Motion to Compel Further re RFAs #2, 5, and 7-9, but ORDER Respondent City (if not done so already) to serve the Verification to the Further Responses to RFAs served on February 17, 2023, within 10 days of this ruling;

  GRANT Appellants Modern Vacay, Reynolds, and McGill's Motion to Compel Further re Special Interrogatory #21 and ORDER Respondent City to serve its further response within 10 days of this ruling. No sanctions awarded.

Movants to give Notice and prepare Order.

Dated-


_____
Judge

FAC PG 165

# EXHIBIT 2

## TENTATIVE RULINGS: CIVIL LAW & MOTION

Wednesday, January 10, 2024 at 3:00 p.m.
Courtroom 18 –Hon. Christopher M. Honigsberg
**Civil and Family Law Courthouse**
**3055 Cleveland Avenue**
**Santa Rosa, California 95403**

**The Court's Official Court Reporters are "not available" within the meaning of California Rules of Court, Rule 2.956, for court reporting of civil cases.**

**CourtCall is not permitted for this calendar.**

If the tentative ruling does not require appearances, and is accepted, no appearance is necessary.

Any party who wishes to be heard in response or opposition to the Court's tentative ruling **MUST NOTIFY** the Court's Judicial Assistant by telephone at **(707) 521-6723** and **MUST NOTIFY all other parties of their intent to appear, the issue(s) to be addressed or argued and whether the appearance will be in person or by Zoom**. Notifications must be completed no later than 4:00 p.m. on the court (business) day immediately before the day of the hearing.

TO JOIN "ZOOM" ONLINE,
**Department 18** :
https://sonomacourt.org.zoomgov.com/j/1607394368?pwd=aW1JTWlIL3NBeE9LVHU2NVVpQlVRUT09
Meeting ID: **160—739—4368**
Password: **000169**

**To Join Department 18 "Zoom" By Phone**:
Call: +1 669 900 6833 US (San Jose)

Enter Meeting ID: 838-5609-8726
And Password: 000169

Unless notification of an appearance has been given as provided above, the tentative ruling shall become the ruling of the Court the day of the hearing at the beginning of the calendar.

## 1. SCV-272381, Turquoise Turtle, LLC v. County of Sonoma

This matter is on for determination of the Petitioner's right to a trial. The Court has considered the parties' briefing on this matter and has determined that the Petitioner is entitled to a trial de novo. However, the trial shall be a court trial, as the statute does not entitle the Petitioner to a jury trial. The Court acknowledges that Petitioner withdrew the request for a jury trial. Limited discovery is available as it is for limited civil cases.

1

Analysis:

Government Code § 53069.4(b)(1) states,

Notwithstanding Section 1094.5 or 1094.6 of the Code of Civil Procedure [regarding Writs of Mandate]…a person contesting that final administrative order or decision may seek review by filing an appeal to be heard by the superior court, where the same shall be heard de novo, except that the contents of the local agency's file in the case shall be received in evidence. A proceeding under this subdivision is a limited civil case. A copy of the document or instrument of the local agency providing notice of the violation and imposition of the administrative fine or penalty shall be admitted into evidence as prima facie evidence of the facts stated therein. A copy of the notice of appeal shall be served in person or by first-class mail upon the local agency by the contestant.

"Section 53069.4, subdivision (b)(1) provides two avenues of judicial relief from an administrative decision imposing a fine or penalty in accordance with section 53069.4: 'A petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5 or an appeal to the superior court pursuant to Government Code section 53069.4.'" (*Cnty. of Humboldt v. App. Div. of Superior Ct.* (2020) 46 Cal.App.5th 298, 312–13 (hereafter "*Humboldt*".) "Government Code section 53069.4 provides for alternative procedures for challenging an administrative decision like a ruling on a code violation, either by a de novo appeal to the superior court to be heard by a judge or a subordinate judicial officer or by a petition for writ of mandate under Code of Civil Procedure sections 1094.5 and 1094.6." (*Martin v. Riverside Cnty. Dep't of Code Enf't* (2008) 166 Cal.App.4th 1406, 1412 (hereafter "*Martin*".)

The County urges this Court to interpret the statute as offering only those rights as available on petition for writ of mandamus. However, the plain language of the statute does not lend itself to such an interpretation. The above case of *Humboldt,* which was cited by the County, clearly explains that the statute provides a petitioner with two alternative options, *either* a petition for writ of mandate, or de novo review by the superior court. This is also clearly stated in *Martin, supra,* also cited by the County, and *County of Sonoma v. Gustely* (2019) 36 Cal.App.5th 704, 711-712, a case in which the County of Sonoma was a party. The fact that the statute offers two alternative procedures is evidence enough that the two procedures are necessarily intended to be different.

The *Martin* case further explains,

2

Although Government Code section 53069.4 uses the word "appeal" to describe the limited civil proceeding, what seems to be meant is a de novo *hearing* by a single judge or, as also described in the statute, by a subordinate judicial officer.

(*Martin*, *supra*, 166 Cal.App.4th at 1411. Emphasis added.)

Furthermore, the statute clearly says, "A proceeding under this subdivision is a limited civil case." The Legislature would not have included this language if it did not intend for the matter to be treated as a limited civil case, in terms of discovery and evidence. Unlike mandamus proceedings, the statute does not limit the Court's review to the record of the proceedings below. Rather, a copy of the local agency's file shall be admitted "into evidence as prima facie evidence of the facts stated therein." The record below is simply prima facie evidence. The fact that the statute provides that the file is "prima facie" evidence further suggests the Legislature's intent for discovery to be conducted and for further evidence to be introduced before the reviewing court.

Therefore, this matter will be set for Court trial. Discovery shall be permitted pursuant to the rules applicable to limited civil cases. The County shall be prepared to submit a copy of its file into evidence in advance of the Court trial.

## 2-3. SCV-272167, Vickery v. Valencia, et al.

Defendants' demurrer to the First Amended Complaint is SUSTAINED **with** leave to amend. Due to the sustaining of the demurrer to the sole cause of action in the complaint, Defendants' motion to strike is MOOT. Defendants shall submit a written order consistent with this tentative ruling and in compliance with Rule 3.1312.

The Court notes that Plaintiff has filed oppositions to both of the Defendants' motions; however, Plaintiff has not filed a proof of service for either opposition. Furthermore, the oppositions do not respond substantively to the arguments made by Defendants in their opening brief; they do not provide any law for the Court's consideration; and they do not explain how the defects in the pleading can be cured by amendment.

Analysis:

I.    Standards on Demurrer

A demurrer tests whether the complaint sufficiently states a valid cause of action.  (*Hahn v.*

Online Services      Tentative Rulings      Civil Tentative Rulings      Law & Motion Calendar - ...

## Hon. Christopher M. Honigsberg

Courtroom 18

Civil and Family Law Courthouse

3055 Cleveland Avenue, Santa Rosa

*CourtCall is not permitted for this calendar.*

*If the tentative ruling does not require appearances, and is accepted, no appearance is necessary.*

Any party who wishes to be heard in response or opposition to the Court's tentative ruling **MUST NOTIFY** the Court's Judicial Assistant by telephone at **(707) 521-6723** and **MUST NOTIFY** all other parties of the intent to appear, and whether they will appear in person or by Zoom. Both notifications must be completed no later than 4:00 p.m. on the court (business) day immediately before the day of the hearing.

Unless notification of an appearance has been given as provided above, the tentative ruling

FAC PG 170

This motion is granted pursuant to CCP §§ 2031.300, 2030.290, and 2025.450. Sanctions are awarded in the amount of $1,000.00. This reflects the Court's view of the reasonable sanction for this motion. Plaintiff requested $3,500 in sanctions for 10 of work on this motion. However, the Court finds the amount of sanctions awarded to be reasonable to compensate for the type and amount of work that was reasonably necessary for this motion.

**8. SCV-272381, Turquoise Turtle, LLC v. County of Sonoma**

**Appearances are required**—continued from January 10, 2024 for oral argument. The previously issued tentative ruling is below for reference.

This matter is on for determination of the Petitioner's right to a trial. The Court has considered the parties' briefing on this matter and has determined that the Petitioner is

"Section 53069.4, subdivision (b)(1) provides two avenues of judicial relief from an administrative decision imposing a fine or penalty in accordance with section 53069.4: 'A petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5 or an appeal to the superior court pursuant to Government Code section 53069.4.'" (*Cnty. of Humboldt v. App. Div. of Superior Ct.* (2020) 46 Cal.App.5th 298, 312–13 (hereafter "*Humboldt*".) "Government Code section 53069.4 provides for alternative procedures for challenging an administrative decision like a ruling on a code violation, either by a de novo appeal to the superior court to be heard by a judge or a subordinate judicial officer or by a petition for writ of mandate under Code of Civil Procedure sections 1094.5 and 1094.6." (*Martin v. Riverside Cnty. Dep't of Code Enf't* (2008) 166 Cal.App.4th 1406, 1412 (hereafter "*Martin*".)

The County urges this Court to interpret the statute as offering only those rights as available on petition for writ of mandamus. However, the plain language of the statute does not lend itself to such an interpretation. The above case of *Humboldt*, which was cited by the County, clearly explains that the statute provides a petitioner with two alternative options, *either* a petition for writ of mandate, or de novo review by the superior court. This is also clearly stated in *Martin, supra*, also cited by the County, and

FAC PG 172

Furthermore, the statute clearly says, "A proceeding under this subdivision is a limited civil case." The Legislature would not have included this language if it did not intend for the matter

**Superior Court of California, County of Sonoma**

**MINUTE ORDERS**

| |
|---|
| **SCV-272381** |
| **TURQUOISE TURTLE, LLC VS COUNTY OF SONOMA** |
| **Date of Hearing:** January 19, 2024      Motion |
| **Time:** 3:00 PM      Courtroom 18 |

Judicial Officer: Christopher M. Honigsberg      Courtroom Clerk: Becca Hook

**Parties Present:**
Counsel Glenn Smith appears on behalf of the plaintiff.
Counsel Ivan Jimenez appears via Zoom for counsel of record on behalf of the defendant.

**Hearing:**
At 3:42 PM, the matter is called by the Court; appearances are stated.
Counsel Smith presents oral argument.
Counsel Jimenez responds and presents oral argument.

Upon conclusion of the oral argument, the Court **ORDERS**:
The Court's previously published tentative ruling is **ADOPTED WITH MODIFICATIONS** as follows:
The word "limited" shall be replaced with the word "unlimited".
Plaintiff's counsel shall prepare and submit an Order in conformance with the above-stated ruling for the Court's signature.

For reference purposes, the Court's previously published tentative ruling so follows:

       This matter is on for determination of the Petitioner's right to a trial. The Court has considered the parties' briefing on this matter and has determined that the Petitioner is entitled to a trial de novo. However, the trial shall be a court trial, as the statute does not entitle the Petitioner to a jury trial. The Court acknowledges that Petitioner withdrew the request for a jury trial.  Limited discovery is available as it is for limited civil cases.

      Analysis:
Government Code § 53069.4(b)(1) states,
Notwithstanding Section 1094.5 or 1094.6 of the Code of Civil Procedure [regarding Writs of Mandate]…a person contesting that final administrative order or decision may seek review by filing an appeal to be heard by the superior court, where the same shall be heard de novo, except that the contents of the local agency's file in the case shall be received in evidence. A proceeding under this subdivision is a limited civil case. A copy of the document or instrument of the local agency providing notice of the violation and imposition of the administrative fine or penalty shall be admitted into evidence as prima facie evidence of the facts stated therein. A copy of the notice of appeal shall be served in person or by first-class mail upon the local agency by the contestant.
      "Section 53069.4, subdivision (b)(1) provides two avenues of judicial relief from an administrative decision imposing a fine or penalty in accordance with section

FAC PG 173

53069.4: 'A petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5 or an appeal to the superior court pursuant to Government Code section 53069.4.'" (*Cnty. of Humboldt v. App. Div. of Superior Ct.* (2020) 46 Cal.App.5th 298, 312–13 (hereafter "*Humboldt*".) "Government Code section 53069.4 provides for alternative procedures for challenging an administrative decision like a ruling on a code violation, either by a de novo appeal to the superior court to be heard by a judge or a subordinate judicial officer or by a petition for writ of mandate under Code of Civil Procedure sections 1094.5 and 1094.6." (*Martin v. Riverside Cnty. Dep't of Code Enf't* (2008) 166 Cal.App.4th 1406, 1412 (hereafter "*Martin*".)

The County urges this Court to interpret the statute as offering only those rights as available on petition for writ of mandamus. However, the plain language of the statute does not lend itself to such an interpretation. The above case of *Humboldt,* which was cited by the County, clearly explains that the statute provides a petitioner with two alternative options, *either* a petition for writ of mandate, or de novo review by the superior court. This is also clearly stated in *Martin, supra,* also cited by the County, and *County of Sonoma v. Gustely* (2019) 36 Cal.App.5th 704, 711-712, a case in which the County of Sonoma was a party. The fact that the statute offers two alternative procedures is evidence enough that the two procedures are necessarily intended to be different.

The *Martin* case further explains,

Although Government Code section 53069.4 uses the word "appeal" to describe the limited civil proceeding, what seems to be meant is a de novo ***hearing*** by a single judge or, as also described in the statute, by a subordinate judicial officer.

(*Martin*, *supra*, 166 Cal.App.4th at 1411. Emphasis added.)

Furthermore, the statute clearly says, "A proceeding under this subdivision is a limited civil case." The Legislature would not have included this language if it did not intend for the matter to be treated as a limited civil case, in terms of discovery and evidence. Unlike mandamus proceedings, the statute does not limit the Court's review to the record of the proceedings below. Rather, a copy of the local agency's file shall be admitted "into evidence as prima facie evidence of the facts stated therein." The record below is simply prima facie evidence. The fact that the statute provides that the file is "prima facie" evidence further suggests the Legislature's intent for discovery to be conducted and for further evidence to be introduced before the reviewing court.

Therefore, this matter will be set for Court trial. Discovery shall be permitted pursuant to the rules applicable to limited civil cases. The County shall be prepared to submit a copy of its file into evidence in advance of the Court trial.

**Hearing Events/Documents Filed:**
The Court announces its tentative ruling.
The Court adopts its previously published tentative ruling.
Party appeared by audio and/or video; Counsel Ivan Jimenez appearing for counsel of record on behalf of the defendant

-End of Minute Order-

**Next Hearing(s) - Information current as of January 23, 2024:**
March 22, 2024, 8:30 AM Court Trial
Courtroom 18
Hon. Honigsberg, Christopher M.

*For more information, please contact the Clerk's Office at (707) 521-6500 during official business hours.*
*www.sonoma.courts.ca.gov*

FAC PG 175

# EXHIBIT 3

**SUPERIOR COURT OF CALIFORNIA,**

**COUNTY OF SACRAMENTO**

**GORDON D SCHABER COURTHOUSE**

**MINUTE ORDER**

DATE: 04/12/2022                    TIME: 01:30:00 PM          DEPT: 53

JUDICIAL OFFICER PRESIDING: Raymond Cadei
CLERK:  P. Lopez
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT: N. Alvi, S. Khorn

CASE NO: **34-2019-00259673-CU-JR-GDS**  CASE INIT.DATE: 07/02/2019
CASE TITLE: **Wang vs. City of Sacramento Police Department, a subdivision of the City of Sacramento, a political subdivision of the State of California**
CASE CATEGORY: Civil - Unlimited

---

**EVENT TYPE**: Motion for Protective Order - Civil Law and Motion

---

**APPEARANCES**

---

**Nature of Proceeding: Motion for Protective Order**

**TENTATIVE RULING**

The City of Sacramento's ("City" or "Respondent") Motion for Protective Order seeking relief from responding to discovery requests propounded by Appellants Zuhu Wang and Xiaoyan Yue ("Appellants") is DENIED.

The City seeks a protective order holding that it need not respond to Appellants' discovery requests, on grounds that Government Code section 53069.4 does not permit the introduction of new evidence in the instant action, such that Appellants' attempts to obtain discovery from the City are unnecessary and improper.

This action takes the form of an appeal of a penalty issued through the City's administrative process, wherein Appellants were fined $137,500 after 275 cannabis plants were found at their property. Appellants appealed the penalty through the City's administrative process.

On March 31, 2019, a hearing examiner issued a decision upholding the penalty, but reducing the amount to $35,000.

On July 2, 2019, Appellants filed an appeal in Sacramento County Superior Court pursuant to Government Code section 53069.4(b)(1) ("Section 53069.4").

The instant motion presents the question of whether new evidence can be presented at trial in this "appeal."  The City argues that new evidence cannot be presented, because the appellate record should be limited to the materials that were presented in the administrative hearing.  Appellants argue that the text of Section 53069.4 provides for a "de novo" appeal, which means a "new" hearing on the matter.

**Judicial Notice**

---

DATE: 04/12/2022                                        MINUTE ORDER                                        Page 1
DEPT: 53                                                                                            Calendar No.

CASE TITLE: Wang vs. City of Sacramento Police Department, a subdivision of the City of Sacramento, a    CASE NO: **34-2019-00259673-CU-JR-GDS**

The Court did not find it necessary to consider the voluminous evidence filed with the Opposition papers. However, the Court takes sua sponte judicial notice of the 2019 ruling of the Honorable Thadd Blizzard in a similar action (Exh. B to the Declaration of Monty Agarwal.)  In taking judicial notice of that ruling, however, the Court takes notice of the document's existence, not the truth of its contents.  (See *Professional Engineers v. Dep't of Transp.* (1997) 15 Cal.4th 543, 590 [judicial notice of findings of fact does not mean that those findings of fact are true]; *Steed v. Department of Consumer Affairs* (2012) 204 Cal.App.4th 112, 120-121.)

## Legal Standards

A motion for protective order asks the Court to modify, prohibit, or limit discovery procedures to protect a party from an excessive or unnecessary burden, expense, or intrusion. (Code Civ. Proc. § 2025.420.) "The court, for good cause shown, may make any order that justice requires to protect any party or other natural person or organization from unwarranted annoyance, embarrassment, or oppression, or undue burden and expense." (Code Civ. Proc. § 2030.090(b).)

Relevant in this particular case is Government Code section 53069.4, which as described above, Appellants herein use as their procedural vehicle to contest the underlying administrative decision. That Section provides, in pertinent part:

Notwithstanding Section 1094.5 or 1094.6 of the Code of Civil Procedure, within 20 days after service of the final administrative order or decision of the local agency is made pursuant to an ordinance enacted in accordance with this section regarding the imposition, enforcement, or collection of the administrative fines or penalties, *a person contesting that final administrative order or decision may seek review by filing an appeal to be heard by the superior court, where the same shall be heard de novo, except that the contents of the local agency's file in the case shall be received in evidence*.

(Gov't Code § 53069.4(b)(1) (emphasis added).)

It further provides:

A copy of the document or instrument of the local agency providing notice of the violation and imposition of the administrative fine or penalty shall be admitted into evidence *as prima facie evidence of the facts stated therein*.

(*Id*. (emphasis added).)

Additionally, that subdivision states: "The conduct of the appeal under this section is a subordinate judicial duty that may be performed by traffic trial commissioners and other subordinate judicial officers at the direction of the presiding judge of the court." (Gov't Code § 53069.4(b)(3).)

## Discussion

As a threshold matter, the Court notes that it will not summarize the appellate history of this action and will not address the classification of this matter as limited or unlimited based on the amount in controversy.  The parties are familiar with these.  The Court proceeds directly to the issue presented in the moving papers: whether discovery should be permitted to proceed in this action, which is an "appeal" that will be heard "de novo."

The City argues, "based upon the plain language of the statute, the current case is specified as an appeal to review the administrative decision and, by implication, the record that is the basis for such decision."  (P&As at 4-5.)  The City argues that the statute provides for the "contents of the local

CASE TITLE: Wang vs. City of Sacramento Police Department, a subdivision of the City of Sacramento, a    CASE NO: **34-2019-00259673-CU-JR-GDS**

agency's file" to be "received in evidence" along with "a copy of the document or instrument of the local agency providing notice of the violation and imposition of the administrative fine or penalty," which "shall be admitted into evidence as prima facie evidence of the facts stated therein." (*Id.*)  The City argues that the Statute provides for the "exact evidence and documents to be reviewed de novo" such that no additional evidence beyond these listed items should be permitted, because "[t]he terms of the more specific statute take precedence over those of the more general statute." (*Id.* (citing *People v. Barrett* (2003) 109 Cal.App.4th 437, 450).)

The Court is not persuaded.

First, here the Court is not reconciling the text of a specific statute with a more general statute. Regardless, Section 53069.4(b)(1) nowhere suggests that *only* the document "providing notice of the violation and imposition of the administrative fine or penalty," and the "local agency's file," constitute the *entirety* of materials that can be received into evidence in these particular actions.

For the first time on Reply, the City focuses on the Section's use of this phrase: the appeal "shall be heard de novo, **except that** the contents of the local agency's file in the case shall be received in evidence . . . ." (Reply at 2 (quoting Section 53069.4(b)(1) (emphasis in Reply).)  The City argues that this "except that" phrasing limits the evidence to be used in the "de novo" appeal, i.e., such that only the local agency's file and the citation document can be admitted into evidence in the appeal.  The Court is not persuaded.  For instance, Section 53069.4 does not expressly mention transcripts or "the record" from the underlying administrative hearing, and yet those would presumably also be evidence properly considered in an "appeal."  The Court is not persuaded that Section 53069.4 includes an exhaustive list of the evidence that may properly be considered in the de novo appeal.

Second, the text of Section 53069.4(b)(1) envisions the introduction of new evidence that might rebut the "**prima facie** evidence of the facts stated" in "the document or instrument . . . providing notice of the violation and imposition of the administrative fine or penalty." (emphasis added).  As Appellants argue, the text of Section 53069.4 describes the City's notice of violation and imposition of penalty as merely "prima facie" evidence **that can potentially be rebutted** -- i.e., presumably upon introduction of new, competing evidence.  If "shall be heard de novo" meant a review of the administrative record only, there would be no need for this presumption, or the allowance that it can be rebutted.

The City does not meaningfully address the term "prima facie" as used in Section 53069.4(b)(1).

The City argues that the case of *Martin v. Riverside Co. Dept. of Code Enforcement* (2008) 166 Cal.App.4th 1406, 1411-12 indicates that review under Section 53069.4 is a "limited de novo appeal." Rather than supporting the City's position here, however, *Martin* actually suggests that a "de novo" appeal under Section 53069.4 can properly include new evidence that had not been admitted at the administrative level.  In *Martin*, the superior court judge had "consider[ed] all evidence submitted, even if it had not been presented at the administrative hearing."  (*Id.* at 1410 (emphasis added).) The Court of Appeal described the Superior Court's process as "conduct[ing] the hearing both on the writ petition **and as a de novo appeal**." (*Id.* (emphasis added).)

This suggests that a "de novo appeal" under Section 53069.4 can properly include evidence that "had not been admitted at the administrative level." At least, the Court of Appeal in *Martin* did not take issue with the trial court for having considered new evidence in the "appeal" in that case.

Further, as Appellants argue (Opp'n at 9-11), when Section 53069.4 was enacted, the Legislature modeled its "de novo appeal" process after a similar one authorized under section 40230 of the Vehicle Code for parking violations. The object of the legislation was to provide a 'faster, easier, fairer approach' for addressing municipal code violations by 'getting the issues out of the courts' while 'saving public and

---

DATE: 04/12/2022
DEPT: 53

MINUTE ORDER

Page 3

CASE TITLE: Wang vs. City of Sacramento Police            CASE NO: **34-2019-00259673-CU-JR-GDS**
Department, a subdivision of the City of Sacramento, a

private funds.' (*County of Humboldt v. Appellate Division of Superior Court* (2020) 46 Cal.App.5th 298, 313.)  Here, Appellants argue that the origin is readily seen by a side-by-side comparison in texts:

[A] person contesting ... may seek review by filing an appeal to be heard by the superior court, where the same shall be heard de novo, except that the contents of the local agency's file in the case shall be received in evidence . . .

(Gov't Code § 53069.4.)

[T]he contestant may seek review by filing an appeal to be heard by the superior court where the same shall be heard de novo, except that the contents of the processing agency's file in the case shall be received in evidence ...

(Vehicle Code § 40320(a).)

Appellants argue that because § 53069.4 "borrows the de novo judicial appeal process from its parking citation counterpart," *County of Humboldt*, 46 Cal.App.5th 298, 313, the terms "appeal" and "shall be heard de novo" should be interpreted similarly.  (Opp'n at 9; see *Glaviano v. Sacramento City Unified School Dist.* (2018) 22 Cal.App.5th 744, 753 (for "substantially similar language, the usual presumption is that the Legislature intended the same construction, unless a contrary intent clearly appears.") (citations omitted).)  Under Vehicle Code § 40230(a), the term "shall be heard de novo" means a trial de novo. In *Lagos v. City of Oakland* (1995) 41 Cal.App.4th Supp. 10, 11-12, the court, discussing Vehicle Code § 40320(a), explained, "this de novo appeal is similar to a small claims appeal." Code of Civil Procedure § 116.770(a), which governs small claims appeals, provides that an "appeal to the superior court shall consist of a new hearing." In *ERA-Trotter Girouard Assoc. v. Superior Court* (1996) 50 Cal.App.4th 1851, 1855, the court explained that a small claims "appeal" "is one in name only." "*A small claims appeal is, in fact, a trial de novo in superior court.*" (*Id*. (emphasis added); see also *Martin v. Riverside County Dept. of Code Enforcement* (2008) 166 Cal.App.4th 1406, 1411 ("Although Government Code section 53069.4 uses the word "appeal" to describe the limited civil proceeding, what seems to be meant is a de novo hearing by a single judge ..."); *People v. Kennedy* (2008) 168 Cal.App.4th 1233, 1240 ("In certain respects, the requirement for a trial de novo under [Vehicle Code] section 40902 is similar to the statutory requirement of a trial de novo applicable in cases arising from decisions by local agencies pursuant to an ordinance. (Gov. Code, § 53069.4, subd. (b)(1).)" (emphasis added).)  The Court agrees with Appellants that the analogous nature of the Government Code and the Vehicle Code in this regard supports allowing new evidence on appeal here.

Finally, the Court agrees with Appellants that the plain text of Section 53069.4 does not state that the administrating hearing transcript and record shall be admitted into evidence or that it shall be the sole evidentiary basis for the de novo appeal here.  The Section provides for admission into evidence of the "the contents of the local agency's file in the case," which refers to the City's investigation file: if the Legislature meant to say the "administrative hearing record," it would have done so.  (Opp'n at 11-12.)  Moreover, as Appellants argue, discovery is available because Section 53069.4(b)(1) does not expressly bar discovery.  (See e.g., *City of Los Angeles v. Sup. Ct.* (2017) 9 Cal.App.5th 272, 284-86 (court considered if discovery was allowed in an action arising under the California Public Records Act, and held that because "the Legislature has not included any exemption precluding discovery in such proceedings, we conclude that the discovery act applies.").)

The City relies in part on *County of Sonoma v. Gustely* (2019) 36 Cal.App.5th 704, which notes that a reviewing court cannot simply "substitute its discretion" for the administrative agency's.  (P&As at 5-6.) However, in that case Gustely was found to have committed various county code violations on his property, and was fined civil penalties totaling $2,880.  (*Id*. at 707.) He *did not* seek judicial review of the hearing officer's decision prior to appealing to the Court of Appeal, and the Court of Appeal noted: "He

CASE TITLE: Wang vs. City of Sacramento Police Department, a subdivision of the City of Sacramento, a    CASE NO: **34-2019-00259673-CU-JR-GDS**

had two potential means of doing so: A petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5 or an appeal to the superior court pursuant to Government Code section 53069.4." (*Id.* at 711 (emphasis added).)  The issue of whether new evidence could be admitted in an appeal "de novo" under Section 53069.4 was therefore not presented in that case.

The City also relies on *County of Humboldt* (2020) 46 Cal.App.5th 298, 312-13, and argues that in that case the "court concluded the de novo appeal mirrors mandamus and is meant to review the administrative record." (P&As at 6.)  As Appellants argue, however, the court made no such determination in that case, because that question was not at issue.  The question was whether a party could appeal further *after* a trial de novo under Section 53069.4(b)(1).  After sorting out confusion about how cases are classified under Section 53069.4(b)(1), the court held that there *is* a right to a further appeal.  The court reasoned that since "judgment in an administrative mandamus action is generally appealable" it would be "anomalous" not to allow a further appeal of a judgment under Section 53069.4(b)(1). (*Id.* at 312-13.)

