1  Joseph Miner
   PO Box 11650
2  Costa Mesa, CA 92627
   Telephone:  (949) 903-5051;  Fax:  (949) 646-2794
3  Email Address:  josephminer@gmail.com

4          self-represented (pro se)

5

6

7                    **UNITED STATES DISTRICT COURT**
8                    **CENTRAL DISTRICT OF CALIFORNIA**

9

10  JOSEPH MINER, an individual,              Civil Action No. 8:24-cv-02793-CAS (E)

11           Plaintiff,                       Related: 8:22-cv-01043-CAS-MAA (stayed)

12           vs.                              Honorable Christina A. Snyder
                                              Senior United States District Judge
13  CITY OF DESERT HOT SPRINGS,
    CALIFORNIA, a municipal corporation;      Honorable Charles F. Eick
14                                            United States Magistrate Judge
    TUAN ANH VU, an individual, in his
15  investigative and administrative capacity;  OPPOSITION

16  PRESIDING JUDGE RIVERSIDE               PLAINTIFF'S OPPOSITION TO COURT
    COUNTY SUPERIOR COURT, Judith          DEFENDANTS' MOTION TO DISMISS
17  Clark in her official, executive, and   PURSUANT TO RULES 12(b)(1), 12(b)(6) OF
    administrative capacity;                THE FEDERAL RULES OF CIVIL PROCEDURE
18
    CHIEF EXECUTIVE OFFICER                 Declaration of Joseph Miner with exhibits
19  RIVERSIDE COUNTY SUPERIOR
    COURT, Jason Galkin, in his official,   Hearing Date: None
20  executive, and administrative capacity;
                                            Due: May 15, 2025 or earlier
21  DOE DEFENDANTS 1-20,

22           Defendants.

23

24

25

26

27

28

                                    1

**TABLE OF CONTENTS**

**I. INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**II FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**III THE LAW AND OPPOSITION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

   A. ROOKER-FELDMAN DOES NOT APPLY TO THIS ACTION . . . . . . . . . . . . . . . . . . 15

   B. THE ELEVENTH AMENDMENT DOES NOT APPLY TO THIS ACTION . . . . . . . . . 15

   C. THE COURT DEFENDANTS CONTROL JUDICIAL ASSIGNMENTS AND ARE
      PROPER DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

   D. PLAINTIFF HAS STANDING TO PURSUE HIS CLAIMS FOR PROSPECTIVE
      RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

   E. JUDICIAL IMMUNITY DOES NOT APPLY TO COURT DEFENDANTS . . . . . . . . . . 25

   F. THE CITY'S STATE COURT DISMISSAL MISCALCULATION . . . . . . . . . . . . . . . . 26

**IV CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**TABLE OF AUTHORITIES**

**Cases**

Acres Bonusing, Inc v. Marston, 17 F. 4th 901 - COA, 9th Circuit 2021 . . . . . . . . . . . . . . . . . . 17

Apple Inc. v. Vidal, 63 F. 4th 1 - COA, Federal Circuit 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Arcia v. Florida Secretary of State, 772 F. 3d 1335 - COA, 11th Circuit 2014 . . . . . . . . . . . . . . 24

Az Students'assoc. V. Az Bd. Of Regents, 824 F. 3d 858 - COA, 9th Circuit 2016 . . . . . . . . . . 16

Babbitt v. United Farm Workers Nat'l Union, 99 S. Ct. 2301 - Supreme Court 1979 . . . . . . . . 24

Bell v. City of Boise, 709 F. 3d 890 - COA, 9th Circuit 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Biden v. Nebraska, 143 S. Ct. 2355 - Supreme Court 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Burnham v. Superior Court of Cal., County of Marin, 495 US 604 - Supreme Court 1990 . . . . 10

Clapper v. Amnesty Intern. USA, 568 US 398 - Supreme Court 2013 . . . . . . . . . . . . . . . . . . . 23

Clyde Cheng V. Speier, COA, 9th Circuit 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Cooper v. Ramos, 704 F. 3d 772 - COA, 9th Circuit 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Crawford V. Hinds County Bd. Of Sup'rs, 1 F. 4th 371 - COA, 5th, 2021 . . . . . . . . . . . . . 24, 25

District of Columbia COA v. Feldman, 460 US 462 - Supreme Court 1983 . . . . . . . . . . . . . . . 13

Dept. of Commerce v. New York, 139 S. Ct. 2551 - Supreme Court 2019 . . . . . . . . . . . . . . . . 24

Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 US 280 - Supreme Court 2005) . . 13, 14

Ex parte Young, 209 US 123 - Supreme Court 1908 . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 25

Frame v. City of Arlington, 657 F. 3d 215 - COA, 5th Circuit 2011 . . . . . . . . . . . . . . . . . . . . . 24

Garduno v. Autovest LLC, 143 F. Supp. 3d 923 - Dist. Court, D. Arizona 2015 . . . . . . . . . . . 14

Hafer v. Melo, 502 US 21 - Supreme Court 1991 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Idaho v. Coeur d'Alene Tribe of Idaho, 521 US 261 - Supreme Court 1997 . . . . . . . . . . . . . . . 26

In re Navy Chaplaincy, 697 F. 3d 1171 - COA, Dist. of Columbia Circuit 2012. . . . . . . . . . . . 24

In re Perrone C., 603 P. 2d 1300 - Cal: Supreme Court 1979. . . . . . . . . . . . . . . . . . . . . . . . . . 18

Jovine v. FHP, Inc., 76 Cal. Rptr. 2d 322 - Cal: COA, 1998 . . . . . . . . . . . . . . . . . . . . . . . . . 7, 27

Jamgotchian v. Ferraro, 93 F. 4th 1150 - COA, 9th Circuit 2024 . . . . . . . . . . . . . . . . . . . . . . . 9

Kleidman v. Buchanan, No. 23-cv-1251-WQH-JLB, 2025 WL 755945 . . . . . . . . . . . . . . . . . . 14

Kolender v. Lawson, 461 US 352 - Supreme Court 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Lakin v. Watkins Associated Industries, 863 P. 2d 179 - Cal: Supreme Court 1993 . . . . . . . . . 17

Lance v. Dennis, 546 US 459 - Supreme Court 2006. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Lewis v. Clarke, 581 US 155 - Supreme Court 2017 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Los Angeles v. Lyons, 461 US 95 - Supreme Court 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

Lujan v. Defenders of Wildlife, 504 US 555 - Supreme Court 1992 . . . . . . . . . . . . . . . . . . . . . 23

Lujan v. National Wildlife Federation, 497 US 871 - Supreme Court 1990 . . . . . . . . . . . . . . . 24

Magassa v. Mayorkas, 52 F. 4th 1156 - COA, 9th Circuit 2022 . . . . . . . . . . . . . . . . . . . . . . . . 17

Martinez v. Winner, 771 F. 2d 424 - COA, 10th Circuit 1985. . . . . . . . . . . . . . . . . . . . . . . . . . 28

Miller v. Gammie, 335 F. 3d 889 - COA, 9th Circuit 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Munoz v. Superior Court of Los Angeles County, 91 F. 4th 977 - COA, 9th Circuit 2024 . . . . . 16

Nielson v. Utah Const. Co., 104 F. 2d 887 - Circuit COA, 9th Circuit 1939 . . . . . . . . . . . . . . . 13