Ultimately, the City has not persuaded the Court that a protective order is warranted here, and has not shown that proceedings pursuant to Section 53069.4 cannot properly include any new evidence. Indeed, Appellants' Opposition papers challenge the nature and extent of the underlying administrative review process, wherein the examiner imposed a significant financial penalty on Appellants after a hearing that was not subject to the rules of evidence and that may have involved consideration of hearsay evidence.  In the interests of due process, the Court at this time declines to issue a protective order preventing any and all discovery, and declines to find that absolutely no new evidence may be presented as part of a full new "de novo" evidentiary hearing pursuant to Section 53069.4.

The Court clarifies that this ruling is limited to the question of whether discovery should be permitted to occur, not whether the judge assigned to preside over the de novo appeal should or should not admit any new evidence.  Questions of admissibility are preserved for the judicial officer handling the de novo appeal. This Court herein holds only that discovery may proceed in this action.

The City's Motion for Protective Order is DENIED.

The minute order is effective immediately.  No formal order pursuant to CRC Rule 3.1312 or further notice is required.

**COURT RULING**

There being no request for oral argument, the Court affirmed the tentative ruling.

FAC PG 181

# EXHIBIT 4

FAC PG 182





SUPERIOR COURT OF CALIFORNIA

COUNTY OF SACRAMENTO

| | |
|---|---|
| TIEN LAM<br>            Appellant. | Case No. 34-2018-247201 |
| vs.<br>CITY OF SACRAMENTO<br>            Respondent. | RULING ON REQUEST TO<br>RECLASSIFY PROCEEDING AS A<br>WRIT OF MANDATE |

On 6-7-19, this matter was assigned by the Presiding Judge of the Sacramento Superior Court to the undersigned for determination. Attorney Samuel D. Berns appeared for appellant Tien Lam ("Appellant"); attorneys Melissa D. Bickel and Emilio Camacho appeared for respondent City of Sacramento (the "City").

After an initial discussion with counsel, the court requested briefing from the parties on the proper statutory procedure for, and scope of, the proceedings. The City's "Memorandum of Points and Authorities in Support of Reclassification to a Writ of Mandate (CCP 1094.5 & 1094.6)" was filed on 6-20-19; Appellant's "Requested Supplemental Briefing" was filed on 6-21-19. On 7-24-19 the court received oral argument from both sides, as stated on the court reporter's record.[1] The court took the matter under submission at that time, and now rules as follows.

The Issue:

---

[1]   The transcript of proceedings on 7-24-19 is referenced herein as "TR," followed by page and line numbers.

FAC PG 183

1

2

3

4   Should this matter proceed as an appeal of an administrative penalty under Government Code
section 53079.4,[2] or should it proceed under the writ process provided in Code of Civil
Procedure sections 1094.5 and 1094.6?

Facts and Procedural History:

Appellant owns real property at 7812 51st Avenue in Sacramento ("the Property"). He seeks de
novo review, pursuant to section 53069.4, of an "Administrative Penalty Hearing Record of
Decision" issued on 12-10-18 by an Independent Hearing Examiner through Respondent's
Office of Cannabis Policy & Enforcement, which upheld an administrative penalty issued
pursuant to Sacramento City Code section 8.132, et seq. by the Sacramento Police Department
on 7-13-18 against Appellant in the amount of $201,000, relating to the Property.

Sacramento City Code Provisions and The Administrative Penalty:

Sacramento City Code section 8.132 under which the administrative penalty at issue was
imposed provides, in part:

"No person shall own, lease, occupy, or have charge or possession of any property upon which
cannabis is knowingly or unknowingly being cultivated, except in accordance with the
following:

"A. Chapter 5.150 (cannabis businesses).

"B. Section 8.132.040 (residential cultivation of cannabis)."

Section 8.132.040 allows residential cultivation of cannabis under prescribed conditions, with
a limit of no more than six living cannabis plants. 8.132.040 B.

Section 8.132.050 states, that "the amount of an administrative penalty to be imposed for a
violation of section . . . 8.132.040 is an aggregate amount calculated at $500 per plant that is in
excess of the number of plants allowed."

---

[2]  Unless otherwise noted, statutory references are to the Government Code.

The Administrative Penalty issued by the Sacramento Police Department in this case described the "Nature of the Violation" as "Total Plants: 408," with a penalty of "$500 x 402 = $201,000.00."

The City Code also states: "In addition to any other remedy allowed by law, any person who violates a provision of this chapter is subject to criminal sanction, civil actions, and administrative penalties pursuant to chapter 1.28." 8.132.050 A.

City Code Chapter 1.28 states that "[a]ll final administrative orders made pursuant to the procedures set forth in this subsection shall be subject to review only as provided in California Code of Civil Procedure Sections 1094.5 and 1094.6." 1.28.010 C.1.d. That subdivision also states, however: *Should any court of competent jurisdiction determine that the city must provide an appeal of any final administrative order in a manner other than set forth in Sections 1094.5 and 1094.6, then it is the intent of the city council that the administrative penalty process remain as provided herein and to provide that any appeal which is timely requested follow the procedures set forth in Government Code Section 53069.4.*" Id., emphasis added.

The Administrative Penalty Appeal Hearing Record of Decision:

The "Sacramento Police Department Administrative Penalty Appeal Hearing Record of Decision" ("Record of Decision") was issued on 12-10-18. The Record of Decision states that a noticed public hearing was held on 11-15-18, and that "witnesses submitted a written explanation, appeared and/or testified at the hearing on behalf of either the City or the Appellant . . . ." The Record of Decision also states that "[a]ny written materials submitted with the protest or at the hearing were reviewed by the Hearing Examiner and are on file in the offices of the City of Sacramento."

The Record of Decision contains a "Testimony Summary" that consists of the following:[3]

"City Staff:

"Sacramento Police Department (SPD) Officer Mahoney testified that on July 13, 2018, the SPD responded to a burglary in progress at 7812 51st Ave, Sacramento. While officers were on scene, they received consent from resident Zhong Cheng Liu to conduct a safety sweep of the

---

[3] This recital of the "Testimony Summary" in the Record of Decision is set forth here verbatim, in full.

residence. 9-1-1 dispatchers had received information from multiple callers that the residence had been broken into with a suspect carrying a gun and that there had been gunshots during the event. Upon conducting a protective sweep of the residence, officers observed approximately four rooms that had been converted into indoor cannabis growing rooms. Based on the time of night, officers did not feel that there was enough exigency to obtain a night service search warrant. The patrol officers left the scene and the Marijuana Compliance Team was advised of the situation.

"Officer Mahoney testified that a few hours later on July 13, 2018, the City executed a warrant on the property and observed 205 cannabis plants. Officers additionally observed 203 freshly cut marijuana stems in buckets. On scene, there were approximately four City personnel and two City vehicles. Personnel were on scene for approximately four hours, from the time the property was entered, to the time the property was secured, boarded, and declared as a dangerous building. Photos were taken on scene.

"Officer Mahoney testified that the plants that had the stems cut were still considered as plants under the ordinance because they can continue to grow and that a new plant can be spliced to the stem.

"Pursuant to SCC 8.132.050(E)(1), an administrative penalty in the amount of $201,000 (i.e., $500 per plant over six plants) was issued to the owner of the property for a violation of SCC 8.132.040(B). The citation was posted at the residence. The City Attorney also mailed a copy of the administrative penalty to the property owner. The administrative penalty in this case is appropriate due to the potential high proceeds to be gained from the cultivation of illegal cannabis."

"Deputy City Attorney:

"Deputy City Attorney Emilio Camacho asked Tien Lam if he was aware of the burglary and the gunshots that happened at his property. He also asked Tien Lam if he did any improvements to fortify the property, such as the iron gate in the front, the secured front door, the window bars, and the sign that states 'No Trespassing, Violators will be Shot, Survivors will be Shot Again.' He also asked Tien Lam how he found his tenant."

"Appellant:

FAC PG 186

"Samuel Berns, the Attorney for Tien Lam, asked Bruce Lam to translate on behalf of his father Tien Lam. Bruce Lam stated that his father Tien Lam has owned his property since 2010, and hasn't been living in the property since 2015. Tien Lam stated that he had fixed the property, removed the back patio, put in new floors and remodeled the kitchen. He lived in this property for a few years before renting a house in Marysville, where he was working. He lived in Marysville for a year then moved back to Sacramento.

"Tien Lam stated that he placed an ad at the supermarket to find a tenant. Upon questioning, he stated that the property is not registered with the City of Sacramento's Rental Housing Program.

"Tien Lam stated that met [sic] the tenant at the property location and he did not do a background or credit check. He also stated that he conducted a visual inspection with the tenant before the tenant moved in on May 1, 2018. He state [sic] that the lease period was May 1 to July 31, 2018. He provided a copy of the lease with Tien Lam, which showed a lease period of 12 months at the rate of $1,200 a month.

"Tien Lam stated that he did not receive any information from the City of Sacramento, SPD or SMUD that there were any illegal activities going on at his property and had no knowledge of cannabis being grown at his property. He also stated he was not aware of a burglary or gunshots.

"Tien Lam stated that he hired someone in 2011 to install the iron gate, the white front metal door was installed by his first tenant, and the bars on both the windows were installed by his second tenant. Both tenants had his permission. He also stated he did not give permission to his tenant to install the sign on the front of the house.

"Upon questioning, Tien Lam stated that all his mail goes to 7812 51st Street [sic] and he usually picks it up or his tenant will drop it off to him.

"Attorney Berns submitted an Addendum to the appeal form, which stated that the Appellant did not 'cause, allow or permit the alleged conduct,' and claimed that the property owner is not liable for the nuisance created by his tenant. At the hearing Mr. Berns stated that the plants that had been cut cannot be considered as plants to impose the fine, so it should only

be based on 205 plants for a total of $99,500. He also claimed that Government Code Section 53069.4(a)(2) requires notice be provided to the property owner before a fine is imposed."

The Record of Decision, after providing the above summary of testimony, sets forth the following "Findings of Fact":

"After examining the evidence submitted and arguments offered by City staff, the appellant and witness, if any; the owner's efforts, or lack thereof, to comply with the City Code; the staff time and costs incurred in investigating the violation; the extent, if any, to which the fine or penalty would impose a substantial economic hardship; the seriousness of the violation; the Hearing Examiner hereby makes the following findings:

"A. The Administrative Penalty was properly issued and served.

"B. The Appellant's tenant altered the home to become an indoor cannabis growing operation. Under Sacramento City Code section 8.100.100 property owners are responsible for alteration to a dwelling unit that were [sic] made by their tenants.

"C. The Appellant stated that he goes to the property to pick up his mail from his tenant, so he should have known of the tenant's alteration of the property and the illegal use.

"D. Government Code section 53069.4(a)(2) requires notice to the property owner only for a 'continuing violation,' not the first violation, of an ordinance imposing an administrative penalty.

"E. The facts support a finding that the number of plants being grown at the property includes the plants where the stems had been cut (so the cannabis could be taken from the property before the search warrant could be executed). Those plants were still alive in that the stem could continue to grow as a plant."

The Record of Decision then concluded with the following "Decision":

"The Administrative Penalty issued on July 13, 2018 in the amount of $201,000 shall be upheld."

<u>The Appeal</u>:

On 12-27-18 counsel for Appellant filed a "Notice of Appeal of Administrative Hearing Decision (Cal.Govt. Code §53069.4)."

Section 53069.4:

Section 53069.4 has five subdivisions. Subdivision (a) relates to enactment of administrative fines and penalties. It provides, in part, that a local agency "may by ordinance make any violation of any ordinance by the local agency subject to an administrative fine or penalty." 53069.4(a)(1).

Subdivision (b) provides a method of contesting an administrative decision: *"Notwithstanding Section 1094.5 or 1094.6 of the Code of Civil Procedure*, within 20 days after service of the final administrative order or decision of the local agency is made pursuant to an ordinance enacted in accordance with this section regarding the imposition, enforcement, or collection of the administrative fines or penalties, a person contesting that final administrative order or decision *may seek review by filing an appeal to be heard by the superior court, where the same shall be heard de novo, except that the contents of the local agency's file in the case shall be received in evidence."* 53069.4 (b)(1), emphasis added.

That subdivision continues: *"A proceeding under this subdivision is a limited civil case."* Id., emphasis added.

It further provides: "A copy of the document or instrument of the local agency providing notice of the violation and imposition of the administrative fine or penalty shall be admitted into evidence as prima facie evidence of the facts stated therein." Id.

Additionally, that subdivision states: "The conduct of the appeal under this section is a subordinate judicial duty that may be performed by traffic trial commissioners and other subordinate judicial officers at the direction of the presiding judge of the court." 53069.4(b)(3).

## The Parties' Arguments

Appellant's Arguments Regarding the Review Process to be Used:

FAC PG 189

Appellant argues that the reference in Section 53069.4 to an appeal under that section being a "limited civil case" does not prevent this matter from proceeding thereunder despite the fact that the penalty exceeds $25,000. He points out that Code of Civil Procedure section 85 provides: " . . . notwithstanding any statute that classifies an action or special proceeding as a limited civil case, an action or special proceeding *shall not be treated as a limited civil case unless all of the following conditions are satisfied:* [¶] (a) The amount in controversy does not exceed twenty-five thousand dollars ($25,000) . . . ." Emphasis added.

Appellant also references Code of Civil Procedure section 88, which states "[a] civil action or proceeding other than a limited civil case may be referred to as an unlimited civil case," and section 89, subdivision (a), which states that "[t]he existence of a statute relating to the authority of the court in a limited civil case does not, by itself, imply that the same authority does or does not exist in an unlimited civil case."

Since the amount in controversy here clearly exceeds $25,000, Appellant contends that it should be treated as an unlimited civil case, but that the court still has jurisdiction to hear it under section 53069.4. He argues that "the proper remedy for lack of jurisdiction based on amount in controversy [is] simply to transfer jurisdiction to the proper court." He cites *Stern v. Superior Court* (2003) 105 Cal.App.4[th] 223, regarding reclassification of jurisdiction: "The superior court has original jurisdiction in a limited civil case . . . . the statutory scheme now authorizes 'reclassification' of a case that is erroneously classified." Id. at 230.

Appellant also argues that the legislative history of section 53069.4 "reveals that the classification of cases heard as 'limited' was merely in line with clarifying who might hear cases brought under it." He points out:

"When the statute was first passed in 1995 as part of Senate Bill 814, subdivision (b)(1) allowed appeals under that section to be heard by municipal courts, but was silent on the distinction of 'limited' versus 'unlimited' because at that time local code violation issues were submitted to the municipal courts. In 1998, shortly after the passage of Proposition 220 unifying the municipal and superior courts, the statute was amended to allow superior courts to hear cases brought under Section 53069.4. After all municipal courts had been unified into superior courts in 2001, the statute was again amended, in 2002, to eliminate any mention of municipal courts."

Appellant concludes: "It appears, then, that the reference to cases under Section 53069.4 being 'limited' was simply to clarify that [one] could be heard as a limited case where it otherwise qualified for such treatment, and indeed likely reflects an expectation that local ordinance administrative penalties of the magnitude at issue here were never contemplated."

Citing *Martin v. Riverside County Department of Code Enforcement* (2008) 166 Cal.App.4th 1406, 1412, Appellant also argues that he had "the choice of proceeding under Section 53069.4 or the administrative writ procedures set forth in Section 1094.5 or 1094.6." The *Martin* decision will be discussed further below.

Appellant's Arguments Regarding the Scope of Review:

Assuming the present case were to go forward under section 53069.4 as an unlimited case, Appellant asserts that "the reclassification [to an unlimited civil case] would allow expanded rights to discovery, and should the Court desire it, Appellant would not oppose a court order of further discovery against the City of Sacramento consistent with the procedures applicable to an unlimited civil case."

He also references the language in section 53069.4 that the appeal "shall be heard de novo," arguing that this court should hear the case "without deference or reference to [the] Sacramento administrative hearing examiner's decision or any findings . . . as a bench trial, with each party presenting any evidence supportive of their respective positions that can be admitted under the California Evidence Code."

Appellant's counsel commented at oral argument on 7-24-19 about the administrative hearing process: ". . . I did make objections at the administrative hearing. Those objections were more or less met with, 'but, Counsel, we allow hearsay here.' I don't necessarily agree with those rulings, but I don't necessarily know that those are before the Court. I think that to rectify that, that the Court should be able to hear new evidence." TR 31:10-16.

Further describing the presentation of evidence at the administrative hearing, Appellant's counsel stated at oral argument:

". . . [in] a lot of these cases, you have informal translation; you have police officers reading off reports; you have reports that are taken into consideration without foundation being laid, on both sides." TR 32:11-15.

" . . . I do recall that at the administrative hearing, . . . there was an example of a police officer reading directly off her report. And I was not permitted to cross-examine, even to go to the weight, whether she had her own – whether she had her own opinions or whether she was merely reading off her report or what part of those reports she wrote herself versus what part of those reports were just kind of canned language that goes into every one of these administrative hearings." TR 54:5-15.

"I do think that where something came in . . . under the rules of administrative hearing rather than the courtroom Rules of Evidence, that it makes sense that the Court can weigh that, but also that it can – either side, frankly, can be given the opportunity to present the foundation on that evidence. . . ." TR 32:1-7.

Appellant acknowledges that section 53069.4 requires that "[a] copy of the document or instrument of the local agency providing notice of the violation and imposition of the administrative fine or penalty shall be admitted into evidence as prima facie evidence of the facts stated therein." This, he argues, creates a "rebuttable presumption" [under Evidence Code section 602], that can be rebutted "based on any evidence properly admitted."

Appellant also recognizes that section 53069.4 states that the "contents of the local agency's file in the case shall be received in evidence. . . ." Appellant notes that there is no specific definition of the "agency's case file" in the statute, and that the statute directs that the case file be "received" by the court; whereas the same statute states that the notice of violation and imposition of fine be *admitted* into evidence.

He argues for an interpretation of "case file" to mean only "the penalty and any pleadings filed" and that it "not include exhibits or testimony presented or proffered at the administrative hearing." Further, he argues that even if the court adopts a "more expansive view" of the City's case file, "the court should not necessarily consider the contents thereof." Appellant suggests that "the court should determine whether any part of the case file is admissible under the ordinary rules of evidence, and as the finder of fact[,] weigh the value of any evidence that is admitted."

As to the burden of proof, Appellant argues that, because it is to be a de novo hearing, the "accusing party, in this case the City of Sacramento, has the burden of proof, except on issues stated on the face of the penalty, which are rebuttable by Appellant."

The City's Arguments Regarding the Review Process to be Used:

The City argues that the court "lacks jurisdiction to hear the present matter pursuant to section 53069.4," because, "based upon the plain language" of that section, it is "necessarily" limited to matters where the amount in controversy does not exceed $25,000.

Regarding Code of Civil Procedure section 85 governing conditions for classification of a limited civil case, the City points to subdivision (c)(14), which, the City argues, "specifically designates a proceeding pursuant to section 53069.4 as a limited civil action.

In oral argument, the City urged an interpretation of the language in section 53069.4 that an appeal may be heard under that section "[n]otwithstanding Section 1094.5 or 1094.6 . . . " as follows:

"The way we see that is this is an alternate procedure to a writ. So it's saying, in these cases - - and I know you probably read all about the legislative history behind the statute, meant to take traffic fines and things that were $500, $1,000 and not make people go through the process of a writ proceeding that could take a couple of years, you need an attorney. This was a quick, efficient method, based on the legislative history, to resolve these minor issues, which is why the City believes that it was designated as a limited civil case, because it's saying, you can bring a writ, but on those cases that are valued under $25,000, we're going to give you an alternate procedure. And then that's how you rectify CCP 85. CCP 85 doesn't meet these conditions, it [is] not a limited civil case. [¶]  So it's our position that, okay, it's not a limited case, it cannot be heard under [section 53069.4], then you do have to go the writ procedure." TR 13:24-14:14.

Additionally, in oral argument, the City referenced the language in section 53069.4 that appeals under that section can be heard by a subordinate judicial officer, arguing that it would not be proper for subordinate judicial officers to hear appeals of large fines. TR 14:20-15:2.

The City, in its Memorandum in Support of Reclassification, points out that the amount in controversy in *Martin v. Riverside Co. Dept. of Code Enforcement, supra,* 166 Cal.App.4[th] 1406 was only $500. There is thus no published appellate authority recognizing application of section 53069.4 to an unlimited civil case.

The City also refers to a published opinion of the California Attorney General (07-503), which states that:

"The Legislature's purpose in enacting Government Code section 53069.4 was to provide a faster and more cost-effective enforcement mechanism than a criminal prosecution for the violation of a local ordinance. The section was expressly modeled on state legislation that removed the enforcement of most parking violations from the criminal justice system and mandated enforcement of parking violations through civil administrative procedures and civil penalties."

The City argued in oral argument that section 53069.4 was "created . . . for the quick, efficient economical resolution of a smaller matter," whereas "there is still, for unlimited cases, the ability to bring it via a writ." TR 17:12-16.

Taking the above into consideration, the City concludes: "Thus, given the express limited civil designation of all matters brought pursuant to section 53069.4(b)(1), the court has no authority to uphold the penalty of $201,000 issued by Appellant. Accordingly, the court has no jurisdiction to proceed with this matter as presently classified."

The City asserts that the court "may reclassify this matter to an unlimited civil case, and may proceed as it if was filed as a Writ of Mandate pursuant to Code of Civil Procedure section 1094.5 (and/or 1094.6)." The City argues: "[G]iven section 53069.4(b)(1) is clearly intended and restricted to only apply to the review of administrative decisions whose amount in controversy does not exceed $25,000.00, it logically follows that section 1094.5 (and/or 1094.6) is the only remedy for judicial review of the penalty at issue." Emphasis in original. "Given these jurisdictional restrictions," the City argues, "Appellant's misclassification is analogous to a mistake between [Code of Civil Procedure] section 1085 and 1094.5 Writs; thus it is necessary and proper for the court to reclassify this matter as an unlimited civil case, and to then proceed pursuant to the procedures set forth in section 1094.5 (and/or 1094.6)."

The following colloquy took place between the court and counsel for the City during the hearing on 7-24-19:

"THE COURT: Well. So my point is that an administrative agency, [and] a citizen are operating under the government code process. There's a notice of violation, there's a determination, there's a hearing, there's evidence, and then there's an appeal and we're still under the government code and then somebody realizes, wait a minute. It's over 25,000. Automatically, were over into writ land, is your position; correct?

"MR. CAMACHO: Correct.

"MS. BICKEL: Correct . . . ." TR 24:2-12.

Further, in oral argument, the City took the position that "any judgment that is in excess of the court's jurisdiction is void. It's . . . automatically void, . . . whereas if we go to a writ, we know for certain, the court has jurisdiction." TR 55:5-10.

The City's Arguments Regarding the Scope of Review:

Regarding the scope of review, the City's position is that because Code of Civil Procedure sections 1094.5 and 1094.6 provide for a "limited de novo review," the court should either reclassify this proceeding as a writ under those provisions or, if continuing to proceed under section 53069.4, use those writ procedures "as guidance." The City argues that the present matter "concerns land use regulations" and therefore "there is not any fundamental vested right at issue." Accordingly, the City argues, "the court's review must be based upon a substantial evidence standard." (Citing *Benetatos v. City of Los Angeles* (2015) 235 Cal.App.4th 1270, 1280; quoting *JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1057.)

The substantial evidence standard for review of administrative action, the City argues, requires the court "to begin with a presumption that the administrative record holds evidence 'that sustains every finding of fact'," with "the burden on the challenger to show that the findings are not supported by any substantial evidence whatsoever." *Pescosolido v. Smith* (1983) 142 Cal.App.3d 964, 970, citing *Foreman & Clark Corp v. Fallon* (1971) 3 Cal.3d 875, 881 and *Division of Labor Law Enforcement v. Transpacific Transportation Co.* (1979) 88 Cal.App.3d 823.

Under this substantial evidence standard of review, "the trial court must review the administrative record to determine whether the findings are supported by substantial evidence – in light of the whole record." (citing *Holmes v. California Victim Compensation & Government Claims Bd.* (2015) 293 Cal.App.4th 1400, 1406.) "The trial court must refrain from exercising its independent judgment on the weight of the evidence." (Citing *Lorimore v. State Personnel Bd.* (1965) 232 Cal.App.2d 183, 186.) "Moreover," the City argues, "under the substantial evidence standard of review, the trial court cannot receive new evidence since the court's power of review is confined to determining whether there was substantial evidence to support the administrative decision." (Citing *Gong v. City of Freemont* (1967) 250 Cal.App.2d 568, 573.) "When reviewing evidence under the substantial evidence standard, the trial court shall resolve all conflicts in the evidence and draw all inferences in support of the findings." (Citing *Holmes, supra,* 293 Cal.App.4th 1400, 1406.)

The City contends "[i]t is clear there is no authority for a complete trial de novo because such a practice would constitute 'an invalid usurpation of the administrative adjudicatory power' vested in the administrative agency." (Citing *Hackethal v. Loma Linda Community Hospital Corp.* (1979) 91 Cal.App.3d 59, 65.)

Regarding the evidence relied upon in administrative hearings, the City recognizes that it occurs through a relaxed process.

Section 11513 provides, for example, that "[t]he hearing need not be conducted according to technical rules relating to evidence and witnesses except as hereinafter provided." 11513, subd. (c). "Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." Id.

Hearsay evidence is specifically allowed, with some limitation: "Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but over timely objection shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." 11513, subd. (d).

Testimony in the form of affidavit is also allowed, with written notice to the opposing side. 11514, subd. (a). The right to cross examine the affiant is deemed waived unless a written

request is made within certain time limits; and, even if a timely request to cross-examine is made, it may be denied, and the affidavit may be considered, without cross-examination, "but shall be given only the same weight as other hearsay evidence." Id.

The City acknowledged at oral argument that " . . . we do try to have witnesses there to introduce evidence, but we use declaration. It's an informal process. It's supposed to be a half an hour to an hour proceeding. It's not a trial. Mr. Camacho does, sometimes, 10 to 12 of these a day. You know, back to back. . . ." TR 39:3-9.

The City described this administrative hearing process as "looser in nature . . . ." The hearing officer "doesn't rule on evidentiary objections [,] she takes everything in and makes her decision and weighs what comes in . . . ." TR 26:27-27:1.

In light of this less formal administrative procedure, the City argued that it could be detrimental to an appellant to apply more formal rules of evidence in a de novo appellate hearing:

". . . I would argue it actually hurt[s] the people trying to do an administrative appeal, because all of a sudden – administrative appeals are administrative in nature, to get a prompt resolution without the excess cost of litigation. Now, if all of a sudden – and they're informal in nature, just by the code section, Government Code section 11513 . . . – all of a sudden the formal Rules of Evidence apply, really people need an attorney. And I think, on the other hand, I would argue that it actually deprives people of the quick and prompt and economically efficient resolution of their matters, because now they're going to be subject to facing a highly-trained attorney that's going to object to everything they may say, everything they may bring and all that and they're just going to get overwhelmed. . . ." TR 22:3-18.

The City also argued that "allowing new evidence [at the appeal level] is . . . going to completely change the face of these administrative proceedings. . . . [P]eople are necessarily going to have to hire attorneys to bring them with them to these hearings, to ensure that they're properly admitting evidence or could be, you know, we potentially could throw it out when it gets to this level, if the same standard is going to be held against us." TR 38:22-39:2.

Additionally, the City asserted in its post-hearing brief that Appellant has the burden of proof:

"Section 53069.4(b)(1) provides that the document or instrument providing notice of the violation and imposition of the administrative penalty shall be admitted into evidence as prima facie evidence of the facts stated therein. Accordingly, Appellant has the burden of producing evidence that not only contradicts, but overcomes the facts stated in Respondent's administrative penalty."

The City also asserts, with respect to the present case, that "[t]he administrative penalty at issue indicates on its face . . . the existence and presence of 402 illegal cannabis plants inside Appellant's property located at 7812 51st Avenue; therefore the presumption that appellant must contradict and overcome is that the penalty was appropriately issued pursuant to City Code sections 8.132.030, 8.132.040(B) and 8.132.050(E)(1) for the 402 illegal cannabis plants."

Discussion:

The Review Process to be Used:

Appellant, as noted above, urged the court to consider this matter to be an unlimited civil case. In oral argument on 7-24-19, the City agreed:

"THE COURT: I think both sides think it's not limited and it can be deemed unlimited.

"MS. BICKEL: Correct." TR 44:18-20.