Noel v. Hall, 341 F. 3d 1148 - COA, 9th Circuit 2003. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

O'Shea v. Littleton, 414 US 488 - Supreme Court 1974. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

People v. Berch, 29 Cal. App. 5th 966 - Cal: COA, 4th Appellate Dist., 3rd Div. 2018 . . . . . . . 10

People v. Coddington, 2 P. 3d 1081 - Cal: Supreme Court 2000 . . . . . . . . . . . . . . . . . . . . . . 15, 18

People v. Tijerina, 459 P. 2d 680 - Cal: Supreme Court 1969; . . . . . . . . . . . . . . . . . . . . . . . . . 18

Pierce v. Cantil-sakauye, COA, 9th Circuit 2016 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Pistor v. Garcia, 791 F. 3d 1104 - COA, 9th Circuit 2015 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Real v. City of Riverside, 115 Cal. Rptr. 2d 705 - Cal: COA, 2002. . . . . . . . . . . . . . . . . . . . . . 18

Rooker v. Fid. Tr. Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) . . . . . . . . . . . . . . 13, 15

Rumsfeld v. Forum for Academic and Inst. Rights, Inc., 547 US 47 Supreme Court 2006. . . . . 25

Susan B. Anthony List v. Driehaus, 573 US 149 - Supreme Court 2014 . . . . . . . . . . . . . . . . . . 23

Southern Pacific Trans. Co. v. City of Los Angeles, 922 F. 2d 498 - COA, 9th Circuit 1990 . . . 16

Thole v. Us Bank NA, 140 S. Ct. 1615 - Supreme Court 2020. . . . . . . . . . . . . . . . . . . . . . . . . . 23

VA Office for Prot. and Advoc. v. Stewart, 563 US 247 - Supreme Court 2011. . . . . . . . . . . . . 25

Verizon Md. Inc. v. Public Serv. Comm'n of Md., 535 US 635 - Supreme Court 2002 . . . . . . . 26

Wolfgram v. Wells Fargo Bank, 53 Cal.App.4th 43, 61 Cal.Rptr.2d 694, 698 (1997). . . . . . . . 27

Wolfe v. Strankman, 392 F. 3d 358 - COA, 9th Circuit 2004 . . . . . . . . . . . . . . . . . . . . . 16, 17, 27

Whole Woman's Health v. Jackson, 595 US 30 - Supreme Court 2021 . . . . . . . . . . . . . . . . . . . 16

**Federal Constitutional Provisions**

General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Eleventh Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 16, 19, 21, 25, 28

Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 21

U.S. Const. Art. III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

**Federal Statutes**

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**State Constitutional Provisions**

Article VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**State Statutes**

Cal. Civ. Proc. Code. § 85-100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Cal. Civ. Proc. Code § 391 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Gov. Code. § 53069.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Gov. Code, § 69508 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Gov. Code. § 72190 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 12

**Rules of State Court**

ROC § 205 (old) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ROC § 3.734 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ROC § 742 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ROC § 10.603 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

ROC § 10.741 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Other Authorities**

Virginia A. Phillips and Karen L. Stevenson, California Practice Guide: Federal Civil Procedure

Before Trial, Subject Matter Jurisdiction § 2:4946 (Rutter Group 2021). . . . . . . . . . . . . . . . . . 14

1967 Judicial Council Report, p. 89-91 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Joseph Miner v. Christina Newsom, et al.  Case No. 8:22-cv-01043-CAS . . . . . . . . . . . . . . . . . 6

# I. INTRODUCTION

1.    The tale of two federal lawsuits. While state defensive litigation was ongoing, **Miner I**, was brought  against the City of Desert Hot Springs ("City") and various City personnel to address a panoply of legal issues that arose from a warrantless search and seizure by the City, various constitutional violations, and dubious related code enforcement acts against Miner and his four parcel ranch, that had been annexed into the City limits.

2.    **Miner I**, (See Joseph Miner v. Christina Newsom, et al.,  Case No. 8:22-cv-01043 -CAS (MAAx) ("Miner I") is 'stayed' and is in the hands of Miner's attorney (Rosenblit). This Court stayed **Miner I** in March 2023, <u>because all parties had requested a stay</u> to allow the two separate trials de novo, regarding two unique and separate land parcels, and different legal issues, complete in the state court system. Then unforeseeable issues (FAC ¶1-14) occurred in state court mandating a second federal case be filed to address new unique legal issues, constitutional violations, and new parties that would need to be decided before **Miner I** could proceed in court.

3.    A second action was then filed by Plaintiff Miner in this Court. This case was filed after a <u>dismissal without prejudice in state court</u>, and <u>after it was determined by the appeal decision</u>, the adjudicator, an un-stipulated, clearly "green," court commissioner, was acting in a subordinate judicial capacity, <u>not as a judge</u> in the superior court case #CVPS2106001. Miner was not aware of these court practices, using commissioners, and constitutional issues when he entered the county limited civil courtroom. The Court defendants label the instant case **Miner II.**

4.    After experiencing more than fifty civil trials in his lifetime, and federal actions as long in duration as 12 years, having a good idea of how the court system works (or is supposed to work), had Miner been treated fairly, and been given a fair trial in the state case pursuant to the black letter - law, procedure and plain and clear text that establishes the law of the city ordinances, GC. §53069.4 and CCP. §85-100, Miner would not personally have experienced the gross, unlawful, and damaging inadequacies practiced in the Riverside County court system.

5.    Unfortunately (from Miner's personal experience) most defendants, when pro se, don't know ~ the law, procedures, or that their civil rights are even being violated. The life long sanctions imposed on Miner, by a "green" non-judge with no judicial power, over these

1  unjustified issues, are damaging, serious, renew daily and are, at this point, permanent. Its

2  shocking that this fact pattern could even happen when vigorously opposing a city ticket.

3      6.    After researching significant law, finding it was grossly and inconsistently applied

4  throughout the state, and consulting with multiple legal professionals, Miner believed the judicial

5  officer lacked subject matter jurisdiction and judicial powers. All existing California law and

6  case law points to the fact a commissioner may not act as a judge without stipulation of parties

7  litigant. This county court system conveniently ignores the plain text of the law, and believes it

8  can violate the constitutional protections of US citizens with impunity.

9      7.    It should be made clear here that limited civil cases, when appealed are heard in

10  an Appellate Division. The Appellate Division is comprised of the managing judges in the same

11  Riverside County superior court system. The same judges who place and permit subordinate

12  judicial officers to unlawfully act as judges, also hear and rule on the appeals. It's a closed

13  system with only aberrational review. A party cannot directly take a limited civil case to the

14  Court of Appeal, a distinctly separate judicial entity for review and true scrutiny. Case after case

15  in the review court above, the California Court of Appeal, make clear party stipulation is

16  mandate for an SJO to act as a judge. (See Jovine v. FHP, Inc., (1998) 76 Cal. Rptr. 2d 322).

17      8.    The commissioner had wilfully and falsely acted as a superior court judge.

18  Despite Miner's best legal efforts to object orally, and file non stipulations per law, the 'green'

19  SJO 'assigned to the case' unconstitutionally remained in control and without any judicial

20  experience that amounted to more than hours, or civil or administrative judicial law training,

21  ruled on issue after issue, all while he lacked judicial authority. The case was assigned to his

22  court room (PS4) and he was 'assigned the case for all purposes.' Coram non judice.