As the court then noted, if the case were to be deemed unlimited: "The question is, what do you do with that? And you [the City] say go over to writ land and he [Appellant] says, no, stay in this government code process." TR 44:21-23.

Section 53069.4 and Code of Civil Procedure Sections 1094.5 and 1094.6 as Alternatives:

Under the Court of Appeal's analysis in *Martin v. Riverside County Department of Code Enforcement, supra*, 166 Cal.App.4th 1406, judicial review of an administrative penalty can be sought by

*electing* between the alternatives of an appeal under Section 53069.4 or a writ under Code of Civil Procedure sections 1094.5 and 1094.6.

The *Martin* case had a convoluted procedural history, illustrating the confusion that can arise regarding whether review of an administrative penalty can be pursued under section 53069.4 or Code of Civil Procedure sections 1094.5 or 1094.6.

In *Martin*, a $500 citation for grading without a permit was at issue. 166 Cal.App.4[th] at 1408. Seeking judicial review, Martin filed a writ petition under Code of Civil Procedure sections 1094.5 and 1094.6 in the superior court. Id. The superior court denied the writ, but "offered its opinion that the correct procedure was to seek review by filing an appeal to be heard de novo by the superior court as provided in Government Code section 53069.4, subdivision (b)(1)." Id.

Martin appealed to Court of Appeal, which "agreed with the superior court that the correct procedure for Martin to have followed was to seek a de novo appeal in the superior court." Id. However, the Court of Appeal also "concluded [it] did not have jurisdiction to hear the appeal of a limited civil case." Id. The Court of the Appeal therefore transferred the case to the appellate division of the superior court. Id.

The appellate division "then issued an opinion, concluding it did not have jurisdiction to hear an appeal of the superior court decision because no further review of a code enforcement proceeding is permitted beyond the de novo appeal in the superior court." Id.

On its own motion, the Court of Appeal in *Martin* directed the case to be transferred back to it. Id. at 1409. The Court of Appeal "issue[d] a second decision in which [it] determine[d] that *Government Code section 53069.4, subdivision (b)(1) offers alternative procedures for challenging a final administrative decision, either by petition for writ of mandate or by a de novo appeal to the superior court.*" Id. at 1409., emphasis added.

In the present case, Appellant argues that the language of section 53069.4 "makes clear that the proceedings under . . . Section 53069.4 are an alternative to writ relief." He references the language in section 53069.4 that its provisions apply "notwithstanding Section 1094.5 or 1094.6 of the Code of Civil Procedure." The Court of Appeal in *Martin* reached the same conclusion by a review of legislative history, not by interpreting the meaning of

"notwithstanding" in section 53069.4: "The meaning of 'notwithstanding' and the [reference to sections 1094.5 or 1094.6] is not wholly clear . . . ." Id. at 1411, fn. 7. The *Martin* court relied upon "the pertinent legislative history to aid our independent statutory interpretation" (id.), concluding, "[a]fter undertaking a review of the legislative history of Government Code section 53069.4, we have determined *there are alternative procedures for seeking review, either by writ petition or by a de novo appeal.*" Id. at 1410, emphasis added.[4]

"In summary," the Court of Appeal in *Martin* stated, "Government Code section 53069.4 provides for alternative procedures for challenging an administrative decision like a ruling on a code violation, either by a de novo appeal to the superior court to be heard by a judge or a subordinate judicial officer or by a petition for writ of mandate under Code of Civil Procedure sections 1094.5 and 1094.6." Id. at 1412.

Consistent with this view is language in the recent appellate decision in *County of Sonoma v. Gustely* (2019) 36 Cal.App.5th 704. There, Gustely was found to have committed various county code violations on his property, and was fined civil penalties totaling $2,880. Id. at 707. He did not seek judicial review prior to appealing to the Court of Appeal. The Court of Appeal noted: "He had two potential means of doing so: *A petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5 or an appeal to the superior court pursuant to Government Code section 53069.4.*" Id at 711, emphasis added.

<u>Whether Section 53069.4 Can Apply to This Case, When More than $25,000 is at Issue:</u>

The language of Code of Civil Procedure sections 85 and 88 provides a persuasive basis for concluding that, notwithstanding the reference in Section 53069.4 to "limited civil case," the present matter "shall not be treated as such," and may instead "be referred to as an unlimited civil case." The language in Code of Civil Procedure section 89 provides further support for this court to exercise authority over the present case as an unlimited civil case.

While, as the City argues, subdivision (c)(14) of Code of Civil Procedure section 85 references section 53069.4, it does so as one of three criteria for designation as a limited civil action, "*all*"

---

[4] In *Martin,* since the administrative penalty at issue was only $500, the Court of Appeal did not have to confront the question whether appeal of a penalty greater than $25,000 falls outside the scope of Section 53069.4 because of its reference to an appeal thereunder being "a limited civil case."

of which must be "satisfied" in order for an action or special proceeding to be limited. One of these criteria is clearly not satisfied here, i.e., the requirement that the amount in controversy not exceed twenty-five thousand dollars.

Regarding the fact that 53069.4 appeals may be heard by subordinate judicial officers, the undersigned does not find that to be a necessary indication that only limited civil cases may be reviewed under Section 53069.4. Whether a subordinate judicial officer hears such an appeal is within the discretion of the Presiding Judge of the Superior Court, who might decide that appeals involving smaller amounts should be heard by such judicial officers but that appeals involving larger amounts, as in the present case, should be heard by superior court judges.

Both parties assert that, because of the amount in controversy, this matter can be classified as an unlimited civil action. The court agrees. Under the language of Code of Civil Procedure sections 85, 88 and 89, read in conjunction with Section 53069.4, this is to be classified as an unlimited civil action because the amount in controversy exceeds $25,000.

Further, and more central to the present analysis, the court concludes that classifying this case as an unlimited civil action does not require that it fall outside the provisions of Section 53069.4. The court recognizes that there is no direct authority for this conclusion, but reaches it for several reasons.

First, this result gives recognition to the language in *Martin* and *Gustley* that electing the administrative appeal process under Section 53069.4 is a choice to be made by an appellant. Under the City's view, as soon as an amount in controversy exceeds $25,000 (a determination wholly within the administrative agency's control), an appellant would be denied that choice.

Second, for reasons discussed more thoroughly below, this court concludes, under principles of due process, that judicial review of a loose, informal process resulting in an administrative penalty exceeding $25,000 merits a more in-depth appellate procedure than the limited review available under writs authorized by Code of Civil Procedure sections 1094.5 and 1094.6.

The Scope of Review:

In *Martin*, the superior court judge had "*consider[ed] all evidence submitted, even if it had not been presented at the administrative hearing.*" Id. at 1410, emphasis added. The Court of Appeal described the Superior Court's process as "conduct[ing] the hearing both on the writ petition *and as a de novo appeal.*" Id., emphasis added.

This suggests that a "de novo appeal" under Section 53069.4 can properly include evidence that "had not been admitted at the administrative level." At least the Court of Appeal in *Martin* expressed no criticism of the trial court for having done so.

The term "de novo" has more than one meaning. The City urges that review in this case should be a "limited de novo" examination of the existing record, with no new evidence.

This court is troubled by the notion that a quick, informal hearing, in which the rules of evidence are not followed, resulting in an enormous penalty[5] can only be reviewed in a narrow fashion on a limited (indeed, undefined) "case file" record for substantial evidence. This does not strike the undersigned as meeting the minimal requirements of due process.

In another context, the Court of Appeal in *County of Sacramento v. Llanes* (2008) 168 Cal.App.4th 1165 discussed the meaning of "a de novo" hearing in terms that, in the undersigned's view, more fully align with principles of due process:

"'A hearing *de novo* literally means a new hearing, or a hearing the second time. [Citation] Such a hearing contemplates an entire trial of the controversial matter in the same manner in which the same was originally heard. It is in no sense a review of the hearing previously held, but is a complete trial of the controversy, the same as if no previous hearing had ever been held. It differs, therefore, from an ordinary appeal from an inferior to an appellate body where the proceedings of the hearing in the inferior court are reviewed and their validity determined by the reviewing court. A hearing *de novo* therefore is nothing more nor less than a trial of the controverted matter by the court in which it is held. The decision therein is binding upon the parties thereto and takes the place of and completely nullifies the former determination of the matter'." 168 Cal.App.4th at 1173, citing *Collier & Wallis, Ltd. V. Astor* (1937) 9 Cal.2d 202, 205.

---

[5] At oral argument on 7-24-19, the City represented that there are pending cases similar to the present case with administrative penalties in some instances exceeding $1 million. TR 14:25-28.

See also *REA Enterprises v. California Coastal Zone Conservation Com.* (1975) 52 Cal. App. 3d 596, 612.

*People v. Kennedy* (2008) 168 Cal.App.4[th] 1233 is also instructive. There, a defendant was convicted of a speeding violation following a trial by declaration as authorized by the Vehicle Code. Vehicle Code section 40902, subdivision (d), and California Rule of Court, Rule 4.210 authorize a "trial de novo" for a defendant dissatisfied with the results of a trial by declaration. Such a trial de novo involves new evidence.[6]

The Court of Appeal in *People v. Kennedy* referred to the de novo traffic trial right as bearing a resemblance to the de novo hearing right at issue in the present case: "In certain respects, the requirement for a trial *de novo* under [Vehicle Code] section 40902 is similar to the statutory requirement of a trial *de novo* applicable in cases arising from decision by local agencies pursuant to an ordinance. (Gov. Code §53069.4, subd.(b)(1)." 168 Cal.App.4[th] at 1240. Thus, *People v. Kennedy* expressly drew an analogy between de novo review in the present administrative context, and in the context of a traffic trial appeal in which new evidence is permitted.

Also somewhat analogously, new evidence is permitted in de novo appeals of small claims cases. See Code of Civil Procedure section 116.770; California Rules of Court, Rule 8.966.

The court recognizes that the amount at issue in traffic and small claims cases is small. In this court's view, however, that is all the more reason to allow de novo review with new evidence in cases involving a far greater administrative penalty.

As to the City's concern that allowing de novo appeals with new evidence under Section 53069.4 will change the face of the administrative process and cause parties to incur untenable legal expenses, the undersigned concludes that (1) such a concern is outweighed by the serious risk of due process denial in cases such as the present one; and (2) a party

---

[6]  See *People v. Winters* (2012) 208 Cal.App.4[th] Supp.8, which describes evidence taken in the form of witness testimony and exhibits in a de novo traffic trial following a trial by declaration. Id. at 10-12. The court recognizes that *Winters* is an unpublished opinion of the Appellate Division of the San Bernardino County Superior Court, and cites this case not as authority, but to take judicial notice of the de novo process involved.

1  receiving an adverse administrative ruling on a small penalty is unlikely to incur significant

2  legal fees to contest such a penalty.

3  Finally, as to the City's argument that the exercise of jurisdiction contemplated herein will be

4  void, the court notes the following.  In *Avery v. County of Santa Clara* (2012) the United Stated

5  District Court for the Northern District of California was confronted with a similar argument.

   There, plaintiffs, owners of property in Morgan Hill, were ordered by the County of Santa
6
   Clara to remove materials from their property.  Plaintiffs failed to do so, and fines were
7
   imposed pursuant to an administrative hearing.  Plaintiffs appealed to the superior court,
8
   which affirmed the hearing officer's decision.  Thereafter, plaintiffs filed an action in federal
9
   court alleging due process deprivation and other claims.  The defendant County moved for
10
   summary judgment, asserting claim preclusion because of the superior court proceedings.
11
   The plaintiffs argued, among other things, that the superior court judgment was "void"
12
   because their appeal in that court had been under Section 53069.4 and the fines at that time
13
   were $55,000, i.e., in excess of the $25,000 jurisdictional limit of a limited civil action.  The

14 federal court rejected this argument:

15 "Plaintiffs' argument fails.  A judgment is 'void' if the rendering court lacks jurisdiction in the

16 'fundamental sense' (i.e., the court lacks 'authority over the subject matter or the parties')

17 [Citation.]  However, '[w]hen a court has fundamental jurisdiction, but acts in excess of its

18 jurisdiction, its act or judgment' is not void but 'merely voidable.' [Citation.]  The distinction

19 between void and voidable judgments is significant because a voidable 'judgment is valid until

20 it is set aside, and a party may be precluded from setting it aside by 'principles of estoppel,

21 disfavor or collateral attack[,] or res judicata.' [Citations.]" 2012 U.S. Dist LEXIS 162911, 24,
   27-28.
22
   This court believes it has fundamental jurisdiction over this dispute.  While not wishing to
23
   act beyond its jurisdiction, it appears that a de novo appeal decision under the above analysis
24
   would at most be voidable, not void.
25
                                    Disposition
26
   This matter is reclassified as an unlimited civil case.
27

28

FAC PG 204

1    The City's request to reclassify this proceeding as a writ under Code of Civil Procedure
2    sections 1094.5 and 1094.6 is denied.

3    In the interests of due process, the court concludes that a full new ("de novo") evidentiary
4    hearing must be held under Section 53069.4, in which new evidence is permitted.  Also, as
5    Section 53069.4 subdivision (b)(1) states, the contents of the local agency's file in the case
6    shall be received in evidence and a copy of the document or instrument of the local agency
7    providing notice of the violation and imposition of the administrative fine or penalty shall be
8    admitted into evidence as prima facie evidence of the facts stated therein.

9    The parties are directed to communicate with the clerk of this department to set a date for
10   further proceedings consistent with this ruling.  Also, as noted at oral argument on 7-24-19,
11   the court will consider a stay pending review by the Court of Appeal, if requested.

12   IT IS SO ORDERED

13   Dated:   08/29/2019

14                                          Hon. Thadd A. Blizzard
15                                          Judge of the Superior Court

16
17
18
19
20
21
22
23
24
25
26
27
28

FAC PG 205

CLERK CERTIFICATE OF MAILING

MELISSA D. BICKEL
EMILIO CAMACHO
ATTORNEYS FOR CITY OF SACRAMENTO
915 I STREET, ROOM 4010
SACRAMENTO, CA 95814

SAMUEL BERNS
ATTORNEY FOR TIEN LAM
5701 LONETREE BLVD. , STE 123
ROCKLIN, CA 95765

I, S. Martin, hereby certify that I am not a party to the within action and that I deposited a copy of: **RULING ON REQUEST TO RECLASSIFY PROCEEDING AS A WRIT OF MANDATE** with first class postage prepaid addressed to each party above in the U.S. Mail at 720 9th Street, Sacramento CA 95814

Dated: 08/29/2019

S. Martin
Courtroom Clerk

Cc: court file(s)
34-2018-247201

FAC PG 206

Exhibit  13

FAC PG 207

1  Joseph C. Rosenblit (SBN 131663)
   The Law Office of Joseph C. Rosenblit
2  33801 Avenida Calita, San Juan Capistrano, CA 92675
3  Telephone: (949) 412-6666; Fax: (949) 312-2090
   Email Address: rosenblitlawyer@gmail.com
4

5

6

7              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                 **RIVERSIDE COUNTY - PALM SPRINGS**

9

| | |
|---|---|
| 10  CITY OF DESERT HOT SPRINGS, a municipal entity, | Case No.: **CVPS2106001** |
| 11 | Related Cases No: **CVPS2106016** |
| 12              Plaintiff and Respondent, | **DECLARATION OF JOSEPH ROSENBLIT, IN SUPPORT OF DEFENDANT JOSEPH MINER'S MOTION TO VACATE VOID JUDGMENT** |
| 13          vs. | |
| 14  JOSEPH MINER, an individual, | **LIMITED CIVIL JURISDICTION** |
| 15              Defendant and Appellant. | Filed:         1/5/2024 |
| 16 | Judge:        TBD |
| 17 | Hearing:    1/26/24 |
| | Res:          348817813014 |

18

19              **DECLARATION OF JOSEPH ROSENBLIT**

20  I, Joseph C. Rosenblit declare:

21      1.  I state the following facts and history of my own personal knowledge and if called, I can
22  and would testify competently thereto.

23      2.  Except where stated in this declaration upon information and belief, the facts set forth in
    this declaration are known to me personally, and, if called and sworn as a witness in a court of
24  law, I could and would competently testify to such facts. As for those facts stated upon
25  information and belief, I believe in good faith that they are true.

26      3.  My name is Joseph Chaim Rosenblit,. I am over the age of eighteen (18). I not a party to
    the this proceeding.

27      4.  I am an attorney duly licensed to practice law in the State of California. I have been
28  licensed in California since 1987. My license is active, and in good standing. The State Bar

FILE: Q25BKE82BE990867236L3G
DECLARATION                          Page 1

FAC PG 208

number is #131663.

5. I have known Joseph Miner more than ten years. On occasion I have assisted Mr. Miner in litigation.

6. Mr. Miner notified me of the citations and related issues involving his Desert Hot Springs Ranch.

7. At some point Mr. Miner informed me that the City was attempting to declare him a vexatious litigant as a defendant in defense of city issued administrative citations.

8. Mr. Miner informed me of multiple issues regarding his defense. He was not permitted discovery, not permitted witnesses, not permitted to subpoena documents from the city. He was not allowed to depose the City's witness.

9. Mr. Miner also informed me that he had requested a judge and that he had non-stipulated to the commissioner many times.

10. I agreed to assist Mr. Miner in his defense in a hybrid defense with his assistance pro bono. We agreed that we would both argue the issues.

11. I did not believe Mr. Miner filed any document that an attorney would not have filed defending a client in the same situation.

12. I attended the hearing by telephone. I called in to the court before the hearing began September 22, 2022.

13. The special proceeding was before Arthur C. Hester, III. I understood he was acting as a commissioner, a subordinate judicial officer.

14. The commissioner did not make mention he would act as a judge or temporary judge.

15. The commissioner did not request the parties stipulate and permit him to adjudicate the proceeding as a judge or temporary judge.

16. During the hearing I heard the commissioner admonish Mr. Miner for non-stipulating; which was Mr. Miner's right. The comment confirmed to me the commissioner was aware of the non-stipulations before the special proceeding.

17. I am aware that Joseph Miner filed a notice of non stipulation for "all further proceedings" on June 7, 2022.

18. There is no evidence of notice by the court to my office, or at the hearing, or that the commissioner intended to, or would act as a judge, or a temporary judge.

I declare, under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct, and that this declaration is executed this ___ day of January 2024, in the County of Orange, State of California.

_____
Joseph Rosenblit, Attorney

FILE: Q25BKE82BE990867236L3G
DECLARATION                    Page 2

FAC PG 208

Exhibit __14__

**APRI2200098; APRI2200109**

### STATE OF CALIFORNIA
### SUPERIOR COURT ~ APPELLATE DIVISION
### COUNTY OF RIVERSIDE

---

| | |
|---|---|
| JOSEPH MINER<br>*Defendant and Appellant*, | ) Docket No.  **APRI2200098**<br>)                **APRI2200109**<br>) |
| vs. | ) Superior Ct. CVPS2106001<br>) |
| CITY OF DESERT HOT SPRINGS<br>*Plaintiff and Respondent*. | ) CONSOLIDATED<br>) OPENING BRIEF<br>) |

---

On Appeal from the Riverside County Superior Court
The Honorable Arthur C. Hester III, Commissioner Presiding
Riverside County Superior Court - Palm Springs - Dept. PS4

FOLLOWING AN ORDER GRANTING A MOTION FOR
VEXATIOUS LITIGANT AND SECURITY ~ CCP §391(b)(3)
DISMISSAL OF CASE WITHOUT PREJUDICE

---

### APPELLANT'S OPENING BRIEF

---

RELATED PROCEEDINGS IN SUPERIOR COURT
Riverside Case No.: CVPS21060016

RELATED PROCEEDINGS IN FEDERAL COURT
Central District No.: 8:22-cv-01043-CAS-MAA

Joseph Miner (pro per)
Phone 949-903-5051; Fax 949-646-2794
PO Box 11650, Costa Mesa, CA 92627
josephminer@gmail.com

A

# TABLE OF CONTENTS

**INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATEMENT OF THE CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    Relevant History and Material Factual Context . . . . . . . . . . . . . . . . . . 3

    The Ranch - Subject of the Citation . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    Appellant's Knowledge of Real Property, Code and Law . . . . . . . . . . 6

    Pre Court Materially Related Administrative Issues. . . . . . . . . . . . . . . 6

    Legal Mandate of City Code Enforcement . . . . . . . . . . . . . . . . . . . . . 7

    City and Officer Material Errors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    City of Desert Hot Springs Public Nuisance Ordinance . . . . . . . . . . 10

    Administrative Hearing Facts Become Trial Court Evidence. . . . . . . . 11

    Trial Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    Consequences Of A Court Err Insufficient Defense. . . . . . . . . . . . . . 16

    Vexatious Litigant Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    Totality Of The Issues Support Appellant's Acts At Trial . . . . . . . . . 17

**STATEMENT OF APPEALABILITY** . . . . . . . . . . . . . . . . . . . . . . . . . 17

**STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    De Novo Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    Abuse of Discretion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**QUESTIONS PRESENTED** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    Vexatious Litigant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    Fair Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    Judicial Bias . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**I. THE TRIAL COURT ERRED WHEN IT DECLARED
    DEFENDANT MINER A VEXATIOUS LITIGANT UNDER
    THE FACTS AND ELEMENTS OF THE DE NOVO CASE** . . . . 21

    A. Miner Hasn't Re-litigated or Filed Unmeritorious Lawsuits . . . . . . 21

    B. Miner's First Label Is Citee; His Role Is Defendant . . . . . . . . . . . 22

        1. The City Took First Chair At Trial To Reprove Its Citation . . . . 23

    C. The City Issued the Citation; it Brought the Claims. . . . . . . . . . . . 23

    E. City Had No Standing to Bring Motion Against Defendant. . . . . . . 24

    F. Miner Never Filed any Civil Action or Litigation . . . . . . . . . . . . . . 26

    G. Court's Order Fails Miner Is a Vexatious Litigant by Statute . . . . . 26

        1. The Trial Court Order is Void . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

B

H. The Courts Findings During Oral Argument Failed to
Determine Miner Is a Vexatious Litigant . . . . . . . . . . . . . . . . . . . . . . . 28
I. Acts by Miner Proper and Done With Purpose . . . . . . . . . . . . . . . . 29
    1. Miner's Subpoenas Were Meritorious. . . . . . . . . . . . . . . . . . . . 30
    2. Documents Subpoenaed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    3. Witnesses Subpoenaed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    4. Miner Contends the Recusals Were Legal and Proper . . . . . . . . 30
J. Miner's Filings Were Meritorious. . . . . . . . . . . . . . . . . . . . . . . . . . . 31
K. The Demurrer Was Meritorious . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
L. The Motions Were Meritorious Not Duplicative . . . . . . . . . . . . . . . 33
    01. Motion in Limine #1 No administrative hearing . . . . . . . . . . . 34
    02. Motion in Limine #2 Citation failed to state a claim. . . . . . . . . 34
    03. Motion in Limine #3 Cherry picked administrative record . . . . 35
    04. Motion in Limine #4 Exculpatory evidence . . . . . . . . . . . . . . . 35
    05. Motion in Limine #5 Unlawful officer report . . . . . . . . . . . . . . 35
    06. Motion in Limine #6 Uncertified hearing transcript . . . . . . . . . 35
    07. Motion in Limine #7 Augment administrative record. . . . . . . . 35
    08. Motion in Limine #8 Judgment on the pleadings . . . . . . . . . . . 35
    09. Motion in Limine #9 Judgment for unclean hands . . . . . . . . . . 35
    10. Motion to Disqualify City Attorney. . . . . . . . . . . . . . . . . . . . . . 36
M. City's Case law Inapplicable and Distinguishable. . . . . . . . . . . . . . 36
II. THE TRIAL COURT ERRED WHEN IT ORDERED MINER
    TO POST SECURITY AS THE DEFENDANT. . . . . . . . . . . . . . . 36
    A. The Trial Court in its Own Words Stated Miner Had a
    50/50 Chance of Prevailing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
III. CUMULATIVE TRIAL COURT ERROR . . . . . . . . . . . . . . . . . . 37
CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
CERTIFICATION OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . 44

C

# TABLE OF AUTHORITIES

01.
*1550 Laurel Owner's Assn., Inc. v. Appellate Division of Superior Court,*
*28 Cal. App. 5th 1146, 239 Cal. Rptr. 3d 740 (Ct. App. 2018)* . . . . . . . . 36

02.
*Adams v. Murakami,*
*813 P.2d 1348, 54 Cal. 3d 105, 284 Cal. Rptr. 318 (1991)* . . . . . . . . . . . 14

03.
*Amtower v. Photon Dynamics, Inc.,*
*158 Cal.App.4th 1582, 71 Cal. Rptr. 3d 361 (Ct. App. 2008)* . . . . . . . 16, 33

04.
*Beverly Hospital V. Superior Court of Los Angeles Cty.,*
*19 Cal. App. 4th 1289, 24 Cal. Rptr. 2d 238 (Ct. App. 1993)* . . . . . . . . . . 15

05.
*Boelts v. City of Lake Forest,*
*25 Cal.Rptr.3d 164, 127 Cal.App.4th 116 (Cal. App. 2005)* . . . . . . . . . . . 7

06.
*Bravo v. Ismaj,*
*120 Cal. Rptr. 2d 879, 99 Cal.App.4th 211 (Cal. App. 2002).* . . . . . . . . . . 21

07.
*Catchpole v. Brannon,*
*36 Cal.App.4th 237, 42 Cal. Rptr. 2d 440 (Ct. App. 1995)* . . . . . . . . . . . 30

08.
*Chavez v. City of Los Angeles,*
*47 Cal.4th 970, 224 P.3d 41, 104 Cal.rptr.3d 710 (Cal. 2010) P.989* . . . . 15

09.
*Childs v. PaineWebber Incorporated,*
*29 Cal.App.4th 982, 35 Cal. Rptr. 2d 93 (Ct. App. 1994)* . . . . . . . . . . . . 33

10.
*City of Bakersfield v. Miller,*
*64 Cal.2d 93, 48 Cal. Rptr. 889, 410 P.2d 393 (Cal. 1966).* . . . . . . . . . . . . 7

D

11.
*City of Santa Paula V. Narula,*
*8 Cal. Rptr. 3d 75, 114 Cal. App. 4th 485 (Ct. App. 2003)* . . . . . . . . . . . 23

12.
*Collier & Wallis, Ltd. v. Astor,*
*9 Cal.2d 202, 70 P.2d 171 (Cal. 1937)* . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

13.
*County. of Humboldt v. Appellate Div. of Superior Court,*
*46 Cal.App.5th 298, 259 Cal. Rptr. 3d 687 (Ct. App. 2020) p 305* . . . . . . 22

14.
*DCH Health Services Corp. v. Waite,*
*95 Cal.App.4th 829, 115 Cal. Rptr. 2d 847 (Ct. App. 2002)* . . . . . . . . . . . 30

15.
*Dedication & Everlasting Love to Animals, Inc. v. City of El Monte,*
*No. B318078 (Ct. App. Nov. 8, 2022)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

16.
*Delaney v. Superior Court,*
*789 P.2d 934, 50 Cal. 3d 785, 268 Cal. Rptr. 753 (1990) #B)* . . . . . . . . . 25

17.
*Diaz v. Grill Concepts Servs., Inc.,*
*233 Cal.Rptr.3d 524, 23 Cal.App.5th 859 (Cal. App. 2018)* . . . . . . . . . . . . . 7

18.
*Edwards v. Centex Real Estate Corp.,*
*53 Cal.App.4th 15, 61 Cal. Rptr. 2d 518 (Ct. App. 1997)* . . . . . . . . . . . . . . . 33

19.
*Fairmont Ins. Co. V. Superior Court,*
*991 P.2d 156, 92 Cal. Rptr. 2d 70, 22 Cal. 4th 245 (2000)* . . . . . . . . . . . 15

20.
*Finch Aerospace Corp. v. City of San Diego,*
*supra, 8 Cal.App.5th at p. 1253.)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

21.
*Fink v. Shemtov, 180 Cal.App.4th 1160,*
*102 Cal. Rptr. 3d 509 (Ct. App. 2010)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

E

22.
*First Western Development Corp. v. Superior Court,*
*212 Cal.App.3d 860, 261 Cal. Rptr. 116 ( Ct. App. 1989)* . . . . . . . . . . . . 36

23.
*Flahive v. City of Dana Point, 85 Cal. Rptr. 2d 51, 72 Cal. App. 4th 241*
*(Ct. App. 1999)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