23      9.    In the end, State case CVPS2106001 was dismissed without prejudice in trial

24  court. There was judgment on the merits. No prior case exists against Court defendants.

25      10.    Plaintiff Miner chose to appeal the judgment for case CVPS2016001, as well as

26  an order declaring him a vexatious litigant (as the 'true' defendant in the first instance), to the

27  Superior Court's Appellate Division to CLARIFY the acts of the commissioner; i.e. whether he

28  was acting as a superior court judge, temporary judge, or acting as a plain vanilla subordinate

judicial officer. It appears Miner was declared a vexatious litigant because of the commissioners improper assignment, and his mis-understanding with what a GC. §53069.4 limited civil case is. The point Miner argues is lack of jurisdiction. The ongoing court policy is the root issue.

11.    There was no warning or notice the subordinate judicial officer would act as a judge. The SJO had never requested a stipulation ('consent') to act as a judge, and Miner had never stipulated ('given consent') to permit the commissioner to act as a judge. The result of Miner's non stipulation was that the commissioner lacked authority to "hear and determine" all substantive issues within the case, including the demurrer, and all contested motions that "led up" him declaring Miner a vexatious litigant, in an ancillary proceeding, based the City's motion, who lacked legal standing (as the true plaintiff) to even file such a motion. These issues violated Miner's federal constitutional rights to a fair trial, due process, and equal protection.

12.    While in SJO status,  and 'allegedly' unlawfully, without jurisdiction, the SJO ruled on a multitude of motions and associated issues he had no power (jurisdiction) to rule on. The City used these unlawful rulings (lack of jurisdiction) as the foundation and basis for it motion to declare defendant Miner a vexatious litigant.

13.    Magically, in the very same courtroom, in a separate ancillary court session, the SJO declared defendant Miner a vexatious litigant. He imposed a security payment on Miner to continue to defend himself ~ where according to the Appellate Division he acted as a judge. Then he immediately returned to SJO status and continued to rule against Miner as a subordinate judicial officer, in the very same courtroom, just minutes later, without changing his robe. **These judicial officer acts were beyond convoluted.**

14.    In November 2023, the Appellate Division of the Superior Court issued a per curium Opinion which addressed the vexatious litigant order and clarifying that Honorable Arthur C. Hester, III, adjudicating the case was not acting in the capacity of a judge in the trial of case CVPS2016001. The judgment of dismissal without prejudice was not addressed in the decision and most of the appeal arguments ignored.

15.    The Appellate Division's 'motivated reasoning' utterly failed in its Opinion explaining how a subordinate judicial officer could act as a subordinate officer one minute, and

five minutes later, again with no notice, no request for stipulation from the commissioner, and no stipulation by parties litigant, and no consent or stipulation on record, act as a temporary superior court judge. Magically Miner was converted from 'label' defendant to 'label' plaintiff, and the un-stipulated SJO was converted to 'label' judge, then back to SJO ~ these instant labels justified every act. These are the facts. Miner does not label this as err, error, or request review.

16.    No state proceedings currently exist. Rather than wasting this court's valuable time and resources, Plaintiff filed this action in December 2024 complaining of the new unique constitutional legal issues that have resulted from the acts taken by the commissioner, the conclusions of the Appellate Division, and the concrete facts, as echoed by the Appellate Division in its own Opinion ~ there was no state court judge that heard and determined the case.

17.    When the Appellate Division correctly identified the fact that the commissioner was not acting as a judge (FAC Dkt 6-1: #540). The Appellate Division's assessment (unwittingly) tilted everything in Miner's favor. The law seems clear that the commissioner lacked judicial powers in both superior court cases and all rulings, decrees, judgments and orders against Miner.

18.    Miner asserts lack of jurisdiction, not proper jurisdiction and legal error. The SJO lacked judicial authority to "hear and determine' the two separate limited civil state cases. Per federal case law Miner may now have the case and constitutional defenses heard in federal court. (Jamgotchian v. Ferraro, 93 F. 4th 1150 - Court of Appeals, 9th Circuit 2024).

19.    Miner expected this case, **Miner II**, to be instantly assigned to Honorable Judge Christina Snyder, which it has been. When Miner II has been decided by this court there may be a completely different posture for adjudicating the allegations in Miner I. (Chicken and the egg)

20.    Miner contends the state court judgment of dismissal is void abinito, but that is an issue to be addressed another day. Miner does not 'complain' of this issue as fact in the instant federal complaint. This is the short history of why these unconstitutional court assignments, and law must be clarified, cured, and Miner be given prospective relief.

21.    Apparently, the state Court's defendants' counsel hopes this court will dismiss this case without comprehensively reading every word of the pleadings, exhibits, law, and recent

decisions presented by Plaintiff. The court must apply the issues and inferences liberally ~ and most favorable to Miner, the non moving party, who is currently pro se. The instant complaint is the first complaint served on any party and can be amended to correct any pleading defect, deficiency including vague or erroneous text. It should be viewed as the initial complaint.

22.    The facts and law are on Miner's side. Argue as they may, the Court's counsels' arguments fail on all counts. Facts are mis-stated and categorically false statements made in defendants' motion are insulting. Again we fend off gross mis-characterizations, false facts, false statements, and false labels.

23.    The FAC allegations are that the presiding judge (responsible party) and or administrator (see rules of court), (or automated computer system determined through discovery), in a non judicial act, directs or <u>assigns categories of cases to courtrooms</u>, where subordinate judicial officers are assigned and preside. (ex 1, decl. Hester)

24.    Assigning subordinate judicial officers, who are not judges, to adjudicate and issue judgments in limited civil actions, for all purposes, without <u>stipulation of the parties litigant</u>, is in violation of law. (People v. Berch, (2018) 29 Cal. App. 5th 966, 975-976; Burnham v. Superior Court of Cal., County of Marin, 495 US 604 - Supreme Court 1990 p. 609.)

## II FACTS

25.    Despite the Court defendant's twists and mis-characterization of the facts and law, listed below are the initial facts as alleged in the instant complaint.

26.    Miner's allegations are that a state court presiding judge who assigns cases, or maintains a policy to assign cases, in some way, either through a subordinate or through a computer system, is making general assignments for all purposes to subordinate judicial officers who lack jurisdiction over the cases. This is a constitutional dilemma. These issues must be addressed to preserve the integrity of the judicial system.