24.
*Gai v. City of Selma,*
*68 Cal.App.4th 213, 79 Cal. Rptr. 2d 910 (Ct. App. 1998)* . . . . . . . . . . . 30

25.
*Garcia v. Superior Court,*
*156 Cal.App.3d 670, 203 Cal. Rptr. 290 (Ct. App. 1984).* . . . . . . . . . . . . 30

26.
*Golin v. Allenby,*
*190 Cal.App.4th 616, 118 Cal. Rptr. 3d 762 (Ct. App. 2010)* . . . . . . . . . 34

27.
*Guillemin v. Stein,*
*104 Cal.App.4th 156, 128 Cal. Rptr. 2d 65 (Ct. App. 2002)* . . . . . . . . . . 29

28.
*Guzman V. Superior Court of Los Angeles Cty.,*
*19 Cal. App. 4th 705, 23 Cal. Rptr. 2d 585 (Ct. App. 1993)* . . . . . . . . . . 15

29.
*Hemingway v. Superior Court,*
*122 Cal.App.4th 1148, 19 Cal. Rptr. 3d 363 (Cal. Ct. App. 2004).* . . . . . . 30

30.
*Holcomb v. U.S. Bank Nat. Assn.,*
*129 Cal.App.4th 1494, 29 Cal. Rptr. 3d 578 (Cal. Ct. App. 2005).* 17, 18, 40

31.
*Housing Auth. of County of Monterey v. Jones,*
*130 Cal.App.4th 1029, 30 Cal. Rptr. 3d 676 (Cal. Ct. App. 2005).* . . . . . . 30

32.
*In re Bittaker, supra,*
*55 Cal. App.4th at p. 1008, 64 Cal.Rptr.2d 679.).* . . . . . . . . . . . . . . . . . . . . 21

F

33.
*In re Marriage of Deal, (Deal v. Deal)*
*45 Cal.App.5th 613, 259 Cal. Rptr. 3d 1 (Cal. Ct. App. 2020)*. . . . . . . . . 36

34.
*In re Sheena K., 153 P.3d 282, 55 Cal. Rptr. 3d 716, 40 Cal. 4th 875*
*(2007)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

35.
*In re R.H., (bad law)*
*170 Cal.App.4th 678, 88 Cal. Rptr. 3d 650 (Cal. Ct. App. 2009)*. . . . . . . 36

36.
*In re Wagner,*
*127 Cal.App.4th 138, 25 Cal. Rptr. 3d 201 (Cal. Ct. App. 2005)*. . . . . . . 30

37.
*John v. Superior Court,*
*231 Cal. App. 4th 347, 179 Cal. Rptr. 3d 856 (Ct. App. 2014)* . . . . . . . . 22

38.
*John v. Superior Court,*
*369 P.3d 238, 63 Cal. 4th 91, 201 Cal. Rptr. 3d 459 (2016)* . . . . . 22, 26, 27

39.
*Kizer v. Waterman Convalescent Hospital, Inc., 13 Cal.Rptr.2d 239, 10*
*Cal.App.4th Supp. 8 (Cal. Super. 1992)* . . . . . . . . . . . . . . . . . . . . . . . . . . 22

40.
*Kreutzer v. County of San Diego,*
*153 Cal. App. 3d 62, 200 Cal. Rptr. 322 (Ct. App. 1984)*. . . . . . . . . . 23, 37

41.
*Lucas v. County of Los Angeles,*
*47 Cal.App.4th 277, 54 Cal. Rptr. 2d 655 (Ct. App. 1996)* . . . . . . . . . . . 33

42.
*Luckett v. Panos,*
*161 Cal.App.4th 77, 73 Cal. Rptr. 3d 745 (Ct. App. 2008)* . . . . . . . . . . . 17

43.
*Mahdavi v. Superior Court,*
*166 Cal.App.4th 32, 82 Cal. Rptr. 3d 121 (Ct. App. 2008)* . . . . . . . . 22, 26

G

44.
*Mangini v. Aerojet-General Corp. (1996)*
*12 Cal.4th 1087, 1096.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

45.
*McColm v. Westwood Park Assn.,*
*62 Cal.App.4th 1211, 73 Cal. Rptr. 2d 288 (Ct. App. 1998)* . . . . . . . . . . 36

46.
*Mountains Recreation Conservation Auth. v. Kaufman, 198*
*Cal. App.4th Supp. 1, 130 Cal.Rptr.3d 844, 11 Cal. Daily Op. Serv. 10876*
*(Cal. Super. 2011).* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

47.
*Morton v. Wagner,*
*156 Cal.App.4th 963, 67 Cal. Rptr. 3d 818 (Ct. App. 2007)* . . . . . . . . . . 34

48.
*Ogunsalu v. Superior Court, (writs are new litigation)*
*12 Cal. App. 5th 107, 218 Cal. Rptr. 3d 724 (Ct. App. 2017)* . . . . . . 23, 36

49.
*People v. Alvarez,*
*14 Cal.4th 155, 58 Cal. Rptr. 2d 385, 926 P.2d 365 (Cal. 1996).* . . . . . . . 18

50.
*People v. Cluff,*
*87 Cal.App.4th 991, 105 Cal. Rptr. 2d 80 (Ct. App. 2001)* . . . . . . . . . . . 18

51.
*People ex Rel. Gallo v. Acuna,*
*14 Cal.4th 1090, 60 Cal. Rptr. 2d 277, 929 P.2d 596 (Cal. 1997).* . 8, 10, 11

52.
*People v. Gompper,*
*160 Cal. App. Supp. 3d 1, 207 Cal. Rptr. 534 (Ct. App. 1984).* . . . . . . . . . 32

53.
*People v. Hibernia Savings & Loan Society, 72 Cal. 21 (1887) Feb. 15,*
*1887 · Supreme Court of California · No. 11689 72 Cal. 21* . . . . . . . . . . . 31

H

54.
*People v. Jacobs,*
*156 Cal.App.4th 728, 67 Cal. Rptr. 3d 615 (Ct. App. 2007)* . . . . . . . . . . 18

55.
*People v. Kruschen,*
*46 Cal. App. 5th Supp. 12, 259 Cal. Rptr. 3d 924 (App. Dep't Super. Ct.*
*2020)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

56.
*People v. Watson,*
*299 P.2d 243, 46 Cal. 2d 818, 46 C2d 818 (1956).* . . . . . . . . . . . . . . . . . . . 31

57.
*Pokegama Sugar-Pine Lumber Co. v. Klamath River Lumber &*
*Improvement Co., 86 F. 528 (N.D. Cal. 1898.* . . . . . . . . . . . . . . . . . . . . . . . 31

58.
*Roitz v. Coldwell Banker Residential Brokerage Co.,*
*62 Cal.App.4th 716, 73 Cal. Rptr. 2d 85 (Ct. App. 1998)* . . . . . . . . . . . . . . 31

59.
*Schifando v. City of Los Angeles,*
*79 P.3d 569, 6 Cal. Rptr. 3d 457, 31 Cal.4th 1074 (2003) at p.464.* . . . . . . . . . 15

60.
*Shalant v. Girardi,*
*51 Cal.4th 1164, 126 Cal. Rptr. 3d 98, 253 P.3d 266 (Cal. 2011).* . . . . . . . . 24, 25

61.
*Simon v. City & County of San Francisco*
*(1947) 79 Cal.App.2d 590, 600.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

62.
*Smiley v. Citibank,*
*900 P.2d 690, 11 Cal. 4th 138, 44 Cal. Rptr. 2d 441 (1995)* . . . . . . . . . . . . . . 16

63.
*Simpson v. Ernst & Young,*
*100 F.3d 436 (6th Cir. 1996). p. 443).* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

64.
*Stratton v. Beck,*
*9 Cal. App. 5th 483, 215 Cal. Rptr. 3d 150 (Ct. App. 2017)* . . . . . . . . . . . 15

I

65.
*Thompson v. Ioane,*
*11 Cal.App.5th 1180, 218 Cal. Rptr. 3d 501 (Ct. App. 2017)* . . . . . . . . . 36

66.
*Tracy Press, Inc. v. Superior Court,*
*164 Cal.App.4th 1290, 80 Cal. Rptr. 3d 464 (Ct. App. 2008)* . . . . . . . . . 23

67.
*Vollstedt v. City of Stockton,*
*220 Cal. App. 3d 265, 269 Cal. Rptr. 404 (Ct. App. 1990).* . . . . . . . . . . . 11

68.
*Wasatch Property Management v. Degrate,*
*112 P.3d 647, 29 Cal.Rptr.3d 262, 35 Cal.4th 1111 (Cal. 2005).* . . . . . . . 22

69.
*Weatherford v. City of San Rafael,*
*2 Cal.5th 1241, 218 Cal. Rptr. 3d 394, 395 P.3d 274 (Cal. 2017).* . . . . . . 17

70.
*Weiss v. City of Los Angeles,*
*2 Cal. App. 5th 194, 206 Cal. Rptr. 3d 213 (Ct. App. 2016)* . . . . . . . . . . . 7

71.
*Woodman Partners v. Sofa U Love,*
*94 Cal.App.4th 766, 114 Cal. Rptr. 2d 566 (Cal. Ct. App. 2001).* . . . . . . . 17

72.
*Ytuarte v. Superior Court,*
*28 Cal. Rptr. 3d 474, 129 Cal. App. 4th 266 (Ct. App. 2005)* . . . . . . . . . 15

**FEDERAL**
73.
*Ohio v. Roberts,*
*448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980).*. . . . . . . . . . . . . . . . 17

74.
*Brady v. Maryland,*
*373 U.S. 83, 83 S. Ct. 1194 (1963)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

J

**FOREIGN**

75.
*Sheldon v. Sheldon, (demurrer to a citation)*
100 N.j. Eq. 24, 134 A. 904 (N.j. 1926) . . . . . . . . . . . . . . . . . . . . . . . . . . . 32


76.
*Strickland v. State, (demurrer to a citation)*
349 Ga. App. 673, 824 S.E.2d 555 (Ga. Ct. App. 2019) . . . . . . . . . . . . . 32

**CALIFORNIA CONSTITUTION**

Article 1, Section §1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Article 1, Section §3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Article 1, Section §13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Article 1, Section §19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**STATUTES**

Civil Code § 3479 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
Civil Code § 3480 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
Civil Code § 3491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23
---
Code of Civil Procedure § 85 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
Code of Civil Procedure § 90-100 . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
Code of Civil Procedure § 128.5 . . . . . . . . . . . . . . . . . . . . . . 31, 33, 34, 42
Code of Civil Procedure § 128.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 42
Code of Civil Procedure § 308 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Code of Civil Procedure § 391-391.8 . . . . . . . . . . . . . . . . . . . . . . . . *passim*
Code of Civil Procedure § 904.1 (a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Code of Civil Procedure § 904.2 (j) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Code of Civil Procedure § 1005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
---
Government Code § 53069.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
Government Code § 54956.9(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24
Government Code § 70615 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
---
Evidence Code § 1400 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
---

**DHS MUNICIPAL ORDINANCE**

DHSMC § 4.16 et sec . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
DHSMC § 4.24 et sec . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## RULES OF COURT

3.714 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
3.715 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
3.714(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
3.714(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
3.715 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
3.722(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
3.727 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
3.729 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## RULES OF PROFESSIONAL CONDUCT

State Bar Rule 3.1(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## PUBLIC NUISANCE HISTORY AND LAW

Wood, H. G. (1893). A Practical Treatise on the Law of Nuisances (pp. V1 37-38, V2 764, 765). (nuisance per se V1 §23, V2 §564, §569 (p. 764-765) ["the class of [nuisances per se] is very limited"]
https://lawcat.berkeley.edu/record/89788

Schwartz, V. E. (2006). The Law of Public Nuisance: Maintaining Rational Boundaries on a Rational Tort (p. 543 par2).
https://contentdm.washburnlaw.edu/digital/collection/wlj/id/5546

Houger, L. W. (1963) Washington Case Law, Torts - Nuisance Per Se, 38 Wash. L. Rev. 385. https://digitalcommons.law.uw.edu/wlr/vol38/iss2/20/

Simmons, T., (1960) The Nuances of Nuisance: Forty Cats Are Too Many; Four, Just Enough. SDL Rev., 5, p.86.

## LODGED REPORTER'S TRANSCRIPTS

All hearings were assembled as one document. Pages labeled and numbered as CSR001-CSR332.

L

# STATE OF CALIFORNIA
## SUPERIOR COURT ~ APPELLATE DIVISION
### COUNTY OF RIVERSIDE

| | |
|---|---|
| JOSEPH MINER<br>*Defendant and Appellant*, | ) Docket No. **APRI2200098**<br>)                       **APRI2200109**<br>) |
| vs. | ) Superior Ct. CVPS2106001<br>) |
| CITY OF DESERT HOT SPRINGS<br>*Plaintiff and Respondent*. | ) CONSOLIDATED<br>) OPENING BRIEF<br>) |

On Appeal from the Riverside County Superior Court
The Honorable Arthur C. Hester III, Commissioner Presiding
Riverside County Superior Court - Palm Springs - Dept. PS4

---

## APPELLANT'S OPENING BRIEF

---

## INTRODUCTION

***"Self-defense is not only our right; it is our duty."***
~ Ronald Reagan

Defendant Joseph Miner - aka citee, contestant, and appellant;

appeals from a trial court Order rendered by Hon. Commissioner Arthur C.

Hester III on 9/22/22 following a motion by plaintiff City of Desert Hot

Springs to declare Joseph Miner a vexatious litigant under CCP. §391(b)(3).

The City's motion was filed in the last minutes of a CCP. §85(c), de

novo, 'reclassified'[1] limited civil Superior Court case, statutorily labeled an

"appeal." Appellant Miner respectfully requests a review of facts and law.

1

Miner challenges three prejudicial trial court decisions; (1) the
vexatious litigant declaration and pre-filing Order, (2) the Order to post
security, (3) dismissal of the limited civil case - leaving the administrative
findings intact. A meaningful review and limited civil case were absent.

Root of these issues is extraordinary delegation of State legislative
power. Local agencies (540) create unconforming, wild-west municipal law
and fines. Each authors different documents, code, and procedure with no
oversight. The courts have developed different interpretations of procedure
and law. Few defendants have wherewithal to bring these issues for review.

This Appeal is not about a vexatious litigant. There is no history of
disputes or litigations or any previous interaction with the City. The City's
vexatious litigant motion has to do with the single defense of one ticket.

The cruxes: (1) Miner is the defendant, not plaintiff; (2) the court did
not bring the motion; the City as the plaintiff, had no standing to bring the
vexatious litigant motion; (3) Appellant's filings were legal, justified and
meritorious; (4) there is no evidence Appellant's intent was to delay the
proceedings, file frivolous papers, motions, or commit any bad act; (5) no
security posting was warranted by the court's own statements; (6) the court
failed to interpret and abide by the law; it's acts were arbitrary and
capricious - not reasoned decisions; (7) Appellant was not provided a
statutory limited civil case with discovery, depositions, as a matter of right,
to develop his full and complete defense; (8) there was no fair civil trial.

2

## STATEMENT OF THE CASE

When it became clear to Miner the trial court was not going to follow the statutory mandates of a limited civil case Miner hired a court reporter. He attempted to avoid waiver and forfeiture of all material issues.

Miner was cited after denying a code officer entry to his ranch. He was denied the administrative hearing he paid for in advance. He was denied a judge in trial court. He was denied all discovery: interrogatories, admissions, documents, a deposition. He was denied subpoenaed witnesses and documents. He was denied a statutory limited civil case. After being crippled by the court and vigorously defending himself he was declared a vexatious litigant. This highly unusual situation required unusual actions.

**Relevant History and Material Factual Context**

Factually; this case began on 4/28/21 when code officers entered Miner's fenced gated ranch without a warrant (CT 147¶65, 484, 490, 1143).

Officers opened two poisoned, incomplete internal code cases - then radio silence. A different officer was then handed the secret open code case.

The instant chain of events began with the City violating Miner's Constitutional rights (CT 484), not Miner violating the City's law. Events catalogued below are the causation of defendant's acts and filings in court.

The code case did not begin on the date of the 'instant' citation 8/18/21 as the trial court repeatedly insisted. The court <u>changed the facts</u>, <u>prevented evidence</u>, <u>prevented witnesses</u> - and prevented a fair trial.

On 6/10/21 (CT 424, 488-495) code officer (Messer) newly assigned to the open case called Miner's business cell phone about **'re-inspection' of Miner's ranch.** Miner was alarmed, mostly clueless. The officer stated he would drop an "open" code case if he could just enter the ranch and take a photo for his boss (CT 492, 497). The call was automatically preserved.

After the officer danced around questions regarding the warrant and unlawful search - Miner, on 6/30/21 decided to deny this 're-inspection' request by this 'new' officer (CT 566-570). He had no warrant to inspect.

Uncertain unintelligible vague codes of gobbledegook were served (CT 201), the officer instituted prejudicial, clear and gross violations of the City's law and procedure (CT 1596-1611) (CT 389:2-23;517, 518, 520).

Unsavory, dubious actions of clear retaliation began by an angry young officer (CT 517) who falsely advised his "team" of an inspection.

All facts and interactions with officer Messer were material and relevant. The root historical facts and issues were not permitted in trial.

Mysteriously, on 7/26/21 11:28 am officer Messer copied case 21-566 to new case number 21-985 (CT 3587-3608; 3605). This eliminated all root history - the violations of the constitution. The new case 21-985 (RT 3587-3608) used the same codes as the poisoned evidence as input on poisoned cases 21-566 (RT 497-510) and 21-578 (RT 2538-2546). Minutes later on 7/26/21 11:29 am officer Messer closed cases 21-566 and 578 (CT 510). This is grossly troubling - secret, and a clear deceitful shell game.

4

On 8/18/21 this officer, using identical text, alleging "public nuisance" violations, cited Miner without issuing notice, time to cure, and without a <u>coherent textual factual description</u> of the precise issues. No fair notice with "reasonable specificity" *(In re Sheena K., p. 729 34)*.

The officer never defined, described, or offered any specificity of the alleged "public nuisance" issues. Alleged "trash" / "junk" wasn't described in his declaration, photographed, annotated, or marked-up on his exhibits.

When Miner, during examination, requested the officer mark the location in the photographs the Court intervened saving the officer and told the officer to just testify to it - because it did not exist in the photographs.

To comply or defend - specificity and a location must be identified on ranch land 330' x 660' - the size of FOUR NFL FOOTBALL FIELDS.

Miner testified that no trash or junk exists (CT 574 (CDHS0257)), (RT 205-206). Usable ranch items or possessions are not trash or junk.

**The Ranch - Subject of the Citation**

The 66 year old ranch is a complex property. The original 5 acre property was subdivided by deed, then reassembled. Comprehensively zoned in the County as W2 (CT 451, 454-460) it was constructed under code and law while under county control. It is fenced and gated. It consists of four legally unique, physically un-defined with no interior physical boundaries[2] land parcels (CT 514, 515). The parcel line boundaries are not distinguishable in officer's photographs - what parcel was he citing?

5

Beginning in 1957 three parcels were separately constructed while under county control. The ranch was annexed by the City through LAFCO assistance (CT 1157-1158) in 2010, it was then re-zoned in 2020 to MU-C §17.14.030 (CT 154, 328). Even this was beyond the officer's knowledge.

The ranch is used as a single property (RT 305). Grandfathered use, Zoning, and LAFCO define property uses. No notice was ever issued by the City as to changes in law that affect any uses of the ranch. The City stated in its own writings the annexed land uses would not change (CT 1157).

Miner's ranch neighbors are also 200,000 sf properties including: a mini storage, pet cemetery, auto wrecking yard, outdoor cactus nursery (CT 144 ¶49). There are no close / abutting homes (CT 446, 447, 512, 520, 523).

**Appellant's Knowledge of Real Property, Code and Law**

Appellant Miner is a 40 year real estate professional with 1000's of hours in specific education and the two highest real estate licenses available in California: broker, and certified appraiser (CT 438, 440, 3419:22-28). He has significant education and experience in these exact issues (CT 189¶32).

Miner also holds fire prevention certificate and is ALSO a member of CACEO, a California "non profit" - code officer group (CT 3537¶3-8). CACEO offers only generalized education - "basic" 120 hour "certificates."

**Pre Court Materially Related Administrative Issues**

Miner was denied the administrative hearing he had paid in advance and mandated by law (CT 877-879). With Miner absent, the City lied to the

6

hearing officer (CT 901). Miner was denied the right to be heard, the right

to confront his accuser, and <u>cross examine witnesses</u>, <u>the right to present</u>

<u>evidence</u>, and establish evidence eventually lodged in trial court (CT 1114).

Miner's only defense and remedy at this juncture was to 're-classify'

the case to a <u>de novo civil case</u> as provided by statute GC. §53069.4(b)(1).

On 12/6/21 he filed a 'caption' for re-classification - as trial de novo.

**Legal Mandate of City Code Enforcement**

The **purpose** of all Desert Hot Springs code enforcement policy is

based on Health and Safety - DHSMC §<u>4.04.010</u>. This ordinance is clear

and unambiguous. It is crystal clear to a person of ordinary intelligence (CT

330, 375, 376, 377, 3625) *(Diaz v. Grill Concepts <u>17</u>; Boelts v. City of Lake*

*Forest <u>05</u>).* The City has failed to follow its own laws. *(Vollstedt v. City of*

*Stockton <u>67</u>; City of Bakersfield v. Miller <u>10</u>)*

> *"The purpose of this title is to provide a just, equitable and
> practicable method for preventing, discouraging and/or abating
> certain **conditions which endanger the life, limb, health, property,**
> **safety or welfare of the general public** and to provide City staff with
> **precise enforcement regulations** that can be effectively applied and
> administered in a fair, expedient, and cost efficient manner. (Prior
> code § 80.01)"*

Allegations against Miner endanger nothing and no one. There has

been nothing fair or precise about the City's attempted shenanigans and

unlawful acts should be challenged *(Weiss v. City of Los Angeles <u>70</u>).*

**City and Officer Material Errors**

Legislature passed the "Administrative Citation" bill - SB814 in

7

1995. The intent of the legislature was to give local agencies the authority
to issue fines for simple transitory ordinance violations - "parking-ticket-
style" and "parking-ticket-level" of offenses occur; Garbage cans, dogs, etc.

The legislature knew the objective was to permit cities to author and
prosecute citations for transitory violations. The bill was not passed to
permit a City to fine 'severe' "public nuisances" eliminating due process.

Nuisances, or public nuisances are not mentioned in the chaptered
bill. "Instant citation law" is not applicable to "public nuisance law." State
law preempting and controlling the procedure and government code have
not changed in CC. Sections §3479, §3480, §3491.

A code officer may not point his *Hogwart's wand* and legally declare
a "public nuisance" or make up code text from whole cloth. Nothing exists
on the ranch that affects the public - CCP. §3480, per *(Gallo v. Acuna 51)*.

The term 'administrative citation' is now purely a generic term like
'pleading' that offers no factual level for comparison. The law is muddy;
there is no certain uniformity to compare appellate case facts.

The review court's elephant problem. Five hundred forty agencies
each now issue vastly different documents with different styles, designs,
elements, and levels of information, all designed for different purposes.

No case law makes clear the facts and elements mandated by law on
the 'administrative citation' form at the center of each case.

The City is the master of its choice of it's documents and procedure.

8

FAC PG 230

Here, the City issued a document "instant ticket" as an "administrative citation" for what should have been a notice and abatement for a "public nuisance" as mandated by State law. Different procedures may both be mis-named an "administrative citation." Case law is beyond murky.

The City's grossly undertrained officer made up code text, inserted false words, failed to detail or describe anything and improperly used "fines" (CT 1534-1538) - Administrative Citations (DHSMC §4.24) (CT 317-323; 1563-1585) for alleged "public nuisance" abatement actions (DHSMC§4.16). The City fine and citation is clearly not an abatement action pursuant to City's own documents **(CT 319 ¶5).**

The officer then, without any notice at all, recorded an unlawful "lis pendens" on Miner's ranch (CT 3431:7-27, 3349) as if he had opened an abatement action. This has damaged Miner for more than two years *(Finch Aerospace Corp. v. City of San Diego 20).* This shows his confusion.

The officer ticketed Miner with an 'instant citation' for issues that are not transient violations (CT 1565). He used the wrong legal procedure. He exceeded authority statutorily delegated by plain text of City ordinance, which identified the specific purpose of code enforcement under DHSMC §4.04.010. He clearly stated he cited Miner under DHSMC §4.16 (RT 289:22-28, 290:1-24). Nothing was rationally related to, or amounted to any level of health or safety, either or both. Naming your cat, "dog" does not make it a "dog." The same is applicable to all 'subjective' labels.

9

**City of Desert Hot Springs Public Nuisance Ordinance 4.16.010**

The City has been subverting state law. It collects 100% of the fines

for what should be "public nuisance" abatement cases. Abatement is

mandated by State law and Government code. (See Gallo CT 3724-3731).

DHSMC municipal code mandates abatement of "public nuisances"

§4.16.020 Notice of public nuisance and order to abate. DHSMC §4.16.030

states administrative fines are due, not an "administrative citation."

The only proper City procedure is **Notice and Order to Abate**

included in DHSMC §4.16.050 Contents of Notice and Order. Not a single

mention of phrase "public nuisance" appears in the entire "administrative

citation" ordinance §4.24.10-4.24.430. Fines are monetary, not abatement.

Innocuous common issues are not nuisances. A true "public

nuisance" requires abatement. If a nuisance is abatable at a reasonable cost,

it is a continuing nuisance not a fine *(Mangini v. Aerojet-General Corp 44)*.

State remedies for a public nuisance (established since 1880) in Civil

Code section §3491 provides three remedies for a public nuisance (all end

with abatement): (1) a criminal proceeding; (2) a civil action; or (3)

abatement *(Flahive v. City of Dana Point 23)*. State law remedy preempts

and conflicts with this City's income generating sidestep of law - labeling

everything under the sun a "public nuisance,"  repetitive fines, not abating.

A local agency cannot label or point at objects that are not rational or

material nuisances at all, fine its citizens, and laugh at 900 years of public

10

nuisance law.[3][4] Historical Supreme Court nuisance law makes clear a

nuisance is a VERY SERIOUS issue - not a flyspeck or a whimsical

allegation on private property. The nuisance treatise by H. G. Wood is the

baseline of all recent nuisance history.

> "The Restatement Second formulates the requirement of
> substantiality as proof of "significant harm," defined as a "real and
> appreciable invasion of the plaintiff's interests," one that is
> "definitely offensive, seriously annoying or intolerable."
> (Rest.2d Torts, § 821F, coms. c & d, pp. 105-106.)

> The measure is an objective one: "If normal persons in that locality
> would not be substantially annoyed or disturbed by the situation,
> then the invasion is not a significant one...." *(Gallo v. Acuna 51 p.
> 1105)*

## Administrative Hearing Facts Become Trial Court Evidence

Administrative procedure requires an administrative hearing. Miner

was denied the administrative hearing he had paid for in advance. He could

have developed evidence, examined the code officer and established on the

record why all additional city employees were required court witnesses and

why documents were required for production.

At the hands of the City attorney (CT 901) Miner was wilfully

denied this vital hearing prior to trial court. Miner notified the city he would

not attend without service (CT 885-887) and the City attorney was aware of

and receive received Miner's letter then wilfully misled the hearing officer

at the start of the hearing. Miner was wilfully denied crucial documents,

confronting witness, being heard; even limited due process.

**Trial Court**

The trial court was a mess. Trial was set for 30 days from Miner's first filing eliminating all discovery. Under §53069.4 discovery is not prohibited. The <u>legislature made the de novo a limited civil case for a reason</u> CCP. §§90-100. One hearing, no discovery would be small claims.

The trial court set a de novo 'trial' just 30 days after filing - nowhere in the statute does it state this is correct or mandated procedure.

This scheduling and the Court's inferences eliminated adequate (all) discovery CCP. §§2016.010 - 2036.050, CCP. §§90-100).

There was no judicial trial assessment, case management, or trial setting conference pursuant to Rules of Court 3.714, 3.715, 3.720-3.735, 3.714(b)(2),(b)(3), 3.715, 3.722(a), 3.727, 3.729.

In the first three hearings Miner had three different judicial officers. Miner declined to stipulate and requested a judge, this request was ignored.

It was clear Miner desired discovery. It as mentioned several times in open court. The subordinate judicial officer ignored or failed to comprehend or absorb the complexity of the case then failed to properly manage it as a limited civil case. The Commissioner did not appear to have read the 600 pages of previously lodged evidence or he would have known exactly what the case was about.