**A. The Complaint's (FAC) Salient Facts**

•    Miner "was issued a citation for the north land parcel (APN 657-220-005)" (FAC ¶33);

•    Miner "paid one fee in advance just to file an administrative appeal" (FAC ¶75);

•    Miner "never received the administrative hearing" (FAC ¶75);

- Miner '<u>requested</u>' a trial de novo in superior court" (FAC ¶39);

- Miner "orally requested a judge in open court" (FAC ¶44);

- "Per law, with obvious repetitive non-stipulations, Miner did all that he could do to secure a judge. Non stipulating clearly became futile" (FAC ¶53);

- "Miner then attempted to remove the commissioner. The commissioner filed a declaration stating he was '<u>assigned the case for all purposes</u>' and refused to recuse himself." (FAC ¶53);

- "No judge oversaw any act, decision, or ruling the non-stipulated SJO made. (FAC ¶54);

- "The SJO dismissed the trial de novo case without prejudice" (FAC ¶75);

- Miner **"seeks prospective declaratory and injunctive relief against the Court defendants, not damages or retrospective relief"** (FAC ¶12);

- "As a proximate result of the foregoing acts of City defendants, and each of them, plaintiff has suffered extreme hardship and damages, which damages include, but is not limited to, economic damages, according to proof at trial, but no less than $2,000,000.00, **and to appropriate declaratory and injunctive relief against all the defendants** (FAC ¶332)

- PRESIDING JUDGE RIVERSIDE COUNTY SUPERIOR COURT, Judith Clark in her official, executive, and administrative capacity; (p 1)

- CHIEF EXECUTIVE OFFICER RIVERSIDE COUNTY SUPERIOR COURT, Jason Galkin, in his official, executive, and administrative capacity; (p 1)

- "Superior court defendant officials are sued in their administrative, executive, and official capacities." (FAC ¶23)

- "A code officer opened code case 21-566. Officer Tiyler Messer late changed the case number to 21-985. On August 18, 2021 officer Messer issued administrative citation #27948D listing five separate allegations or which four were designated as "public nuisances" (FAC 240)

- The citation was issued against land parcel APN 657-220-005 aka 66381 Dillon Road, Desert Hot Springs, CA 92240 (Ranch). Miner's ranch land area is comprised of 4 separate parcels of land containing about 5 acres or in excess of 200,000 sf. The perimeter is fenced and gated. Miner's 6' fenced ranch land area is larger than the entire 4+ acre square block

site for the U.S. district courthouse at 1st St. and Hill St., Los Angeles, CA. (FAC 241)

- There was no judgment on the merits as to the issues in Riverside County court case **CVPS2106001**. (FAC ¶166)

- Miner was injured (FAC ¶1, 4, 13, 30, 38, 133, 206, 209, 210, 218, 220, 221, 222, 239, 250, 251, 253, 261, 262, 266, 277, 290, 308, 322)

- In the Riverside County limited civil action (CVPS2106001) Miner was listed as Defendant and Appellant (ex 11). (FAC ¶44)

- "As stated, the case was dismissed without prejudice" (FAC ¶166)

**B. Misleading Statements and Mis-characterizations by Court Defendants**

27.    Defendants' motion is littered with false and mis-characterized statements. As an example see page 8, ln 19-21: "At the time the Court stayed the case in Miner I, the Honorable Arthur C. Hester, III, Commissioner of Riverside County Superior Court, had entered a judgment in favor of the City." **This statement by defendants is materially false to this case.**

28.    This statement is categorically false as are many throughout the motion. "There was no judgment on the merits as to the issues in Riverside County court case **CVPS2106001**." (FAC ¶166)), "The SJO dismissed the trial de novo case without prejudice" (FAC ¶75). Miner refuses to waste time and white space to correct all of defendants' wilful errors. The intertwined shotgun homogenized style boiler plate motion with its false statements and mis-characterizations is difficult to follow and dissect for opposition.

### III THE LAW AND OPPOSITION

29.    Miner addresses and opposes each of Court defendants claims in the order argued by Court defendants. Plaintiff's allegations hover around the administrative duties of the presiding judge of superior court and assignment of cases for trial. Miner does not challenge the constitutionality of the GC. §53069.4 statute per se, but contends a specific clause (b)(3) is mis-interpreted and mis-applied by Riverside County. (See defendants Dkt Page ID #:1043). Plaintiff could add the California Attorney General as a defendant and challenge the constitutionality of the vague statute to preserve the action, but that should not be necessary.

30.    This aspect of the case is about a California presiding judge, California judicial

1  rules, California case law, and the presiding judge's administrative assignment of subordinate

2  judicial officers in general assignments to act as superior court judges in violation of the US

3  constitution, fourteenth amendment, state constitution article VI, sections 21 & 22 , state statutes

4  §72190 and §259a, §53069.4(b)(3) and numerous historical case law holdings. In essence the

5  general assignment of a non judge to act with power of a judge violates many laws.

6  **A. ROOKER-FELDMAN DOES NOT APPLY TO THIS ACTION**

7       31.    The Court's decision in Exxon Mobil Corp. v. Saudi Basic Industries Corp.

8  restored Rooker-Feldman to its original boundaries. Exxon Mobil Corp. v. Saudi Basic Industries

9  Corp., 544 US 280 - Supreme Court 2005. The doctrine occupies "narrow ground" and is

10  "confined to cases of the kind from which the doctrine acquired its name"—that is, Rooker and

11  Feldman. Id. at 284, 125 S.Ct. 1517; Rooker v. Fid. Tr. Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed.

12  362 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206

13  (1983). Those cases held that state court litigants do not have a right of appeal in the lower

14  federal courts; they cannot come to federal district courts "complaining of injuries caused by

15  state-court judgments rendered before the district court proceedings commenced and inviting

16  district court review and rejection of those judgments."[1] Exxon Mobil, 544 U.S. at 284, 125

17  S.Ct. 1517.

18       32.    **Only when a losing state court litigant calls on a district court to modify or**

19  **"overturn an injurious state-court judgment" should a claim be dismissed under**

20  **Rooker-Feldman**; district courts do not lose subject matter jurisdiction over a claim "simply

21  because a party attempts to litigate in federal court a matter previously litigated in state court."

22  Exxon Mobil, 544 U.S. at 292-93, 125 S.Ct. 1517. Nor is Rooker-Feldman "simply preclusion by

23  another name." Lance v. Dennis, 546 U.S. 459, 466, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006).

24       33.    Only the Supreme Court can "reverse or modify" state court judgments; neither

25  district courts nor the circuits can touch them. An injunction is incidental to relief which is

26  clarification of the law. (Nielson v. Utah Const. Co., 104 F. 2d 887 - Circuit Court of Appeals,

27  9th Circuit 1939).

28       34.    "Rooker-Feldman distinguishes between "attacking the decision of a state court"

and "attacking an adverse party's actions in obtaining and enforcing that decision"). ...

**"Therefore, the "inextricably intertwined" test is never triggered and Defendants' arguments based on that test are incorrect..."** "This circuit has emphasized that [o]nly when there is already a forbidden de facto appeal in federal court does the inextricably intertwined test come into play.") (Rooker-Feldman distinguishes between "attacking the decision of a state court" and "attacking an adverse party's actions in obtaining and enforcing that decision"). See Garduno v. AUTOVEST LLC, 143 F. Supp. 3d 923 - Dist. Court, D. Arizona 2015. Citing  Noel v. Hall, 341 F. 3d 1148 - Court of Appeals, 9th Circuit 2003; Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 US 280 - Supreme Court 2005); Cooper v. Ramos, 704 F. 3d 772 - Court of Appeals, 9th Circuit 2012; Bell v. City of Boise, 709 F. 3d 890 - Court of Appeals, 9th Circuit 2013.

35.     Miner's complaint is clear in its attack and how Miner was injured (FAC ¶1, 4, 13, 30, 38, 133, 206, 209, 210, 218, 220, 221, 222, 239, 250, 251, 253, 261, 262, 266, 277, 290, 308, 322). Miner does not request review and reject or attack the judgment or order.

**Rooker-Feldman has four elements:**

[1] the federal court plaintiff must have lost in state court; [2] the plaintiff must complain of injuries caused by the state court judgment; [3] the plaintiff must be asking the district court to review and reject that judgment; and [4] the state court judgment must have been rendered before the district court proceedings commenced (i.e., Rooker-Feldman has no application to federal court suits proceeding in parallel with ongoing state court litigation).