The complete (not a cherry picked version by the City attorney [CT 1484]) of the "administrative record," the local agency's file is, by law, to

12

be lodged and entered into evidence. GC. §53069.4(b)(1), *(County of*
*Humboldt v. Appellate Division of Superior Court 13 p.304-305),* Case file
means 'entire' case file and is the "administrative record." It is by statute,
logically, rationally everyone's evidence. The court disagreed (RT 60:1-3).

This limited civil case involved a several month long code case, not
a transitory "instant ticket." The court was stubbornly in error as to the date
of the start of the code case, and the fact that a limited civil case is not a
lawsuit. (RT 25:4-23; 42:18-28; 108:11-18; 112:18-28; 113:1-10).

The fact that the trial court mandated the case be cabined to the date
the 8/18/21 citation was issued - prejudiced Miner's entire legal defense
including examining knowledgeable witnesses and historical documents.

When Miner testified the Commissioner would stop him and
interject his own version of the facts - not allowing Miner to finish. The air
was thick, Miner was standing a foot high in potato chips and egg shells.

There are 37 "stop" commands by the trial court in the reporter's
transcript directed at Miner. Appellant was not treated fairly or as
recommended or as law states in the 2019 Self Represented Benchguide for
Judicial Officers. The Judge acted as an aggressive prosecutor.

The court cabined the case testimony as if the officer was just
driving by and was alerted to the property. That order was prejudicial.

The evidence lodged months earlier told a full factual story with
documented evidence of when and how the case began (CT 368-638).

It was clear the Commissioner did not want and was not permitting the case or trial to be any more than an instant ticket (**RT CSR109:16-27**) even with an unlawful entry, search and conflicting procedural issues!

The court failed to permit defendant to have witnesses, failed to permit defendant documents only the City had in its possession. He then ruled against every single document the defendant presented.

The court's continuous acts of bias were grossly prejudicial. The self-represented bench guide is clear on these issues. Miner's evidence was either lodged by the City or was self-admitting during testimony (BG 4-4).

> "This principle requires the judge not to allow procedural irregularities to serve as the basis for precluding a self- represented litigant from presenting appropriate evidence or presenting a potentially valid defense." *Simon v. City & County of San Francisco (1947) 79 Cal.App.2d 590, 600, cited by [Adams 02] Adams v. Murakami (1991) 54 Cal.3d 105, p. 120 (2019 Judicial Officer Bench Guide Involving Self-Represented Litigants.* (BG 3-7)

Citizens in California (Cal. Const., art. I, §1, §3, §13, §19) and the United States are permitted to defend themselves against legal and property attacks just as any defense attorney would do. The trial court ignored the Constitution. The trial court consistently prevented Miner to use evidence and officer testimony in his defense (RT 110, 111, 112).

It was clear to Appellant the trial court did not grasp these materially related issues. The court improperly prevented Appellant from examining the officer as to his education and knowledge, City training on its specific codes, who mentored him, his knowledge of real estate, land entitlement,

land annexation - or his superiors who might have had the answers. Of course these issues are materially relevant. Cities and their officers do things wrong every day. Courts and especially juries rule against them.

Pursuant to statute Miner was planning for all procedure and defensive measures including discovery he was entitled to by statute GC.§53069.4 and as a limited civil case per Code Civ. Proc., §§ 86, 91-94. *(Dedication & Everlasting Love to Animals, Inc. v. City of El Monte, 15)*

This is a civil case in civil court under limited civil rules. Discovery is a matter of right in a limited civil case and in a trial de novo *(Chavez v. City of Los Angeles 08; Fairmont Ins. Co. v. Superior Court 19; Guzman V. Superior Court of Los Angeles Cty. 28; Beverly Hospital V. Superior Court of Los Angeles Cty. 04; Stratton v. Beck 64; Ytuarte v. Superior Court, 72)*

No discovery led to many prejudicial surprises by the City's witness at trial during colloquies as to what the officer was pointing his camera at in his photographs (RT 125-129 [31 entries]). Under examination he made surprising statements about items and issues that were never described in text: - abandonment, patio furniture, outside storage, fence slats etc., items that were not in any brief or previously ever mentioned. (RT 130:15-26)

Beginning with the date the case began, it was eternally futile attempting to reason with the trial court on every issue; - then all issues beyond that. The court's treatment of Miner's knowledge was offensive.

**Consequences Of A Court Err Insufficient Defense**

Miner may be subject to res judicata effect or collateral estoppel
without being fully able to develop his defense with no adequate discovery,
depositions and procedure *(Schifando v. City of Los Angeles, 59  p.464)*. As
already pondered by the federal court judge in Appellant's related federal
case and reason for stay. *(City of Santa Paula V. Narula 11 )*

The "code" officer was un-equipped and educationally un-trained to
deal with this unique property, code, zoning, annexation, and land use
issues. These directly affected his ability to cite the ranch. Discovery and
depositions would have unearthed these material facts before trial.

**Vexatious Litigant Issues**

Defendant Appellant never filed a complaint (action), was not the
plaintiff, had no prior disputes with the City, did not begin this issue; he did
not want it, and he attempted to stop the dispute several times.

Then in court, he attempted to end it – initially using a demurrer. The
trial court did not rationalize the larger issues, nor did it follow the law.

If any of Appellant's motions were not supported by existing law,
they are non-vexatious because they were reasonable extensions of existing
law and or the time line. What is permissible for a licensed attorney should
be equally permissible for a party in pro per. *State Bar rule 3.1(a)(2).*
*(Amtower v. Photon Dynamics, Inc. p. 368 03); Smiley v. Citibank, 62)*
Attorneys routinely use this practice to dispose of cases.  Zero case

16

management; when issues were heard were issues that caused case conflict.

**Totality Of The Issues Support Appellant's Acts At Trial**

The facts above support why Miner was forced to act and file the documents he did. He made a complete record for review.

ALL OF THE ABOVE affects the City / officer's ability to cite the ranch under the law. The officer cited "parking-style-violations." The law does not require futile acts by Miner *(Ohio v. Roberts 73)*.

## STATEMENT OF APPEALABILITY

APRI2200098. A pre-filing Order against a vexatious litigant under Code of Civil Procedure section §391.7 is directly appealable under Code of Civil Procedure section §904.1(a)(6). In limited jurisdiction the corresponding statute is §904.2, subdivision (g), as an order granting an injunction *(Luckett v. Panos 42)*.

APRI2200109. The Judgment of dismissal is appealable both on a statutory review basis of §§85-100, §53069.4, §391(b)(3), §391.1(a)(b), §391.3(b) and abuse of discretion.

## STANDARD OF REVIEW

**De Novo Review**

Questions of statutory interpretation are subject to de novo review *(Holcomb v. U.S. Bank Nat. Assn. 30; Woodman Partners v. Sofa U Love 71)*

Section §§85-100 needs to be reviewed; how section §85, §§90-100

17

and section §53069.4 interact. How "reclassification" works. All limited

procedure available to a defendant (contestant) who reclassifies to limited

civil. Section §53069.4 - what the role of the parties are following

reclassification? Section §§391-391.8 - how Miner fits into the statutory

scheme. Whether vexations litigant law applies to §53069.4 reclassification.

Statutes are read as a whole *(Weatherford v. City of San Rafael 69).*

The Judgment of Dismissal should be reviewed de novo ~ it was

based on improper statutory interpretation. It is moot if the vexatious

litigant order is vacated. The trial is not complete.

This may be a case of first impression as to the interplay between

sections CCP. §85(c), §§86-100, GC. §53069.4, and CCP. §§391(b)(3).

**Abuse of Discretion**

A trial court abuses its discretion when the factual findings critical to

its decision find no support in the evidence." *(People v. Cluff 50).* "The

discretion of a trial judge is not a whimsical, uncontrolled power, but a legal

discretion ... " *(People v. Jacobs 54)*

Determination a person is a vexatious litigant is reviewed for abuse

of discretion *(Holcomb, 30).;Fink v. Shemtov, 21).*

An appellate court may overturn a judge's ruling on a recusal motion

for abuse of discretion. *(People v Alvarez, 49; Hemingway v. Superior

Court, 29)* Miner's clear <u>non-stipulation</u> was timely on 2/4/22 (CT 1159).

18

# QUESTIONS PRESENTED

## Vexatious Litigant

1. In trial court appeal, is Miner's label: Citee, Defendant, Appellant, Contestant, or Plaintiff? Or a combination?

2. In trial court appeal is Miner's role: Defendant, Appellant, Contestant, or Plaintiff? Or a combination?

3. What is the City's role and label?

4. If City is technically the "plaintiff" did the City have standing to bring the motion accusing defendant Miner of vexatious litigation under textual mandates of CCP. §391.1(1)(a)?:

5. Has Miner filed "new litigation," "maintained litigation," "commenced litigation?" Or has Miner simply "reclassified an administrative case" to "civil litigation" pursuant to law?

6. Has Miner met the statutory requirements pursuant to the plain text of §391(b)(3) to be declared a vexatious litigant?

7. Pursuant to a review of Miner's label, role, acts and filings, would they permit the trial court re-label him the plaintiff and pursuant to §§391(b)(3) to deem Miner a vexatious litigant, in a first instance, pursuant to a clearly defense role no matter what label he was given?

8. Based on the Court's open court statements during the hearing of a 50/50 chance - was security warranted? (RT 260:21-28)

9. Should the case/citation be dismissed in the Interests of Justice?

**Fair Trial**

1. Did the Legislature intend for the trial court to eliminate all defensive procedure and discovery that would have been available under criminal or civil actions that were eliminated under GC. §53069.4?

2. Miner's ranch was searched unlawfully. Miner was not permitted to address or raise this in his defense. The case should have been dismissed.

> *Article 1, Section 13 of the California Constitution provide people the right to be secure in their persons, houses, papers, and effects and not to be subject to unreasonable searches and seizures.*

Federal Constitutional issues were preserved by filed England Reservations. This court of review should address the trial court's failure to permit Defendant to put on a full, fair and complete defense pursuant to §§85-100 and raise all legal defensive issues including city witnesses.

**Judicial Bias**

1. Based on his rulings, has there been an appearance of bias by the Commissioner? Are his rulings prejudicial per se? Should the case be remand to a different judicial officer as a complete new action with full discovery, deposition, witnesses and all procedure in CCP. §90-100? Or;

A. Should the judgment vacated, and the case remand for a new trial in front of a new judge;

B. Or, judgment of dismissal found in Miner's favor pursuant to motions and or violation of the California Constitution? All issues should be decided based on the court's own discretion.

## ARGUMENT

Appellant Miner contends he is Defendant/Appellant as in the cited procedurally identical case *Mountains*. A Man (a lawyer who knew how to properly caption his own case) was cited per GC. §53069.4 with an administrative citation. He attended the administrative hearing. He then appealed to a trial de novo. He subsequently appealed to appellate division of Superior Court. His role was citee / defendant, he is labeled Defendant / Appellant. *(Mountains Recreation Conservation Auth. v. Kaufman 46)*

### I. THE TRIAL COURT ERRED WHEN IT DECLARED DEFENDANT MINER A VEXATIOUS LITIGANT UNDER THE FACTS AND ELEMENTS OF THE DE NOVO CASE

#### A. Miner Hasn't Re-litigated or Filed Unmeritorious Lawsuits

Defendant and Appellant Joseph Miner has no vexatious litigant history. He has never previously been declared a vexatious litigant. He has never previously had a vexatious litigant motion filed against him. This is a first instance allegation with Miner as the defendant in 'now' a civil dispute brought by the City. Miner has not filed repetitive, unmeritorious lawsuits.

> "The primary goal of the vexatious litigant statutes is to curb misuse of the court system by individuals acting in propria persona who repeatedly re-litigate the same issues or file numerous unmeritorious lawsuits." *(In re Bittaker 32; Bravo v. Ismaj 06)*

#### B. Miner's First Label Is Citee; His Role Is Defendant

Miner was cited (ticketed) by the city making him the citee. Miner "appealed" to a hearing officer. Miner then "reclassified" as a limited civil

case pursuant to GC. §53069.4(b)(1) and CCP §85(c) #14.

> "one or more statutes that classify an action or special proceeding as
> a limited civil case" (id., subd. (c)). Code of **Civil Procedure section
> 85 provides a nonexhaustive list of statutes that classify an action
> or special proceeding as a limited civil case**, a list which includes
> section 53069.4." (Code Civ. Proc., § 85, subd. (c)(14).)

> Section 53069.4 expressly states that where a party contests a final
> administrative decision or order in a code enforcement action
> through a de novo appeal in the superior court, such "proceeding ...
> is a limited civil case." (§ 53069.4, subd. (b) *County of Humboldt v.
> Appellate Division of Superior Court 13*)

Relevant role, label, and party elements make clear Miner is the

defendant / appellant as well as in the additional materially relevant cases

where the defendant is also the appellant: *Kizer v. Waterman 39; People v.

Kruschen 55; Wasatch Property Management v. Degrate 68). Miner was

merely continuing his defense (John v. Superior Court (2014) p. 361 37).*

In *Mahdavi and John*, leading cases on these issues the Court

explained the following:

> "As the Court of Appeal explained in Mahdavi, the term "plaintiff" is
> not commonly understood to include a defendant who has filed an
> appeal from an adverse decision by the trial court; and the definition
> of plaintiff in section §391, subdivision (d), as someone who
> "commences, institutes or maintains a litigation" does not compel
> any such strained construction here. *(See Mahdavi 43; John v.
> Superior Court (2016) 38)*

## 1. The City Took First Chair At Trial To Reprove Its Citation

When the trial de novo began the City took first chair and began to

put on its case against Miner - that is not the role of a "defendant."

The court knew Miner was clearly a defendant - defending himself

22

FAC PG 244

(RT 44:7-13; 20-23; 59:5-9) - at least 75 references in the reporter's

transcript. There are 3300 plus references with Miner as defendant in the

clerk's transcript. "Re-prove" is word used by trial court (RT 59:5-9)

See also CCP. §308 - In a civil action the party complaining is

known as the plaintiff, and the adverse party as the defendant.

Whether Miner is labeled Appellant, Contestant, Defendant or Citee,

in the instant trial - his base role was always defendant.

Miner was defending himself in the citation and then in the

courtroom. It is not the label, it's the party's role (substance) similar to

*(Kreutzer v. County of San Diego 40; Simpson v. Ernst & Young 63).*

**C. The City Issued the Citation; it Brought the Claims**

Even though Miner was denied an administrative hearing, the

hearing officer ruled in the City's favor. The hearing was unfairly held. His

only remedy pursuant to statute was to "re-classify" the administrative case

to a civil case pursuant to statute CCP. 85(c):

> "The relief sought, whether in the complaint, a cross-complaint, or
> otherwise, is **exclusively of a type described in one or more
> statutes that classify an action or special proceeding as a limited
> civil case** or that provide that an action or special proceeding is
> within the original jurisdiction of the municipal court, including, but
> not limited to, the following provisions: #(14) Section §53069.4 of
> the Government Code.

Miner paid a *de minimus* $25 fee (GC. §70615) to contest the

decision in a de novo case. He "reclassified" administrative litigation (GC.

§54956.9(c)), to civil litigation, with full due process (CT 30). A writ is

23

new litigation *(Tracy Press, Inc. v. Superior Court 66; Ogunsalu V. Superior Court 48)*. A trial de novo (a re-do) is not new litigation.

Pursuant to §54956.9(c), it is the City, through government code, who considers a hearing officer's involvement "litigation." Miner reclassified administrative litigation to civil litigation where he was wearing the same shoes in defense.

The words chosen for the text in GC. 53069.4 are specific *"a person contesting that final administrative order or decision may seek review by filing an appeal to be heard by the superior court, where the same shall be heard de novo"* and for a reason - it conforms to the holding in *Collier v. Wallis 12*. It is reclassification and a new trial for a reason - it would otherwise be unconstitutional.

### E. City Had No Standing to Bring Motion Against Defendant

Pursuant to his role and case law Miner is clearly the defendant. "Section §391.1 provides that in any litigation pending in a California court, the defendant may move for an order requiring the plaintiff to furnish security on the ground the plaintiff is a vexatious litigant and has no reasonable probability of prevailing against the moving defendant" *(Shalant v. Girardi, 60)*. City did not have standing or role to bring the motion.

The plain text of the relevant vexatious litigant statutes:

CCP. §§391.1(a) "In any litigation pending in any court of this state, at any time until final judgment is entered, **a defendant may move the court, upon notice and hearing, for an order requiring the**

**plaintiff to furnish security or for an order dismissing the
litigation** pursuant to subdivision (b) of Section 391.3. The motion
for an order requiring the plaintiff to furnish security shall be based
upon the ground, and supported by a showing, that the plaintiff is a
vexatious litigant and that there is not a reasonable probability that
they will prevail in the litigation against the moving defendant.*"*

CCP. §§391.3 "... **determines that the plaintiff is a vexatious
litigant and that there is no reasonable probability that the
plaintiff will prevail in the litigation against the moving
defendant, the court shall order the plaintiff to furnish, for the
benefit of the moving defendant,** security in such amount and
within such time as the court shall fix."

Miner is the Defendant in the instant action. Or perhaps he is the

Citee, Contestant, or Appellant. One thing he is not, is the Plaintiff.[5] A court

of appeal may move the court in the first instance as well. Neither apply

here. *(§ 391.1; Shalant, supra, p. 1170* 60*)*

Court must follow the plain words of the statute *(Delaney v. Superior

Court, 789 P.2d 934, 50 Cal. 3d 785, 268 Cal. Rptr. 753 (1990) #B).*

The City cited Miner. The City cannot rationally be the defendant.

*Collier* clarifies why a "hearing de novo" is constitutionally mandated by

law. *(Collier & Wallis, Ltd. (Plaintiff / Respondent), v. Astor (Appellant /

Defendant), 12.* Astor stood in the defendant shoes also as defendant in her

appeal. Astor was not transformed into a plaintiff (Supreme Court In Bank).

**F. Miner Never Filed any Civil Action or Litigation**

Miner never filed "any litigation," never "maintained litigation,"

never "commenced litigation." Nothing had been "re-litigated and nothing

was "determined." This was the first and only "re-classification" which

25

resulted in a limited civil case (CVPS2106001) for citation 21-985. Miner,

as defendant had no choice but to defend himself.

> "As Mahdavi observed, **"[i]n appealing from a ruling in a case that he did not initiate, [the defendant] cannot be said to be 'maintaining' the litigation any more than any defendant can be considered to be 'maintaining' litigation by seeking to defend himself through the filing of pleadings and motions in the trial court."** ( Mahdavi, supra, 166 Cal.App.4th at p. 41, 82 Cal.Rptr.3d 121.)" *John v. Superior Court of L. A. Cnty., 63 Cal.4th 91, 369 P.3d 238, 201 Cal.Rptr.3d 459 (Cal. 2016)*

### G. Court's Order Fails Miner Is a Vexatious Litigant by Statute

### 1. The Trial Court Order is Void

> "Before there can be a prefiling order, however, there must be a " vexatious litigant" within the contemplation of the code... "... no "defendant" made an appropriate motion..." Accordingly, the order was procedurally defective. *People v. Harrison, 112 Cal.Rptr.2d 91, 92 Cal.App.4th 780 (Cal. App. 2001)*

Limited civil division is not a court of appeal. Commissioner Hester

is not a judge. Appellant reclassified to a limited civil case per statute.

> "As already explained, the language of the vexatious litigant statute indicates that the pre-filing permission requirement applies to appeals by plaintiffs, not to parties who did not initiate the action in the trial court..."

> "Section 391 does not prohibit a <u>Court of Appeal</u> from declaring a defendant appellant or writ petitioner to be a vexatious litigant in the first instance during the course of an appeal from litigation the defendant or writ petitioner did not file. ( § 391, subd. (b)(3).)..." *John v. Superior Court of L. A. Cnty., 63 Cal.4th 91, 369 P.3d 238, 201 Cal.Rptr.3d 459 (Cal. 2016)*

The trial court order granting the City's vexatious litigant motion is

void abinitio. The order (CT 5022-5023; 5028-5029) fails to establish all

elements including that defendant Miner is the plaintiff, and that the City, as
defendant, could bring the motion, as mandated by the statute under
§391.3(a). Only a defendant may make the motion 391.3(a)(c). Under the
"reclassification" the City remains in the "complaining role" of "plaintiff."

The Order establishes Miner's role per the order is Appellant. The
City's role is respondent. The Order declares Appellant a vexatious litigant
and fails to state a single finding as a requirement or element under the
statute §§391-391.8 read as a whole, that would establish Miner
Defendant/Appellant as a vexatious litigant under CCP. §391(b)(3). Miner
never filed an action against the City as stated on page two of Order.

The Commissioner establishes Miner is **defendant/appellant**
previously on his own court orders (CT 4554:17-18) and (CT 4612:20-21).

Miner is listed as **Defendant/Appellant** on Court's own public
portal https://epublic-access.riverside.courts.ca.gov/public-portal/? under
case CVPS2106001, the trial court case number.

Only a moving defendant, or a Court of Appeal on its own motion,
can declare a vexatious litigant in the first instance on appeal. *(John v.
Superior Court (2016) 63 Cal.4th 91, 99-100.)* The Order is Void.

### H. The Courts Findings During Oral Argument Failed to Determine Miner Is a Vexatious Litigant

The complete hearing was argued on the record (RT 229-261). What
the court found on the record, in all ways, was either incorrect, or did not

amount to what is mandated by Statute §391(b)(3), and did not comport

with the Court's Order (CT 5028-5029).

> §391 (b)(3) In any litigation while acting in propria persona,
> repeatedly files unmeritorious motions, pleadings, or other papers,
> conducts unnecessary discovery, or engages in other tactics that are
> frivolous or solely intended to cause unnecessary delay.

The court never found, that Miner filed (1) unmeritorious motions,

that Miner conducted (2) unnecessary discovery, (3) engaged in frivolous

tactics, or that Miner (4) solely intended to cause unnecessary delay.

### Commissioner's own statements on the record (RT 229-261)

- The motion was filed by the City (RT 229:7-9)
- "several of the motions were duplicative, repetitive or were misapplied or mis-categorized" (RT 240:1-3) [*statement in error - see pages 37-40*]
- **"and I can tell from the quality of your motions that there is a lot of thought and effort put into them"** (RT 240:13-15)
- as well as in their initial motion is that these -- several of the motions were duplicative, repetitive or were misapplied or miscategorized. (RT 240:1-3)
- "THE COURT: And so **I hear what you are saying, that you did not essentially have a choice because you were cited by the state**, and you appealed as you were permitted to under the Government Code. **That said, under 391, defendant is the one that has brought or maintained, "maintained" being the key word that I'm focusing on.** (RT 245:12-17)
- I'm making the decision of being a vexatious litigant under CCP 391.1 and it states, **"In the time until final judgment is entered, the very first instance in any litigation pending in any court of the state at any time until final judgment is entered, a defendant in this case,"** I would deem DHS, the City of Desert Hot Springs being the defendant, "may move the courts upon notice and hearing **for order requiring the plaintiff to furnish security** or for order dismissing the litigation," and that's not what the City is requesting in this instance. (RT 247:26-28; 248:1-7))

FAC PG 250

Neither the signed Order or the argument in open court comport to a rational finding Miner is a Vexatious Litigant. Miner was not found by the Court to: act in bad faith, have filed frivolous documents, have filed unmeritorious documents, or have intentionally delayed the proceedings.

During the entire open court hearing, NEVER did the Commissioner himself state that any act by Miner was done in bad faith, that any motion was frivolous, that any document was unmeritorious. He effectively stated as a consequence of Miner's filings the case was delayed, but not that Miner filed the documents with the intent to delay the case. No bad faith at all. The court complemented him on the thought and effort in his motions!

## I. Acts by Miner Proper and Done With Purpose

Discovery was cut off the day Miner filed reclassification 12/6/21. Discovery Closes (with the exclusion of expert lists, and expert depositions) – 30 days before trial, or after non-binding arbitration. [CCP 2024.020; CCP § 1141.24]. Miner's documents had merit; Miner was entitled to zealously argue the points *(Guillemin v. Stein p.73 27)*.

### 1. Miner's Subpoenas Were Meritorious

Miner made crystal clear why he needed witnesses, and documents in this limited civil case - (CT 3065-3230; 3072).

### 2. Documents Subpoenaed

The limited civil action was blurry at best. There was no case management, the commissioner was not going to permit a lawsuit[?],

FAC PG 250

thought it was like a traffic ticket. Appellant had attempted to procure

critical documents from the City using CPRA public records requests.

There was no response to provide the documents before trial. The

documents were controlled by the City attorney Mr. Vu. The documents

subpoenaed were relevant and critical evidence *(Brady v. Maryland 74)*.

### 3. Witnesses Subpoenaed

There had been hundreds of emails. Conversations with employees.

Only employees could testify to emails, telephone conversations, to issues

far above the code officer's education and pay grade such as zoning, land

annexation etc. Appellant made crystal clear why witnesses were relevant

and critical. All were denied by the trial court.

### 4. Miner Contends the Recusals Were Legal and Proper

In twenty years of litigation Miner had never even thought about

recusing a judicial officer. It was clear to Miner the Commissioner was

looking at the City for each one of his decisions. And, in every decision it

was for the City and against Miner. By the Court's own statements and lack

of knowledge of the facts - it seemed clear the Court had not read Miner's

documents, but seemed to have read the City's documents and was looking

at the city for advice. The appearance of bias was clear and overwhelming.

He did not appear to be impartial. (*Housing Auth. of County of Monterey v.*

*Jones* 31)

Had the Court come to reasoned conclusions of fact and law, rather

than making statements such as made in (RT 43:10-18) and the successive

statements (RT 44:20-23) relating to (RT 43:24-28) and <u>overruling every</u>

<u>single defensive move defendant made</u> Miner may have concluded the court

made reasoned decisions. The "appearance" of gross bias was clear. The

Commissioner should have recused himself. He was not legally able to act.

*(See cases Catchpole v. Brannon, 07; DCH Health Services Corp. v. Waite*

*14; Gai v. City of Selma 24; Garcia v. Superior Court 25, Hemingway v.*

*Superior Court 29; In re Wagner 36; Structural reverseable error (People*

*v. Watson 56) Roitz v. Coldwell Banker Residential Brokerage Co., 58)*

cited from Disqualification of Judge California Benchguide #2, 2010.

### J. Miner's Filings Were Meritorious

Superior Court is a court of record. When it was clear to Miner he

would get the short shrift in PS4 his goal was to make a record and avoid

waiver at all costs. He filed a healthy defense and hired a court reporter.

No document is frivolous. Every motion is researched, has merit, is

different; not duplicative. Neither the Court under CCP §128.5, nor the City

under CCP §128.7, initiated a proceeding or complained giving the movant

the safe harbor period in which to withdraw alleged frivolous proceedings

(if any) to circumvent the imposition of sanctions. There were no warnings.

### K. The Demurrer Was Meritorious

The trial court stated the citation was not a pleading and Appellant

could not demurrer to a citation. The Court must look at demurrer pursuant

31

to CCP. §92.(a). It is some kind of accusatory pleading or complaint. Prior to §53069.4 these same issues were in civil or criminal court. A demurrer is proper.(People v. Hibernia Savings & Loan Society 53; Pokegama Sugar-Pine Lumber Co <u>53</u>; People v. Gompper <u>32</u>; Sheldon v. Sheldon <u>75</u>, Strickland v. State <u>76</u>). There is no law stating a demurrer is  not proper.

The issue was now in civil court. The demurrer was clear as to the gross deficiencies of the City's charging document. The situation was not 'black and white.' A 'citation' is supposed to be a document with facts and elements one can defend, not a vague "blank" uncertain document absent a true "description" or with specifics. These are not to be "threadbare notices." Administratively, the city has eliminated all codified defenses!

> CCP. §92. (a) The pleadings allowed are complaints, answers, cross-complaints, answers to cross-complaints and general demurrers. (b) The answer need not be verified, even if the complaint or cross-complaint is verified. (c) Special demurrers are not allowed..."

The demurrer (CT 156) filed 1/3/2022 was to be heard 1/27/22. Continuance by the Court delayed the hearing. Case should have been over.

### L. The Motions Were Meritorious Not Duplicative

A clear and plain reading of each motion filed show that the motions were not duplicative. Each motion addressed a different legal issue.

The motions were served on Plaintiff City in court 3/17/22 when trial was supposed to begin. They were then filed with the clerk 4/11/22 pursuant to the court's request. <u>Some were effectively discovery motions</u>.