Virginia A. Phillips and Karen L. Stevenson, California Practice Guide: Federal Civil Procedure Before Trial, Subject Matter Jurisdiction § 2:4946 (Rutter Group 2021).

36.     Plaintiff's claims are not barred and defendants analysis of Kleidman is correct. See Kleidman v. Buchanan, No. 23-cv-1251-WQH-JLB, 2025 WL 755945, at *13 (S.D. Cal. Mar. 19, 2025) (holding that "general constitutional challenges to California court 'system[s] and practice[s]' are not barred by Rooker-Feldman because they do not require the Court to review a judicial decision in a particular case). The state case here was dismissed without prejudice..

37.     Miner is not a state court loser (which does not apply any longer pursuant to Judge

14

Fletcher of the 9th circuit), the case against Miner was dismissed without prejudice. Miner does

not request review of the dismissed action. Miner complains of the convenient mis-interpretation

of the law which was elevated to a constitutional due process, equal protection and fair trial

issues at case initiation, long before the case was heard or dismissed.

38.     The state case at issue CVPS2106001 was dismissed without prejudice. (ex Dkt

27-1, #993) **Court defendants fail to cite a single case in the entire federal court system**

**where Rooker Feldman was applied to a <u>judgment of dismissal without prejudice</u>**. Miner's

first amended complaint (FAC) does not contain the elements required of a Rooker-Feldman

dismissal nor does Miner's defense of the city's dismissed state court action apply to this

situation.

39.     Here Miner does NOT require this court to review any judicial decision. Miner

attacks the underlying constitutional issues, not the judgment or orders. Law is clarified routinely

without affecting previous cases or holdings. (Miller v. Gammie, 335 F. 3d 889 - Court of

Appeals, 9th Circuit 2003)

40.     Instead of seeking relief from prior state court judgments, Miner seeks declaratory

and injunctive relief against the future Riverside court general assignments of subordinate

judicial officers to act as judges <u>without the express and knowledgeable stipulation</u> (consent) of

party litigants. Rooker Feldman does not apply. Party stipulation is required by law (ex 2.

41.     It is a reasonable request and argument that a defendant have express notice, and a

meaningful and express opportunity in the courtroom to reject a non judge from adjudicating

their limited civil case. Miner contends that is already the law in California.

**B.  THE ELEVENTH AMENDMENT DOES NOT APPLY TO THIS ACTION**

42.     <u>Miner does not sue in judicial capacity</u>. Assignment of cases <u>under California law</u>

is an administrative function of the court: *"The assignment of cases for trial is among the*

*administrative responsibilities of the court. (See Gov. Code, § 69508; Cal. Rules of Court, rule*

*205.) (People v. Coddington, 2 P. 3d 1081 - Cal: Supreme Court 2000 .p. 574)*

43.     The presiding judge and administrative officer, sued in their official, executive,

and administrative capacity, are proper defendants in this action. The text of the law is already

clear. Gov. Code §53069.4(b)(3) does not mention the critical text "hear and determine" which places the SJO in a position of a fact finder, not a decider. The Legislature was well aware of the requirements of stipulation of parties litigant (ex 2). To act as decision maker, a stipulation of the parties litigant would be mandatory. Rather than repeat the arguments made Miner refers the court to his opposition to City defendants motion to dismiss Dkt #27 and the FAC dkt #6. Both filings significantly address these issues.

{"Suits against state officials in their official capacities seeking prospective injunctive relief for ongoing and continuous violations of federal law are not barred by the Eleventh Amendment. The Ex parte Young exception applies when the plaintiff names an individual state official. See S. Pac. Transp. Co. v. City of L.A., 922 F.2d 498, 508 (9th Cir. 1990). We have permitted plaintiffs leave to amend to conform their pleading with Young, see Ariz. Students' Ass'n v. Ariz. Bd. of Regents, 824 F.3d 858, 865-66 (9th Cir. 2016)." (See Steshenko V. Board of Trustees of Foothill-de Anza Community College District, Dist. Court, Nd California 2025)}

{"We held that the Eleventh Amendment barred suit against the state entities. Id. at 364. But for the individual state-court justices, **we held that the Ex parte Young exception applied—meaning that the Eleventh Amendment did not bar claims for prospective and injunctive declaratory relief against them in their official capacities.** Id. at 365." (See Munoz v. Superior Court of Los Angeles County, 91 F. 4th 977 - Court of Appeals, 9th Circuit 2024)}

{"Since Wolfe also sued Chief Justice George in his administrative capacity as Chair of the Judicial Council, we conclude that dismissal is not warranted on the basis of judicial immunity." (See Wolfe v. Strankman, 392 F. 3d 358 - Court of Appeals, 9th Circuit 2004)}

**Ex parte young**

44.    Miner notes that Whole Woman's Health v. Jackson, 595 US 30 - Supreme Court 2021 (Dkt Page ID #:1049:ln 16-24) does not apply and is distinguishable. Miner does not ask this court to enjoin a state court from enforcing a legal state law that is violation with federal law.

Miner requests this court to uphold state law, clarify the text of a clause in state law, and enjoin a presiding judge in a single county court from mis-applying a state law which is violating federal law and the Constitution. The text of the Supreme Court holding is very precise in Whole Woman's Health and has no application here.

45.    This court should take note Miner attempted to appeal ~ but it should be noted [with emphasis] the Appellate Division (same judges of superior court) absolutely denied[1] Miner's ability to appeal and <u>clarify the law and jurisdiction of the SJO in state court</u>. There is no state court remedy for that denial (FAC ¶177-181). The blackhole of being labeled a vexatious litigant.

46.    Judges are sued in their individual, official and administrative capacities on a regular basis.

{"Chief Justice Cantil-Sakauye, sued in her administrative capacity as Chair of the Judicial Council of California, is a proper defendant under the Ex parte Young exception to sovereign immunity." Wolfe v. Strankman, 392 F.3d 358, 365-66 (9th Cir. 2004)."

(See Pierce v. Cantil-sakauye, Court of Appeals, 9th Circuit 2016)}

{"Sovereign immunity does not bar suits seeking to impose individual liability on government officials. Lewis, 581 U.S. at 162-63; Magassa v. Mayorkas, 52 F.4th 1156, 1162 (9th Cir. 2022); Acres Bonusing, 17 F.4th at 908. "'Officers sued in their personal capacity come to court as individuals,' and the real party in interest is the individual, not the sovereign." Lewis, 581 U.S. at 162-63 (quoting Hafer v. Melo, 502 U.S. 21, 27 (1991) (brackets omitted)). The question, then, is whether the plaintiff's suit is properly characterized as an individual capacity suit, or one that is really against the sovereign.

(Clyde Cheng V. Speier, Court of Appeals, 9th Circuit 2023)}

"In deciding whether the sovereign is the real party in interest, "[t]he critical question is

---

[1] An prefiling order denying a vexatious litigant's request to file new litigation is not among the appealable orders listed in section 904.1. It is not a post judgment order because the order does not involve issues different from those underlying the judgment, and it does not involve enforcement to stay issues. (Lakin v. Watkins Associated Industries (1993) 6 Cal.4th 644, 651.)