32

The City opposed each motion by brief. Effectively they became properly noticed motions CCP. §1005. They were not heard 6/23/22. Trial began 6/23/22. The trial court had months to review the motions.

Motions in Limine were mandated because of the court's lack of case management and fact that the court scheduled a trial 30 days from the filing of the reclassification.

The trial court had inherent power to control litigation and conserve judicial resources." *(Amtower, at p. 1593; Lucas v. County of Los Angeles (1996) 47 Cal.App.4th 277, 284.). (Edwards v. Centex Real Estate Corp. (1997) 53 Cal.App.4th 15, 27.)*

"Frivolous" is defined as either "totally and completely without merit" or "for the sole purpose of harassing an opposing party." (Code Civ. Proc., § 128.5, subd. (b)(2).) *(Childs 09)*

Appellant's motions are clear. They were filed to end the case before trial. Defendant's only sin was being on the unsuccessful side of 120 second rulings. Unsuccessful, or "without reasonable inquiry" does not mean "unmeritorious" or "frivolous."

Under section §391, subdivision (b)(3), a person is a vexatious litigant if he or she, while acting in propria persona, "repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay.

33

"Not all failed motions can support a vexatious litigant designation. The repeated motions must be so devoid of merit and be so frivolous that they can be described as a `"flagrant abuse of the system, "have `no reasonable probability of success,' lack `reasonable or probable cause or excuse' and are clearly meant to `"abuse the processes of the courts and to harass the adverse party" *(See Morton v. Wagner 47 (2007) 156 Cal.App.4th 963, 972; also see Golin v. Allenby 26 (2010) 190 Cal.App.4th 616, 639, fn. 29*

"[t]he vexatious litigant statutes do not define `frivolous' but we note that under section §128.5, subdivision (b)(2), this term is defined as `(A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party'"].)" Not a single one of Miner's documents or motions or filings fit within that box.

### 01. Motion in Limine #1 Was Meritorious

Miner had no administrative hearing. An administrative hearing is required by law. Miner addressed the lack of administrative hearing in the motion. Cases are sent back when no "fair" hearing is held (CT 1309).

### 02. Motion in Limine #2 Was Meritorious

Miner's motion was that the City failed to state a claim on their charging complaint (citation) (CT 1388).

### 03. Motion in Limine #3 Was Meritorious

This motion attacked the incomplete and flawed "cherry picked" administrative record (CT 1624).

### 04. Motion in Limine #4 Was Meritorious

This motion was about the exculpatory fact the City failed to

produce exculpatory evidence (CT 1664).

### 05. Motion in Limine #5 Was Meritorious

This motion was about the city attorney filing a legal brief in
replacement what was to be a code officer's report. Mr. Vu effectively held
the code officer by the nose and wrote his declaration (CT 1472).

### 06. Motion in Limine #6 Was Meritorious

This was a motion to strike the hearsay of the City's unsigned
uncertified hearing transcript recorded and transcribed by an unknown
person (CT 1612).

### 07. Motion in Limine #7 Was Meritorious

This was a motion to force the proper argumentation of the
administrative record (CT 1477).

### 08. Motion in Limine #8 Was Meritorious

This was a thorough Judgment on the pleadings at a point the case
had a different posture (CT 1525).

### 09. Motion in Limine #9 Was Meritorious

This was a Motion for unclean hands detailed 29 bad acts by the City
under the doctrine of unclean hands (CT 1596).

### 10. Motion to Disqualify City Attorney Was Meritorious

This was a motion to disqualify the City attorney based on the City
attorney's continuous bad acts and violation of the professional rules of
conduct (CT 1261). The Commissioner failed to realize the City's "bad

acts" were part of the lodged evidence and were directly materially related.

### M. City's Caselaw Inapplicable and Distinguishable

Plaintiff City's vexatious litigant caselaw regarding defendant Miner

is distinguishable, inapplicable, or bad law *(1) In re Marriage of Deal 33;*

*(2) In re R.H, 35 (3) McColm v. Westwood Park Assn., 45; (4) Ogunsalu v.*

*Superior Court, 48; Thompson v. Ioane 65).* Miner was not a previous

vexatious litigant, he never filed a writ, Miner was/is defendant in the case.

### II. THE TRIAL COURT ERRED WHEN IT ORDERED MINER TO POST SECURITY AS A DEFENDANT

### A. The Trial Court in its Own Words Stated Miner Had a 50/50 Chance of Prevailing

No security was mandated. There are 5 allegations on the citation.

Two or three is the same as 50/50 chance for either party. What the court

actually said in the hearing matters.

- And so one other holding that I did not address in regards to 391, **it must also be found that the Court find that there is a likelihood of the City essentially obtaining a holding of the citation -- upholding a citation against you, Mr. Miner.** . ... ... ... **There are five bases given.** I wouldn't say that I would necessarily find that every bases -- every basis would be a strong likelihood, but by my count I would see at least **two or three of the grounds on the citation as being a strong likelihood of succeeding** on behalf of the City. (RT 260:21-28)

Miner is defendant, City is plaintiff. "vexatious litigant statutes were

enacted to require a person found a vexatious litigant <u>to put up security for</u>

<u>the reasonable expenses of a defendant</u> who becomes the target of one of

these obsessive and persistent litigants." *(First Western Development Corp.*

36

*v. Superior Court 22)*. Miner contends each individual violation is separate
on the citation. Winning one is "prevailing" on that one issue.

### III. CUMULATIVE TRIAL COURT ERROR

**Bias** - from day one this Commissioner (a recent former County
district attorney) was in favor of the City. A demurrer was filed. CCP.
Section 92 enumerates permissible pleadings and motions in limited civil
cases *(Laurel 01)*. The court was not concerned about the demurrer, it was
concerned on whether Miner filed "his" appeal documents on time. Miner
had (RT 44:20-23).

Eventually, the Court overruled the demurrer simply stating "you
cannot demurrer to a citation" (RT 43:10-18). It seemed he never read it.

It was clear he never read the nine motions in limine as he was not
aware of them on the day of trial (RT 51:18-21). The motions in limine
were brought up 3/17/22 (RT 8:2-11). Again Court had to be notified there
were nine motions in limine on calendar (RT 51:18-21).

The Court went through the motions in limine in minutes and
summarily denied the nine motions mostly because they were "labeled"
"motions in limine." In reality, because of timing and City oppositions, they
had become noticed motions (RT 54:13-26). (*See Kreutzer V. County of San
Diego,153 Cal. App. 3d 62, 200 Cal. Rptr. 322 (Ct. App. 1984)*)

Miner, as a witness, was going to testify to an email he received
from a DHS fireman. The Court would not permit it. (RT 213-214) He was

the witness and received the email. (Evid. Code, § 1400.) Also see the

recusal request (RT 214:6-26) Issues were constant throughout the hearings

(RT 216:24-28; 221:1-14) there is no benefit here to list them all.

It would be relevant to know if someone who placed $4000 in

citations on property (1) graduated high school (2) could read and interpret

statutes, (3) had a code enforcement manual (4) had any training in the

City's statutes. There was NO discovery to expose issues (RT 98:10-13).

The Court did what it could to prop up the untrained officer. Doing

something wrong, with no training, for three years, is still doing it wrong.

The officer has no survey, real estate or City training that even gives

him the knowledge to be aware where the public right of way is, where

Miner's property begins and ends, which is not the fence. (CT 102-104)

The Court was completely aware he had eliminated all Miner's

witnesses and documents (RT 44:20-23). The Court constantly mis-stated

the facts (CT 44:7-23. For example Miner had requested witnesses from the

City (CT 637), and at the court (CT 5083). The foundation for all issues had

been laid in the evidentiary documents lodged with the Court, ("shall be

received in evidence") §53069.4(b)(1) (CT 313-989).

The Commissioner's tone and comments were condescending,

offensive. He appeared bias on many occasions. The Judge never argued in

Miner's favor, but did argue with Miner in favor of the City and the officer

many times. (RT 152:16-28;153:1-28;154,155:1-4) When things were

pointed out, he forced retrospective excuses for the record (RT 250-251).
The reporter's transcript is tells of the abuse and bias (RT 1-332).

He always steered the trial and testimony in favor of the City. Such
as NOT simply placing an X on the spot of the officer's photographs where
the officer stated there were violations (RT 130:15-28) so they could be
argued on appeal - rather than guessed at. Everyone sees photos differently.

In the end Miner had no civil trial procedure at all, no discovery at
all, no witnesses at all, no documents from the City at all. The Court
quashed, and overruled every document Miner had filed - except for the
trial "appeal." In passing he only allowed because the City acquiesced.

In all - there was bias, Constitutional error, legal error, evidentiary
error, discovery error, and procedural error. The Commissioner failed to
"follow the evidence." He contributed to the conviction. This entire
experience could not have been more prejudicial and more sour.

It appeared, because Miner was issued a citation, the Commissioner
believed he was guilty - a scheduling inconvenience and waste of time.

Not a single ruling was in Miner's favor. Not one except for being
permitted to appeal and that was a battle in itself. And after all that, the
Commissioner declared Miner the vexatious litigant.

//

//

39

## CONCLUSION

**For the Vexatious Litigant Order Appeal**

**#1.** Miner does not fall within the vexatious litigant statute because:
(1) only a defendant or a court of appeal may make a motion or declare a
vexatious litigant, (2) here, Miner is the defendant, not the plaintiff, (3)
there is no proof Miner has re-litigated any case, (4) Miner has never been
previously declared a vexatious litigant, (5) Miner's filings were defensive
in an attempt to end litigation, not harass any party, (6) Miner's demurrer
and motions were quality documents, not frivolous, duplicative, or without
merit, (7) Miner's documents were not re-litigation or duplicative (8) Miner
"reclassified" a case pursuant to statute GC. §53069.4, (9) Miner never filed
"new litigation," never "maintained" litigation, (10) Miner never conducted
"unnecessary discovery" or any discovery, (11) Miner performed no acts
that were frivolous, or were solely intended to cause unnecessary delay.

Therefore under §391(b)(3) Miner cannot be declared a vexatious
litigant as he does not meet the statutory elements necessary as motioned by
the Plaintiff City *(Holcomb v. US Bank Nat. Ass'n 30)*.

Miner was not provided with a limited civil case pursuant to §§90-
100 of the civil code of procedure. The court's timing, and statutory failures
contributed to Miner's effort and acts to obtain a fair trial and a fair review.

The case should have terminated before Miner was forced to file a
single motion (Chicken and the egg);

40

**#2, IF NOT #1**, then the vexatious litigant Order is void because the necessary findings, express language, mandated by statute for the vexatious litigant order are absent from the Order (CT 5016-5017);

**#3, If NOT #1 AND NOT #2**, then vexatious litigant order is not supported by substantial evidence to support the finding. Secondly, there is no bad faith, cause delay, intent to harm or "mens rea";

**#4, If NOT #1 NOT #2 OR #3**, then the dismissal for security is not supported by substantial evidence. A. The Court in its own words stated parties had a 2 out of 3 chance. B. What does prevailing mean when there are 5 separate finable violations? Each prevailing issue is a separate decision. There is no typical "prevailing party" in a citation appeal because there are separate distinguishable monetary awards for each violation.

This is the appeal of the vexatious litigant Order, Order for security, and judgment of dismissal. The case should have been dismissed before Miner was forced to file documents preserving his defenses for appeal.

## PRAYER

#1. Vacate the Vexatious Litigant ruling;

#2. Vacate the Vexatious Litigant pre-filing order;

#3. Vacate the security Order;

#4. Vacate the Judgment of Dismissal;

#5. Dismiss the case and citation based upon the;

      A. Demurrer;

B. Interests of Justice;

**OR enter a judgment in Miner's Favor for C-F below**

C. Based on the motion to dismiss;

D. Based on motion for judgment on the pleadings;

E. Based on the motion for unclean hands;

F. Based on any or all motions and pleadings;

**#6. Alternatively or In the INTEREST OF JUSTICE**

Vacate the Orders and Dismissal and remand the entire case beginning with discovery, to be heard by a new Judge with a <u>new trial</u> with all discovery - based on prejudicial errors;

A. Miner has not received an administrative hearing;

B. The Commissioner failed to recuse himself;

C. Miner has had no discovery;

D.  Miner has not received a fair trial per statute;

#7. Reinstate the §128.5/§128.7 motions;

#8. Correct Miner's role on register of actions in trial court and appellate court to Defendant/Appellant for a proper record;

#9. For any relief the Court considers just and proper.

Respectfully, _____

Joseph Miner 5/18/2023
pro per

FAC PG 264

## Establishing Law of Continuing Importance

The Court should rule on issues in this matter that may be subsequent events of continuing public importance affecting 540 local agencies procedure and is a question capable of repetition. Appeals of GC. §53069.4 issues are escalating.

#1. A party who reclassifies pursuant to 85(c) to limited civil division is a "defendant.

#2. A demurrer is appropriate as a defense against an uncertain "administrative citation" (charging pleading) reclassified to civil court.

#3. Discovery, pursuant to statute, is permitted in a reclassified limited civil case pursuant to CCP. §§90-100.

Respectfully, _____

Joseph Miner 5/18/2023
pro per

43

## Endnotes

EN1:  A "new action" in civil court would cost $225. This is re-classification.

EN2:  No obvious physical boundaries - you would not know what parcel you were looking at unless you had real estate survey or appraisal experience.

EN3:  A Practical Treatise on the Law of Nuisances, H. G. Wood 3${}^{rd}$, 1893, V1 37-38, V2 764, 765.

EN4:  The Law of Public Nuisance: Maintaining Rational Boundaries on a Rational Tort Victor E. Schwartz.

EN5:  The court should note that "role labels" seem to be arbitrarily assigned by the court clerks. In the online case register Miner's label is defendant/appellant in the download version he is plaintiff/appellant. Miner protested to the appellate clerk that he assigned Miner as plaintiff. TC stated "it does not matter."

### CERTIFICATE OF INTERESTED PARTIES

None. Except for parties / persons served.

### CERTIFICATION OF COMPLIANCE

Appeals must conform to the provisions of California Rules of Court.

I, Joseph Miner, certify that Appellant's Brief, was produced on a computer, that the total number of words contained in the AOB, and exclusive of tables and this certificate, does not exceed 10,000 words.

I relied on the word count of the computer program used to prepare the Brief. The number of words exclusive of tables and this certificate, is 9,841 including pages 1 through end notes pursuant to Word Perfect 7 by Corel.

Dated this 18th day of May, 2023 at Orange County, California.

Joseph Miner 5/18/2023

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

JOSEPH MINER
vs.
CITY OF DESERT HOT SPRINGS.

Appellate Case No. APRI2200098; APRI2200109
Riverside County Superior Court Case No. CVPS2106001

      I am employed in the County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 2576 Newport Blvd #A, Costa Mesa, CA 92627.

      On May 18, 2023, I served the foregoing document described as: Application to file consolidated appeals APRI2200098; APRI2200109. Proposed Order, and Appellant's Consolidated Opening Brief, on the interested parties in this action.

☐     by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

      **SEE SPECIFIC ATTACHED SERVICE LIST**

☐     **BY REGULAR MAIL:** I deposited such envelope in the mail at U.S. Postal Service, Costa Mesa California 92627. The envelope was mailed with postage thereon fully prepaid.

      I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

☒     **BY ELECTRONIC SERVICE:** I caused the documents to be sent to the persons at the electronic notification address listed in the Service List.

☒     (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐     (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on May 18, 2023, at Orange County, California.

Lily Dunlop

45

FAC PG 267

**SERVICE LIST**

| | |
|---|---|
| City of Desert Hot Springs<br>11999 Palm Drive<br>City of Desert Hot Springs, CA 92240 | Via email:<br>Jerryl Soriano, Clerk<br>jsoriano@cityofdhs.org |
| Theodore K. Stream ( SBN 138160)<br>Jennifer A. Mizrahi ( SBN 224043)<br>Tuan- Anh Vu,( SBN 285801)<br>Wei Liu ( SBN 340688)<br>STREAM KIM HICKS WRAGE &<br>ALFARO, PC<br>3403 Tenth Street, Suite 700<br>Riverside, CA 92501- 3641<br>Telephone: ( 951) 783- 9470<br>Facsimile: ( 951) 783- 9475 | Via email:<br>Tuan- Anh Vu<br>tuan.vu@streamkim.com<br>Attorneys for Plaintiff<br>City of Desert Hot Springs |
| Riverside County Superior Court<br>Honorable Arthur C. Hester III<br>Dept. PS4<br>Palm Springs Courthouse<br>3255 E. Tahquitz Canyon Way<br>Palm Springs, California 92262 | Via email:<br>Hon. Arthur C. Hester<br>Stacy Antonacci<br>DeptPS4@riverside.courts.ca.gov |
| Court of Appeal | NA |
| California Supreme Court | NA |

46

FAC PG 268

Exhibit __15__

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF RIVERSIDE**

**APPELLATE DIVISION**



F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

NOV 0 9 2023
T. Chavira

**JOSEPH MINER,**

        Plaintiff and Appellant,

        v.

**CITY OF DESERT HOT SPRINGS,**

        Defendant and Respondent.

Case No: APRI2200098, APRI2200109

(Trial Court: CVPS2106001)

**PER CURIAM OPINION**

Appeal from an order of the Superior Court of Riverside County, Arthur C. Hester III, Commissioner. Affirmed.

Joseph Miner, in pro. per., for Plaintiff and Appellant.

Stream Kim Hicks Wrage & Alfaro, PC, Theodore K. Stream, Jennifer A. Mizrahi, Tuan-Anh Vu, for Defendant and Respondent.

    **THE COURT**

    Joseph Miner (Miner or appellant) appeals from an order declaring him to be a vexatious litigant and a related prefiling order prohibiting him from filing any new litigation in the California courts in propria persona without first obtaining leave of the presiding justice or presiding judge of that court. We find no error and affirm the orders.

FAC PG 270

## FACTS AND PROCEDURAL HISTORY

Appellant is the owner of real property located at 66781 Dillon Road, Desert Hot Springs. On August 18, 2021, City of Desert Hot Springs (City or respondent) issued an administrative citation #27948D based upon five alleged public nuisance conditions existing on the property. The nuisance conditions cited consisted of fire hazards, excessive trash and junk, abandoned household items, an illegal wood fence, and the lack of a business license for commercial rental property. After an administrative hearing in which appellant did not appear, the hearing officer issued an order upholding the citation. Appellant filed a timely appeal from the administrative decision on December 6, 2021, pursuant to Government Code section 53069.4.

Thereafter, appellant began a series of actions which lead to the City filing a motion to declare appellant a vexatious litigant. The City listed 11 separate actions in support of its motion:

1.     On December 27, 2021, appellant filed a demurrer to the citation. On January 3, 2022, appellant filed an amended demurrer, challenging the sufficiency of the allegations. The demurrer was overruled.

2.     On April 4, 2022, appellant filed a motion to disqualify the city attorney alleging various violations of law and rules of professional conduct. The motion was denied.

3.     On April 4, 2022, appellant served a notice on the city attorney to attend trial and produce documents.  The City filed a motion to quash. The trial court granted the motion and quashed the notice.

2

4.    On April 11, 2022, appellant served nine notices to attend trial for various City employees. The City filed a motion to quash. The trial court granted the motion and quashed the notices.

5.    On April 11, 2022, appellant served seven civil subpoenas on third parties and/or city employees. The City filed a motion to quash and the subpoenas were quashed.

6.    On April 11, 2022, appellant filed nine motions in limine challenging various actions of the City. All motions were denied on June 23, 2022, either as repetitive of the court's prior rulings or improper motions in limine. The motions included:

a. Seeking a dismissal for failure to receive proper notice of the administrative hearing;

b. Seeking a dismissal for failure of the citation to state a charge or offense;

c. Challenging the administrative record as incomplete and uncertified;

d. Seeking discovery from the City relative to the property;

e. Seeking to strike the City's administrative brief filed in support of the citation;

f. Seeking to strike the transcript in the administrative hearing;

g. Seeking to compel the City to provide a certified administrative record;

h. Seeking judgment on the pleadings or in the alternative summary judgment based upon the insufficiency of the allegations in the citation;

i. Seeking summary judgment based upon unclean hands.

7.    On June 7, 2022, appellant filed a notice of non-stipulation to the Commissioner, which was rejected as untimely.

8.    On June 8, 2022, appellant filed a motion to vacate/withdraw the stipulation to the Commissioner. The motion was denied.

3

FAC PG 272

9.      On July 11, 2022, appellant filed a common law motion for judgment on the pleadings challenging the sufficiency of the citation. The motion was denied.

10.     On August 8, 2022, appellant filed a challenge for cause against the Commissioner pursuant to Code of Civil Procedure section 170.1.  The application was stricken as untimely.

11.     On August 23, 2022, appellant filed another disqualification motion against the Commissioner pursuant to Code of Civil Procedure section 170.1.  The application was stricken.

Trial began on June 23, 2022. After a day of testimony from the code enforcement officer Tiyler Messer, the trial was continued to August 4, and then once more to August 11. Because of the August 8, 2022 challenge to the Commissioner, the August 11 trial date was continued to August 25.  Further, because of the August 23 challenge to the Commissioner, the August 25 trial date was continued to September 22. On August 30, 2022, the City filed a motion to declare petitioner a vexatious litigant pursuant to Code of Civil Procedure section 391(b)(3).

Following a hearing on September 22, 2022, the trial court found: "The City has presented satisfactory evidence to establish that Miner is a vexatious litigant within the meaning of Code of Civil Procedure section 391(b)(3), and there is no reasonable probability that Miner will prevail in this action against the City."  The order required Miner to furnish security in the amount of $1,750 by October 20, 2022, and included a prefiling order prohibiting him from filing any new lawsuits, including appeals and writ petitions, in propria persona in courts of this state without first obtaining leave of the

4

FAC PG 273

presiding judge or justice of the court where the litigation is proposed to be filed.  Miner
failed to furnish the security and the action was dismissed.

## DISCUSSION

### A. Standard of Review

'A court exercises its discretion in determining whether a person is a vexatious
litigant. [Citation.] We uphold the court's ruling if it is supported by substantial
evidence. [Citations.] On appeal, we presume the order declaring a litigant vexatious is
correct and imply findings necessary to support the judgment.' [Citation.] Questions of
statutory interpretation, however, we review de novo. [Citation.]" (*Holcomb v. U.S. Bank
Nat. Assn.* (2005) 129 Cal.App.4th 1494, 1498-1499.)

### B. Statutory Background

"The vexatious litigant statutes (Code of Civ. Proc. §§ 391- [391.8]) are designed
to curb misuse of the court system by those persistent and obsessive litigants who,
repeatedly litigating the same issues through groundless actions, waste the time and
resources of the court system and other litigants." (*Shalant v. Girardi* (2011) 51 Cal.4th
1164, 1169.)

Section 391, subdivision (b) provides four alternative definitions of a vexatious
litigant, including someone who "[i]n any litigation while acting in propria persona,
repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary
discovery, or engages in other tactics that are frivolous or solely intended to cause
unnecessary delay." (§ 391, subd. (b)(3).)

The statutory scheme provides two sets of remedies. First, in pending litigation,
"the defendant may move for an order requiring the plaintiff to furnish security on the

5

ground the plaintiff is a vexatious litigant and has no reasonable probability of prevailing against the moving defendant." (*Shalant, supra,* 51 Cal. 4th at p. 1170; § 391.1.) If the court finds in the defendant's favor on these points, it orders the plaintiff to furnish security in an amount fixed by the court. (§ 391.3, subd. (a).) Failure to provide the security is grounds for dismissal. (§ 391.4.) The second remedy provided for in section 391.7, "operates beyond the pending case" and authorizes a court to enter a "prefiling order" that prohibits a vexatious litigant from filing any new litigation in propria persona without first obtaining permission from the presiding judge. [Citation.]' (*Shalant, supra,* 51 Cal.4th at p. 1170).

### C. Miner is a Plaintiff

Preliminarily, Miner argues that he is a defendant in the action, not a plaintiff; therefore, the City had no standing to bring the vexatious litigation motion. We disagree.

First, section 391, subdivision (b)(3), applies to any litigant -- plaintiff or defendant-- who repeatedly files unmeritorious motions or engages in other improper tactics. (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1200). Likewise, a request for a prefiling order under section 391.7 may be made by "any party", regardless of their role as a plaintiff or defendant.

However, whether Miner was a plaintiff or defendant is relevant for the order to furnish security pursuant to section 391.1, as that section provides that only a plaintiff can be ordered to furnish security. In that regard, the vexatious litigant statutes provide the definitions for each. Section 391, subdivision (d) defines a "Plaintiff" as "the person who commences, institutes or maintains a litigation or causes it to be commenced, instituted or maintained." Section 391, subdivision (e), however, defines a "'Defendant'" as "a person

… against whom a litigation is brought or maintained or sought to be brought or maintained." Finally, Section 391, subdivision (a) defines "'Litigation'" to mean "any civil action or proceeding, commenced, maintained or pending in any state or federal court."

Here, although the City issued the citation, it is Miner who "commenced" and "maintained" the superior court action, not the City. "Although designated as an 'appeal' by section 53069.4, the de novo review process authorized by that statute is, in essence, an original proceeding in the superior court reviewing the propriety of a local agency's final administrative decision after hearing to impose fines or penalties." (*County of Humboldt v. Appellate Division of Superior Court* (2020) 46 Cal.App.5th 298, 311).

Still further, in other published opinions involving de novo review by the property owner to the superior court under section 53069.4, the property owner who challenged the administrative citation in the trial court is expressly designated as the plaintiff in the case title and body of the opinion. (See *Wang v. City of Sacramento Police Department* (2021) 683 Cal.App.5th 372.[1]

**D. *Analysis of Vexatious Litigant Order***

The trial court declared Miner a vexatious litigant under section 391, subdivision (b)(3) based upon its finding that he had repeatedly filed unmeritorious motions, pleadings, and other papers, and such tactics caused unnecessary delay. Specifically, the court relied on Miner's unsuccessful demurrer[2], two motions for judgment on the

---

[1] As a published opinion, it is the Reporter of Decisions responsibility to review every opinion and ensure the editorial integrity and accuracy of all published opinions. (Supreme Court of California Appoints New Reporter of Decisions (September 30, 2014) <https//www.courts.ca.gov> News Releases – 2014.) We have no reason to doubt that such editorial accuracy was not performed in *Wang*.

[2] The City argues that a demurrer to a citation is procedurally improper. We are not persuaded. (See *People v. Gompper* (1984) 160 Cal. App. 3d. Supp. 1, 8-9 [citation issued in a criminal action that fails to comply with the statutory requirements must be challenged prior to trial by demurrer or otherwise.]

pleadings, and the nine motions in limine that sought to relitigate similar if not the same

issues as set forth above; the subpoenas for witnesses and the production of documents

from those who were not percipient witnesses; and the multiple requests for

disqualification of Commissioner Hester. There was ample evidence to support the trial

court's order.

      The trial court stated in part:

      Addressing the City's motion, it was essentially stated in short, Mr. Miner, that the history -- and I don't have the numbers in front of me, but I have a fairly good memory of them -- there being the original demurrer, there being two separate judgments on the pleadings, there being nine motions in limine, several which the Court even categorized at the time that you argued them that they were not, in fact, in my other motions in limine, but essentially a rehearsal -- not a rehearsal -- a rehashing of a demurrer. And it said the same thing in terms of when you argued the judgment on the pleadings that that, in fact, was the same argument that we're making that were made in the demurrer argument.

      The subpoenas for the witnesses, and the motions to produce documents for witnesses that were not even percipient witnesses, and the Court even told you that the Court deemed this to not be about all the prior history leading up, not about the drug raids, not about the prior contacts, not about the zoning, but about whether or not your property violated the Desert Hot Springs Municipal Code as cited in the two separate citations authored by Officer Messer, and I clearly recall stating that to that effect to you. And, yet, what the Court saw in what was brought up by the City was that the same argument was rehashed or dressed in new clothing in the demurrer, in the judgment on the pleadings, in the MIL's. And so when you take that and then you do take into consideration the delays in the trial. And, as I stated, I will not even try to deny the fact that there have been things that the Court has had to delay, but some of those have been because of the non-stip arguments that you have made, and obviously you have an opportunity to do so, but there was the initial attempt to withdraw the stipulation. There was the first 170.1 disqualification. There was a supplement to that disqualification, and that was filed just shortly before we were set to resume the hearing. And then once we had a new date, then there was a second 170.1 disqualification, but the only real change the Court could really see was in reference to both my employment and that of my wife. And that was the only real change that I saw from the first motion to the second. And, again, you can make your argument, but what I'm finding is that the motions, the demurrer, the judgment on the pleadings, the MIL's, along with the multiple disqualifications do rise to the level of being a vexatious litigant under 391.