`whether the remedy sought is truly against the sovereign.'" Acres Bonusing, 17 F.4th at 908 (quoting Lewis, 581 U.S. at 162)). **Importantly, this does not mean that sovereign immunity applies whenever government officials "are sued for actions taken in the course of their official duties." Id. at 910 (quoting Pistor v. Garcia, 791 F.3d at 1112). ..."** (Clyde Cheng V. Speier, Court of Appeals, 9th Circuit 2023)}

47.    Counsel confuses conflates and mis-states state law with federal law. Under state law and rules of the court the general assignment of cases in an administrative function.

48.    Additionally, this is not about assigning a specific judge to a specific case for a specific reason, this is about arbitrary assignment of administrative de novo trials (and other limited civil cases such as unlawful detainers) to commissioners, in Miner's case to Palm Springs courtroom PS4, a Palm Springs courtroom that serves the nine cities of the Coachella Valley.

49.    General assignments of subordinate judicial officers to act as judges is in violation of rules of the court, state law, federal law, and common law. It is a known policy of this court.

50.    The presiding judge's general assignment of cases for trial is an administrative function. "The assignment of cases for trial [under California law] is among the administrative responsibilities of the court. (See Gov. Code, § 69508; Cal. Rules of Court, rule 205.)" (See People v. Coddington" 97 Cal.Rptr.2d 528,2 P.3d 1081,23 Cal. 4th 529 - Cal: Supreme Court 2000" Also see Rules 3.734, 10.603, 10.741, 742 (Under (b)(4), the test for the appearance of impropriety is whether a person aware of the facts might entertain a doubt that the judge would be able to act with integrity, impartiality, and competence. Commissioners, upon stipulation, are temporary judges (Real v. City of Riverside, 115 Cal. Rptr. 2d 705 - Cal: Court of Appeal, 4th Appellate Dist., 2nd Div. (2002)). This County has been in trouble before.

51.    There are nine categories of subordinate judicial officers, each may perform subordinate judicial duties; none have the authority to act as a judge without stipulation and cannot be 'assigned' (general assignment) for all purposes to a court room or a case without stipulation of the parties (See In re Perrone C., (1979 ) 26 Cal.3d 49, 51(similar issues); People v. Tijerina (1969) 1 Cal.3d 41, 48;) (ex 1, declaration of commissioner Arthur Hester)

52.    In re Perrone C., (1979 ): "(See 1967 Judicial Council Report, p. 89. ex 2) Both

before and after the 1966 revision of article VI, however, **a stipulation of the parties was constitutionally required for one not occupying the office of judge to serve as a temporary judge**." (ex 2, excerpts from 1967 Judicial Council Report)

53.     Miner does not attack the entire statute. Miner requests judicial clarification of the words and meaning of a single clause within the statute.

54.     The Court defendant's motion is vague and confusing. **City defendants have waived and forfeited a claim as to what state court case it is referring to. In its 23 page missive it fails to identify a single state court case.** The Eleventh Amendment does not bar this claim against the Court defendants in individual, official and or administrative capacity.

**C. THE COURT DEFENDANTS CONTROL JUDICIAL ASSIGNMENTS AND ARE PROPER DEFENDANTS**

**California rules of The Court**

Rule 10.603. Authority and duties of presiding judge

https://courts.ca.gov/cms/rules/index/ten/rule10_603

(a) General responsibilities

**The presiding judge is responsible, with the assistance of the court executive officer**, for leading the court, establishing policies, and allocating resources in a manner that promotes access to justice for all members of the public, provides a forum for the fair and expeditious resolution of disputes, maximizes the use of judicial and other resources, increases efficiency in court operations, and enhances service to the public. **The presiding judge is responsible for:**

(1) **Ensuring the effective management and administration of the court**, consistent with any rules, policies, strategic plan, or budget adopted by the Judicial Council or the court;

(b) Authority

(1) The presiding judge is authorized to:

(A) **Assign judges to departments and designate supervising judges for divisions, districts, or branch courts;**

19

(c) Duties

(1) Assignments

**The presiding judge has ultimate authority to make judicial assignments.** The presiding judge must:

(A) Designate a judge to preside in each department, including a master calendar judge when appropriate, and designate a presiding judge of the juvenile division and a supervising judge for each division, district, or branch court. **In making judicial assignments, the presiding judge must take into account the following:**

(i) The needs of the public and the court, as they relate to the efficient and effective management of the court's calendar;

(ii) **The knowledge and abilities demanded by the assignment;**

(iii) **The judge's judicial and nonjudicial experience, including specialized training or education;**

"The presiding judge's authority over judicial assignments is supported by rule 10.608, which sets forth the duties of all judges. Under rule 10.608(1) and (5), each judge must generally "[h]ear all assigned matters," and must "**[f]ollow directives of the presiding judge in matters of court management and administration**, as authorized by the rules of court and the local rules and internal policies of the court." Under rule 10.603(c)(4)(A)(i), the presiding judge must notify the Commission on Judicial Performance of a judge's "persistent refusal to carry out assignments as assigned by the presiding judge," or "the directives of the presiding judge as authorized by the rules of court." *(Alvarez v. Superior Court, 183 Cal. App. 4th 969 - Cal: Court of Appeal, 1st Appellate Dist., 1st Div. 2010) also see Simon v. BRABEC, Cal: Court of Appeal, 1st Appellate Dist., 3rd Div. 2024,*

55.    This case presents important questions concerning the construction of  42 U. S. C. §1983, which reads as follows:

{"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States

1    or other person within the jurisdiction thereof to the deprivation of any rights, privileges,

2    or immunities secured by the Constitution and laws, shall be liable to the party injured in

3    an action at law, **suit in equity, or other proper proceeding for redress**."}

4        56.    Miner sues the Court defendants for Denial of Procedural Due Process under 42

5    U.S.C. Section 1983 - Fourteenth Amendment / Common law. Denial of Equal Protection 42

6    U.S.C., Section 1983 - Fourteenth Amendment / Common law.

7        57.    Court defendants have waived and forfeited argument as to fourteenth amendment

8    and common law claims against Court defendants. No mention of the fourteenth amendment and

9    common law claims are argued in the brief. The Court defendants in the capacities alleged are

10    proper defendants in this action.

11    **D. PLAINTIFF HAS STANDING TO PURSUE HIS CLAIMS FOR PROSPECTIVE
       RELIEF**

12        58.    Plaintiff had been injured previously and was injured on the date the action was

13    filed with the general assignment to a commissioner. Plaintiff was cited by the City of Desert Hot

14    Springs multiple times (6) but only chose to appeal two times to superior court mostly because of

15    duplicative citations. Miner has personally experienced this violation relating to de novo citation

16    oppositions four distinct times to date in Riverside Superior Court..

17        59.    The 'request' for de novo trials become limited civil cases. Each time Miner filed

18    his limited civil case was generally assigned to courtroom PS4 and a court commissioner. Post

19    trial, Miner then filed motions to vacate the void judgments. Again, two times more, the limited

20    civil motions were assigned to courtroom PS4 and a court commissioner. This time the

21    commissioner (Hodgkins) recused himself only after Miner filed a §170.6 motion. Commissioner

22    Hester refused to recuse himself after Miner two well documented recusals. Miner's damages and

23    injuries are defined in the FAC and Opposition to City defendants motion to dismiss. Miner has

24    suffered and will suffer a continuing constitutional injury.