Miner spends little effort defending the multiple and repetitive filings discussed by the trial court, and attempting to demonstrate that there is no substantial evidence to conclude that any filings were frivolous or otherwise filed for an improper purpose. Rather, Miner states in a conclusory manner that the motions are "clear" "meritorious", "no document is frivolous", "every motion is researched, has merit, is different; not duplicative" and filed "to end the case before trial". We are not persuaded. Indeed, upon review of the record, we conclude there is more than enough evidence for the trial court to determine Miner engaged in improper tactics by repeatedly litigating the same issues through groundless motions and actions. Nor was the trial court required to specifically prove Miner's intent as to each filing. The statutory scheme permits a global finding of vexatious litigation tactics that does not turn on "individual unmeritorious filings." (*Golin v. Allenby* (2010) 190 Cal.App.4th 616, 639.)

Miner also makes no effort to justify the duplicative requests to disqualify Commissioner Hester, or why it was proper for him to relitigate the same disqualification issues multiple times. If Miner believed the disqualification ruling was in error, his exclusive remedy for reviewing the determination was a writ of mandate (Code of Civ. Proc. 170.3(d)), not a repeat motion to disqualify. "Under our statutory scheme, a petition for writ of mandate is the exclusive method of obtaining review of a denial of a judicial disqualification motion." (*People v. Mayfield* (1997) 14 Cal.4th 668, 811.)  The error is not ground for appeal from the judgment. (*People v. Hull* (1991) 1 Cal.4th 266, 276 (section 170.6 challenge).

Moreover, Miner argues bias and prejudice because in every decision the trial court ruled in favor of the City and against him. The fact the Commissioner ruled in a

9

particular way, or in a way that Miner believes is erroneous, is insufficient to constitute

legal evidence of prejudice or bias. (*Brown v. American Bicycle Group, LLC* (2014) 224

Cal.App.4th 665, 674 ["the mere fact that the trial court issued rulings adverse to

[appellant] on several matters in this case, even assuming one or more of those rulings

were erroneous, does not indicate an appearance of bias, must less demonstrate actual

bias"].) Besides, having carefully reviewed the entire record, we find nothing in any part

of the record that supports the charge of prejudice or bias.

### *E. Substantial Evidence Supports the Finding of No Reasonable Probability of Success*

The appeal under Government Code section 53069.4 is a de novo action,

classified as a limited civil case, and where the contents of the local agency's file is

received in evidence. A copy of the document or instrument of the local agency providing

notice of the violation and imposition of the administrative fine is admitted into evidence

as prima facie evidence of the facts stated therein. (Govt. Code § 53069.4(b)(1).)  The

City also offered the declaration of the citing officer Tiyler Messer relative to his on-site

observations, along with photographs for each of the alleged municipal code violations.

The violations include: Fire hazard (DHSMC § 4.16.010(A)(5)); trash and junk on

property (DHSMC § 4.04.020(A); abandoned household items and junk (DHSMC §

4.16.010(A)(1)(a)); unlawful wooden fence (DHSMC § 4.16.010(A)(17); and conducting

business on the property without a business license (DHSMC § 5.04.040(A) et seq.).  The

trial court concluded that the City had a strong likelihood of succeeding on at least two or

three of the five grounds set forth on the citation. On the record we have, we cannot

conclude that the trial court erred in so finding.

### F. Stipulation to Commissioner/Judge Pro Tem

Miner for the first time in his reply brief argues that he did not stipulate to a judge pro tem; therefore, Commissioner Hester lacked jurisdiction pursuant to California Rules of Court, rule 2.816. That argument is waived, misplaced, and contradicted by the record.

First, an appellant's failure to raise an argument in its opening brief waives the issue on appeal. (*Dieckmeyer v. Redevelopment Agency of Huntington Beach* (2005) 127 Cal.App.4th 248, 260; see also *Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3 ["[T]he issue was waived as to this court because it was noted only in appellants' reply brief, and not in their opening brief."].) There is absolutely no sound reason why this issue could not have been raised in the appellant's opening brief.

Second, Commissioner Hester did not perform the judicial duties here as a judge pro tem, but rather as a commissioner. "The Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties." (Cal. Const. art. VI, § 22.) Accordingly, the Legislature has enacted numerous statutes establishing subordinate judicial duties. This action is a proceeding under Government Code section 53069.4. Pursuant to section 53069.4(b)(3), "The conduct of the appeal under this section is a subordinate judicial duty that may be performed by traffic trial commissioners and other subordinate judicial officials at the direction of the presiding judge of the court." These subordinate judicial duties require no stipulation. (*Foosadas v. Superior Court* (2005) 130 Cal. App. 4th 649, 654.)

As Commissioner Hester did not perform his duties in the underlying action as a temporary judge but as a subordinate judicial officer, Miner's reliance on Rule 2.816[3] is

---

[3] Rule 2.816 provides for the form of notice, and methods of stipulation and withdrawing the stipulation, for matters to be heard by a court-appointed temporary judge.

11

misplaced. As expressly provided in subsection (a) of that Rule, it applies only when the court has appointed or assigned an attorney to serve as a temporary judge of that court. Commissioner Hester is a Commissioner of the Superior Court, not an attorney assigned to serve as a temporary judge. (See also Cal. Rules of Court, rule 2.810.) Moreover, even if this Rule were to apply, the record contains no objection to Commissioner Hester hearing the vexatious litigation motion. Miner was represented by attorney Joseph C. Rosenblit. The transcript from the hearing on September 22, 2022, reflects no objection made to the matter being heard by the Commissioner at the beginning of the hearing, and the minute order from that date otherwise reflects that Miner stipulated at the hearing to the Commissioner. A stipulation can be expressed or implied. "An attorney may not sit back, fully participate in a trial and then claim that the court was without jurisdiction on receiving a result unfavorable to him." (*In re Horton* (1991) 54 Cal.3d 82, 91.) We find no error.

## DISPOSITION

The order declaring Miner to be a vexatious litigant and the prefiling order are affirmed. Respondent City of Desert Hot Springs shall recover its costs on appeal.

Jacqueline C. Jackson
Acting Presiding Judge of the Appellate Division

Matthew Perantoni
Judge of the Appellate Division

Marie Wood
Judge of the Appellate Division

12

FAC PG 281

Exhibit 16

**DECLARATION OF GREGG ROBERTS**

I, Gregg Roberts, declare:

1. I state the following of my own personal knowledge and if called, I can and would testify competently thereto.

2. I am a paralegal, judgment enforcer, and registered process server. I am involved in legal issues daily.

3. I attended the hearing with Mr. Miner on 11/4/2021 at 11am at the City of Desert Hot Springs Police Department. I accompanied Mr. Miner to the Administrative hearing as a witness and to see how they are administered.

4. When the hearing began Mr. Elio Palacios, Administrative Hearing Officer (sbn 216405) was sitting at the end of the conference table. He was just a few feet from me and to my right. Mr. Miner, who was also to my right, requested to audio record the current meeting. Mr. Palacios refused to allow a recording by Mr. Miner. A conversation between Miner and Palacios began about a previous citation - #27948D. Mr. Miner asked if Mr. Palacios was the hearing officer. Mr. Palacios stated he was the hearing officer on that citation. Mr. Miner asked Mr. Palacios if the City prosecutor had informed him that Mr. Miner would not be at that hearing. Elio Palacios, the Administrative Hearing Officer (sbn 216405) stated clearly while in front of me, Tiyler Messer, Joseph Miner and the City attorney Mr. Tuan-Anh Vu, that the City attorney Mr. Vu never informed him that Mr. Miner would not be at the hearing. Mr. Palacios also stated clearly that if the City attorney had informed him that if Mr. Miner was not going to be at the hearing that <u>he would not have held the hearing</u> for citation #27948D. Mr. Miner then asked Mr. Palacios to vacate the default. Mr. Palacios rejected the request.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct. Executed this _14th_ day of November 2021 at Riverside County, California.

*Gregg Roberts*

**Gregg Roberts**

FAC PG 283

Exhibit  17

005REC PG 005



# CITY OF DESERT HOT SPRINGS

CODE COMPLIANCE DIVISION

65950 Pierson Blvd. • Desert Hot Springs • CA • 92240
(760) 329-6411• www.cityofdhs.org

## Administrative Citation #27948D

**Date Issued: August 18, 2021**
**APN:  657-220-005**
**Case Number: CODE-21-985**
**Subject Property: 66781 DILLON RD., DESERT HOT SPRINGS, CA 92240**

**Parcel Owner:   MINER JOSEPH**
**Mailing Address: 2576 NEWPORT BLVD**
**COSTA MESA, CA 92627**

An inspection of your property has revealed the following violation(s) of the Desert Hot Springs Municipal Code section (§):

| Violations: | Description: | Corrective Action: | Fines: |
|---|---|---|---|
| 4.16.010.A.5 | Public Nuisance- Fire Hazard | Remove and properly dispose of all dry or dead plant matter, combustible refuse and waste or any other matter which by reason of its size, manner of growth and location, constitutes a fire hazard | $100.00 |
| 4.16.010.A.19.e | Public Nuisance- Visual Blight- Junk/refuse/garbage visible | Remove and properly dispose of the large accumulation of junk, trash and miscellaneous household items from the premises. | $100.00 |
| 4.16.010.A.1.a | Public Nuisance Abandoned equipment, machinery, or house items | Remove all construction materials, auto parts, equipment and household items from exterior premises and do not store outside. | $100.00 |
| 4.16.010.A.17 | Public Nuisance- Illegal, Nonconforming Building or Structure | Obtain a fencing permit for all wood fencing on the property. Or remove all wood fencing on the property. | $100.00 |
| 5.04.040.A | General Business License – License Required | Obtain a business license for your rental property immediately. Contact Kathlyn Palmer in the Finance Division. (Kpalmer@cityofdhs.org or (760)329-6411 Ext. 241) | $100.00 |

**TOTAL FINES: $500.00**

Tiyler Messer, Code Compliance Officer        tmesser@cityofdhs.org

FAC PG 285

Exhibit __18__

1                    SUPERIOR COURT - STATE OF CALIFORNIA

2                              COUNTY OF RIVERSIDE

3                                   -o0o-

4

5    CITY OF DESERT HOT SPRINGS,            )
                                            )
6               Plaintiff/Respondent,       )
                                            )
7          vs.                              ) Case No. CVPS2106001
                                            )             CVPS2106016
8    JOSEPH MINER,                          )
                                            )
9               Defendant/Appellant.        )
     _____)
10

11

12                  REPORTER'S TRANSCRIPT OF PROCEEDINGS

13                  BEFORE THE HONORABLE MANUEL BUSTAMANTE

14                          FEBRUARY 9, 2024

15   APPEARANCES:

16   For Plaintiff/Respondent:   STREAM KIM, HICKS, WRAGE, ALFARO
                                 BY:  TUAN-ANH VU
17                               ASHLEY PAYNE
                                 3403 Tenth Street, Suite 700
18                               Riverside, California 92501

19

20

21   For Defendant/Appellant:   JOSEPH MINER
                                IN PROPRIA PERSONA
22                              P.O. BOX 11650
                                Costa Mesa, California 92627
23

24

25

26

27

28   Reported by:               DOROTHY JAEGER, CSR 8259

FAC PG 287

1          FEBRUARY 9, 2024 - MORNING SESSION

2          BEFORE THE HONORABLE MANUEL BUSTAMANTE

3          THE COURT:  First is Miner versus City of Desert Hot

4  Springs, and then we also have Miner versus City of Desert

5  Hot Springs.  Let's first call the matter ending in 6001.

6          Can we please have the parties announce their

7  appearances beginning first with plaintiff's counsel or it

8  should be the respondent.

9          MS. PAYNE:  This is Ashley Payne representing the

10  City of Desert Hot Springs.

11          MR. VU:  Tuan-Anh Vu for the City of Desert Hot

12  Springs.

13          THE COURT:  Okay.  Good morning, counsel.

14          MR. MINER:  Joseph Miner, in pro per.

15          THE COURT:  Okay.  Good morning.  Counsel, Mr. Miner,

16  you're welcome to have a seat, however you are most

17  comfortable.

18          MR. MINER:  Thank you, Judge Bustamante.

19          THE COURT:  One moment.

20          Okay.  We do have a signed order on this matter for

21  Madame Court Reporter.  I believe we don't have one on the

22  next matter, but seeing that Madame Court Reporter is already

23  here, I'll go ahead and sign the order on that one as well.

24  We can just add the case number.  Thank you.

25          Okay.  The Court did post its tentatives on both

26  these matters.  Really, the Court's reasoning or more the

27  Court's lack of authority is the same on both but, Mr. Miner,

28  if would you like to be heard.

```
 1          MR. MINER:  Okay.  May I argue both in the same
 2  colloquy, Your Honor, because the things that I'm going to
 3  argue are the same.
 4          THE COURT:  Of course, please.
 5          MR. MINER:  Okay.  Very good.
 6          My name is Joseph Miner.  I'm the defendant.  I'm
 7  self-represented.  Recently an order signed by presiding
 8  Justice Raphael, I was declared the defendant and appellant
 9  in the Court of Appeal.
10          I'd like to make certain this is live streamed for my
11  attorney, but apparently that has been turned off, correct?
12          THE COURT:  Correct.  The Livestream is for the --
13  for litigants to appear, and it's really optional at that
14  point.
15          MR. MINER:  Okay.  Very good.
16          THE COURT:  Those departments don't Livestream
17  anymore but we still do.
18          MR. MINER:  Okay.  Very good.  Thank you, Your Honor.
19          The argument is the trial court had no jurisdiction.
20          THE COURT:  And, Mr. Miner, you mentioned something
21  about your attorney.  Are you self-represented?
22          MR. MINER:  Yes, I'm self-represented, but they were
23  going to watch, that's all.
24          THE COURT:  Okay.
25          MR. MINER:  Okay.  Very good.
26          The argument is that the trial court had no
27  jurisdiction.  The Appellate Division improperly upheld the
28  jurisdiction that does not exist.  I continue to contend the
```

FAC PG 289

1 two judgments are void for lack of jurisdiction.  The first,
2 the jurisdiction of the commissioner.

3        Jurisdiction to act as a judge comes from the
4 Constitution or statute.  I would like to read a small
5 portion of Government Code 53069.4(b),(3) into the record, if
6 that's okay with the Court.

7        THE COURT:  Please.

8        MR. MINER:  Government Code 53069.4, section(b),(3):

9        "The conduct of the appeal under this section is a
10 subordinate judicial duty that may be performed by traffic
11 trial commissioners and other subordinate judicial officials
12 at the direction of the presiding judge of the court."

13        Now, what that doesn't say is that the subordinate
14 judicial official can hear and determine the matter or render
15 judgment.  It's very common for subordinate judicial officers
16 to conduct the appeal and submit their findings to the judge
17 of the court, and that never happened in cases CVPS2106001,
18 and CVPS2106016.

19        Both cases were heard together by Arthur Hester, and
20 there was no notice that he would be acting as a temporary
21 judge.  And the Appellate Division has not indicated, nor did
22 the Court indicate what gave Arthur Hester, as a subordinate
23 judicial officer, the jurisdiction to render judgment on
24 either of the two cases.

25        So, Your Honor, I am stumped.  If I can ask this
26 Court to clarify what statute gives Arthur Hester
27 jurisdiction, as a subordinate judicial officer, to do
28 anything other than conduct the hearing.  I'd ask for

1 clarification.

2          THE COURT:  Okay.  Is that complete?

3          MR. MINER:  No, just a few more minutes.

4          THE COURT:  Okay.  Please keep in mind that your

5 record is already; one, this has already been to the

6 Appellate Division so I'm going to make this short.

7          MR. MINER:  Okay.

8          THE COURT:  You're asking this Court to substitute

9 its judgment for that of the Appellate Division, it doesn't.

10 It doesn't work that way and nor should it, it's a system of

11 checks and balances.  So this -- the trial court receives

12 direction from an appellate court or, in this case the

13 Appellate Division, the same methods whether it's a small

14 claims matter -- small claims matters originating in PS4

15 where they actually are the reviewing authority.  So these

16 issues that you brought up have already been previously

17 reviewed.

18          When it first came on the docket I reviewed it and,

19 frankly, the Court was stumped until I looked into it further

20 as to what this Court could do, if anything.  And once I

21 looked into it further, and also, you know, did some

22 additional legal research with some assistance, there isn't

23 much this Court can do.  So you're asking the Court to

24 reconsider and also substitute its judgment for that of

25 appellate reviewing authority.  I'm not sure what you're

26 asking the Court to do here, this has already been decided.

27          MR. MINER:  Okay.  I understand.

28          THE COURT:  And your moving papers, you cited 5306.9

FAC PG 291

1 of the Government Code, all of that, it's already in your
2 moving papers for the instant motion today.  It's already in
3 the motions on your -- on your appeal so all of that is
4 already part of the record.  If you're simply just going to
5 read your motion back, I assure you those will be part of the
6 record, but reading them to me essentially is not the best
7 use of your time, it's already part of the record, sir.
8           MR. MINER:  I understand, Your Honor.
9           THE COURT:  Okay.
10          MR. MINER:  Point well taken.
11          THE COURT:  Thank you.
12          MR. MINER:  I do want to clarify just a couple of
13 other things and then I'll be completed.
14          THE COURT:  Go ahead.
15          MR. MINER:  Okay.  This case is an administrative
16 citation appeal de novo by statute.  This is not a small
17 claims matter, nor is it a traffic citation infraction
18 matter.  There is a difference, a significant difference
19 between a administrative citation de novo appeal and a small
20 claims de novo appeal.  The small claims de novo appeal does
21 not allow discovery, and there are other various issues that
22 I was not permitted in trial court.
23          Jurisdiction was never waived or forfeited, and I do
24 agree with the Court that this is a limited civil case.  And
25 I would just close by the statute very specific, it gives no
26 authority to render judgment to subordinate judicial officer.
27 And I would like you just to reconsider the rulings, if
28 possible.  Thank you, Your Honor.

FAC PG 292

```
 1         THE COURT:  Okay.  Thank you, Mr. Miner.
 2         Counsel for Respondent.
 3         MS. PAYNE:  We'd just like to emphasize that the
 4  Court does not have authority to rule on this motion in
 5  Mr. Miner's favor.
 6         Unless the Court has any further questions, the City
 7  submits on the tentative.
 8         THE COURT:  Okay.  One moment.
 9         Okay.  Mr. Miner, to be clear, your argument pertains
10  to both matters on calendar?
11         MR. MINER:  That's correct, Your Honor.
12         THE COURT:  Okay.  Your motion that was brought under
13  CCP 473 to set aside or to vacate the judgment on record is
14  denied.
15         The Court cannot -- the Court doesn't have authority,
16  at least that's the Court's interpretation.  You mentioned
17  that 5306.94, and pursuant to that authority it does appear
18  that the conduct of the appeal is a function as a subordinate
19  judicial officer on the form including traffic trial
20  commissioners and other subordinate judicial officers at the
21  direction of the presiding judge of the Riverside Superior
22  Court.  In this case at the time it looks like it was
23  Commissioner Hester.
24         And, again, this matter has already been affirmed on
25  appeal.  You mentioned it is a limited matter so rather than
26  go to the District Court of Appeal it goes to the Appellate
27  Division comprised of magistrates from the Riverside Superior
28  Court.
```

FAC PG 293

1          An opinion has been issued, there is not for this

2    court to substitute this judgment.  So although the Court

3    does concur after review, we concur with the Appellate

4    Division, that really is not of any consequence.  So the

5    motions are denied under both matters, and I think that's it.

6          Regarding notice, since you're here, Mr. Miner, do

7    you waive notice?

8          MR. MINER:  No, I don't waive notice, Your Honor.

9          THE COURT:  Okay.  Counsel, if you could please

10   provide notice.

11         All right.  Thank you.  You each have a nice day.

12         MR. MINER:  Thank you very much, Judge Bustamante.

13   Thank you.

14                    (Proceedings concluded.)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FAC PG 294

```
 1                        REPORTER'S CERTIFICATE

 2

 3

 4  CITY OF DESERT HOT SPRINGS,          )
                                         )
 5          Plaintiff/Respondent         )
                                         )
 6          vs.                          )  Case No. CVPS2106001
                                         )
 7  JOSEPH MINER,                        )           CVPS2106016
                                         )
 8          Defendant/Appellant.         )
    ─────────────────────────────────────)
 9

10

11         I, Dorothy Jaeger, Certified Shorthand Reporter

12  No. 8259, hereby certify:

13          On February 9, 2024, in the county of Riverside,

14  State of California, I took in stenotype a true and correct

15  report of the testimony given and proceedings had in the

16  above-entitled case, pages 2-8, and that the foregoing is a

17  true and accurate transcription of my stenotype notes and is

18  the whole thereof.

19

20  DATED:  Indian Wells, California; April 25, 2024.

21

22

23                          _____

24                          DOROTHY JAEGER, CSR 8259

25

26

27

28
```

FAC PG 295

Exhibit __19__



444 South Flower Street - Suite 2400
Los Angeles, California 90071-2953
voice 213.236.0600 - fax 213.236.2700
www.bwslaw.com

Direct No.:  213.236.2862
Our File No.:  07024.0336
eollivier@bwslaw.com

June 10, 2024

**VIA U.S. MAIL and BY HAND**

Honorable Chad W. Firetag
Presiding Judge of the Appellate Division
Honorable Matthew Perantoni
Judge of the Appellate Division
Honorable Marie E. Wood
Judge of the Appellate Division
Superior Court, County of Riverside
Appellate Division
4100 Main Street
Riverside, CA  92501

> Re:    Supplemental Briefing
>        Alessandra Montanaro v. City of Cathedral City
>        Case Number:  APRI2300078
>        [Appeal from Superior Court, Riverside County Case No. CVPS2302625]

Dear Honorable Firetag, Perantoni, and Wood:

Respondent City of Cathedral City (the "City"), hereby submits this Supplemental Briefing in response to the Court's order dated May 20, 2024, whereby the court invited the parties to provide further briefing on the following issues:

1.    Whether the administrative fine of $5,000 for a first violation of the City's short term rental ordinance violates Government Code section 36900(d).

2.    Whether the administrative fine of $5,000 is proportionate to the violation under the Excessive Fines clause of the United States and California Constitutions.  (See *People ex rel. Lockyer v. R. J. Reynolds Tobacco Co.* (2005) 37 Ca1.4th 707, 727-729; *Pacific Gas & Elec. Co. v. Public Utilities Com.* (2015) 237 Cal.App.4th 812, 863-864.)

## I.    California Government Code Section 36900(d) Does Not Apply to Administrative Penalties.

California Government Code Section 53069.4 authorizes local governments to enact an administrative process to enforce violations of any ordinance through the imposition and collection of administrative fines or penalties. The law was intended "to

Case 8:24-cv-02793-MCS-E    Document 6-1    Filed 01/29/25    Page 236 of 261    Page
ID #:558



BURKE, WILLIAMS & SORENSEN, LLP

Honorable Chad W. Firetag
Presiding Judge of the Appellate Division
Honorable Matthew Perantoni
Judge of the Appellate Division
Honorable Marie E. Wood
Judge of the Appellate Division
Superior Court, County of Riverside
June 10, 2024
Page 4

culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay. [Citation]" (*Id.*)

Here, the four-part *Bajakajian* test shows that the imposition of the City's short-term vacation rental fine did not violate the Excessive Fines Clause.

First, "courts routinely consider a person's unwillingness to comply with the law when considering whether a fine is excessive under the Eighth Amendment." (*Lent v. California Coastal Commission*, 62 Cal. App. 5th 812, 857–58, citing *People v. Braum* (2020) 49 Cal.App.5th 342, 361 [landlord's flagrant disobedience of city ordinances and court orders demonstrated his culpability]; *City and County of San Francisco v. Sainez* (2000) 77 Cal.App.4th 1302, 1322 [landlord's "numerous instances of ignoring or disobeying orders to abate or rectify substandard housing conditions affecting the public health and safety" demonstrated his culpability]; *Ojavan Investors, Inc. v. California Coastal Commission* (1997) 54 Cal.App.4th 373, 398 [$9.5 million penalty imposed by the Commission was not excessive, in part because of the investor's "flagrant disregard of the . . . restrictions" on development].)

Here, Appellant was provided notice via email on October 27, 2022 and December 5, 2022, that effective January 1, 2023, the City would enforce the City Council approved Short-Term Vacation Rental phase out program, and that citations and fines would be issued for non-compliance. Despite notice of the City's intent to enforce the Municipal Code and impose fines for non-compliance, the administrative hearing officer and trial court found sufficient evidence to support a finding that Appellant advertised her property on Airbnb for a minimum of three nights, in violation of the Municipal Code.

Second, the City has a valid and strong interest in regulating the use of privately owned residential dwellings as short-term vacation rentals, to ensure the collection and payment of applicable transient occupancy taxes, and to minimize the negative secondary effects of short-term vacation rentals on surrounding residential neighborhoods. (*Sainez*, 77 Cal.App.4th at p. 1315 [securing obedience to code requirements through penalties is a legitimate exercise of the police power]; *Hale v. Morgan* (1978) 22 Cal. 3d 388, 398.)

Third, the fines imposed by the City for operating an unpermitted short-term vacation rental unit are comparable to those across similar municipalities. (City of Palm

**burke**

BURKE, WILLIAMS & SORENSEN, LLP

Honorable Chad W. Firetag
Presiding Judge of the Appellate Division
Honorable Matthew Perantoni
Judge of the Appellate Division
Honorable Marie E. Wood
Judge of the Appellate Division
Superior Court, County of Riverside
June 10, 2024
Page 5

Desert Municipal Code § 15.10.120(E) [$5,000 fine for first citation for operating a short-term rental unit without a valid short-term rental permit]; City of Palm Springs Municipal Code § 5.25.090(C) [$5,000 fine for operating a vacation rental without a vacation registration certificate]; City of Rancho Mirage Municipal Code § 17.30.270(D) [ $5,000 fine for operating a short-term rental].)

Further, "courts have rejected excessive fine challenges to civil penalties of several million dollars imposed under statutes authorizing daily penalties." (*Lent*, 62 Cal. App. 5th at 860, citing *Pacific Gas & Electric co. v. Public Utilities Commission* (2015) 237 Cal.App.4th 812, 866-867 [$14.35 million penalty against a gas pipeline operator for failing to report information]; *People v. Braum,* 49 Cal.App.5th at 359 [$5,967,500 penalty against a landlord who leased property to a marijuana dispensary operator in violation of local ordinance]; *Ojavan*, 54 Cal.App.4th at 398 [$9.5 million penalty against an investor for violations of Coastal Act].)

Fourth, Appellant has failed to demonstrate her inability to pay the administrative fine, nor has she submitted any evidence concerning her financial status. (*People v. Braum*, 49 Cal. App. 5th at 362.)

As such, the City respectfully requests this Court to find that the administrative fine is proportionate to Appellants violation.

Respectfully submitted,

BURKE, WILLIAMS & SORENSEN, LLP

*Eileen Ollivier*

Eric S. Vail, City Attorney
Algeria R. Ford
Eileen L. Ollivier
Attorneys for City of Cathedral City

ELO/tg



FAC PG 301

Honorable Chad W. Firetag
Presiding Judge of the Appellate Division
Honorable Matthew Perantoni
Judge of the Appellate Division
Honorable Marie E. Wood
Judge of the Appellate Division
Superior Court, County of Riverside
June 10, 2024
Page 6


## PROOF OF SERVICE

I Teresa Gonzalez declare that I am over the age of eighteen (18) and not a party to this action.  My business address is 1770 Iowa Avenue, Suite 240, Riverside, California 92507.

On **June 10, 2024**, I served the following document(s): **SUPPLEMENTAL BRIEFING** on the interested parties in this action by placing a true and correct copy of such document, enclosed in a sealed envelope, addressed as follows:

**( X )**       **BY EMAIL.**  I caused the document described above, to be sent via email (tgonzalez@bwslaw.com) in PDF format to the above-referenced person(s) at the email addresses listed.  [Per the Judicial Council Temporary Rule 12 re:  COVID-19 our firm will be serving all parties via email.  I will be serving the email address listed above.  Please advise if your office would like me to add anyone to the recipient list.]