25        60.    Miner has also filed more than 10 limited civil 'unlawful detainers' in Palm

26    Springs, these were also assigned to courtroom PS4 and a court commissioner. At least nine (9)

27    other defendant parties' limited civil 'de novo' court trials have been 'generally assigned' to

28

1    courtroom PS4 and a court commissioner. Limited civil trials de novo (new trials with new

2    evidence) mandate that a party 'consent' to be tried by a court commissioner. These assignments

3    without consent, in violation of a citizens rights, are routine.

4    • City of Rancho Mirage v. Bennett, CVPS2106088, pro per, Hester
     • City of Rancho Mirage v. Sloan Menninger, CVPS2106105, pro per, Hester
5    • Cathedral City v. Muradyan, CVPS2201583, pro per, Hester
     • City of La Quinta v Avantstay, Inc., CVPS2203771, Hester
6    • Cathedral City v. Montanaro, CVPS2302625, pro per, Hester
     • City of Rancho Mirage v. Davis, CVPS2301620, pro per, Hester
7    • City of Indio v. Gregorian, CVPS230161, pro per, Hester
     • Cathedral City v. Levik, CVPS2403242, pro per, Hodgkins (current commissioner)
8    • Cathedral City v. Rayl, CVPS2403265, pro per, Hodgkins (current commissioner)

9        61.    Miner has an imminent limited civil unlawful detainer to file. History has shown

10   that it will be assigned to a commissioner in PS4. Standing has existed the day the complaint was

11   filed. Most issues will be unearthed during discovery.

12       62.    Miner owns six separate properties in the City of Desert Hot Springs and three

13   properties nearby in the County area within jurisdiction of Palm Springs court. He has changed

14   nothing on the cited land parcel. He has received a total of about six administrative citations on

15   various land holdings. It is a substantial risk, almost certain, Miner will again visit the courthouse

16   and be improperly assigned to a commissioner under the court's current policy.

17       63.    In an act of simplicity Miner cites highlighted clips of federal cases that support his

18   position on Article III standing and prospective relief. Miner has a more than likely chance of

19   future injury based on the policy of the court, the injury will be redressed by relief requested.

20       {"That threatened future injury "must be an injury in fact." Id. (citing Susan B. Anthony

21       List v. Driehaus, 573 U.S. 149, 158, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014)). That

22       means, as relevant here, that the injury must be "`imminent' . . . `to ensure that the alleged

23       injury is not too speculative for Article III purposes.'" Id. at 721 (quoting Clapper v.

24       Amnesty Int'l, 568 U.S. 398, 409, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013)). **"For a

25       threatened future injury to satisfy the imminence requirement, there must be at least

26       a `substantial risk' that the injury will occur."** Id. (quoting Susan B. Anthony List, 573

27       U.S. at 158, 134 S.Ct. 2334). "[P]ast wrongs [are] evidence" of the likelihood of a future

28       injury but "do not in themselves amount to that real and immediate threat of injury

                                            22

necessary to make out a case or controversy." City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).}

{"**To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief.**" Thole v. U. S. Bank N.A., ___ U.S. ___, 140 S. Ct. 1615, 1618, 207 L.Ed.2d 85 (2020). "[P]laintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." Stringer v. Whitley, 942 F.3d 715, 720 (5th Cir. 2019).}

{"**At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we `presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'**" Lujan v. Defs. of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).}

{"**Even so, a "substantial risk" <u>does not require</u> that the threatened injury be "literally certain."** Id. at 414 n.5, 133 S.Ct. 1138; see Lujan, 504 U.S. at 564 n.2, 228*228 112 S.Ct. 2130 (acknowledging that imminence "is concededly a somewhat elastic concept"); Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (requiring that the plaintiff "demonstrate a realistic danger of sustaining a direct injury"); Kolender v. Lawson, 461 U.S. 352, 355 n.3, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) ("a credible threat"); Frame v. City of Arlington, 657 F.3d 215, 235 (5th Cir. 2011) ("a sufficiently high degree of likelihood")}

{"**Instead, a plaintiff seeking prospective relief need only show that future injury is**

**"fairly likely."** Crawford v. Hinds Cnty. Bd. of Supervisors, 1 F.4th 371, 376 (5th Cir. 2021); accord Arcia v. Fla. Sec'y of State, 772 F.3d 1335, 1341 (11th Cir. 2014) ("a realistic probability").}

{**"In assessing whether the threatened injury is** <u>fairly likely</u> **to occur, evidence of prior injury is especially probative.** See Crawford, 1 F.4th at 376 (citing Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). **Said another way, it "is not unduly conjectural" to use the "predictable effect" of the defendant's prior actions as a method to predict what will happen in the future**. Apple Inc. v. Vidal, 63 F.4th 1, 17 (Fed. Cir. 2023) (quoting Dep't of Com. v. New York, ___ U.S. ___, 139 S. Ct. 2551, 2566, 204 L.Ed.2d 978 (2019)). Injuries that are "one-off" instances or "episodic" in nature do not move the needle much. Crawford, 1 F.4th at 376. But where the causes that produced the first injury remain in place, past-injury evidence bears strongly "on whether there is a real and immediate threat of repeated injury." O'Shea v. Littleton, 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); see Crawford, 1 F.4th at 376; accord In re Navy Chaplaincy, 697 F.3d 1171, 1176-77 (D.C. Cir. 2012) ("The prospect of future injury becomes significantly less speculative where, as here, plaintiffs have identified concrete and consistently-implemented policies claimed to produce such injury.").}

{**Finally, a group of plaintiffs need not show that more than one of them is likely to be injured. "If at least one plaintiff has standing, the suit may proceed."** Biden v. Nebraska, ___ U.S. ___, 143 S. Ct. 2355, 2365, 216 L.Ed.2d 1063 (2023) (citing Rumsfeld v. F. for Acad. and Institutional Rts., Inc., 547 U.S. 47, 52 n.2, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006)).}

{**"But if a plaintiff seeks prospective relief, such as a declaratory judgment, he must "allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."** Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1346

24

(11th Cir. 1999) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). And that future injury must be "real," "immediate," and "definite." Id. at 1347.}

{**"Nevertheless, under the principle established in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), private individuals may sue state officials in federal court for prospective relief from ongoing violations of federal law,** as opposed to money damages, without running afoul of the doctrine of sovereign immunity. See Va. Office of Prot. & Advocacy v. Stewart, 563 U.S. 247, 254-55, 131 S.Ct. 1632, 179 L.Ed.2d 675 (2011).}

{**"In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a `straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"** Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (alteration in original) (quoting Idaho v. Coeur d'Alene Tribe of Id., 521 U.S. 261, 296, 117 S.Ct. 2028 (1997))}

## E.    JUDICIAL IMMUNITY DOES NOT APPLY TO COURT DEFENDANTS

64.    While Miner has addressed these issues, and the issue of appeal, Miner categorically states he has not, and does not request money damages. Shame on defendants alleging this after the issues are clear in the brief and in an email sent to counsel.

- "Miner **"seeks prospective declaratory and injunctive relief against the Court defendants, not damages or retrospective relief"** (FAC ¶12);

- "As a proximate result of the foregoing acts of City defendants, and each of them, plaintiff has suffered extreme hardship and damages, which damages include, but is not limited to, economic damages, according to proof at trial, but no less than $2,000,000.00, **and to appropriate declaratory and injunctive relief against all the**

1    **defendants** (FAC ¶332)

2

3    **Email to Matthew Green**

4    "From: Joseph Miner <josephminer@gmail.com>
Sent: Friday, April 11, 2025 11:14 AM

5    To: Matthew Green <Matthew.Green@bbklaw.com>
Subject: Re: Miner v. City of Desert Hot Springs, et al., C.D. Cal. Case No.