Appellant Pro Se:                          Alessandra Montanaro
                                                      631 Amherst Drive
                                                      Burbank, CA  91504
                                                      Alessandra Montanaro
                                                      Telephone:  (818) 482-4009
                                                      E-mail:  desertcharm77@yahoo.com

Executed **June 10, 2024**, Riverside, California.


**( X )**            **(State)**        I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_Teresa Gonzalez_
_____
Teresa Gonzalez

Exhibit  <u>20</u>

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 30 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CORRINE MORGAN THOMAS; et al., | No. 23-15847 |
| Plaintiffs-Appellants, | D.C. No. 1:22-cv-05725-RMI |
| v. | |
| COUNTY OF HUMBOLDT, California; et al., | MEMORANDUM[*] |
| Defendants-Appellees, | |
| and | |
| VIRGINA BASS, Chair, Board of Supervisors, | |
| Defendant. | |

Appeal from the United States District Court
for the Northern District of California
Robert M. Illman, Magistrate Judge, Presiding

Argued and Submitted April 9, 2024
San Francisco, California

Before: PAEZ and SUNG, Circuit Judges, and FITZWATER,[**] District Judge.

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Sidney A. Fitzwater, United States District Judge for the Northern District of Texas, sitting by designation.

This putative class action arises out of Humboldt County's system of penalties and fees involving cannabis abatement. Plaintiffs—residents of Humboldt County—filed this action under 42 U.S.C. § 1983, alleging a number of constitutional claims against the County.[1] The district court dismissed all claims in their entirety on various grounds. We have jurisdiction under 28 U.S.C. § 1291. We reverse in part, affirm in part, and remand for further proceedings consistent with this disposition.

1.      We first conclude that Plaintiffs have standing to bring both their procedural and substantive due process claims. Accepting Plaintiffs' well-pleaded factual allegations as true and drawing all reasonable inferences in their favor, *see Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988), Plaintiffs have plausibly alleged that they received Notices of Violations (NOVs) for failure to comply with the County's cannabis abatement program and that the County imposed penalties against them under the County's administrative penalty scheme. As a consequence of these NOVs and penalties, Plaintiffs allege they have suffered emotional and psychological distress as well as significant financial uncertainty. Plaintiffs have thus alleged concrete injuries caused by the County's actions. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1109 (9th Cir. 2014) (finding emotional

---

[1]      In a separately filed opinion, we address Plaintiffs' claim that the County's system of penalties and fees violates the Eighth Amendment's Excessive Fines Clause.

distress cognizable); *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1117 (9th Cir. 2017)
(observing that "anxiety, stress, concern, and/or worry about [the plaintiff's]
diminished employment prospects" are cognizable injuries).  In addition, Plaintiffs
have plausibly alleged that they applied for land-use permits but were denied as a
result of the County's blanket policy of refusing to issue permits to people facing
cannabis-abatement orders.  This is also sufficient to establish a concrete injury for
standing purposes.  *See Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara*,
344 F.3d 822, 830 (9th Cir. 2003).

     **2.**     Plaintiffs also have standing to maintain their claims under the
unconstitutional-conditions doctrine.  Plaintiffs allege that the County has
conditioned land-use permits unrelated to cannabis or cannabis abatement on the
settlement of separate (and contested) cannabis-related violations.  Plaintiffs
further allege that such leveraged settlements, whether accepted or not, would
require them to pay penalties unrelated to the land-use permits, pay administrative
fees unrelated to the land-use permits, and waive their rights to an administrative
hearing to contest an NOV.  Under *Koontz v. St. Johns River Water Mgmt. Dist.*,
570 U.S. 595 (2013), this form of conditioning gives rise to a "constitutionally
cognizable injury."  *Id.* at 607.

     **3.**     Turning to the merits, Plaintiffs allege that the County's system of
imposing administrative penalties and fees for purported cannabis-related

violations deprived them of procedural due process.  "To evaluate a procedural due process claim, we weigh the [factors set out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)]: '(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements.'"  *Diamond S.J. Enter., Inc. v. City of San Jose*, 100 F.4th 1059, 1069 (9th Cir. 2024) (quoting *Yagman v. Garcetti*, 852 F.3d 859, 864 (9th Cir. 2017)).

As to the first factor, Plaintiffs have plausibly alleged that cognizable private interests are at stake, including both their finances and the full use and enjoyment of their property.  *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571-72 (1972); *Harris v. Cnty. of Riverside*, 904 F.2d 497, 503 (9th Cir. 1990).  In addition, Plaintiffs allege that these interests are significant.  For example, Plaintiffs allege that the penalties imposed against them can reach millions of dollars.  The minimum penalties accrued by Plaintiffs and other responsible parties are also significant, especially when compared to the average income of the residents subject to the County's cannabis regulatory scheme.  *Cf. Nozzi v. Hous. Auth. of Los Angeles*, 806 F.3d 1178, 1193 (9th Cir. 2015).  In combination with the alleged deprivation of access to land-use permits for those with outstanding cannabis-related NOVs, this impact suggests the existence of substantial private

interests.

As to the second factor, taking Plaintiffs' allegations in the amended complaint as true, the risk of erroneous deprivation through the County's administrative procedures weighs strongly in Plaintiffs' favor. Plaintiffs allege a slew of procedural irregularities that heighten the probability of an erroneous deprivation. These include, for example, (1) vague notices, *cf. Nozzi*, 806 F.3d at 1194, that fail to describe the specific location of a violation, or the date on which the ten-day clock to appeal the violation begins to run; (2) the imposition of penalties and fees without a "reasonably reliable basis," *Yagman*, 852 F.3d at 864 (quotation omitted); *cf. Stypmann v. City & Cnty. of San Francisco*, 557 F.2d 1338, 1343 (9th Cir. 1977), both by charging property owners with violations based on unconfirmed, imprecise, or outdated satellite images and by holding property owners accountable for previous owners' cannabis-related violations, even when the violations were not properly recorded;[2] (3) undue delays in scheduling appeal hearings, *cf. United States v. Crozier*, 777 F.2d 1376, 1383-84 (9th Cir. 1985); and (4) potentially biased hearing officers, *cf. Yagman*, 852 F.3d at 865. These alleged deficiencies are likely to result in erroneous deprivations, and they are much more likely to do so than the procedures that were in place before the County enacted the

---

[2] Relatedly, Plaintiffs allege that the County does not record existing violations against the subject properties, thereby depriving subsequent purchasers of constructive knowledge of previous violations.

5

FAC PG 308

cannabis-abatement regulatory scheme challenged here.

Finally, Plaintiffs have plausibly alleged that there is no clear governmental interest in maintaining this administrative penalty system. Plaintiffs allege that the County's previous system was significantly different. The previous system gave property owners at least seventy-five days to abate violations. It also required a hearing before the Board of Supervisors, and the Board could not assess a penalty before such a hearing. And though the interests identified by the County— "environmental quality, residential quality of life, and fair competition with those who bear the burdens to operate in nascent legal market for cannabis"—are undoubtedly important, it is far from obvious how these interests are served by the County's imposing significant heavy penalties for vague alleged violations with minimal procedural safeguards. *Cf. Stypmann*, 557 F.2d at 1344.

In sum, we conclude that Plaintiffs have plausibly alleged that the County's system of administrative penalties violated their procedural due process rights. We therefore reverse the district court's dismissal of this claim.

    **4.**      Plaintiffs further allege that the County's system of penalties and fees violates their substantive due process rights. "A substantive due process claim involves the balancing of a person's liberty interest against the relevant government interests." *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1438 (9th Cir. 1996). Importantly, "the protection from governmental action

FAC PG 308

provided by substantive due process has most often been reserved for the vindication of fundamental rights." *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1261 (9th Cir. 1994). "Accordingly, where . . . the plaintiffs rely on substantive due process to challenge governmental action that does not impinge on fundamental rights, we do not require that the government's action actually advance its stated purposes, but merely look to see whether the government could have had a legitimate reason for acting as it did." *Id.* (internal quotation marks and citation omitted). In other words, to establish a substantive due process violation based on the County's procedures in the absence of an infringed fundamental right, Plaintiffs "must show the procedures are 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare.'" *Yagman*, 852 F.3d at 867 (quoting *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1058 (9th Cir. 2012)). "This is an 'exceedingly high burden.'" *Id.* (quoting *Samson*, 683 F.3d at 1058).

We conclude that Plaintiffs have plausibly alleged both a violation of a fundamental right and that the County lacks "any reasonable justification in the service of a legitimate governmental objective" in its enforcement of the cannabis abatement scheme. *Id.* (quoting *Samson*, 683 F.3d at 1058).

First, Plaintiffs have sufficiently alleged that the County has violated their fundamental due process right to a showing of personal guilt. *See Scales v. United*

7

*States*, 367 U.S. 203, 225 (1961). Plaintiffs rely on the doctrine that "[p]enalizing

conduct that involves no intentional wrongdoing by an individual can run afoul of

the Due Process Clause." *Rucker v. Davis*, 237 F.3d 1113, 1124 (9th Cir. 2001),

*rev'd sub nom. on other grounds Dep't of Hous. & Urb. Dev. v. Rucker*, 535 U.S.

125 (2002); *see also Sw. Tel. & Tel. Co. v. Danaher*, 238 U.S. 482, 490-91 (1915)

(similar). Plaintiffs' most compelling illustration of this violation is their

allegation, which we must accept as true, that the County institutes administrative

proceedings—resulting in the imposition of heavy fines—for facilitating the

cultivation of cannabis, even when it knows or should know that the party is not

responsible. For example, Plaintiffs allege that the County has repeatedly charged

new property owners with the cannabis-related offenses of previous owners,

thereby severing the administrative proceedings from individual culpability.

Second, Plaintiffs have adequately alleged that the County's administrative

penalty procedures are "clearly arbitrary and unreasonable, having no substantial

relation to the public health, safety, morals or general welfare." *Yagman*, 852 F.3d

at 867 (quoting *Samson*, 683 F.3d at 1058)).

The district court dismissed Plaintiffs' allegations as "implausible,"

underscoring that Plaintiffs "purchased properties with existing code violations."

This reasoning, however, ignores Plaintiffs' well-pleaded allegations that the

County does not record existing violations against the property, thereby depriving

8

subsequent purchasers of the most common method of learning about claims
against the property.

Moreover, the district court disregarded Plaintiffs' allegations that the
County imposed fees on the basis of violations *related to the cultivation of
cannabis*, even in cases where it knew or should have known that the current
landowners were not responsible for the underlying violation.  It is irrelevant that
Plaintiffs were aware of other property violations because the substantive due
process claims are based on the missing connection between the NOVs—which are
predicated on cannabis-related conduct—and Plaintiffs' lack of culpability.  Under
these circumstances, a practice of charging subsequent owners of a property with
the cannabis-based offenses of the previous owners cannot be said to have "any
reasonable justification in the service of a legitimate governmental objective."  *Id.*;
*see also Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1410
(9th Cir. 1989), *overruled on other grounds by Armendariz v. Penman*, 75 F.3d
1311 (9th Cir. 1996).

**5.**    Plaintiffs have also plausibly alleged that the County's procedure for
evaluating land-use permit applications violates the unconstitutional conditions
doctrine.  "[T]he unconstitutional conditions doctrine . . . vindicates the
Constitution's enumerated rights by preventing the government from coercing
people into giving them up."  *Koontz*, 570 U.S. at 604.  The Supreme Court has

9

specifically recognized a "special application" of this doctrine that "protects the Fifth Amendment right to just compensation for property the government takes when owners apply for a land-use permit." *Id.* This doctrine "prohibits the government from 'deny[ing] a benefit to a person because he exercises a constitutional right' or 'coercing people into giving [those rights] up' by imposing unconstitutional conditions on the use of private land." *Ballinger v. City of Oakland*, 24 F.4th 1287, 1298 (9th Cir. 2022) (citing *Koontz*, 570 U.S. at 604, 612). The Supreme Court has extended this prohibition to conditioning land-use permits on monetary exactions and mandatory grants of easements. *See Koontz*, 570 U.S. at 612. Such conditions are only permissible if there is a "'nexus' and 'rough proportionality' between the property that the government demands and the social costs of the applicant's proposal." *Id.* at 605-06 (citations omitted).

Here, Plaintiffs allege that the County violates the unconstitutional conditions doctrine by conditioning land-use permits on the settlement of cannabis-related violations unrelated to the desired permits. Indeed, Plaintiffs allege that the County has withheld land-use permits unrelated to cannabis abatement until Plaintiffs agree to settle their cannabis abatement cases. In so doing, Plaintiffs have alleged that the County aims to coerce property owners into accepting responsibility for violations they contend they did not commit, paying a significant fine related to such violations, and forgoing their right to an administrative hearing.

10

Such conditions, even those based on settlements, are not permitted under the unconstitutional conditions doctrine where there is no "close nexus" between the conditions imposed and the permits requested. *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1399 (9th Cir. 1991).

In discussing this claim, the district court ignored Plaintiffs' well-pleaded allegations and misapplied the law. For example, the court determined that no plaintiff had applied for a non-remedial land-use permit during the pendency of their cannabis-abatement case, even though Plaintiffs specifically allege otherwise. In addition, the district court's observations about the County's eventual acceptance of one such application—specifically, that it was ultimately "accepted and *granted* on the spot"—ignored Plaintiffs' allegations that (1) the County had previously expressed it would not do so until that plaintiff settled, and (2) the County eventually did so only after that plaintiff paid administrative fees related to the "baseless cannabis charges" the County had pursued against him and ultimately dropped. In failing to recognize that the conditioning of permits on the settling of unrelated violations is a viable constitutional claim, the district court disregarded the Supreme Court's admonition that "regardless of whether the government ultimately succeeds in pressuring someone into forfeiting a constitutional right, the unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise

FAC PG 313

them." *Koontz*, 570 U.S. at 606.

**6.**      Plaintiffs' last substantive claim alleges that the County's enforcement

of its system of administrative penalties and fees violates the Seventh Amendment.

As Plaintiffs acknowledge, however, this claim is not viable under our court's

selective-incorporation precedent.  *See Jackson Water Works, Inc. v. Pub. Utils.*

*Com.*, 793 F.2d 1090, 1096 (9th Cir. 1986).  Thus, we do not address the merits of

the claim, and we affirm the district court's dismissal.

**7.**      The district court erred in dismissing Plaintiffs' facial and as-applied

claims because they were not brought within two years of the law's enactment.

The statute of limitations begins to run when a plaintiff "knows or has reason to

know of the actual injury," not necessarily when a local ordinance was enacted.

*Scheer v. Kelly*, 817 F.3d 1183, 1188 (9th Cir. 2016) (quoting *Lukovsky v. City &*

*Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008)).

At the earliest, Plaintiffs' facial claims accrued when they received their

initial NOVs, the earliest point at which they had notice they were subject to the

County's cannabis abatement scheme.  Because at least some plaintiffs, for

example the Thomases, allege that they received their initial NOVs within two

years of filing suit, Plaintiffs have a timely facial challenge.[3]

---

[3]      Because at least the Thomases have a timely facial challenge, we do not
need to address whether the other named plaintiffs have timely facial challenges.

12

FAC PG 315

The district court also erred in categorically dismissing Plaintiffs' individual
as-applied claims as untimely.  First, at least four named Plaintiffs have alleged
timely as-applied procedural due process claims.  Plaintiffs allege that the County
violated their rights to procedural due process when it deprived them of property
interests—by imposing penalties and/or denying permits—with inadequate notice,
lack of probable cause, and lack of a timely opportunity to be heard.  The earliest
these claims could have accrued is when a deprivation occurred.  The Thomases
and Olson have plausibly alleged that they experienced unconstitutional
deprivations during the limitations period because they allege that the County
imposed baseless penalties on them during this period.  Although Graham's NOV
was issued (and daily penalties were imposed) well before the limitations period,
he alleges that during the limitations period, he was denied a permit due to his
abatement case.  Because he alleges that the abatement case had no reasonable
basis and that he was denied a timely hearing, he too has plausibly alleged a
procedural due process violation during the limitations period.

The remaining named Plaintiff, Glad, alleges a claim of undue delay in
scheduling a hearing about his alleged Code violation.  Glad would have known or
had reason to know of this injury, at the earliest, when the delay became
unreasonable.  Because we do not engage in fact-finding, determining whether the
delay became unreasonable during the limitations period is a task for the district

13

court on remand.  *See Supermail Cargo, Inc. v. United States*, 68 F.3d 1204,

1206-07 (9th Cir. 1995); *United States v. $8,850 in U.S. Currency*, 461 U.S. 555,

564-65 (1983) (describing four factors to measure constitutionality of delay under

the analogous, Sixth Amendment context).  We therefore reverse the district

court's dismissal of Plaintiffs' individual as-applied procedural due process

challenges as untimely.

Second, the Thomases, Olson, and Graham have alleged timely as-applied

substantive due process challenges for similar reasons as above.  Plaintiffs knew or

should have known of their substantive due process injuries at each point the

County imposed a penalty on them unrelated to any personal guilt, with each such

penalty being a new, distinctly actionable claim.  *See Flynt v. Shimazu*, 940 F.3d

457, 462 (9th Cir. 2019) ("When the continued enforcement of a statute inflicts a

continuing or repeated harm, a new claim arises (and a new limitations period

commences) with each new injury.").  During the limitations period, the Thomases

and Olson allege that the County imposed monetary penalties, and Graham alleges

that the County denied him a permit, because of alleged violations involving no

wrongdoing by them.  We agree with the district court, however, that Glad's

substantive due process claim is untimely.  He does not allege that the County

imposed any penalties—such as monetary penalties, the denial of a permit, or the

deprivation of the use of his land—during the limitations period.  We thus affirm

14

the dismissal of Glad's as-applied substantive due process claim but reverse as to
the other plaintiffs.

Third, Plaintiffs' as-applied unconstitutional conditions claims begin to
accrue when the County conditioned a permit on entering into such a settlement
agreement. The Thomases, Olson, and Graham allege that this happened to them
during the limitations period. Glad, however, does not allege ever seeking a land-
use permit, so he has not stated an individual claim to begin with. Thus, we affirm
the district court's dismissal of Glad's as-applied unconstitutional conditions claim
but reverse as to the other plaintiffs.

8.      Finally, we conclude that reassignment of this case on remand is not
warranted. "In determining whether reassignment is proper, we consider:
(1) whether the original judge would reasonably be expected upon remand to have
substantial difficulty in putting out of his or her mind previously-expressed views
or findings determined to be erroneous or based on evidence that must be rejected,
(2) whether reassignment is advisable to preserve the appearance of justice, and
(3) whether reassignment would entail waste and duplication out of proportion to
any gain in preserving the appearance of justice." *Evon v. L. Offs. of Sidney
Mickell*, 688 F.3d 1015, 1034 (9th Cir. 2012) (quoting *United States v. Arnett*, 628
F.2d 1162, 1165 (9th Cir. 1979)). "The first two of these factors are of equal
importance, and a finding of one of them would support a remand to a different

FAC PG 317

judge." *Id*. (quoting *United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 780
(9th Cir. 1986)).

Here, although the district court's dismissiveness of Plaintiffs' well-pleaded
allegations is cause for concern, we trust that the "original judge would
[not] . . . have substantial difficulty in putting out of his . . . mind
previously-expressed views or findings determined to be erroneous." *Id*. (quoting
*Arnett*, 628 F.2d at 1165). Reassignment upon remand is thus not warranted.

**REVERSED in part, AFFIRMED in part, and REMANDED.**

Appellants shall recover their costs on appeal.

FAC PG 319

Exhibit <u>21</u>

FAC PG 320



# REQUEST FOR JUDICIAL ADMINISTRATIVE RECORDS
## Under California Rules of Court, Rule 10.500

**Please use this form to request judicial administrative records from the Judicial Council of California, the Supreme Court of California, or a California Court of Appeal.**

*Please complete all fields of this form. Complete information allows us to ask you questions if needed and to send the correct records more quickly. For helpful information about requesting records, please visit the "Access to Records" page of the California Courts website at www.courts.ca.gov/publicrecords.htm.*

**Date:** 12/29/2023    **Name:** Joseph Miner

**Organization:** Realty Miracles

**Street Address:** PO Box 11650

**City:** Costa Mesa    **State:** CA    **Zip Code:** 92627

**Telephone Number:** 949-903-5051

**E-mail Address:** josephminer@gmail.com

**Please DO NOT use this form for:**
- Birth or death certificates;
- Name change records;
- Adoption records;
- Wills or trust records;
- Marriage or divorce records; or
- Conservatorship or probate records.

**If you want court case records,** please go directly to the court: www.courts.ca.gov/12267.htm

**We CANNOT provide legal advice** or perform legal research for you.

**Please describe below the records you are requesting.** *Attach additional pages if necessary.*

Pursuant to GC. 53069.4 (b)(3) the de novo procedure adjudicating an administrative citation is an "appeal" and a subordinate judicial duty. It appears these duties are being assigned to court commissioners.

Please provide the following records:

1. Any internal or public documents by judicial council on the proper procedure on adjudicating an administrative appeal in superior court. (Benchguide or similar?)

2. Any manual, reference, advisement guide that directs, instructs, advises, educates a court commissioner, a subordinate judicial officer, on how to adjudicate an administrative appeal to superior court under GC. 53069.4 and CCP. 85(c). CCP. 85-100

**Helpful Tips:**
- ✓ Be as specific as possible.
- ✓ Give the document name and date, if you can.
- ✓ If you cannot be specific, to help us search, please tell us:
  - why the record was created or why you want it;
  - the type of record you want (examples: a contract, Judicial Council report, report to the Legislature, quarterly financial statement, audit report, press release); and
  - a date range (example: "2020 to 2023").

**Will the records be used for a commercial, trade, or profit purpose?**

☑ NO    ☐ YES → *Advance payment of fees may be required to cover costs, for example, copying, postage, or records retrieval.*

**Please send your completed form to:**

*By e-mail:* PAJAR@jud.ca.gov    **OR**    *By mail:* Judicial Council of California Attention: PAJAR, Legal Services 455 Golden Gate Avenue San Francisco, California 94102

**ONLINE RESOURCES**

California Courts Online Self-Help Center: https://selfhelp.courts.ca.gov

Lists of law libraries and free resources, like self-help legal books in plain English: www.courts.ca.gov/1091.htm

Information about the Commission on Judicial Performance (CJP), which investigates complaints about judges: www.courts.ca.gov/5360.htm

Information about jury service: www.courts.ca.gov/juryservice.htm

FAC PG 321



# REQUEST FOR JUDICIAL ADMINISTRATIVE RECORDS
## Under California Rules of Court, Rule 10.500

**Please use this form to request judicial administrative records from the Judicial Council of California, the Supreme Court of California, or a California Court of Appeal.**

*Please complete all fields of this form. Complete information allows us to ask you questions if needed and to send the correct records more quickly. For helpful information about requesting records, please visit the "Access to Records" page of the California Courts website at www.courts.ca.gov/publicrecords.htm.*

**Date:** 1/12/2024    **Name:** Joseph Miner

**Organization:** Realty Miracles

**Street Address:** PO Box 11650

**City:** Costa Mesa    **State:** CA    **Zip Code:** 92627

**Telephone Number:** 949-903-5051

**E-mail Address:** josephminer@gmail.com

**Please DO NOT use this form for:**
- Birth or death certificates;
- Name change records;
- Adoption records;
- Wills or trust records;
- Marriage or divorce records; or
- Conservatorship or probate records.

**If you want court case records,** please go directly to the court: www.courts.ca.gov/12267.htm

**We CANNOT provide legal advice** or perform legal research for you.

**Please describe below the records you are requesting.** *Attach additional pages if necessary.*

I am requesting (1) public records regarding ZOOM and or WEBEX remote appearance in Superior Court. (2) cameras in the courtroom.

Please provide the following records:

1. The archival procedure for zoom and or webex remote appearances.

2. Manual or policy documents regarding the recording of courtroom audio or video recording of small claims, traffic, unlawful detainer, and administrative appeals in the Superior Court courtrooms in the 58 counties.

3. Documents, [A] a list of who maintains these audio and video files. [B] How long they are kept, [C] where they are kept, [D] and who has control of the files.

**Helpful Tips:**
- ✓ Be as specific as possible.
- ✓ Give the document name and date, if you can.
- ✓ If you cannot be specific, to help us search, please tell us:
  - why the record was created or why you want it;
  - the type of record you want (examples: a contract, Judicial Council report, report to the Legislature, quarterly financial statement, audit report, press release); and
  - a date range (example: "2020 to 2023").

**Will the records be used for a commercial, trade, or profit purpose?**

☑ NO    ☐ YES→ *Advance payment of fees may be required to cover costs, for example, copying, postage, or records retrieval.*

**Please send your completed form to:**

*By e-mail:* PAJAR@jud.ca.gov    **OR**    *By mail:* Judicial Council of California
Attention: PAJAR, Legal Services
455 Golden Gate Avenue
San Francisco, California 94102

**ONLINE RESOURCES**

California Courts Online Self-Help Center: https://selfhelp.courts.ca.gov

Lists of law libraries and free resources, like self-help legal books in plain English: www.courts.ca.gov/1091.htm

Information about the Commission on Judicial Performance (CJP), which investigates complaints about judges: www.courts.ca.gov/5360.htm

Information about jury service: www.courts.ca.gov/juryservice.htm

FAC PG 322



# REQUEST FOR JUDICIAL ADMINISTRATIVE RECORDS
## Under California Rules of Court, Rule 10.500

**Please use this form to request judicial administrative records from the Judicial Council of California, the Supreme Court of California, or a California Court of Appeal.**

*Please complete all fields of this form. Complete information allows us to ask you questions if needed and to send the correct records more quickly. For helpful information about requesting records, please visit the "Access to Records" page of the California Courts website at* www.courts.ca.gov/publicrecords.htm.

**Date:** 1/22/2024    **Name:** Joseph Miner

**Organization:** Realty Miracles

**Street Address:** PO Box 11650

**City:** Costa Mesa    **State:** CA    **Zip Code:** 92627

**Telephone Number:** 949-903-5051

**E-mail Address:** josephminer@gmail.com

**Please DO NOT use this form for:**
- Birth or death certificates;
- Name change records;
- Adoption records;
- Wills or trust records;
- Marriage or divorce records; or
- Conservatorship or probate records.

**If you want court case records,** please go directly to the court: www.courts.ca.gov/12267.htm

**We CANNOT provide legal advice** or perform legal research for you.

## Please describe below the records you are requesting. *Attach additional pages if necessary.*

GC. 53069.4 cases are being grossly adjudicated. 540 local agencies each make different law. 58 courts each treat them differently. Some courts treat them as small claims appeals. Others permit full discovery and a full trial. The system could not be more dysfunctional and less conforming. Citizens are being harmed. Worse yet these issues go to appellate divisions who simply support their own judge's gross errors. Rarely do these cases go to Court of Appeal and rarely does Court of Appeal permit transfer. Administrative citations (1,000,000 issued per year) are being abused. Injustice is being hidden through the limited civil judicial process.

I am requesting public records regarding:

1. Standardized manuals or instruction on how these cases are to be adjudicated.

2. Historical discussions or input advising or requesting input on changing or clarifying the law.

3. Any documents or information as to the limits of a subordinate judicial officer pursuant to (53069.4(b)(3) in these hearings. And, if a court is to consider its jurisdiction before assigning these cases to subordinate officers who lack jurisdiction because of a city's abuse of process or any other reason a court would not have jurisdiction.

4. Any information or documents at all that you have that would touch any one of these issues.

Thank you!

**Helpful Tips:**

✓ Be as specific as possible.

✓ Give the document name and date, if you can.

✓ If you cannot be specific, to help us search, please tell us:

- why the record was created or why you want it;
- the type of record you want (examples: a contract, Judicial Council report, report to the Legislature, quarterly financial statement, audit report, press release); and
- a date range (example: "2020 to 2023").

## Will the records be used for a commercial, trade, or profit purpose?

☑ NO    ☐ YES→ *Advance payment of fees may be required to cover costs, for example, copying, postage, or records retrieval.*

### Please send your completed form to:

*By e-mail:*
PAJAR@jud.ca.gov    **OR**

*By mail:*
Judicial Council of California
Attention: PAJAR, Legal Services
455 Golden Gate Avenue
San Francisco, California 94102

**ONLINE RESOURCES**

California Courts Online Self-Help Center: https://selfhelp.courts.ca.gov

Lists of law libraries and free resources, like self-help legal books in plain English: www.courts.ca.gov/1091.htm

Information about the Commission on Judicial Performance (CJP), which investigates complaints about judges: www.courts.ca.gov/5360.htm

Information about jury service: www.courts.ca.gov/juryservice.htm