6    8:24-cv-02793-CAS-E

7    "As to damages requested in the complaint:

8    332. As a proximate result of the <u>foregoing acts of City defendants</u>, and each of them, plaintiff has suffered extreme hardship and damages, which damages include, but is not

9    limited to, economic damages, according to proof at trial, but no less than $2,000,000.00, and to <u>appropriate declaratory and injunctive relief against all the defendants</u>, and to their

10    reasonable attorneys fees under 42 U.S.C.'section 1988.

11    I believe it is clear damages are against City defendants only."

12

13    **F.    THE CITY'S STATE COURT DISMISSAL MISCALCULATION**

14        65.    The City ('true plaintiff' in the state case trial de novo CVPS2106001) stepped on

15    the wrong side of the rake... Whoops!   <u>The vexatious litigant statute was not designed for</u>

16    <u>plaintiffs (the City) to declare their own trial de novo defendants (the person ticketed) vexatious</u>.

17        66.    The outcome would make no legal, logical, or rational sense. The State Legislature

18    considered that issue, and so have the courts. What happened in the state case CVPS2106001

19    could not be what the Legislature intended when creating the statute below. The City got what it

20    deserved. For a a $500 fine. No defendant would pay $1750 to win a trial, and the potential return

21    of a potential just $500 or '29% on their $1750 investment.'

22        "The California legislature adopted the Vexatious Litigant Statute in 1963* to ease the

23    "unreasonable burden placed upon the courts by groundless litigation." Wolfgram v. Wells

24    Fargo Bank, 53 Cal.App.4th 43, 61 Cal.Rptr.2d 694, 698 (1997). **The statute provides**

25    **that a <u>defendant in any state court may move the court</u> to require a pro se plaintiff**

26    **who qualifies as a "vexatious litigant"[3] to post a security bond before proceeding.**

27    Cal.Civ.Proc.Code § 391.1 (Wolfe v. Strankman, 392 F. 3d 358 - Court of Appeals, 9th

28    Circuit 2004) (*de novo trials began long before 1963)

# IV CONCLUSION

The California Supreme Court has been clear:
"Neither the rule nor the statute  purports to authorize a court commissioner
to act as a temporary judge if he is not "otherwise  qualified so to act,
**and in the absence of a stipulation of the parties, he is not so qualified.**"
(People v. Tijerina, 459 P. 2d 680 - Cal: Supreme Court <u>1969</u>).

67.    As a result of the City's legal miscalculation the state case was dismissed without prejudice. Miner does not request this court review any aspect of the case, judgment or orders. The real question in this case is the law, common definitions, and the constitution. Can a defendant be thrown into a courtroom, held hostage, be held liable, have a permanent injunction be imposed, by a person, an individual in a black robe, without legal or judicial authority, and without consent of the parties litigant? Plaintiff, a semi retired 70 year old, contends what has happened to him, should not happen again, <u>to anyone</u>. Neither the statute §53069.4 or Court of Appeal case uses the magic words that a subordinate judicial officer may "hear and determine" a limited civil, trial de novo. As stated in the FAC, the legislature is clear when it appoints judicial powers. (FAC ¶194-197)

68.    Defendants citation of *Martinez v. Winner* again fails. *"The principal defendant is Fred M. Winner, at all relevant times* **Chief Judge of the United States <u>District Court</u> for the District of Colorado**, *who presided over plaintiff's trial in 1981 for mailing a letter bomb."* (Martinez v. Winner, 771 F. 2d 424 - Court of Appeals, 10th Circuit 1985) The citation has nothing to do with state law, rules and policy, and not cited in any California state court.

69.    State administrative policies and rules of the court as described by Plaintiff. *(ante)* The presiding judge and defendant's administrative policy, violating constitutional rights of defendants, do not thrive with impunity and are not shielded from the constitution. Assigning judicial power to <u>lawyers</u> hired by the court is not a power instilled in the presiding judge, authorized by the state constitution, and violates the federal constitution as pleaded.

70.    As clearly stated in Jovine v. FHP, Inc., 76 Cal. Rptr. 2d 322 - Cal: COA, 1998, heard after GC. 53079.4 was enacted, **"in the absence of a proper stipulation, the <u>responsibility to decide</u> cannot be delegated."**

"This statutory scheme carefully preserves the distinction which must be maintained between general and special references in order to comply with the constitutional mandate regarding the delegation of judicial power. "[A] **general reference has binding effect, but must be consensual**, whereas a **special reference may be ordered without consent but is merely advisory**, not binding on the [ ] court [Citations.]" (Aetna Life Ins. Co. v. Superior Court (1986) 182 Cal.App.3d 431, 436, 227 Cal.Rptr. 460.)"

70.     Based on all documents, declarations and exhibits filed with this court, the foregoing, Plaintiff's supporting declaration and exhibits, Plaintiff requests this court deny Defendants' 12(b)(1) and 12(b)(6)motion in total. Plaintiff requests this court take judicial notice of all past and current public documents (exhibits) filed with the state court including all state court filings. Plaintiff, could produce the entire 5,000+ page certified record, if required. Miner believes that all documents produced as exhibits thus far have been public or part of the state court or federal court record or have been authored by an officer of the court.

71.     Plaintiff requests leave to amend if necessary to cure any deficiency in the pleading, and, if necessary, leave to amend to permit additional defendants (California Attorney General if necessary), counts for constitutional first amendment retaliation, and perhaps deprivation of rights under color of law against City defendants. Plaintiff submits this is the first complaint served on any defendant; effectively it is the initial federal complaint.

Respectfully submitted,

Joseph Miner, pro se, 5/14/25

28

## DECLARATION OF JOSEPH MINER

I, Joseph Miner declare:

    1.      I state the following facts and history of my own personal knowledge and if called, I can and would testify competently thereto.

    2.      Except where stated in this declaration upon information and belief, the facts set forth in this declaration are known to me personally, and, if called and sworn as a witness in a court of law, I could and would competently testify to such facts. As for those facts stated upon information and belief, I believe in good faith that they are true.

    3.      My name is Joseph Miner. I am over the age of eighteen (18).

    4.      I personally authored the foregoing opposition.

    5.      I have no formal training as a lawyer or attorney.

    6.      All facts, history described by me, and law, documents and exhibits provided by me, are true and correct to the best of my knowledge.

    7.      Listening to many federal circuit court oral arguments a repetitive question by the judges is **"well then, to get this before the court, who should they sue?"** I have sued the persons who can change the unlawful administrative practice of commissioner assignments without stipulation.

**ATTACHED EXHIBITS**

    8.      **EXHIBIT 1: Verified declaration of Hon. Arthur Hester**

    9.      **EXHIBIT 2: True and correct copy of 1967 Judicial Council report**

          (3) relevant pages regarding commissioners as referenced in opposition.

    10.     Miner requests the court take judicial notice of these two public documents.

    I declare, under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct, and that this declaration is executed this 14th day of May 2025, in the County of Orange, State of California.

_____

Joseph Miner, plaintiff, pro se